IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | |
| | § | |
| HOLY LAND FOUNDATION FOR | § | |
| RELIEF AND DEVELOPMENT (1) | § | |
|     also known as the "HLF" | § | NO. 3:04-CR-240-G |
| SHUKRI ABU BAKER (2) | § | |
| MOHAMMAD EL-MEZAIN (3) | § | |
| GHASSAN ELASHI (4) | § | |
| MUFID ABDULQADER (7) | § | |
| ABDULRAHMAN ODEH (8) | § | |

**DEFENDANTS' JOINT MOTION IN LIMINE TO EXCLUDE
EVIDENCE FROM TRIAL, AND MEMORANDUM IN SUPPORT**

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................ 3

   I.    Theory of the Prosecution ................................................................ 3

   II.   The Government of Israel (GOI) Documents ................................... 5


ARGUMENT ............................................................................................................... 6


   I.    This Court must exclude irrelevant evidence, the admission of which would also substantially and unfairly prejudice the defendants. ......................................... 6

      A.   The Applicable Legal Standard ................................................... 6

      B.   Evidence the Court Must Exclude Under FED. R. EVID. 401 ................................. 8

         1.    Evidence of acts of terrorism or violence by Hamas or any other terrorist organization in Israel, the West Bank or the Gaza Strip. ....................................... 8

         2.    Evidence regarding Hezbollah, Al-Qaeda, Palestinian Islamic Jihad, and any other Islamic-based terrorist organizations not specifically named in the indictment. ............................................................. 10

         3.    All evidence (including audio or videotapes) of conventions, seminars, rallies and teleconferences sponsored by organizations other than the HLF. ................ 11

         4.    Evidence that in 2002 Israel designated certain of the organizations with which HLF worked as terrorist organizations. ............................................. 13

         5.    Evidence that the governments of Israel and the United States designated the HLF as a terrorist organization. .................................................... 14

         6.    Evidence of the United States Government's designation of any individual or organization except Hamas as a terrorist, including, but not limited to, Mousa Abu Marzook, Khalid Mishal, and Interpal. ....................................... 15

         7.    Evidence regarding other organizations the governments of the United States or Israel allege are linked to Hamas, including inter alia, Interpal, WAMY, Al Aqsa Foundation, and the Coalition of the Good. .................................... 16

         8.    Evidence of websites that include hyperlinks to the HLF's website. .................. 18

         9.    Any evidence of events occurring after December 4, 2001, the date on which the United States Government froze all the assets of the HLF, seized all its property and ordered it to cease all operations. ............................................. 19

   II.   This Court must exclude extrinsic offense evidence that is offered merely to show propensity and the probative value of which is substantially outweighed by the risk of unfair prejudice. ......................................................................... 20

      A.   The Applicable Legal Standard ................................................. 20

      B.   Evidence the Court Must Exclude Under FED. R. EVID. 404(b) ....................... 22

1.  Evidence or mention of the two trials and the convictions of defendant Ghassan Elashi in *United States v. Elashi*, 3:02-cr-00052 (N.D. Texas)...........................22

2.  Evidence that certain defendants are related to leaders or members of Hamas. . 23

III.  This Court must exclude all evidence the government cannot properly authenticate or which violates the "Best Evidence" or "Original Document" rule...................................26

A.  The Applicable Legal Standards..................................................................................26

B.  Evidence the Court Must Exclude Under FED. R. EVID. 901, 1001, and 1002...........27

1.  Evidence seized by the Government of Israel (GOI) from zakat committees and from the Palestinian National Authority (PA) in 2002.........................................27

a.  Evidence the government cannot authenticate...............................................27

b.  Evidence that violates the "Best Evidence" or "Original Documents" Rule... 31

c.  Due Process concerns....................................................................................32

2.  Document entitled "Foundation's Policies & Guidelines," seized by the United States Government during a September 2001 search of Infocom.......................33

IV.  This Court must exclude statements offered in violation of the prohibition against hearsay and the defendants' confrontation rights..........................................................34

A.  The Applicable Legal Standards..................................................................................34

1.  Introduction ........................................................................................................34

2.  The Problem of Translations ...............................................................................35

3.  The Applicable Constitutional Provisions............................................................36

B.  Statements the Court Must Exclude Under FED. R. EVID. 802 and the Sixth Amendment Confrontation Clause. ..............................................................................39

1.  Statements made by alleged co-conspirators before the designation of Hamas as a terrorist organization on January 25, 1995, and, with respect to the charges under section 2339B, before the designation of Hamas on October 8, 1997, and all statements made after the closure of the HLF on December 4, 2001. ...........39

2.  Evidence related to the criminal proceedings against various Palestinians by the Government of Israel...........................................................................................42

3.  Statements or confessions made during interrogations of Palestinians by Israeli authorities. ...........................................................................................................43

4.  Newspaper articles. .............................................................................................44

CONCLUSION...................................................................................................................45

# TABLE OF AUTHORITIES

## CASES

*American Wrecking Corp. v. Secretary of Labor*, 351 F.3d 1254 (D.C. Cir. 2003) ..................... 29

*Bourjaily v. United States*, 483 U.S. 171 (1987) ........................................................ 40, 41

*Bruther v. General Elec. Co.*, 818 F. Supp. 1238 (S.D. Ind. 1993) ................................... 26

*California v. Green*, 399 U.S. 149 (1970) ................................................................ 33

*Crawford v. Washington*, 541 U.S. 36 (2004) .......................................... 36, 38, 42, 44

*Davis v. Washington*, ___ U.S. ___, 126 S. Ct. 2266 (2006) ......................................... 37

*Dawson v. Delaware*, 503 U.S. 159 (1992) ............................................................... 12

*Fiswick v. United States*, 329 U.S. 211 (1946) ......................................................... 43

*Grunewald v. United States,* 353 U.S. 391 (1957) ..................................................... 41

*Haupt v. United States*, 330 U.S. 631 (1947) .......................................................... 12

*Holy Land Foundation for Relief and Development v. Ashcroft*,
  219 F. Supp.2d 57 (D.D.C. 2002) .................................................................... 14

*Holy Land Foundation for Relief and Development v. Ashcroft*,
  333 F.3d 156 (D.C. Cir. 2003) ...................................................................... 14

*In re Buzzelli*, 246 B.R. 75 (Bankr. W.D. Pa. 2000) .................................................. 29

*Jim Sowell Const. Co., Inc. v. City of Coppell*, 61 F.Supp.2d 542 (N.D. Tex. 1999) .............. 44

*Krulewitch v. United States,* 336 U.S. 440 (1949) ...................................................... 41

*Manson v. Braithwaite*, 432 U.S. 98 (1977) ............................................................ 33

*Moore v. United States*, 429 U.S. 20 (1976) ............................................................ 34

*Ohio v. Roberts*, 448 U.S. 56 (1980) .................................................................... 37

*Penguin Books U.S.A., Inc. v. New Christian Church of Full Endeavor*,
  262 F. Supp.2d 251 (S.D.N.Y. 2003) ................................................................ 30

*Railroad Management Co., L.L.C., v .CFS La. Midstream Co.*,
  428 F.3d 214 (5th Cir. 2005) ....................................................................... 31

*United States v. Abreu*, 952 F.2d 1458 (1st Cir. 1992) ................................................ 28

*United States v. Allison*, 474 F.2d 286 (5th Cir. 1973) ................................................. 7

*United States v. Alonzo*, 991 F.2d 1422 (8th Cir. 1993) ........................................... 42, 43

*United States v. Anderson*, 933 F.2d 1261 (5th Cir. 1991) ............................................. 7

*United States v. Ascarrunz*, 838 F.2d 759 (5th Cir. 1988) ............................................ 43

*United States v. Barnes*, 586 F.2d 1052 (5th Cir. 1978) .......................................... 42, 44

*United States v. Beechum*, 582 F.2d 898 5th Cir. 1978) (en banc) ............................... 20, 21, 22

*United States v. Biggins*, 551 F.2d 64 (5th Cir. 1977) ................................................ 29

*United States v. Buchanan*, 70 F.3d 818 (5th Cir. 1995) .............................................. 30

*United States v. Coe*, 718 F.2d 830 (7th Cir. 1983) ................................................... 41

*United States v. Cromer*, 389 F.3d 662 (6th Cir. 2004) ............................................... 38

*United States v. Cruz,* 765 F.2d 1020 (11th Cir. 1985) ............................................... 36

*United States v. Elashi*, 440 F. Supp.2d 536 (N.D. Tex. 2006) ...................................... 22

*United States v. Forrest*, 620 F.2d 446 (5th Cir. 1980) ........................................... 24, 25

*United States v. Fortenberry*, 860 F.2d 628 (5th Cir. 1988) .......................................... 20

*United States v. Grimes,* 244 F.3d 375 (5th Cir. 2001) ................................................. 9

*United States v. Guardia*, 135 F.3d 1326 (10th Cir. 1998) ............................................ 18

## CASES, con't

*United States v. Hays*, 872 F.2d 582 (5th Cir. 1989) ................................................................ 7
*United States v. Jackson*, 339 F.3d 349 (5th Cir. 2003) ........................................................... 21
*United States v. Labarbera*, 581 F.2d 107 (5th Cir. 1978) ...................................................... 24
*United States v. Linwood,* 142 F.3d 418 (7th Cir. 1998) .......................................................... 34
*United States v. Lombard,* 72 F.3d 170 (1st Cir. 1995) ............................................................ 43
*United States v. Manfre,* 368 F.3d 832 8th Cir. 2004 ............................................................... 38
*United States v. Martinez-Gaytan*, 213 F.3d 890 (5th Cir. 2000) ............................................ 35
*United States v. McRae*, 593 F.2d 700 (5th Cir. 1979) ............................................................... 8
*United States v. Moreno*, 991 F.2d 943 (1st Cir. 1993) .................................................... 9, 11, 33
*United States v. Morris*, 623 F.2d 145 (10th Cir. 1980) ........................................................... 41
*United States v. Murphy*, 193 F.3d 1 (1st Cir. 1999) ............................................................... 41
*United States v. Ochoa*, 609 F.2d 198 (5th Cir. 1980) ............................................................. 24
*United States v. Parada-Talamantes*, 32 F.3d 168 (5th Cir. 1994) .......................................... 23
*United States v. Pluta,* 176 F.3d 43 (2d Cir. 1999) ................................................................. 26
*United States v. Polasek*, 162 F.3d 878 (5th Cir. 1998) ........................................................... 24
*United States v. Rodriguez Alvarado,* 985 F.2d 15 (1st Cir. 1993) ......................................... 43
*United States v. Shaw*, 920 F.2d 1225 (5th Cir. 1991) ............................................................. 26
*United States v. Smith*, 893 F.2d 1573 (9th Cir. 1990) ............................................................ 32
*United States v. Taylor,* 802 F.2d 1108 (9th Cir. 1986) ........................................................... 43
*United States v. Vigo*, 435 F.2d 1347 (5th Cir. 1970) .............................................................. 24
*United States v. White*, 222 F.3d 363 (7th Cir. 2000) .............................................................. 19
*United States v. White*, 444 F.2d 1274 (5th Cir. 1971) ............................................................ 26
*United States v. Williams-Hendrick*, 805 F.2d 496 (5th Cir. 1986) .......................................... 25
*Virginia v. Black*, 538 U.S. 343 (2003) ................................................................................... 13
*Williams v. New York*, 337 U.S. 241 (1949) ............................................................................... 7
*Wisconsin v. Mitchell*, 508 U.S. 476 (1993) ............................................................................ 12

## CONSTITUTIONAL PROVISIONS

U.S. Const., amend. VI ....................................................................................... *passim*

## STATUTES

18 U.S.C. § 2339B .............................................................................................. *passim*
50 U.S.C. § 1705 .................................................................................................... 3, 4

## RULES

Fed. R. Evid. 1001 ............................................................................................... 2, 32
Fed. R. Evid. 1002 ............................................................................................... 2, 31
Fed. R. Evid. 401 ............................................................................................... *passim*
Fed. R. Evid. 402 ............................................................................................... *passim*
Fed. R. Evid. 403 ............................................................................................... *passim*

**RULES, con't**

FED. R. EVID. 404 ................................................................................ 2, 20, 21, 23
FED. R. EVID. 801 ............................................................................................ *passim*
Fed. R. Evid. 802 ....................................................................................... 2, 34, 45
Fed. R. Evid. 803 ..................................................................................................... 34
Fed. R. Evid. 804 ..................................................................................................... 34
FED. R. EVID. 901 ............................................................................................ *passim*

## OTHER AUTHORITIES

5 Christopher B. Mueller & Laird C. Kirkpatrick, Federal Evidence § 570 (2d ed. 1994) .......... 31
Executive Order 12947 (Jan. 25, 1995) ....................................................................... 41

**TO THE HONORABLE A. JOE FISH**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION:**

Defendants, HOLY LAND FOUNDATION, SHUKRI ABU BAKER, MOHAMMAD
EL-MEZAIN, GHASSAN ELASHI, MUFID ABDULQADER and ABDULRAHMAN ODEH,
through their undersigned counsel, respectfully move the Court in limine under FED. R. EVID.
401, 402, 403, 404(b), 801(d)(2)(E), 802, 901, 1001 and 1002, the Fifth Amendment Due
Process Clause, and the Sixth Amendment Confrontation Clause for an Order excluding the
following evidence from trial:

**A.     Irrelevant and unduly prejudicial evidence, excludable under FED. R. EVID. 401, 402 and 403.**

- Evidence of acts of terrorism or violence by Hamas or any other terrorist organization in Israel, the West Bank or the Gaza Strip.

- Evidence regarding Hezbollah, Al-Qaeda, Palestinian Islamic Jihad, and any other Islamic-based terrorist organizations not specifically named in the indictment.

- All evidence (including audio or videotapes) of conventions, seminars, rallies and teleconferences sponsored by organizations other than the Holy Land Foundation (HLF), including songs or skits performed by defendant Mufid Abdulqader.

- Evidence that in 2002 Israel designated certain of the organizations with which HLF worked as terrorist organizations.

- Evidence that the governments of Israel and the United States designated the HLF as a terrorist organization.

- Evidence of the United States Government's designation of any individual or organization except Hamas as terrorists, including, but not limited to, Mousa Abu Marzook, Khalid Mishal, and Interpal.

- Evidence regarding other organizations the governments of the United States or Israel allege are linked to Hamas, including *inter alia*, Interpal, WAMY, Al Aqsa Foundation, and the Coalition of the Good.

- Evidence of websites that include hyperlinks to the HLF's website.

- Any evidence of events occurring after December 4, 2001, the date on which the United States Government froze all the assets of the HLF, seized all its property and ordered it to cease all operations.

**B.     Extrinsic offense evidence excludable under FED. R. EVID. 404(b)**

- Evidence or mention of the two trials and the convictions of defendant Ghassan Elashi in *United States v. Elashi*, 3:02-cr-00052 (N.D. Texas).

- Evidence that certain defendants are related to leaders or members of Hamas.

**C.     Evidence the government cannot authenticate or that is not the "best evidence," excludable under FED. R. EVID. 901, 1001 and 1002**

- Evidence seized by the Government of Israel (GOI) from zakat committees and from the Palestinian National Authority (PA) in 2002.

- Document entitled "Foundation's Policies & Guidelines," seized by the United States Government during a September 2001 search of Infocom.

**D.     Inadmissible statements excludable under FED. R. EVID. 801 and 802 and the Sixth Amendment Confrontation Clause**

- Statements made by alleged co-conspirators before the designation of Hamas as a terrorist organization on January 25, 1995 and, with respect to the charges under section 2339B, before the designation of Hamas on October 8, 1997, and all statements made after the closure of the HLF on December 4, 2001.

- Evidence related to the criminal proceedings against various Palestinians by the Government of Israel.

- Statements or confessions made during interrogations of Palestinians by Israeli authorities.

- Newspaper articles.

The defendants reserve the right to object at trial on additional grounds to evidence in the categories set forth above and to supplement this motion in light of further discovery the government may provide, evidence identified in the government's exhibit list, and as existing discovery is translated.

The grounds for this motion are set out below.

2

## INTRODUCTION

Review of the discovery in this case has revealed a range of potential evidence that has no relevance to the charges, violates the defendants' constitutional rights, cannot be properly authenticated, and is otherwise inadmissible under the Rules of Evidence. The admission of such evidence would unfairly prejudice the defendants, confuse the issues, waste time, and mislead the jury. Because the government has not yet identified what evidence it intends to introduce at trial (with the exception of some FISA intercepts), however, this motion is necessarily stated in general and prospective terms. The defendants reserve the right to supplement this motion as necessary in response to the government's identification of its exhibits and other evidence.[1]

## I.   THEORY OF THE PROSECUTION

Each decision whether to admit or exclude evidence in this case must be made in the specific context of the theory under which the prosecution hopes to hold these defendants liable for allegedly committing several serious offenses through their provision of aid to indisputably needy people in Palestine. The central allegations in the Superseding Indictment are that the defendants conspired to provide and did provide material support for terrorism in violation of 18 U.S.C. § 2339B and conspired to violate and did violate the presidential ban on funds transfers to Hamas, contrary to 50 U.S.C. § 1705. The defendants are also charged with conspiracy to commit the offense of money laundering and money laundering. Defendants Shukri Abu Baker and Ghassan Elashi are further charged with conspiracy to impede and impair the Internal Revenue Service and filing false returns of an organization exempt from income tax.

---

[1] Pursuant to this Court's March 9, 2007, Order, all motions in limine are due March 14, 2007, while the parties' lists of witnesses and exhibits are due April 20, 2007. Given the sheer volume of the discovery in this case (some of which was not produced until March 1, 2007), coupled with the fact that much of the discovery requires translation, it is not possible for counsel to identify specifically all the evidence subject to challenge in limine at this time.

The elements of the crime of providing material support include: (1) knowingly providing material support or resources to a foreign terrorist organization (FTO), or attempting or conspiring to do so, (2) if the defendant knew that the organization had been designated an FTO, or that the organization has engaged or engages in terrorism. 18 U.S.C. §§ 2339B(a)(1) and (g)(6). It is undisputed that the defendants knew at all relevant times that Hamas had been designated an FTO, and that the mid-1990's augured the enactment of federal statutes criminalizing material support for such designated entities. The dispute in this case centers on whether the organizations with which HLF worked in the West Bank and Gaza are Hamas organizations and, if so, whether the defendants knew their status as such, and intended that HLF's donations be directed to such organizations.[2]

The Superseding Indictment alleges two categories of conduct to support the allegation that the defendants provided material support to Hamas and thereby violated sections 2339B and 1705: 1) that the defendants provided charitable funds to Palestinian families related to Hamas "martyrs," "detainees" and "activists," with the intent to "effectively reward[] past, and encourage[] future, suicide bombings and terrorist activities on behalf of HAMAS." Superseding Indictment, Count One, ¶ 5; and, 2) that the defendants provided charity in the West Bank and Gaza through local charity committees that are "operated on behalf of or were under the control of HAMAS." *Id.* at ¶¶ 3, 9, 11 and Counts Two through Twelve, *passim*.

The indictment does not allege that any of the organizations that received HLF's funds were themselves terrorist organizations, designated or otherwise, or that any of the individuals who received HLF's charitable assistance were terrorists. Nor does the indictment allege that any

---

[2]    Defendants do not concede that section 2339B covers donations to organizations that are "operated on behalf of or were controlled by Hamas," rather than to an FTO itself. That challenge to the indictment is the subject of defendants' pending motion to dismiss. *See* DEFENDANTS JOINT MOTION AND MEMORANDUM TO DISMISS CERTAIN COUNTS OF THE INDICTMENT, Dkt. 392, filed October 6, 2006.

of HLF's funds were directed to, or used for, any acts of terrorism, or that those funds did not go

to persons in need or were not intended or used for charitable or humanitarian projects.

Thus, it is the government's theory—spelled out in the indictment—that in providing

desperately-needed charitable aid to children, families, and other needy persons in the West

Bank and Gaza, the defendants distributed their charity in such a way as to provide material

support to Hamas.

## II.    THE GOVERNMENT OF ISRAEL (GOI) DOCUMENTS

A substantial amount of the discovery in this case is found in twenty-one binders of

documents provided by the Government of Israel (GOI). In 2002, the Israeli Defense Forces

(IDF) engaged in a large military incursion into the West Bank. During that military action,

known as "Operation Defensive Shield" (ODS), the IDF seized thousands of documents from

various institutions, including several of the zakat committees at issue in this case. The

documents seized from the zakat committees include newspaper articles, internal financial and

business documents, correspondence, videotapes, posters, scraps of paper, key chains, and other

miscellaneous items. *See* Index of Disclosed Discovery Items Received from the Government of

Israel and attached as Exhibit A hereto. The IDF also seized documents from the offices of the

Palestinian National Authority (PA). In addition to the documents seized during ODS, the GOI

documents include Israeli court documents and translations of statements prisoners allegedly

made to Israeli intelligence officers during prison interrogations.

The original documents the IDF seized were primarily in Arabic. The GOI translated

many of them into Hebrew. Counsel believes that the documents were translated from Arabic to

Hebrew in Israel by military intelligence officers. The twenty-one binders produced in

discovery—from which the still unidentified trial exhibits will likely come—include

approximately 8000 pages as well as numerous videotapes. The defendants received some, but not all, of the documents in their original Arabic.

The government has stated that it intends to introduce some of the seized documents as substantive evidence in the trial in this case. GOVERNMENT'S BRIEF IN SUPPORT OF MOTION FOR MEASURES TO PROTECT IDENTITY OF FOREIGN WITNESSES, at 12-13, Dkt. 388, filed October 6, 2006 (The IDF witness "will be called solely as a custodial witness to authenticate and admit various exhibits which the government intends to introduce at trial. These exhibits are part of numerous items seized by the IDF during military operations in the West Bank and Gaza Strip. The witness will testify as to when the items were seized, the methods and means by which these items were seized, the location where the items were seized and how those items have been stored or maintained since their seizure.").[3] As noted above, the government has not yet designated which specific documents it intends to introduce through this witness. Therefore, the argument with respect to the GOI documents—as with all other evidence discussed herein—is stated in general terms and deals with the various kinds of documents or potential evidence involved.

## ARGUMENT

**I.     THIS COURT MUST EXCLUDE IRRELEVANT EVIDENCE, THE ADMISSION OF WHICH WOULD ALSO SUBSTANTIALLY AND UNFAIRLY PREJUDICE THE DEFENDANTS.**

### A.     The Applicable Legal Standard

Rule 401 of the Federal Rules of Evidence defines "relevant" evidence as evidence "having any tendency to make the existence of any fact that is of consequence to the

---

[3] The government also has stated that its proposed expert witnesses will use these documents as the bases for their opinions. *See* letter from James T. Jacks to all defense counsel, dated April 20, 2006 ("all of the material in the binders will be relied upon by Yoni Fighel, a government expert, in formulating his opinion on the relationship between particular zakat committees and HAMAS"). The defendants address that issue in their *Daubert* motions.

determination of the action more probable or less probable than it would be without the evidence." FED. R. EVID. 401. FED. R. EVID. 402 requires the exclusion of irrelevant evidence.

"Evidence in criminal trials must be 'strictly relevant to the particular offense charged.'" *United States v. Anderson*, 933 F.2d 1261, 1268 (5th Cir. 1991), quoting *Williams v. New York*, 337 U.S. 241, 247 (1949). *See also United States v. Hays*, 872 F.2d 582, 587 (5th Cir. 1989) (noting that appellate review of evidentiary rulings in criminal cases is "necessarily heightened"). "The admission of irrelevant facts that have a prejudicial tendency is fatal to a conviction, even though there was sufficient evidence to sustain the verdict." *Id.*, quoting *United States v. Allison*, 474 F.2d 286, 289 (5th Cir. 1973). These axioms have particular force in a prosecution such as this, which is predicated upon innocuous conduct—giving charitable aid to people indisputably in need of it—that the government alleges was committed with nefarious intent. Given that the government's theory stretches to the breaking point the language of the statutes under which the defendants are charged and is premised almost entirely on the subjective opinions of its "experts" that certain organizations are controlled by Hamas, it is imperative that the government not be allowed to introduce evidence that is not only irrelevant to the charges, but which also is unduly prejudicial to the defendants.

Rule 403 permits the exclusion of relevant evidence when its "probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury," or by "considerations of undue delay, waste of time, or needless presentation of cumulative evidence." FED. R. EVID. 403. The Advisory Committee's notes to Rule 403 define "unfair prejudice" as "an undue tendency to suggest decision on an improper basis, commonly though not necessarily, an emotional one." "[The] major function [of Rule 403] is limited to

7

excluding matter of scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect." *United States v. McRae*, 593 F.2d 700, 707 (5th Cir. 1979).

### B.   Evidence the Court Must Exclude Under FED. R. EVID. 401, 402 and 403.

In light of the principles discussed above, the Court should exclude each of the categories of evidence discussed below.

### 1.   Evidence of acts of terrorism or violence by Hamas or any other terrorist organization in Israel, the West Bank or the Gaza Strip.

The Superseding Indictment alleges that the defendants supported Hamas by providing charity through zakat committees in the West Bank and Gaza that were "operated on behalf of or were under the control of HAMAS," and to children and families of Hamas activists who were jailed, injured, or killed by Israel. The indictment does not allege that any of the charitable organizations that received HLF's funds were terrorist organizations, designated or otherwise, or that any of the children or families who received HLF's charitable assistance were terrorists themselves or were not actually in need of charity. Nor does the indictment allege that any of HLF's funds were directed to, or used for, any acts of terrorism, or that those funds did not go to persons in need or were not used or intended for charitable or humanitarian projects. Nonetheless, the Indictment is filled with references to specific acts of violence and terrorism by Hamas and others. *See* Superseding Indictment, at 1-12, 14-15.

The government has acknowledged that evidence concerning HAMAS's alleged terrorist activities is irrelevant to the charges in this case and has stated that it would not seek to introduce any such evidence except to rebut any evidence the defendants might introduce to suggest Hamas is not a terrorist organization. *See* GOVERNMENT'S REPLY TO DEFENDANTS' JOINT RESPONSE TO GOVERNMENT'S MOTION FOR MEASURES TO PROTECT THE IDENTITY OF FOREIGN WITNESSES AND

TO RESTRICT CROSS-EXAMINATION TO NON-CLASSIFIED INFORMATION, at 9 n.3, Dkt. 468, filed

Nov. 9, 2006.[4] The defendants do not dispute that, during the relevant time period, Hamas

engaged in acts of violence and terrorism, nor do the defendants dispute that, from January 25,

1995, onward, Hamas was designated as a terrorist organization by the United States

Government. As acknowledged by the government, the reasons for that designation are

irrelevant. *See id.*

Furthermore, to the extent that evidence of violence or acts of terrorism might have

minimal probative value, any such probity is substantially outweighed by the real risk that

evidence of violence will substantially and unfairly prejudice the defendants given the wholly

non-violent nature of the allegations against them. *See United States v. Grimes*, 244 F.3d 375,

385 (5th Cir. 2001) (prejudicial effect of narrative computer files containing violent descriptions

of young girls being raped substantially outweighed any probative value of files, on issue of

intent in child pornography prosecution, where charged pictures were nonviolent in nature). Such

evidence would serve no purpose other than to inflame the jury. The government has properly

recognized that evidence of violence is not relevant and it must be held to that acknowledgment

as any evidence of acts of terrorism or violence by Hamas or any other terrorist organization in

Israel, the West Bank or Gaza would be highly and unfairly prejudicial to the defendants. *Cf.*

*United States v. Moreno*, 991 F.2d 943, 947 (1st Cir. 1993) (prosecutor's remarks in opening

argument referring to police protecting community plagued by senseless violence, shootings, and

killings were outside bounds of legitimate argument and patently improper as such comments

---

[4] The government wrote, "The defendants imply, in footnote 10, that they will address the Israeli/Palestinian conflict at some point in the future. The government will be filing a motion in limine on this issue as the conflict is irrelevant to the issue of the defendants' support of a designated terrorist organization and would only serve to support an improper jury nullification defense. If the defendants are allowed to present evidence on the conflict or argue the issue to the jury, the door will be open for the

played upon the jury's emotional reaction to neighborhood violence, absent any evidence of violence or murders in trial concerning unlawful possession of firearm and ammunition).

In addition, the admission of evidence related to terrorist acts or other violence by Hamas or any other Palestinian group would open the door to rebuttal evidence showing that Israel is also guilty of committing cruel and atrocious acts of terror against Palestinians. Such evidence would be necessary to give the jury a complete picture of the violent conflict between these two groups. Thus, introduction by the government of irrelevant and prejudicial evidence of violence would not only inflame the jury, it would also needlessly confuse the issues to be decided and would seriously lengthen the trial, thus wasting time. For these reasons, all such evidence should be excluded.

### 2.    Evidence regarding Hezbollah, Al-Qaeda, Palestinian Islamic Jihad, and any other Islamic-based terrorist organizations not specifically named in the indictment.

The Superseding Indictment alleges that the defendants conspired to provide and did provide material support to Hamas through the provision of charitable aid in the West Bank and Gaza. The Indictment contains no allegations with respect to any other terrorist organizations in the West Bank, Gaza or elsewhere. The Court should exclude evidence concerning other organizations, particularly Islamic-based organizations such as Hezbollah, Al-Qaeda, and Palestinian Islamic Jihad. Evidence of the activities of these organizations has no bearing on the charges in this case, and would be unfairly prejudicial to the defendants.

Evidence is relevant only if it tends to prove or disprove a "fact that is of consequence to the determination of the action...." FED. R. EVID. 401. The existence or actions of Hezbollah, Al-Qaeda, and the Palestinian Islamic Jihad have nothing to do with whether the defendants did or

---

government to present evidence on the reasons why Hamas was designated as a terrorist organization, including the bombings which took the lives of American citizens."

did not knowingly or intentionally provide material support to Hamas by providing charitable aid

to needy individuals in the West Bank and Gaza. Thus, such evidence is inadmissible under Rule

402. In counsel's experience, jurors have a difficult time distinguishing between the various

Islamic-based groups frequently discussed in the media. Given the horrific events of September

11, 2001, any evidence or mention of Al-Qaeda would tend to confuse Hamas with that group in

the jurors' minds, and clearly prejudice the defendants unfairly.

Because introduction of any such evidence at trial would cause the defendants substantial

unfair prejudice, confuse the issues, mislead the jury, delay the trial, and waste time, it must be

excluded. FED. R. EVID. 403. The only conceivable purpose of introducing evidence related to

terrorist organizations other than Hamas, or of even mentioning them during trial (particularly

Al-Qaeda) is to play on the jurors' fears following the tragedy of September 11, 2001. *See*

*Moreno*, 991 F.2d at 947. That is impermissible under the rules.

### 3.   All evidence (including audio or videotapes) of conventions, seminars, rallies and teleconferences sponsored by organizations other than the HLF.

The government has produced in discovery a large number of audio and videotapes of

conventions, seminars, rallies and teleconferences sponsored by organizations other than the

HLF, such as the Islamic Association of Palestine (IAP). Some of these videotapes include

performances by defendant Mufid Abdulqader. This Court previously struck from the

Superseding Indictment references to conventions, seminars or rallies sponsored by

organizations other than the HLF on the grounds that such references were prejudicial

surplusage. *See* MEMORANDUM AND ORDER, at 8-9, Dkt. 486, filed Dec. 8, 2006.

As described in the Superseding Indictment, some of the videotapes of non-HLF events

include inflammatory speeches, songs, and skits. *See* Superseding Indictment, at 9. Pursuant to

Rules 401 and 403, this Court should prohibit the government from introducing evidence regarding these events at trial.

The discovery provided thus far also includes video and audiotapes of events that took place before Hamas was designated as a terrorist organization in January 1995. Given that it was not illegal to support Hamas at that time, these videotapes are not relevant. In addition, introduction of evidence of events occurring before the designation of Hamas as a terrorist organization would substantially and unfairly prejudice the defendants.

Finally, to the extent these videotapes reflect speakers' political opinions, the introduction of the videotapes implicates First Amendment concerns that will confuse the issues and may mislead the jury. Admission of statements and other conduct that constitute classic First Amendment activity runs afoul of section 2339B(i), which states that "[n]othing in this section shall be construed or applied so as to abridge the exercise of rights guaranteed under the First Amendment to the Constitution of the United States."  Here, permitting introduction of First Amendment political and religious expression would certainly "abridge the exercise of rights guaranteed under the First Amendment"—essentially using such protected conduct to convict the defendants. Although statements protected by the First Amendment may be admissible at a criminal trial "subject to evidentiary rules dealing with relevancy, reliability, and the like, . . . '[s]uch testimony is to be scrutinized with care to be certain the statements are not expressions of mere lawful and permissible difference of opinion.'" *Wisconsin v. Mitchell*, 508 U.S. 476, 489 (1993), quoting *Haupt v. United States*, 330 U.S. 631, 642 (1947). The admission of constitutionally-protected speech that is irrelevant to a criminal prosecution is an error of constitutional magnitude. *Dawson v. Delaware*, 503 U.S. 159, 165 (1992) (admission of stipulation regarding defendant's membership in a racist prison gang during capital sentencing

proceeding was constitutional error where defendant's membership was not relevant to any of the issues being decided in the proceeding).

Admission of this evidence would also abridge First Amendment rights by exerting a chilling effect on all others who would self-censor rather than risk being prosecuted on the basis of their First Amendment expression. *See Virginia v. Black*, 538 U.S. 343, 365 (2003) (striking down provision of cross-burning statute making the burning of a cross prima facie evidence of an intent to intimidate because "the provision chills constitutionally protected political speech because of the possibility that the Commonwealth will prosecute-and potentially convict-somebody engaging only in lawful political speech at the core of what the First Amendment is designed to protect"). Under those circumstances, section 2339B would be unconstitutional as applied. Thus, any videotapes of events not sponsored by the HLF or occurring before the designation of Hamas must be excluded.

Finally, many of the videotapes produced in discovery cannot be authenticated and are inadmissible under the rules and constitutional provisions prohibiting the admission of hearsay. These concerns are discussed in more detail in Sections III and IV, below.

### 4. Evidence that in 2002 Israel designated certain of the organizations with which HLF worked as terrorist organizations.

After the United States Government ordered the HLF closed on December 4, 2001, Israel designated as terrorist organizations some of the zakat committees with which HLF had worked. Evidence regarding these designations is inadmissible for two reasons. First, because the designations occurred in 2002, after the HLF ceased its work in the West Bank and Gaza, they are wholly irrelevant to the resolution of this prosecution. Second, none of those committees were designated by Israel during the time period alleged in the Superseding Indictment and, even more importantly, *none of them has ever been designated by the United States Government.*

Thus, the introduction of evidence of Israel's actions after HLF ceased its operations would unfairly prejudice the defendants, confuse the issues, and mislead the jury.

### 5. Evidence that the governments of Israel and the United States designated the HLF as a terrorist organization.

In 1997 and 1998, the GOI designated the HLF as a banned organization based on that government's belief that the HLF was linked to Hamas. Similarly, on December 4, 2001, the United States Government designated the HLF as a "Specially Designated Global Terrorist" for the same reason. The fact that these two governments believed that HLF was linked to Hamas is not relevant to the present prosecution. The question of whether the HLF or any of the defendants acted on behalf of Hamas during the time period alleged in the indictment is one for the jury to answer, not the United States or Israeli government.

In addition, the designations were purely administrative, and not subject to adversary contest. Indeed, as the courts subsequently ruled in dismissing HLF's challenges to the designations, that administrative decision was afforded extraordinary deference, and the government was permitted to submit, and the court was permitted to rely upon, *ex parte* evidence that HLF's counsel were permitted neither to see nor rebut. *Holy Land Foundation for Relief and Development v. Ashcroft*, 333 F.3d 156 (D.C. Cir. 2003); *Holy Land Foundation for Relief and Development v. Ashcroft*, 219 F. Supp.2d 57 (D.D.C. 2002). Introducing such determinations made under a standard so dramatically different than that which obtains in a criminal prosecution—the government's burden to prove guilt beyond a reasonable doubt—would not only irreparably prejudice the defendants, but also seriously confuse the jury with respect to the applicable burden of proof in this case.

Consequently, the prosecution should not be permitted to bolster its case by offering these opinions of the HLF as "evidence" in this case. This evidence must be excluded and any

14

reference by government witnesses to the designations of HLF by either government must be prohibited.

**6.** **Evidence of the United States Government's designation of any individual or organization except Hamas as a terrorist, including, but not limited to, Mousa Abu Marzook, Khalid Mishal, and Interpal.**

The Superseding Indictment in this case asserts that the United States Government designated the relatives of certain defendants as terrorists, pursuant to Executive Orders 12947 and 13324. Superseding Indictment, at 5. These designations are wholly irrelevant to the charges in this case. The defendants are not charged with materially supporting any of those relatives, or of violating any Executive Order with respect to them. Mousa Abu Marzook, who the indictment alleges is related to defendants Elashi and El Mezain, was designated in late August 1995. The Indictment does not allege that Marzook played any role in the operation of the HLF following his designation. Khalid Mishal, who is related to defendant Abdulqader, was not designated until nearly two years after the government closed the HLF. As stated in the Superseding Indictment, his only role in this case appears to be as defendant Abdulqader's half-brother. Thus, his designation bears absolutely no relevance to the charges in this case.

In addition, evidence that the government has designated the defendants' family members as terrorists is grossly prejudicial. The only purpose of evidence showing the affiliation of the defendants' family members is to prove the defendants guilty by association. As we discuss in more detail below, the Fifth Circuit, along with its sister circuits, has consistently held this to be impermissible. Thus, evidence of the designation of Marzook and Mishal by the United States Government must be excluded from trial.

Similarly, as discussed in more detail below, discovery in this case includes several hundreds of pages of documents related to foreign charities the government alleges are

connected to Hamas. The United States Government has designated certain of these charities as

terrorist organizations. For example, the government designated The Palestinian Relief and

Development Fund (Interpal), a British charity, on August 23, 2003. For the reasons discussed

above, the government's opinion of Interpal is not evidence and the government must be

precluded from introducing evidence of, or even commenting upon the designation of Interpal or

any other charity organization not named in the Superseding Indictment.

> **7.     Evidence regarding other organizations the governments of the
> United States or Israel allege are linked to Hamas, including
> inter alia, Interpal, WAMY, Al Aqsa Foundation, and the
> Coalition of the Good.**

The discovery provided by the government in this case is replete with evidence regarding

the actions of other organizations our government and the government of Israel allege are linked

to Hamas. For example, the government has produced hundreds of documents seized from zakat

committees, the offices of the PA and elsewhere related to organizations such as Interpal from

England, WAMY from Saudi Arabia, Al Aqsa Foundation from Germany, and the Coalition of

the Good, an umbrella organization for Muslim charities throughout the world. The HLF was

never a member of the Coalition, and none of these organizations are listed in the Superseding

Indictment.

Evidence related to the activities of these other charities is inadmissible unless the

government can establish (1) that these organizations are, in fact, tied to Hamas, (2) the

defendants knew that these organizations were tied to Hamas during the relevant time

period, and (3) these organizations are sufficiently linked to the defendants to make

evidence of those charities' activities relevant to the charges in this case. Otherwise,

evidence of the acts of these other charities has no "tendency to make the existence of

any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." FED. R. EVID. 401.

    To meet its burden of establishing the relevance of the activities of these charities to the charges in this case, the government likely will rely on its numerous purported experts, who will base their opinions on newspaper articles, reports by unidentified Israeli intelligence officials, and unauthenticated documents seized from the zakat committees and the PA during Operation Defensive Shield. These are the same purported experts who will presumably testify that the defendants are linked to Hamas, relying on the same classes of "evidence." The defendants, in turn, will rebut the testimony regarding these organizations with its own experts, as well as with lay testimony by witnesses familiar with the operation of these organizations. Although the defendants can introduce some of its evidence through the same experts they intend to call to rebut similar claims against them, they will also need to call fact witnesses with specific knowledge of these other organizations—witnesses the defense would not otherwise need. Thus, although the Superseding Indictment does not name any of these organizations and the defendants are charged with no crimes linked to them, a significant portion of the trial in this case will be devoted to the presentation of evidence regarding them.

    For these reasons, even if evidence related to these other charities were to have any probative value, the introduction of such evidence would require a mini-trial that would seriously prolong the proceedings. In addition, the introduction of evidence regarding the activities and intent of these other charities would create a significant danger that the jury would confuse their intent with the intent of the defendants on trial in this case. FED. R. EVID. 403. Thus, evidence of the activities of other organizations the

governments of the United States or Israel allege are linked to Hamas, including, *inter alia*, Interpal, WAMY, Al Aqsa Foundation, and the Coalition of the Good, should be excluded. *See United States v. Guardia*, 135 F.3d 1326, 1332 (10th Cir. 1998) (upholding trial court's exclusion of evidence that defendant physician charged with sexual abuse had improperly touched and made suggestive comments to women other than victims of charged sexual abuse, based on determination that introduction of such evidence would substantially extend trial and that potential for confusion of issues substantially outweighed probative value of proffered testimony).

Additionally, much of this evidence—which includes letters, lists of recipients of aid, the cause of death of their fathers and other documents—cannot be authenticated, is hearsay and is excludable on other grounds as well. All of this material is completely irrelevant to the determination of whether HLF and these defendants knowingly or intentionally provided material support to Hamas.

**8.      Evidence of websites that include hyperlinks to the HLF's website.**

The government may seek to introduce evidence that websites it alleges are somehow linked to Hamas contained hyperlinks to the HLF's website. Because the HLF could not control who created links to its website, the fact of such links is simply not relevant to any issue in this case. Anyone who is familiar with the internet understands the ease with which a person can link to a myriad of other websites without the permission of the owners of those websites. For example, numerous websites provide hyperlinks to the FBI's website (www.fbi.gov), yet no one would suggest that the FBI endorsed or approved the use of those links. *See, e.g.,* "FBI says, 'No hard evidence connecting Bin Laden to 9/11,'" located at

http://www.911truth.org/article.php?story=20060611155014535 (last visited Mar. 5, 2007)

(containing link to FBI website); "FBI Men Allege Retaliation for Testimony," located at http://www.freepeltier.org/fbi_retaliation.htm (same). Thus, evidence that other organizations included hyperlinks to HLF's website must be excluded from trial. Because HLF (or anyone else with a web site) cannot control who does or does not create such hyperlinks, such evidence lacks any authentic probative value, yet possesses the capacity for substantial and irremediable prejudice to the defendants.

> **9.     Any evidence of events occurring after December 4, 2001, the date on which the United States Government froze the assets of the HLF, seized its property and ordered it to cease all operations.**

The Court should exclude all evidence of events that occurred after December 4, 2001, the date on which the United States Government seized the HLF's assets and closed its office. Events after December 4, 2001, are not relevant to any issue of consequence to this action. To the extent evidence of such events has some minimal relevance, its probative value is substantially outweighed by the time that would be wasted in the presentation of this evidence as well as the real danger that it would confuse the jury. FED. R. EVID. 403. *See also United States v. White*, 222 F.3d 363, 372 (7th Cir. 2000) (district court properly excluded evidence of means by which FBI located defendant "because its slight probative value is clearly outweighed by the time that would have been wasted on its presentation and its possible confusing effect on the jury"). For these reasons, evidence of events occurring after December 4, 2001 should be excluded from trial.

## II. THIS COURT MUST EXCLUDE EXTRINSIC OFFENSE EVIDENCE THAT IS OFFERED MERELY TO SHOW PROPENSITY AND THE PROBATIVE VALUE OF WHICH IS SUBSTANTIALLY OUTWEIGHED BY THE RISK OF UNFAIR PREJUDICE.

### A.      The Applicable Legal Standard

Rule 404(b) does not permit the use of "other act" evidence "to prove the character of a person in order to show action in conformity therewith." FED. R. EVID. 404(b).[5] Such evidence may only be admitted if it is relevant for another permissible purpose.

The Fifth Circuit has established strict limits on the admission of Rule 404(b) evidence. Before admitting "other act" evidence, these cases require the district court to undertake a two-step process. First, the court must determine "that the extrinsic offense evidence[6] is relevant to an issue other than the defendant's character." *United States v. Beechum*, 582 F.2d 898, 911 (5th Cir. 1978) (en banc). The government bears two burdens with respect to this first step. "[A]s a predicate to a determination that the extrinsic offense is relevant, the government must offer proof demonstrating that the defendant committed the offense." *Id.* at 912-13. If the government fails to meet this burden, the court must exclude the evidence because it is irrelevant. *Id.*

The government also bears the burden of identifying the specific purpose for which it offers the evidence. *United States v. Fortenberry*, 860 F.2d 628, 633 (5th Cir. 1988). This showing is necessary to allow the trial court to apply the proper criteria for determining the relevance of the extrinsic offense for that purpose. *Beechum*, 582 F.2d at 912 n.15. Thus, for

---

[5] The defendants asked the government to notify them of its intent to introduce any 404(b) evidence in a letter dated October 20, 2004. *See* October 20, 2004 Letter from John Boyd to James Jacks. Thus far, the government has not provided any notice that it intends to introduce such evidence. Therefore, this motion is based on what has been disclosed in discovery generally. Defendants reserve the right to file a supplemental motion in response to any government disclosures made after the motions in limine deadline.

[6] The Fifth Circuit uses the term "'offense' to include 'other crimes, wrongs, or acts,' as set forth in FED. R. EVID. 404(b). . . . [The Court's] analysis applies whenever the extrinsic activity reflects adversely on the character of the defendant, regardless whether that activity might give rise to criminal liability." *Beechum*, 582 F.2d at 903.

example, if the government offers the extrinsic offense to show a defendant's intent to commit a

specific offense, the trial court must then determine whether the extrinsic offense requires the

same intent as the charged offense. *Id.* at 913.

Once the trial court has determined that the government has met its burden of

demonstrating that the defendant committed the extrinsic offense and that the extrinsic offense is

relevant to an issue other than the defendant's propensity, the court must turn to the second step

of the Rule 404(b) analysis. That is, the trial court must find that the evidence possesses

"probative value that is not substantially outweighed by its undue prejudice" and meets "the

other requirements of rule 403." *Beechum*, 582 F. 2d at 911.

> Probity in this context is not an absolute; its value must be determined with regard
> to the extent to which the defendant's unlawful intent is established by other
> evidence, stipulation, or inference. It is the incremental probity of the evidence
> that is to be balanced against its potential for undue prejudice. ... Thus, if the
> Government has a strong case on [an] issue, the extrinsic offense may add little
> and consequently will be excluded more readily. ...

*Id.* at 914 (footnote and internal citations omitted).

If an issue is undisputed, "then the incremental probative value of the extrinsic offense is

inconsequential when compared to its prejudice; therefore, in this circumstance the evidence is

uniformly excluded." *Id.*; *see also United States v. Jackson*, 339 F.3d 349, 356-57 (5th Cir. 2003)

(trial court abused its discretion in admitting evidence of prior conviction to show defendant's

intent where defendant's defense was one of mistaken identity, as probative value of evidence

was low and risk of prejudice high).

### B.     Evidence the Court Must Exclude Under FED. R. EVID. 404(b)

In light of the principles discussed above, the Court should exclude each of the categories of evidence set forth below.

### 1.     Evidence or mention of the two trials and the convictions of defendant Ghassan Elashi in *United States v. Elashi*, 3:02-cr-00052 (N.D. Texas).

On February 20, 2002, defendant Ghassan Elashi and certain members of his family were indicted on charges, *inter alia*, of violating export regulations and dealing in the property of a designated terrorist. These charges arose from the operation of the family's computer business, Infocom. In April 2004, the trial court severed the counts related to the alleged export violations from the counts related to the alleged dealing in the property of a designated terrorist.

On July 7, 2004, a jury returned a verdict concerning the export violation counts, which pertained to allegations that the defendants shipped computer products and services to Libya and Syria in violation of a ban on exporting technology, goods or software to those countries. Mr. Elashi was found guilty on some, but not all, counts. On April 13, 2005, a second jury returned a verdict on the remaining counts related to dealing in the property of a designated terrorist. These counts pertained to allegations that Mr. Elashi and others executed a contract with the wife of Hamas member Mousa Abu Marzook with the intent to conceal money that Marzook had invested in Infocom, and dealt in the property of Marzook after he was designated a terrorist by the United States Government. *See United States v. Elashi*, 440 F. Supp.2d 536 (N.D. Tex. 2006). Mr. Elashi was convicted on all counts.

Evidence of or reference to these trials and convictions is inadmissible under the analysis set forth in *Beechum* and its progeny. First, these convictions are irrelevant to any fact at issue in the present prosecution. The operation of Infocom, a for-profit business unrelated to the HLF, is simply not probative of Mr. Elashi's or any other defendant's "motive, opportunity, intent,

preparation, plan, knowledge, identity, or absence of mistake or accident" in the present case. FED. R. EVID. 404(b). Furthermore, the danger of unfair prejudice to Mr. Elashi and to those defendants who were not involved in Infocom substantially outweighs any minimal probative value this evidence may have, and admission of the evidence would confuse the issues in this case and mislead the jury.

### 2. Evidence that certain defendants are related to leaders or members of Hamas.

The Superseding Indictment asserts the family relationships of certain defendants to persons who are members of Hamas. *See* Superseding Indictment at 7-8. In particular, the Indictment asserts that defendants Elashi and El Mezain are related to Mousa Abu Marzook, defendant Abu Baker is related to Jamal Abu Baker, and defendant Abdulqader is related to Khalid Mishal. *Id.* The government has asserted generically that evidence that certain defendants are related to Hamas leaders is relevant to show the defendants' "knowledge and intent." *See* GOVERNMENT'S RESPONSE TO DEFENDANTS' JOINT MOTION TO STRIKE SURPLUSAGE at 4, Dkt. 421, filed Oct. 29, 2006. This assertion is contrary to well-established precedent in this Circuit, which holds that the admission of evidence of alleged wrongdoing by family members is reversible error because such evidence is frequently irrelevant, and almost always highly and unfairly prejudicial.

"Because evidence of 'guilt by association' is typically highly prejudicial, it should be excluded." *United States v. Parada-Talamantes*, 32 F.3d 168, 169-170 (5th Cir. 1994) (evidence that co-defendant bought van used to transport drugs from defendant's brother inadmissible and admission of such evidence constituted reversible error). The Fifth Circuit "has previously established and upheld the rule that a defendant's guilt may not be proven by showing that he is related to an 'unsavory' person." *Id. See also United States v. Forrest*, 620 F.2d 446, 451 (5th

23

Cir. 1980) (wife's guilty knowledge of husband's illegal conduct could not be inferred from relationship); *United States v. Ochoa*, 609 F.2d 198, 204-07 (5th Cir. 1980) (cross-examination of defendant regarding evidence that brother, brother-in-law and friend had been in trouble with the law impermissible); *United States v. Labarbera*, 581 F.2d 107, 109 (5th Cir. 1978) (admission of evidence of son's arrest on a factually similar charge impermissible at father's trial); *United States v. Vigo*, 435 F.2d 1347, 1350-51 (5th Cir. 1970) (impermissible to cross-examine drug defendant regarding her husband's arrest for heroin trafficking). Citing a plethora of case law excluding guilt by association evidence in other circuits, the Fifth Circuit has noted that "[m]any of our sister circuits . . . have concluded that such evidence is irrelevant under Federal Rules of Evidence 401 and 402 or unduly prejudicial under Rule 403." *United States v. Polasek*, 162 F.3d 878, 884 n.2 (5th Cir. 1998).

As noted above, the central allegations in this case are that the defendants provided material support to Hamas through the HLF's provision of humanitarian aid to charitable organizations and needy children and families in the West Bank and Gaza, which entities and persons the government alleges are somehow linked to Hamas. That certain defendants are related to members of Hamas makes it no more or less likely that the defendants committed the crimes with which they are charged. The family members named in the Superseding Indictment did not work for the charitable organizations listed therein, nor did those family members distribute or receive aid from the HLF. If the government has evidence that Marzook, Abu Baker, or Mishal shared information with the defendants in this case that has bearing on the defendants' knowledge or intent, the government is free to introduce it. What the government must be prohibited from doing, however, is asking the jury to infer that the defendants knew or intended something simply because their family members may have known or intended it.

24

The Hamas activists identified as relatives of the defendants are included in the Superseding Indictment solely to suggest that the defendants are guilty because they are related to "unsavory" persons, or share whatever knowledge or intent those family members may have. The Fifth Circuit has clearly and repeatedly prohibited the use of such evidence for this purpose. *See Forrest*, 620 F.2d at 451 ("The government contends the jury could have inferred the guilty knowledge from the fact that Mrs. Forrest was married to the kingpin of a large-scale illegal operation and was an agent of his company. That one is married to, associated with, or in the company of a criminal does not support the inference that that person is a criminal or shares the criminal's guilty knowledge.") (footnotes omitted).

The two predominant political parties in the West Bank and Gaza are Fatah and Hamas. As with the Democrats and Republicans in this country, many families include members of both parties. To attribute to one member of a family the political affiliations or beliefs of a relative is both unjust and unfounded. The government must not be allowed to ask the jury to infer the defendants' guilt based on their family members' affiliations with Hamas, rather than their own conduct, any more than the convictions of the brothers of Presidents—Nixon, Carter, and Clinton, for example—have any bearing on those Presidents' conduct.[7]

---

[7] The defendants recognize that this Court previously refused to strike references to these family relationships from the Superseding Indictment. *See* MEMORANDUM OPINION AND ORDER, at 4, Dkt. 486, filed Dec. 8, 2006. In its Order, this Court concluded that the government is entitled to introduce evidence of these relationships "if those relationships are pertinent to the criminal conduct alleged in the indictment." The defendants are concerned that they did not adequately explain to the Court why *United States v. Williams-Hendrick*, 805 F.2d 496 (5th Cir. 1986), the case cited by the government, and by the Court, does not support this proposition. The admissibility of evidence of a guilty family member as evidence of a defendant's guilt simply was not at issue in *Williams-Hendrick*. The issue in that case was whether the evidence was sufficient to support the jury's finding that the defendant was guilty of conspiracy. *Id.* at 502-03. The defendant in that case claimed that the only evidence showing he was involved in a conspiracy to import marijuana was the fact that he was the father of an alleged co-conspirator and was present in a truck in which marijuana was found. *Id.* at 503. By contrast, what the government seeks to do in this case is to hold the defendants responsible for the guilty knowledge and intent of their relatives. The Fifth Circuit has consistently overturned convictions in which such evidence has been introduced.

**III.    THIS COURT MUST EXCLUDE ALL EVIDENCE THE GOVERNMENT CANNOT PROPERLY AUTHENTICATE OR WHICH VIOLATES THE "BEST EVIDENCE" OR "ORIGINAL DOCUMENT" RULE.**

**A.    The Applicable Legal Standards**

The authentication rules come into play when determining whether a sufficient evidentiary foundation has been laid. "The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." FED. R. EVID. 901(a). Under Rule 901(a), the trial judge evaluates the sufficiency of the evidence by applying FED. R. EVID. 104. In other words, the trial judge determines whether a reasonable juror could conclude by a preponderance of the evidence that the item is authentic. *See United States v. Pluta,* 176 F.3d 43, 49 (2d Cir. 1999) (authentication prerequisite, requiring proponent to submit evidence sufficient to support finding that matter in question is what its proponent claims, is satisfied if sufficient proof has been introduced so that a reasonable juror could find in favor of authenticity or identification); *United States v. Shaw*, 920 F.2d 1225 (5th Cir. 1991). Whether a sufficient foundation has been laid is a question for the trial judge in his discretion to resolve. *United States v. White*, 444 F.2d 1274, 1280 (5th Cir. 1971).

Authenticity is actually a subset of relevancy because if the exhibit is not what the proponent claims it is, it is probably not relevant to the case. *See, e.g., Bruther v. General Elec. Co.,* 818 F. Supp. 1238, 1240 (S.D. Ind. 1993) (rationale behind this rule is that absent showing that evidence is what proponent alleges, it has no relevance).

To assist the trial court in determining whether a document has been properly authenticated, Rule 901 sets out the general standard for authentication in subsection (a) and then includes in subsection (b) an illustrative list of examples of types of authentication or

identification that conform to this rule. This list is not exclusive, but merely provides guidance to counsel and a reviewing court when considering the most common authenticity issues. None of the illustrative examples apply in this case; therefore, counsel can only surmise how the government intends to attempt to authenticate the documents and other evidence seized during Operation Defensive Shield in Israel, as well as those seized by the United States Government in this country.

**B.      Evidence the Court Must Exclude Under FED. R. EVID. 901, 1001, and 1002**

In light of the principles discussed above, the Court should exclude each of the categories of evidence set forth below.

**1.      Evidence seized by the Government of Israel (GOI) from zakat committees and from the Palestinian National Authority (PA) in 2002.**

**a.      Evidence the government cannot authenticate.**

The government may argue that the documents seized from the zakat committees and the PA offices are authentic pursuant to Rule 901(b)(3), "Comparison by trier or expert witness. Comparison by the trier of fact or by expert witnesses with specimens which have been authenticated." Unless the government actually produces genuine originals, the Court has no way of knowing whether these are true copies of the originals, or have been tampered with and therefore lack integrity.

It appears that many of the documents the IDF seized from the zakat committees and from the PA offices were generated by computers. If so, the government must identify which documents were so generated. *See* Rule 901(b)(9) "Evidence describing a process or system used to produce a result and showing that the process or system produces an accurate result." For example, many of the documents are letters that purport to be between the various zakat

committees and organizations in other countries. There are also many lists of orphans and families who received aid, including detailed information about the families. The documents include medical and school records that were incorporated onto forms or into lists to determine which families needed aid. Some are incomplete and some are undated. None have any information regarding who actually compiled the information or any certification of the accuracy of the underlying information.

Rule 901(b)(9) requires the government to show that any documents generated by a computer system are authentic. To do so, it must produce evidence sufficient to establish that the computer and the software program were working properly and accurate data was entered into the computer. *See, e.g., United States v. Abreu,* 952 F.2d 1458, 1467 (1st Cir. 1992) (if offered evidence is of type that is susceptible to alteration, testimonial tracing of chain of custody is necessary to render it improbable that original item has been tampered with or contaminated).

Since the IDF agent who will be testifying can only explain what he and his agency have done since they have had custody of the documents, he will not be in a position to assure this Court that the information contained in the documents is authentic. He cannot assure this Court that whoever entered the information did it correctly or lacked motivation to alter information, or that the computer files were not subsequently altered by someone else. Indeed, there is not any way to determine who had access to these files, and for what purpose, before their seizure by the IDF.

Some of the GOI documents appear to be facsimiles. To authenticate those, the government may rely on FED. R. EVID. 901(b)(4), which provides for authentication based on "[a]ppearance, contents, substance, internal patterns, or other distinctive characteristics, taken in conjunction with circumstances." Unless the documents clearly show the fax identification lines

on each page and sufficient evidence exists to show that they have not been tampered with, they should not be admissible. *See In re Buzzelli,* 246 B.R. 75, 90 n.2 (Bankr. W.D. Pa. 2000) (document sufficiently authenticated, in part, because of fax machine marking on each page).

The video tapes allegedly seized from the zakat committees or the PA also raise serious authentication issues. Their provenance is completely unknown. It is doubtful the government can state who made them, when, why, with what equipment or whether they have been spliced from different tapes. The usual way to authenticate a video tape would be through the "[t]estimony of witness with knowledge. Testimony that a matter is what it is claimed to be." FED. R. EVID. 901(b)(1). But here the IDF witness the government intends to call as an authenticating witness has no personal knowledge that the video tapes accurately portray what they depict. The same is true of the GOI photographs the government may seek to admit. The IDF witness cannot testify that the photographs seized from the various locations accurately show what they purport to show or that the photographs were not doctored in some way through a computer or otherwise. *See, e.g., American Wrecking Corp. v. Secretary of Labor,* 351 F.3d 1254, 1262 (D.C. Cir. 2003) (under Rule 901(b)(1), a photograph may be authenticated if a witness with knowledge testifies that it accurately depicts what it purports to show). These same concerns apply to the videotapes seized during searches here in the United States.

Because tape recordings are likely to have a strong effect on the jury and are susceptible of alteration, the Fifth Circuit requires strict compliance with authenticity requirements before an audio recording may be admitted into evidence. *See United States v. Biggins,* 551 F.2d 64, 66-67 (5th Cir. 1977).

> The court properly admits a sound recording into evidence only when the party introducing it carries its burden of going forward with foundation evidence demonstrating that the recording as played is an accurate reproduction of relevant sounds previously audited by a witness. As a general rule, at least in the context

of a criminal trial, this requires the prosecution to go forward with respect to the competency of the operator, the fidelity of the recording equipment, the absence of material deletions, additions, or alterations in the relevant portions of the recording, and the identification of the relevant speakers.

*Id.* at 66.

"Strict compliance with the government's particularized burden is the preferred method of proceeding." *Id.* at 67. However, "the district court may admit the recording in the absence of these requirements if, upon independent examination, the district court is convinced that 'the recording accurately reproduces the auditory experience.'" *United States v. Buchanan*, 70 F.3d 818, 827 (5th Cir. 1995) (citation omitted).

In *Penguin Books U.S.A., Inc. v. New Christian Church of Full Endeavor,* 262 F. Supp.2d 251, 264 (S.D.N.Y. 2003), the court excluded tape recordings because—as is equally true here— the proponent of the evidence did not know whether the tapes had been, or could have been edited or altered, had no knowledge as to the identity of the speakers other than the labels and could not testify as to the integrity of the tapes.

Although authentication is not normally a large hurdle for the government, it should be here where the provenance of the documents, tapes, and other evidence is completely unknown. The authors of most of the GOI documents are unknown, the locations where the documents have been are unknown, the process by which the documents were made or maintained is unknown. Furthermore, as the advisory note to Rule 901(b) makes clear: "It should be observed that compliance with requirements of authentication or identification by no means assures admission of an item into evidence, as other bars, hearsay for example, may remain."

### b.     Evidence that violates the "Best Evidence" or "Original Documents" Rule.

The modern rule that addresses a concept similar to what was previously known as "the best evidence rule" is the "original document rule." That rule requires that "[t]o prove the content of a writing, recording or photograph, the original writing, recording, or photograph is required, except as otherwise provided in these rules or by Act of Congress." FED. R. EVID. 1002. Therefore, secondary evidence may be introduced only when the non-production of the writing, recording, or photograph has been explained and excused.

The first step in deciding whether the original document rule applies is to determine whether the contents of a writing, recording, or photograph are in issue in the case. Placing such contents in issue as the government intends to do here, triggers the original document rule. The Fifth Circuit has held that the application of this rule is fact-intensive and requires flexibility. *Railroad Management Co., L.L.C., v .CFS La. Midstream Co.,* 428 F.3d 214, 218 (5th Cir. 2005). In that case, the court found that:

> the following factors are appropriately considered when distinguishing between whether it is the content of the document or merely its existence that a witness intends to testify concerning:
> (a) the relative importance of content in the case, (b) the simplicity or complexity of content and consequent risk of error in admitting a testimonial account, (c) the strength of the proffered evidence of content, taking into account corroborative witnesses or evidence and the presence or absence of bias or self-interest on the part of the witnesses, (d) the breadth of the margin for error within which mistake in a testimonial account would not undermine the point to be proved, (e) the presence or absence of an actual dispute as to content, (f) the ease or difficulty of producing the writing, and (g) the reasons why the proponent of other proof of its content does not have or offer the writing itself.

*Id.* at 218-19, citing 5 Christopher B. Mueller & Laird C. Kirkpatrick, Federal Evidence § 570 (2d ed. 1994). This Court should apply these factors to any documents, recordings, or photographs the government seeks to introduce as substantive evidence in the instant case.

Since none of the documents in the GOI binders are original documents, the Court must also look at FED. R. EVID. 1001(3), which defines an "original" of a writing or recording as the writing or recording itself or any counterpart intended to have the same effect by a person executing or issuing it. An "original" of a photograph includes the negative or any print made from the negative. If data are stored in a computer or similar device, any printout or other output readable by sight, shown to reflect the data accurately, is an "original." *Id.*

Here, because many of the documents in the GOI binders appear to be computer printouts, the proponent of any such document must show that the data stored on the computer, from which the printout is made, is accurate. Absent such a foundation, the printout will *not* be treated as an original. *See* Notes of Advisory Committee on FED. R. EVID. 1001(4) ("The definition describes 'copies' produced by methods possessing an accuracy which virtually eliminates the possibility of error. Copies thus produced are given the status of originals. . . . Copies subsequently produced manually, whether handwritten or typed, are not within the definition.").

Without someone to vouch for the authenticity of the documents, recordings, and other evidence seized by the GOI and the United States Government during various searches, they should not be admissible. *See, e.g., United States v. Smith*, 893 F.2d 1573, 1578 (9th Cir. 1990) (in prosecution for narcotics offenses, copy of calendar/ledger was admissible under best evidence rule because nine witnesses supported authenticity of calendar/ledger, testifying that it was written by drug dealer and recorded his transactions).

### c.     Due Process concerns.

Finally, constitutional concerns are also present here. The Due Process Clause of the Fifth Amendment requires evidence to have some level of reliability. *See Manson v. Braithwaite,*

432 U.S. 98, 106 (1977) (Due Process Clause forbids testimony that lacks "sufficient aspects of reliability" to be evaluated by the jury); *California v. Green,* 399 U.S. 149, 163 n.15 (1970) ("considerations of due process, wholly apart from the Confrontation Clause, might prevent convictions where a reliable evidentiary basis is totally lacking").

> **2.     Document entitled "Foundation's Policies & Guidelines," seized by the United States Government during a September 2001 search of Infocom.**

On April 28, 2005, the government sent to defense counsel a translation of a document entitled, "Foundation's Policies & Guidelines," which was seized during the search of Infocom in September 2001. The document was seized from an area in which HLF files were allegedly stored. However, the document does not contain any reference to the HLF or any of the other defendants. Because the provenance of the document is unknown and it cannot be authenticated as required by the rules discussed above, it is not sufficiently connected to HLF (if at all), and must be excluded.

The government also disclosed in discovery a report by Daniel Olson of the FBI Cryptanalysis and Racketeering Records Unit, which compares the "Policies & Guidelines" with a purported Al-Qaeda training manual found in an apartment in Manchester, England. Defendants are at loss as to the relevance of this comparison to the issues in the present case. Even assuming the comparison had marginal relevance, the unfair prejudice to the defendants is both grave and apparent. As noted above, any effort to affiliate the defendants with Al-Qaeda would serve no purpose other than to inflame the jury against the defendants. *See Moreno*, 991 F.2d at 947 (prosecutor's remarks in opening argument referring to police protecting community plagued by senseless violence, shootings, and killings were outside bounds of legitimate argument and patently improper as such comments played upon the jury's emotional reaction to

33

neighborhood violence, absent any evidence of violence or murders in trial concerning unlawful possession of firearm and ammunition). Thus, the comparison must be excluded under FED. R. EVID. 402 and 403.

**IV.   THIS COURT MUST EXCLUDE STATEMENTS OFFERED IN VIOLATION OF THE PROHIBITION AGAINST HEARSAY AND THE DEFENDANTS' CONFRONTATION RIGHTS.**

### A.   The Applicable Legal Standards

#### 1.   Introduction

Hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." FED. R. EVID. 801(c). The general rule is that hearsay evidence is not admissible. FED. R. EVID. 802 ("Hearsay is not admissible except as provided by these rules or by other rules prescribed by the Supreme Court pursuant to statutory authority or by Act of Congress."). *See, e.g., Moore v. United States,* 429 U.S. 20, 21-22 (1976) (informant's hearsay statement was inadmissible as evidence in a nonjury trial because it deprived defendant of the opportunity to cross-examine the informant as to his credibility and the accuracy of his recollection); *United States v. Linwood,* 142 F.3d 418, 426 (7th Cir. 1998) (court excludes extrajudicial statements as hearsay for several reasons; declarant is not under oath when statement is made; declarant is not present at trial and his absence deprives the trier-of-fact of the opportunity to assess the declarant's demeanor and credibility; declarant is not subject to cross-examination).

There are, of course, exceptions to the prohibition against the introduction of hearsay evidence. *See* FED. R. EVID. 801(d), 803, and 804. Not knowing which documents the government intends to introduce, however, counsel cannot determine which hearsay exceptions the government may choose to rely upon at trial. Thus, with the exception of translations and co-

conspirator statements, which are addressed below and in defendants' motion for a *James*

hearing, filed contemporaneously herewith, the defense will write with more specificity after the

government discloses its proposed exhibits for trial.

## 2.    The Problem of Translations

In this case, the problems implicit in documents containing hearsay statements are

exacerbated by the fact that many of the documents produced in discovery were originally in

Arabic. A separate hearsay issue arises here because the witness will be testifying about out-of-

court statements that were originally written in Arabic, then translated by someone else into

Hebrew, and translated again by yet another person from Hebrew into English. Essentially, the

witness will be testifying only about the translation—not the actual statement—thus his

testimony will be hearsay—and often *multi*-level hearsay, since the translation often will be

several steps removed from the initial statements, e.g., made by a detainee in Arabic, written

down by an interrogator, translated into Hebrew by another person, and then translated into

English by yet another person. Even if the original statement might be admissible under a

hearsay exception, if the person who did the interpreting is the "declarant" of the statement,

rather than merely a conduit for the actual declarant, the hearsay problems will likely be

insurmountable.

In determining whether to treat a translator as a mere language conduit, the Fifth Circuit

considers the following factors: (1) which party supplied the interpreter; (2) whether the

interpreter had any motive to mislead or distort; (3) the interpreter's qualifications and language

skill; and (4) whether actions taken subsequent to the conversation were consistent with the

statements as translated. *United States v. Martinez-Gaytan*, 213 F.3d 890, 892 (5th Cir. 2000).

Virtually all the documents seized from the zakat committees, the PA offices and other entities

were originally in Arabic. The government provided some documents in the original Arabic so

defense counsel has been able to translate them and will be able to compare our translations with

those of the government.[8]  Many others, however, were provided only in Hebrew and not in the

original Arabic. For those, the factors in *Martinez-Gaytan* militate against admission. They were

translated by someone working for the Israeli government—an entity that is cooperating with the

prosecution in this case. That interpreter may have had a motive to "mislead or distort" because

the defendants believe the documents were translated by employees of the Israeli Defense

Forces. The actual interpreter is unknown so his or her qualifications cannot be tested. Also, the

translation from Hebrew into English introduces, in essence, an additional level of hearsay.

Finally, it is not possible to know whether "actions taken subsequent to the conversation

were consistent with the statements as translated." *Id.* Given the documented history of grossly

inaccurate translations in this case, this Court must bar the introduction of any translation for

which the government has not provided the defense with the original document.

### 3.    The Applicable Constitutional Provisions

The Sixth Amendment Confrontation Clause provides that, "In all criminal cases, the

accused shall enjoy the right ... to be confronted with the witnesses against him." U.S. Const,

amend. VI. Therefore, whenever an out-of-court statement is offered for the truth, in addition to

possible hearsay issues, a defendant's Sixth Amendment right to confrontation may also be

implicated.

*Crawford v. Washington,* 541 U.S. 36 (2004), radically changed Confrontation Clause

analysis. Before *Crawford*, the Supreme Court had set out a framework that relied on the nature

of the hearsay exception under which an out-of-court hearsay statement could be admitted.

---

[8] The interpretation of a translation involving a foreign language is a jury question. *See United States v. Cruz,* 765 F.2d 1020, 1023 n.4 (11th Cir. 1985).

36

Previously, in *Ohio v. Roberts,* 448 U.S. 56 (1980), the Court had held that an unavailable

witness's out-of-court statement could be admitted so long as it had adequate indicia of

reliability—*i.e.*, it fell within a "firmly rooted hearsay exception" or bore "particularized

guarantees of trustworthiness." *Id.* at 66. The Court rejected this approach in *Crawford* in those

situations in which "testimonial evidence" was at issue. To that extent the Court overruled

*Roberts.* Specifically, the Court held "[w]here testimonial evidence is at issue, . . . the Sixth

Amendment demands what the common law required: unavailability and a prior opportunity for

cross-examination." *Crawford,* 541 U.S. at 68.

Two years later, in *Davis v. Washington,* ___ U.S. ___, 126 S. Ct. 2266 (2006), the Court

clarified that the Confrontation Clause applied only to testimonial evidence. *Id.* at 2274. As

Justice Scalia explained: "It is the testimonial character of the statement that separates it from

other hearsay that, while subject to traditional limitations upon hearsay evidence, is not subject to

the Confrontation Clause." *Id.* at 2273. Thus, after *Davis*, nontestimonial hearsay statements are

subject only to the hearsay rules and do not trigger any Sixth Amendment right to confrontation.

Where the out-of-court statement is testimonial, however, it cannot be admitted unless the

witness is unavailable[9] **and** the accused has had a chance to cross-examine the declarant—

---

[9] FED. R. EVID. 804(a) defines "unavailability as a witness" to include situations in which the declarant:

   (1) is exempted by ruling of the court on the ground of privilege from testifying concerning the subject matter of the declarant's statement; or
   (2) persists in refusing to testify concerning the subject matter of the declarant's statement despite an order of the court to do so; or
   (3) testifies to a lack of memory of the subject matter of the declarant's statement; or
   (4) is unable to be present or to testify at the hearing because of death or then existing physical or mental illness or infirmity; or
   (5) is absent from the hearing and the proponent of a statement has been unable to procure the declarant's attendance (or in the case of a hearsay exception under subdivision (b)(2), (3), or (4), the declarant's attendance or testimony) by process or other reasonable means.

regardless of how reliable a court may find the statement. "Where testimonial statements are at issue, the only indicium of reliability sufficient to satisfy constitutional demands is the one the Constitution actually prescribes: confrontation." *Crawford,* 541 U.S. at 68-69. *See also United States v. Cromer,* 389 F.3d 662, 679 (6th Cir. 2004) ("If there is one theme that emerges from *Crawford,* it is that the Confrontation Clause confers a powerful and fundamental right that is no longer subsumed by the evidentiary rules governing the admission of hearsay statements.").

Although the Court in *Crawford* did not precisely define what it meant by "testimonial" statements, Justice Scalia, writing for the majority, did suggest some potential definitions which can guide the Court here. "Whatever else the term covers, it applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations. These are the modern practices with closest kinship to the abuses at which the Confrontation Clause was directed." *Crawford,* 541 U.S. at 68. *See, e.g., United States v. Manfre,* 368 F.3d 832, 838 n. 2 (8th Cir. 2004) (formal statements to government officers, affidavits, depositions, prior testimony, confessions, and other "memorialized, judicial process-created evidence" are testimonial). As that applies to the instant case, it means that, at the very least, the government cannot introduce as substantive evidence any of the police interrogations or the testimony from the Israeli trials. "*Involvement of government officers in the production of testimony with an eye toward trial* presents a unique potential for prosecutorial abuse." *Crawford,* 541 U.S. at 55 n.7 (emphasis added).

---

A declarant is not unavailable as a witness if exemption, refusal, claim of lack of memory, inability, or absence is due to the procurement or wrongdoing of the proponent of a statement for the purpose of preventing the witness from attending or testifying.

**B.** **Statements the Court Must Exclude Under FED. R. EVID. 802 and the Sixth Amendment Confrontation Clause.**

In light of the principles discussed above, the Court should exclude each of the categories of evidence set forth below.

**1.** **Statements made by alleged co-conspirators before the designation of Hamas as a terrorist organization on January 25, 1995, and, with respect to the charges under section 2339B, before the designation of Hamas on October 8, 1997, and all statements made after the closure of the HLF on December 4, 2001.**

We anticipate that the government will attempt to introduce many statements and documents as co-conspirator statements. For example, the GOI documents include many copies of newspaper articles that contain statements that the articles claim are those of Khalid Mishal or Mousa Abu Marzook, both of whom the defense expects the government to allege are co-conspirators. The GOI documents also include police interrogations of other people the government is expected to claim are co-conspirators (including Mohamed Anati), as well as letters to and from various other organizations—both zakat committees and European and Gulf State organizations—that the government is expected to allege are co-conspirators. None of these documents are admissible, however, because the statements contained therein are not co-conspirator's statements within the meaning of the Rules of Evidence.

FED. R. EVID. 801(d)(2) provides that

A statement is not hearsay if … [t]he statement is offered against a party and is … (E) a statement by a co-conspirator of a party *during the course and in furtherance of the conspiracy*. The contents of the statement shall be considered but are not alone sufficient to establish … the existence of the conspiracy and the participation therein of the declarant and the party against whom the statement is offered under subdivision (E).

(Emphasis added).

Under the rule, a trial court may admit an alleged co-conspirator statement only after finding by a preponderance of the evidence that:

(1) a conspiracy existed;

(2) the declarant and the person against whom the declaration is offered were members of this conspiracy; and

(3) the statement was made during the course of; and

(4) in furtherance of this conspiracy.

*Bourjaily v. United States,* 483 U.S. 171, 175-76 (1987). Under FED. R. EVID. 801(d)(2), "[t]he contents of the statement shall be considered but are not alone sufficient to establish … the existence of the conspiracy and the participation therein of the declarant and the party against whom the statement is offered under subdivision (E)." Thus, the trial court may consider—but may not rely solely on—the declarant's hearsay statement to determine the existence or membership of a conspiracy.

Contemporaneously with this motion, the defendants are filing a request for a *James* hearing to enable this Court to determine the admissibility of out-of-court statements by alleged co-conspirators. However, three classes of alleged co-conspirator statements can be excluded now, without the need for such a hearing: (1) those made by alleged co-conspirators before January 23, 1995, the date on which the government first designated Hamas a terrorist organization; (2) those made with respect to section 2339B before the Secretary of State designated Hamas on October 8, 1997; and (3) those made after December 4, 2001, the date on which the government closed the HLF, seized its property, and blocked its assets.

Before a court may admit an out-of-court declaration as the statement of a co-conspirator, the government must show that the proposed statement was made "during the course" of the

conspiracy. FED. R. EVID. 801(d)(2)(E); *see also Bourjaily,* 483 U.S. at 175. The duration of the conspiracy is limited to the time period necessary for the accomplishment of its main purpose. *Grunewald v. United States,* 353 U.S. 391, 401-02 (1957); *Krulewitch v. United States,* 336 U.S. 440, 442-43 (1949).

A statement made before the formation of a conspiracy is obviously not made in the course of the conspiracy. *See United States v. Murphy,* 193 F.3d 1, 7 (1st Cir. 1999) (although statements made after conspiracy formed, but before defendant joined, are admissible against the defendant, statements made before the formation of the conspiracy are not admissible under the co-conspirator exception); *United States v. Coe,* 718 F.2d 830, 840 (7th Cir. 1983) ("Statements by coconspirators made either before the formation of a conspiracy or after its termination are not admissible under the coconspirator hearsay exception.").

Hamas was first designated a terrorist organization on January 25, 1995. Before that date, it was not illegal to provide material or other support to that organization. *See* Executive Order 12947 (Jan. 25, 1995). Thus, the government has alleged that the defendants engaged in a conspiracy to provide material support to Hamas from January 25, 1995, through December 4, 2001. Superseding Indictment, at 27-28. No conspiracy was possible before Hamas's designation. As a result, any statements made by alleged co-conspirators in this case before January 25, 1995, are not admissible against these defendants. *See United States v. Morris,* 623 F.2d 145, 148 (10th Cir. 1980) ("assertive conduct or declarations made by one conspirator 'either before the formation or after the termination of the conspiracy are not admissible against a co-conspirator") (citation omitted).

With respect to the charges arising under 18 U.S.C. § 2339B, the same is true for any statements made before the Secretary of State designated Hamas as a Foreign Terrorist

Organization on October 8, 1997. Since material support of Hamas did not violate that statute until after Hamas had been designated, no conspiracy to violate it could exist before then.

Likewise, statements made after the completion of the conspiracy are not made during the course of the conspiracy and, therefore, are not admissible under 801(d)(2)(E). *See, e.g., United States v. Alonzo,* 991 F.2d 1422, 1425-26 (8th Cir. 1993) (convictions reversed because a co-conspirator's statement made while he was cooperating with the police after his arrest had been improperly admitted against the defendants).

In this case, all of HLF's work ceased on December 4, 2001—the day the government froze its assets, seized all of its documents and property and ordered its doors locked. Therefore, even assuming that a conspiracy ever existed, the many, many documents found in the GOI documents and other discovery that are dated after that time are not within any conspiracy and cannot be admitted pursuant to this rule.[10] *See United States v. Barnes,* 586 F.2d 1052, 1059 (5th Cir. 1978) (statement made by coconspirator after cocaine had been confiscated, coconspirators had been arrested, and conspiracy had ended was inadmissible as a matter of law under coconspirator rule).

### 2. Evidence related to the criminal proceedings against various Palestinians by the Government of Israel.

Included among the documents produced by the GOI for use in this prosecution are documents related to criminal prosecutions in Israel. If the government intends to introduce any of these documents, it must show their relevance and what hearsay exception would permit their admission. Regardless of these considerations, the Confrontation Clause prohibits the admission of any testimony given in an Israeli court proceeding. *See Crawford,* 541 U.S. at 68 (the term "testimonial," for purposes of Confrontation Clause analysis, "applies at a minimum to prior

testimony at a preliminary hearing, before a grand jury, or at a former trial"; thus, such evidence

is inadmissible unless the declarant is unavailable and the defendant had a prior opportunity to

cross-examine him).

### 3.    Statements or confessions made during interrogations of Palestinians by Israeli authorities.

Because statements made after the completion of the conspiracy are not made during the

course or in furtherance of the conspiracy and, therefore, are not admissible under rule

801(d)(2)(E), the police interrogations in the GOI documents will not be admissible as co-

conspirator statements. Post-arrest statements made by a co-conspirator describing the

conspiracy to the police generally are not made in furtherance of a conspiracy. An arrest operates

as a withdrawal by that co-conspirator as a matter of law. *See Fiswick v. United States,* 329 U.S.

211, 217 (1946) (confession or admission by a co-conspirator after apprehension not in any sense

in furtherance of the conspiracy); *see also United States v. Lombard,* 72 F.3d 170, 189 n.25 (1st

Cir. 1995) (co-conspirator exception could not have applied to the former testimony, because the

conspiracy had been terminated at least by the date the co-conspirators were arrested); *United

States v. Alonzo,* 991 F.2d 1422, 1425-26 (8th Cir. 1993) (confession or admission by an alleged

co-conspirator after his arrest cannot be characterized as an attempt to further the conspiracy);

*United States v. Rodriguez Alvarado,* 985 F.2d 15, 18-19 (1st Cir. 1993) (statements by a co-

conspirator to the police after his arrest are inadmissible because the statements were not made

during or in furtherance of a conspiracy); *United States v. Ascarrunz,* 838 F.2d 759, 762 (5th Cir.

1988) (arrest operates as withdrawal and statements of arrested co-conspirator cannot be used

against other co-conspirators); *United States v. Taylor,* 802 F.2d 1108, 1117 (9th Cir. 1986)

---

[10] Any document generated after December 4, 2001, is likely irrelevant and not admissible for any other purpose.

(statements made by a co-conspirator after his arrest cannot be used against his fellow co-conspirators).

Because these statements do not fall within the scope of Rule 801(d)(2), they are inadmissible hearsay. In addition, the admission of such statements would violate the defendants' constitutional right to confront the witnesses against them. Indeed, in *Crawford*, the statements at issue, and which were held inadmissible by the Court, were made in response to a police interview of the complainant at the scene of the offense. *Id.* at 38. Custodial statements of the type at issue here are even more "testimonial," and therefore cannot be admitted in evidence.

**4.     Newspaper articles.**

The materials the government produced in discovery, including the GOI documents, include a vast number of newspaper articles that purport to contain quotations from alleged co-conspirators. These articles suffer from fatal double hearsay infirmities unless the government is planning to call as witnesses the actual writers of the articles. Thus, they are inadmissible. *See Jim Sowell Const. Co., Inc. v. City of Coppell,* 61 F.Supp.2d 542, 550 (N.D. Tex. 1999) (finding purported quotes in newspapers of mayor and zoning commission member relating to public housing were inadmissible hearsay and were quoted out of context). *See also Barnes Foundation v. Township of Lower Merion,* 982 F. Supp. 970, 995-96 (E.D. Pa. 1997) ("As an initial matter, this evidence presents an obvious hearsay problem. As evidence that Manko made this statement, the Barnes offers only a copy of the newspaper article itself and the affidavit of Robert Elliott. The newspaper article is an out-of-court statement made by the reporter, Karen Abbott, offered to prove the truth of the matter asserted-that Manko actually said what was quoted above. *See* Fed. R. Evid. 801(c). Because this evidence does not fall within any of the exceptions to the

hearsay rule, the Barnes would not be able to offer the newspaper article as evidence at trial, *see* FED. R. EVID. 802, . . .").

## **CONCLUSION**

For the foregoing reasons, the Court should enter an order barring the government from introducing evidence in the categories set forth above.

Respectfully submitted,

/s/ Nancy Hollander
NANCY HOLLANDER
New Mexico Bar Card No. 1185
Email: nh@fbdlaw.com
JOHN W. BOYD
New Mexico Bar Card No. 286
Email:  jwb@fbdlaw.com
THERESA M. DUNCAN
New Mexico Bar Card No. 12444
Email: tmd@fbdlaw.com
FREEDMAN BOYD DANIELS
HOLLANDER GOLDBERG & IVES P.A.
20 First Plaza, Suite 700
Albuquerque, New Mexico 87102
Office: 505.842.9960
Fax: 505.842.0697
ATTORNEYS FOR DEFENDANTS
HLF (01) & SHUKRI ABU BAKER (02)

MARLO P. CADEDDU
Texas Bar Card No. 24028839
LAW OFFICE OF MARLO P. CADEDDU, P.C.
3232 McKinney Avenue, Suite 700
Dallas, TX 75204
Office: 214.220.9000
Fax: 214.744.3015
Email: cadeddulaw@sbcglobal.net
ATTORNEY FOR DEFENDANT
MUFID ABDULQADER (07)

JOSHUA L. DRATEL
New York Bar Card No. 1795954
Law Office Of Joshua L. Dratel
2 Wall St

3rd Floor
New York, NY 10005
Office: 212.732.0707
Email: jdratel@joshuadratel.com
ATTORNEY FOR DEFENDANT
MOHAMMAD EL-MEZAIN (03)

LINDA MORENO
Florida Bar 0112283
LINDA MORENO, P.A.
P.O. Box 10985
Tampa, FL 33679
Office: 813.247.4500
Email: linbianca@aol.com
ATTORNEY FOR DEFENDANT
GHASSAN ELASHI (4)

GREG WESTFALL
Texas Bar Card No. 00788646
WESTFALL, PLATT & CUTRER
101 Summit Avenue, #910
Fort Worth, TX 76102
Office: 817.877.1700
Fax: 817.877.1710
ATTORNEY FOR DEFENDANT
ABDULRAHMAN ODEH (08)

## CERTIFICATE OF CONFERENCE

I certify that I discussed the instant motion with Mr. James Jacks, Assistant United States Attorney and he is opposed to this motion.

/s/ Nancy Hollander
NANCY HOLLANDER

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the above Joint Defendants' Motion in Limine to Exclude Evidence at Trial was served electronically upon Mr. James Jacks, on this 14th day of March, 2007.

/s/ Nancy Hollander
NANCY HOLLANDER

## INDEX OF DISCLOSED DISCOVERY ITEMS RECEIVED FROM THE
## GOVERNMENT OF ISRAEL

Binder No. and Description                                      Bates No.

**Binder 1:**    Legal documents related to                    20-354
State of Israel v. Ra'aed Salach and
the Islamic Rescue Committee, et al.,
Criminal Case 272/03, District Court
of Haifa, including the indictment,
decisions, and pleadings, including some
attachments and English translations

**Binder 3:** Attachments to the expert opinion                759-815;
of Brigadier General Yoseph Cooperwasser,                      835-1059;
submitted in Criminal case 272/03, District                   1007-1238
Court of Haifa, including documents seized
from Al-Islah Charitable Society in Ramallah
and other committees. The documents show the
external funding network of Hamas, including
Interpal, CBSP, WAMY, Al Aqsa Foundation, and
IIRO, and include numerous news reports and
open source material.

**Binder 4:** Open source material, including                  1239-1510
interviews in Dar Al Hayat with Khalid
Mashal, and an overview of interaction
between the PA and Hamas during 1994-1999.
The overview includes summaries of interviews
with Hamas leadership, press releases, Arab
and Western newspaper articles, radio broadcasts,
downloads from the Hamas website, and other
similar sources.

**Binder 5:** Police statements of Hamas                       1511-1609;
activists, including Amir Z'air, Aiman                         1623-1660
Maslemani, Walid 'Abda, Salah Masri, Yihya
Sanuar, Mahmad Shartaha, Karim Ait, Nafal



EXHIBIT

A

Abdel Haki, Muhamed El-'Addi, Fauzi Muhamed
Aatzi, and Nadder Zbidat.

**Binder 6**: Police statements showing the            1675-1784
involvement of Hamas leadership overseas in
the activities of charities, and the
progression of Hamas recruits from Dawa activity
to military activity. The statements include
Amar Kamal, Muhamed Man'a, Mahmad Abu Tir,
Adnan Atzfur, Abu Halef, and Nahed Abu Kishk.

**Binder 7**: Documents seized from the            1785-1893
Palestinian National Authority, including
documents from the Palestinian Preventive
Security and General Intelligence showing
outside funding of charity committees,
in particular from Saudia Arabia. Also
includes documents seized from charity
committees, such as the Orphan Care
Society of Beit Lechem.

**Binder 8**: Documents seized from zakat            1883-2364
committees and other charitable
associations, such as Orphan Care Society
of Beit Lechem, Ramallah Zakat Committee,
and the Islamic Charitable Society of
Hebron.  Includes lists of martyrs and
Hamas activists and documents showing the
committees' relationship with Interpal,
WAMY, the "Hundred Days" campaign, CBSP,
Al Aqsa Foundation, and HLF, including
receipts for donations through Arab Bank
and Cairo-Amman Bank.

**Binder 9**: Documents seized from the Jenin            2366-2885;
Zakat Committee, including lists of            2887-2961
orphans, marytrs and arrestees, thank you
notes, and miscellaneous material showing
the committee's relationship with external
groups such as Interpal, WAMY, Al Aqsa,

5

and others.

**Binder 10**: An analysis from an Israeli
think tank ("The Intelligence and
Terrorism Information Center") entitled
"The administration of assistance to
terrorism: a spotlight on the Islamic
Charity Association 'Al-Tadhamon' in
Shechem", including documents seized from
the Al-Tadhamon committee in Nablus.
Also includes documents seized from the
Al-Koran and Al-Sannah committee in
Qualquilya and the Qualquilya Zakat
Committee.

2962-3225

**Binder 11**: Documents seized from the
Tulkarem Zakat Committee, the Nablus
Zakat Committee, and the Orphan Care
Society of Beit Lechem, including lists
of martyrs and orphans and Hamas banners,
leaflets, keyrings and calendars.

3261-3593

**Binder 12**: An analysis entitled
"The Charitable Network: an umbrella
organization of over 50 Islamic Funds..."
describing the Union of Good way in which
funds are channeled to Hamas institutions.
It includes documents seized from the
Jenin, Tulkarem, and Nablus Zakat Committees,
as well as from Al-Tadhaman in Nablus,
Al-Bireh and Al-Islah charitable society
in Ramallah and the offices of the
Palestinian Authority.

3594-3913

**Binder 13**: Documents focusing on Interpal,
seized from the Orphan Care Society of
Bethlehem, the Ramallah Zakat Committee,
Al-Bireh Charity Committee, Qualquilya and
Al-Koran and Al-Sunnah committees, and from
the offices of the Palestinian Authority.

3914-4128

6

Documents include PA Preventive Security
files naming HLF, IAP and others as sources
of Hamas funding, and an analysis of various
Islamic charities and their funding mechanisms.

**Binder 14**: A copy of Khalid Mashal's                    4129;
interview with Al Hayat, and numerous            4196-4637;
court documents and police statements,           4655-4715
including Jamal Abu Alhiga, Ibrahim Jaber,
Salim Haja, Mazen Fukha, Said Basharat,
Balal Ruzi, Yihya Zaid, 'Amad Muhamed,
Saad Daragme,Rami 'Awad, Guad Elsaba'ai,
and Islam Jarar.

**Binder 15**: Various court documents and         4716-4769;
police reports (some duplicates from               4779-4965;
Binder 14), including Mahmad Jarar,               4984-4989;
Mutasem Esteti, Yihya Zbaidi, Sliman            5008-5013
Suajat, Samer Prihat, Shadi Muhajna,
Ghasan Halilila, Haled Na'airat,
Fuaz Kamil, and Ratab Mar'ai.

**Binder 16**: Open source news articles,          5014-5041;
court documents, police reports,                   5063; 5075;
including Mujahed Hamami, As'ad Abu           5079; 5091-92;
Mantzur, 'Azam Haj Mahmad, Bachar Ajbar,    5094; 5127-58;
Jihad Nashata, Ziad Amrish, Samich             5170-5184;
Hashash, Abed El Rahim Hanbali, Ahmad          5219-5237;
Nakub, 'Adeli Ya'aish, Ibrahim                     5274-5307;
Shrim and Talal Shrim, and several              5334-5341;
expert opinions from case #272/03.              5371-5379;
                                                5391-5398;
                                                5414-5443

**Binder 17-A**: Court documents and              5444;
police statements, including Abd                  5480-5565;
Halek Natshe, Wa'al Dawik, Nabil                  5573-5581;
Rajub, 'Adel Babarin, Ad'ad Natshe,              5584-5752;
Yihya Arshid, Fares Tabish, Guad                 5758-5809;
Ja'abri, Ashraf Dalum, Bilal Mahsab,              5815-5869;

7

| | |
|---|---|
| Akram Harubi, Murad Arfa, Nasser Abu Turki, Sliman Ku'asma, 'Abd El Mahsain El Jabri, Mohammed Anati, Kamal Tamimi, 'Azam Salhav, Fares Tabish, Ashraf Dalum, Azam Ya'aman Salhav, Musztafa Shaur, Mahmad 'Awad, Sa'adi Maisach and Azam Hasuna | 5871-5932 |
| **Binder 17-B**: Court documents and police statements, including 'Adel Na'aman Alganidi, Abdel Kader Idris, Hamza Abu Turki, and Hatam Kapisha. | 5933-5990; 6003-6031; 6036-6072 |
| **Binder 18**: Various court documents involving Jamal Tawil, Omar Hamdan, Bajis Nahle, Jasser Barguti, Ahmed Zaid, Na'im Awad, Ivihal Betallah, Marwan Rian, Mahmad 'Aisa, Abdel Rahman 'Animat and Jihad Awuda. | 6073-6298 |
| **Binders 19-A, 19-B and 19-C**: Documents seized from the Holy Land Foundation offices overseas, including from Hebron. Also includes various police reports, including Jamil Sarsour, Akram Harubi, and Mahmud Romachi. | 6299-6876; 6877-7445; 7446-7970 |
| **Binder 20 (paper copy):** This binder contains copies of brochures, posters, leaflets, calendars, keyrings, and postcards seized from various committees and reflecting martyrs or senior Hamas personnel | 7971-8054 |

8