IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | § |
| | § |
| v. | § |
| | § |
| HOLY LAND FOUNDATION FOR | § |
| RELIEF AND DEVELOPMENT (1) | § |
|     also known as the "HLF" | §    NO. 3:04-CR-240-G |
| SHUKRI ABU BAKER (2) | § |
| MOHAMMAD EL-MEZAIN (3) | § |
| GHASSAN ELASHI (4) | § |
| MUFID ABDULQADER (7) | § |
| ABDULRAHMAN ODEH (8) | § |

**MOTION AND MEMORANDUM IN LIMINE REGARDING ISSUES ARISING UNDER THE RELIGIOUS FREEDOM RESTORATION ACT AND THE FIRST AMENDMENT, AND REQUEST FOR EVIDENTIARY HEARING AS NECESSARY**

**TO THE HONORABLE A. JOE FISH**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION:**

Defendants, HOLY LAND FOUNDATION, SHUKRI ABU BAKER, MOHAMMAD EL-MEZAIN, GHASSAN ELASHI, MUFID ABDULQADER and ABDULRAHMAN ODEH, through their undersigned counsel, respectfully move the Court for an order requiring the government to demonstrate that criminalizing defendants' religiously-required and motivated charitable efforts in the West Bank and Gaza serves a compelling governmental interest and that criminalizing the defendants' conduct and precluding Islamic charities from engaging in humanitarian projects with Islamic zakat committees in the West Bank and Gaza is the least restrictive means of furthering the government's compelling interest, if any, a showing required

1

by the Religious Freedom Restoration Act (RFRA), 42 U.S.C. §§ 2000bb et seq., and the First Amendment to the United States Constitution.

The grounds for this motion are set forth below.

## ARGUMENT

### I.     Introduction.

Although the contours of the government's case are not yet clear, based on the indictment and discovery in this case, together with the various positions the government has asserted in connection with pre-trial motions, the government appears to assert two theories under which it will attempt to establish the defendants' criminal liability: 1) that by providing humanitarian assistance in the West Bank and Gaza, the Holy Land Foundation (HLF) and the individual defendants provided material support for terrorism because, on some occasions, the defendants worked with, and supplied funds to, local Palestinian religious charity (zakat) committees that, according to the government, were operated for the benefit of, or under the control of, Hamas, a designated terrorist organization; and, 2) that because some of the many destitute families to whom HLF provided support were ostensibly related to Hamas supporters (including, as defendants understand it, alleged terrorists, activists or persons detained by the government of Israel), the defendants allegedly rewarded past acts of terrorism and encouraged future acts of terrorism by Hamas. As a prefatory matter, the defendants deny, categorically, that either theory has any basis in fact outside the theoretical musings of the government's partisan experts.

The indictment does not allege that any of the defendants' actions resulted in charitable funds being diverted to Hamas itself, or that any of the charitable funds were diverted for acts of

terrorism or otherwise used for terrorism.[1] The government's case rests entirely on the allegation that defendants' charitable efforts in the West Bank and Gaza were, themselves, criminal acts.

Defendants are entitled to raise a statutory and constitutional defense to the charges, which will require the government to meet the burdens of proof in this case mandated by Congress. This defense springs from a fact the defendants believe is not substantially in dispute: that the charitable giving at issue in this case—"zakat"—is fundamental to the Islamic faith, which all the defendants practice. This is not a selective prosecution motion based on the prosecutor's motive, under which an entirely different, and more restrictive standard, would apply. *See United States v. Armstrong*, 517 U.S. 456 (1996). Rather, it is an assertion of a defense specifically provided for by Congress, arising from these defendants' right to the free exercise of their religion under RFRA and the First Amendment.

The RFRA and the First Amendment require that the government refrain from criminalizing religiously-motivated conduct unless, in addition to proving the elements of the crimes charged, the government also proves that criminalizing the particular defendants' conduct actually furthers a compelling governmental interest and there is no less restrictive alternative that would further the government's interest without criminalizing defendants' conduct. In this connection, defendants will establish *prima facie* that the conduct at issue in this case—the provision of charity within the Muslim religion's institutional charitable framework, including

---

[1] The closest the government comes to such an allegation is its claim that "due to HAMAS' substantial expenditures and the fungible nature of money," money collected for humanitarian purposes may be diverted to other uses. *See* Superseding Indictment, at 3, ¶ 4. Notably, this claim is a general one and is not specific to the HLF or these defendants.

the provision of charity to the families of orphans—is central to their religion[2] and entitled to the protection of RFRA and the First Amendment unless and until the government carries its heavy burden of proof to show that it must be criminalized. This defense relates to all counts of the Superseding Indictment.

### II. I   In Assessing What Evidence is Admissible against the Defendants, and in Determining What Conduct can Constitute a Crime, the Court Must Apply RFRA, the First Amendment, and 18 U.S.C § 2339B(I).

**A. Introduction.** The First Amendment and two statutes relate to, and limit the government's ability to criminalize defendants' conduct:

**1. The First Amendment to the United States Constitution** provides as follows:

> Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech..."

**2. Subsection (I) of 18 U.S.C. § 2339B (material support)**, under which the defendants

---

[2] "Charities that include or focus on Muslims as potential donors, including overtly secular charities, consider this absolute obligation to give zakat an important element in their appeal. This is particularly the case during Ramadan, when contributions can be expected to increase significantly, as there is a renewed emphasis on personal and communal piety, with those who are especially religious joining in groups to read a portion of the Qur'an each night of the holy month. The giving of zakat during this period being considered particularly meritorious, zakat committees are set up in many mosques and by other religious groups, in order to organize the collection and distribution of zakat. Such donations can go to any charitable end, but the neediness of the recipients is considered particularly important in this regard, as the whole point of zakat is to help those in society who are most in need." Declaration of Professor Rashid Khalidi at ¶ 3, attached as Exhibit 4 to Memorandum in Support of Motion of the Holy Land Foundation for Relief and Development for a Preliminary Injunction, in *Holy Land Foundation for Relief and Development v. Ashcroft*, 219 F. Supp.2d 57 (D.D.C. 2002).

"The five pillars [of Islam] are each described in some part of the Qur'an and were already practiced during Muhammad's lifetime. They are the profession of faith (shahada), prayer (salat), almsgiving (zakat), fasting (sawm), and pilgrimage (hajj). Although some of these practices had precedents in Jewish, Christian, and other Middle Eastern religious traditions, taken together they distinguish Islamic religious practices from those of other religions. The five pillars are thus the most central rituals of Islam and constitute the core practices of the Islamic faith." Religious Information Resource Web-Site, available at http://mb-soft.com/believe/txh/pillars.htm

are charged, provides as follows:

> Nothing in this section shall be construed or applied so as to abridge the exercise of rights guaranteed under the First Amendment to the Constitution of the United States.

### 3. The Religious Freedom Restoration Act, 42 U.S.C. § 2000bb et seq., provides as follows, in pertinent part:

> The purposes of this chapter are -
> (1)... to guarantee [the compelling interest test] in all cases where free exercise of religion is substantially burdened; and
> (2) to provide a claim or defense to persons whose religious exercise is substantially burdened by the government.

42 U.S.C. § 2000bb(b).

> Government shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability, except as provided in subsection (b) of this section.

42 U.S.C. § 2000bb-1(a).

> Government may substantially burden a person's exercise of religion only if it demonstrates that application of the burden to the person -
>
> (1) is in furtherance of a compelling governmental interest; and
>
> (2) is the least restrictive means of furthering that compelling governmental interest

*Id.* at (b).

> [T]he term 'demonstrates' means meets the burdens of going forward with the evidence and of persuasion.

42 U.S.C. § 2000bb-2(3)

> A person whose religious exercise has been burdened in violation of this section may assert that violation as a claim or defense in a judicial proceeding and obtain appropriate relief against a government.

42 U.S.C. § 2000bb-1(c).

### B. RFRA's Requirements Are Applicable To This Case.

The Religious Freedom Restoration Act is fully applicable to the enforcement of criminal

laws. *Gonzales v. O Centro Espirita Beneficente Uniao Do Vegetal,* 546 U.S. 418, 126 S. Ct. 1211 (2006) (RFRA applied to prevent the enforcement of the Controlled Substances Act against a religious organization using a Schedule I controlled substances as its sacrament). By its terms, RFRA applies to all laws: "This chapter applies to all Federal...law, and the implementation of that law, whether statutory or otherwise, and whether adopted before or after November 16, 1993." 42 U.S.C. § 2000bb-3(a).

As provided in the text of the Act, when a defendant raises a RFRA defense to criminal charges, the government must demonstrate: 1) that the government has a compelling interest that is furthered by criminalizing the defendants' religious conduct and, 2) that there is no less restrictive means of furthering the government's interest than criminalizing defendants' religious conduct. A defendant's only obligation is to establish that the conduct at issue is part of his faith and that the government has burdened the exercise of his religion. *O Centro,* 126 S. Ct. at 1219 (once a person establishes that his conduct is religious and that the government has burdened his exercise of religion, the government bears burden of proving that its interest in criminalizing the conduct is compelling and that no less restrictive means would suffice to further its compelling interest).

Of particular importance in the instant case is that the Supreme Court has reaffirmed what is apparent on the face of the Act: RFRA is not satisfied by blanket assertions that particular criminal laws necessarily reflect a compelling government interest and must be applied to all. Rather,

> RFRA requires the Government to demonstrate that the compelling interest test is satisfied through application of the challenged law "to the person"-the particular claimant whose sincere exercise of religion is being substantially burdened, 42 U.S.C. §

2000bb-1(b). RFRA expressly adopted the compelling interest test "as set forth in *Sherbert v. Verner*, 374 U.S. 398, 83 S. Ct. 1790, 10 L. Ed.2d 965 (1963) and *Wisconsin v. Yoder*, 406 U.S. 205, 92 S. Ct. 1526, 32 L. Ed.2d 15 (1972)." 42 U.S.C. § 2000bb(b)(1). In each of those cases, this Court looked beyond broadly formulated interests justifying the general applicability of government mandates and scrutinized the asserted harm of granting specific exemptions to particular religious claimants.

*O Centro,* 126 S. Ct. at 1220.

A court may conduct an evidentiary hearing to determine that the defendants are, in fact, adherents of a religious faith and that the conduct alleged to be criminal "is a part of the religious practice of" the particular faith. *United States v. Bauer,* 84 F.3d 1549, 1559 (9th Cir. 1996). In the instant case, RFRA would require the defendants to establish that they are adherents of Islam, that "zakat" (or charitable almsgiving) is a part of their faith and that the government is burdening their religious practice. The defendants are prepared to demonstrate that such is the case at a *Bauer* evidentiary hearing, if necessary.

Once the defendants establish, *prima facie,* the basis for their defense, the burden shifts to the government to satisfy the jury that criminalizing the defendants' conduct furthers a compelling interest and that there is no less restrictive means of furthering the government's compelling interest than by criminalizing the conduct in question. *O Centro,* 126 S. Ct. at 1219-20.

The Supreme Court's analysis is particularly apt here, given that the defendants are not now claiming, nor have they ever claimed that they have a religious right to fund terrorism. Rather, their claim is that they have a right under RFRA to provide religious funds to alleviate suffering in a manner that is based upon their religion. The government may be able to demonstrate, as RFRA requires, that it has a compelling interest in thwarting terrorism, but it is

7

difficult to see how the government could prove that criminalizing the provision of charity to indisputably needy people through zakat committees is the least restrictive means of furthering that interest, given that this same government has provided humanitarian aid through those same zakat committees, and continues to do so. In this respect, the government's position in this case is much like the position the government took in *O Centro,* in which the court caustically commented that the government could hardly be heard to insist on criminalizing O Centro's use of a Schedule I controlled substance while, at the same time, it was exempting the Native American Church's use of peyote, another Schedule 1 substance, from the Controlled Substances Act. *O Centro,* 126 S. Ct. at 1222, citing *Church of Lukumi Babalu Aye, Inc. v. Hialeah*, 508 U.S. 520, 547 (1993).

### C. Like RFRA, the First Amendment Requires the Government to Demonstrate a Compelling Interest and Adoption of Least Restrictive Means.

In this case, the government is prosecuting the defendants for religiously-motivated, charitable conduct. It is the government's position, as defendants understand it, that although the defendants' conduct may have been based in their religion, the defendants are nevertheless guilty of material support for terrorism because the religious organizations in the West Bank and Gaza with which the defendants worked to provide humanitarian aid were actually controlled by and operated for the benefit of Hamas. It continues to be the defendants' position that our government's failure *ever* to list any of the relevant zakat committees among the organizations that are "off limits" for charitable support precludes this prosecution.

Even assuming, however, that the government may proceed on a theory that it may prosecute the defendants for providing support to an organization "controlled" or "operated on

behalf of" a designated terrorist organization, the First Amendment, like RFRA, requires that it must still satisfy the fact-finder that the prosecution of the defendants for their religiously-motivated conduct furthers a compelling governmental interest by the least restrictive means.[3]

Charity is protected by the First Amendment. *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215 (1990); *Secretary of State of Md. v. Joseph H. Munson Co., Inc.*, 467 U.S. 947 (1984); *Village of Schaumburg v. Citizens for a Better Environment*, 444 U.S. 620 (1980). The First Amendment also protects the expenditure of funds. *Buckley v. Valeo,* 424 U.S. 1, 39 (1976). Thus, under the law cited above, and under the Supreme Court's holdings in *Lukumi,* the defendants' religious zakat obligation is protected both by the speech and free exercise clauses of the First Amendment.

While the statutes at issue in this case may be neutral and generally applicable on their face, the government is not applying them in a neutral fashion. At trial, the defendants will submit evidence demonstrating that the government permits other American charities, without civil or criminal consequence, to cooperate with and assist with funding some of the very same Palestinian zakat committees that the defendants are accused of having wrongfully supported and

---

[3]In 2004, Congress amended the material support statute under which the defendants are charged, 18 U.S.C. § 2339B, to specifically protect First Amendment rights. As amended, the statute states: "Nothing in this section shall be construed or applied so as to abridge the exercise of rights guaranteed under the First Amendment to the Constitution of the United States." 18 U.S.C. § 2339B(I). Therefore, engaging in conduct required by one's religion—here, engaging in zakat—is undeniably protected by the First Amendment. *See, e.g., Watchtower Bible and Tract Society of New York, Inc. v. Village of Stratton,* 536 U.S. 150, 161-162 (2002) (holding that door-to-door proselytizing, required by the faith of Jehovah's Witnesses, "occupies the same high estate under the First Amendment as do worship in the churches and preaching from the pulpits. It has the same claim to protection as the more orthodox and conventional exercises of religion."). Just as door-to-door proselytizing is central to the faith of Jehovah's Witnesses, so is charity central to the faith of Islam.

funded. Under these circumstances, the fact that the law does not explicitly target religious conduct is irrelevant:

> Official action that targets religious conduct for distinctive treatment cannot be shielded by mere compliance with the requirement of facial neutrality. The Free Exercise Clause protects against governmental hostility which is masked, as well as overt. "The Court must survey meticulously the circumstances of governmental categories to eliminate, as it were, religious gerrymanders." *Walz v. Tax Comm'n of New York City*, 397 U.S. 664, 696, 90 S.Ct. 1409, 1425, 25 L.Ed.2d 697 (1970) (Harlan, J., concurring).

*Lukumi*, 508 U.S. at 534. In the instant case, this Court must "survey meticulously" whether the government has, in fact, done what the documentary evidence already establishes: the disparate treatment of humanitarian assistance that is religiously-motivated, versus substantially identical humanitarian assistance by non-religious organizations, including the United States government itself. Whether the Court accepts that disparate treatment as a given, or requires proof in an evidentiary hearing or at trial, the result is the same: the Court must require the government to demonstrate that it has a compelling interest in criminalizing defendants' conduct and that no less restrictive means than criminalizing such religiously-motivated humanitarian assistance would suffice to further the government's compelling interest. *Lukumi*, 508 U.S. at 520 ("where, as here, government restricts only conduct protected by the First Amendment and fails to enact feasible measures to restrict other conduct producing substantial harm or alleged harm of the same sort, the governmental interests given in justification of the restriction cannot be regarded as compelling*").

Accordingly, whether the analysis is under RFRA, or the First Amendment, the government must establish that effectively singling out these religiously-motivated defendants for prosecution is justified by a compelling governmental interest and that no less restrictive

means than prosecuting these defendants will suffice to further that interest.

## CONCLUSION

For the foregoing reasons, the defendants respectfully request the following relief:

1. That, unless the government agrees that these matters are undisputed, the Court set an evidentiary hearing to give the defendants the opportunity to establish, *prima facie,* that they are followers of Islam; that a pillar and essential part of Islam is the obligation of zakat, or charitable almsgiving; that HLF and the defendants were at all material times and in all material respects engaged in soliciting and distributing zakat; that local zakat committees, such as those identified in the indictment are an integral part of the Muslim religion's structure for the distribution of zakat to the poor; and that criminalizing defendants' religious, charitable conduct substantially burdens defendants' exercise of their religion within the meaning of RFRA and the First Amendment.

2. That, following the hearing requested in the preceding paragraph, or if the Court determines that the factual issues identified above are established *prima facie* for purposes of the trial of this cause, the Court require the government to prove beyond a reasonable doubt that it has a compelling interest in criminalizing these defendants' conduct and that there is no less restrictive means by which the government could further its compelling interest.

Respectfully submitted,

/s/ John W. Boyd
JOHN BOYD
New Mexico Bar Card No. 286
Email: jwb@fbdlaw.com
NANCY HOLLANDER
New Mexico Bar Card No. 1185
Email: nh@fbdlaw.com
THERESA M. DUNCAN
New Mexico Bar Card No. 12444
Email: tmd@fbdlaw.com

FREEDMAN BOYD DANIELS
HOLLANDER GOLDBERG & IVES P.A.
20 First Plaza, Suite 700
Albuquerque, New Mexico 87102
Office: 505.842.9960
Fax: 505.842.0697
ATTORNEYS FOR DEFENDANTS
HLF (01) & SHUKRI ABU BAKER (02)

MARLO P. CADEDDU
Texas Bar Card No. 24028839
LAW OFFICE OF MARLO P. CADEDDU, P.C.
3232 McKinney Avenue, Suite 700
Dallas, TX 75204
Office: 214.220.9000
Fax: 214.744.3015
Email: caddedulaw@sbcglobal.net
ATTORNEY FOR DEFENDANT
MUFID ABDULQADER (07)

JOSHUA L. DRATEL
New York Bar Card No. 1795954
Law Office Of Joshua L. Dratel
2 Wall St
3d Floor
New York, NY 10005
Office: 212.732.0707
Email: jdratel@joshuadratel.com
ATTORNEY FOR DEFENDANT
MOHAMMAD EL-MEZAIN (03)

LINDA MORENO
Florida Bar 0112283
LINDA MORENO, P.A.
P.O. Box 10985
Tampa, FL 33679
Office: 813.247.4500
Email: linbianca@aol.com
ATTORNEY FOR DEFENDANT
GHASSAN ELASHI (4)

GREG WESTFALL
Texas Bar Card No. 00788646
WESTFALL, PLATT & CUTRER
101 Summit Avenue, #910

Fort Worth, TX 76102
Office: 817.877.1700
Fax: 817.877.1710
ATTORNEY FOR DEFENDANT
ABDULRAHMAN ODEH (08)

## CERTIFICATE OF CONFERENCE

I certify that counsel discussed the instant motion with Mr. James Jacks, Assistant United States Attorney and he is opposed to this motion.

/s/ John W. Boyd
JOHN W. BOYD

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the above Joint Defendants Motion and Memorandum in Limine Regarding Issues Arising under the Religious Freedom Restoration Act and the First Amendment and Request for Evidentiary Hearing as May Be Necessary was served electronically upon Mr. James Jacks, on this 14th day of March, 2007.

/s/ John W. Boyd
JOHN W. BOYD