IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
<u>DALLAS DIVISION</u>

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | CR NO. 3:04-CR-240-P |
| | § | |
| HOLY LAND FOUNDATION | § | |
| FOR RELIEF AND DEVELOPMENT, | § | |
|     also known as the "HLF" (01) | § | |
| SHUKRI ABU BAKER, (02) | § | **ECF** |
| MOHAMMED EL-MEZAIN, (03) | § | |
| GHASSAN ELASHI, (04) | § | |
| HAITHAM MAGHAWRI, (05) | § | |
| AKRAM MISHAL, (06) | § | |
| MUFID ABDULQADER, (07) and | § | |
| ABDULRAHMAN ODEH (08) | § | |

**GOVERNMENT'S AMENDED MEMORANDUM IN OPPOSITION TO
PETITIONERS ISLAMIC SOCIETY OF NORTH AMERICA AND NORTH
AMERICAN ISLAMIC TRUST'S MOTION FOR EQUITABLE RELIEF**

**INTRODUCTION**

The United States, through its undersigned counsel, hereby submits its

memorandum in opposition to Islamic Society of North America (ISNA) and the North

American Islamic Trust's (NAIT) motion for equitable relief.  Through this motion – filed

without leave of court and without formal intervention – ISNA and NAIT seek a range of

declaratory and injunctive relief stemming from the public filing of Attachment A ("List

of Unindicted Co-conspirators and/or Joint Venturers") to the government's May 29,

2007 trial brief.  As part of the requested relief, ISNA and NAIT seek the "expunging of

**GOVERNMENT'S MEMORANDUM IN OPPOSITION TO PETITIONERS ISLAMIC SOCIETY OF
NORTH AMERICA AND NORTH AMERICAN ISLAMIC TRUST'S MOTION FOR EQUITABLE
RELIEF**

Petitioners' names from any public document filed or issued by the Government that identifies Petitioners as unindicted co-conspirators." Pet. Mot. at 3. According to Petitioners, their motion is an effort to combat the negative press it allegedly incurred by being identified as a participant in a network of U.S.-based organizations affiliated with the designated foreign terrorist organization, HAMAS. ISNA and NAIT allege that the Government's identification of them as unindicted co-conspirators and/or joint venturers nearly fourteen months ago caused them significant injury, resulting in a violation of their Fifth and First Amendment rights.

The Court should deny the Petitioners' motion for equitable relief. First, Petitioner's motion is untimely, coming more than a year after the filing of the Government's Trial Brief. Petitioners were aware back in May 2007 that the Government publicly filed its Trial Brief. They were also aware that during the 2007 trial, another listed co-conspirator/joint venturer, the Council on American Islamic Relations (CAIR), moved for leave to file an amicus brief (ecf # 777) asking for essentially the same relief, for the same reasons, that Petitioners seek here. Yet, Petitioners, without explanation, waited over a year to file this motion.

Even if their filing were timely, which it is not, Petitioners' motion would be moot. During last year's trial, numerous exhibits were entered into evidence establishing both ISNA's and NAIT's intimate relationship with the Muslim Brotherhood, the Palestine Committee, and the defendants in this case. Accordingly, there is no possible basis for

petitioner's "expungement" from the Government's list of co-conspirators and joint venturers.  Even sealing the co-conspirator list at this juncture would be futile – the evidence has been appropriately introduced during the course of a public trial.

ISNA and NAIT also lack standing.  Petitioners cannot trace any current injury to the Government's Trial Brief, as opposed to the actual exhibits that were introduced at trial.  Petitioners also lack standing because their alleged injury cannot be redressed.

Finally, with respect to Petitioners' legal arguments, Petitioners merely repeat the arguments made by CAIR in its proposed amicus submission.  The government hereby incorporates by reference, as if fully set forth below, its opposition to CAIR's motion seeking similar relief (ecf # 824).[1]

The Government respectfully submits that petitioner's belated motion to litigate their status diverts this Court's attention from the imminent retrial of this case, and could have been brought many months ago.  For these reasons, and those set forth below, Petitioners' motion for equitable relief should be denied.

## FACTUAL BACKGROUND

1.      On July 26, 2004, a federal grand jury indicted HLF; Shukri Abu Baker, HLF's Secretary and Chief Executive Officer; Mohammed El-Mezain, HLF's Director of Endowments; Ghassan Elashi, HLF's Chairman of the Board; Haitham Maghawri, HLF's

---

[1]Rather than repeating its arguments in opposition to CAIR's nearly identical brief last year, the government will focus on those arguments specific to these Petitioners.

Executive Director; Akram Mishal, HLF's projects and grants director; Mufid

Abdulqader, one of the HLF's top fundraisers; and Abdulrahman Odeh, the HLF's New

Jersey representative.[2]  In addition to charging the defendants with providing material

support to a foreign terrorist organization, the indictment also charged the defendants

with engaging in prohibited financial transactions with a Specially Designated Global

Terrorist, money laundering, filing false tax returns, and several conspiracy charges,

including: conspiracy to provide material support to a foreign terrorist organization, 18

U.S.C. § 2339B(a)(1); conspiracy to provide funds, goods and services to Specially

Designated Global Terrorist, 50 U.S.C. §§ 1701-1706; and conspiracy to commit money

laundering, 18 U.S.C. § 1956(h).  The indictment also seeks the forfeiture of $12.4

million in HAMAS assets.

2.      On May 29, 2007, the Government submitted a Trial Brief in support of the

evidence and arguments to be relied upon in its case-in-chief.  As explained in the brief,

its purpose was to provide the Court with an overview of the case, the scope of the

conspiracy, and information regarding the different kinds of evidence that the

Government intended to seek to admit at trial, as well as the evidentiary bases for the

admission of that evidence.  The Government did not detail all of the evidence that it

intended to present in its case-in-chief, nor did it describe all of the evidence showing the

---

[2]  The defendants Akram Mishal and Haitham Maghawri have not been arrested in this case and are fugitives.

existence of the alleged conspiracy and the statements made in furtherance of the

conspiracy.  Instead, the Trial Brief outlined the law with respect to types of evidence the

Government intended to admit and provided background to the Court for evaluating their

admissibility.

With regard to the breadth of the conspiracy, the Government provided:

Although the indictment in this case charges the seven named individual
defendants and the Holy Land Foundation for Relief and Development, it
will be obvious that the defendants were not acting alone. . . . the
defendants were operating in concert with a host of individuals and
organizations dedicated to sustaining and furthering the Hamas movement.
Several of the individuals who hold leading roles in the operation of Hamas
are referenced by name in the indictment.  A list of unindicted
coconspirators is attached to this trial brief.  (Attachment A).

The object of the conspiracy was to support Hamas.  The support will be
shown to have take several forms, including raising money, propaganda,
proselytizing, recruiting, as well as many other types of actions intended to
continue to promote and move forward Hamas's agenda of the destruction
of the State of Israel and establishment of an Islamic state in its place.

Trial Brief at 31.

Thus, to provide greater clarity to the Court and the defense regarding the

complexity and magnitude of the global HAMAS-affiliated conspiracy to be

demonstrated in the Government's case-in-chief, the Government identified in an

attachment to the Trial Brief those individuals and organizations which it intended to

prove were engaged in supporting HAMAS.  Attachment A to the Trial Brief listed 246

different individuals and organizations as either unindicted co-conspirators and/or joint

venturers under one or more headings:

(1) individuals/entities who are and/or were part of the HAMAS social infrastructure in Israel and the Palestinian territories;

(2) individuals who participated in fundraising activities on behalf of HLF;

(3) individuals/entities who are and/or were members of the U.S. Muslim Brotherhood's Palestine Committee and/or its organizations;

(4) individuals/entities who are and/or were members of the Palestine Section of the International Muslim Brotherhood;

(5) individuals who are and/or were leaders of HAMAS inside the Palestinian territories;

(6) individuals who are and/or were leaders of the HAMAS Political Bureau and/or HAMAS leaders and/or representatives in various Middle Eastern/African countries;

(7) individuals/entities who are and/or were members of the U.S. Muslim Brotherhood;

(8) individuals/entities that are and/or were part of the Global HAMAS financing mechanism;

(9) individuals/entities that Marzook utilized as a financial conduit on behalf and/or for the benefit of HAMAS;

(10) individuals who were HLF employees, directors, officers and/or representatives; and

(11) HAMAS members whose families received support from the HLF through the HAMAS social infrastructure.

ISNA and NAIT are listed in the attachment under the seventh heading,

individuals/entities who are and/or were members of the U.S. Muslim Brotherhood.

Besides the category descriptions, the Government did not provide any further information regarding specific individual and organizational links to the conspiracies described in the Indictment and in the Trial Brief.

3. The trial commenced on July 16, 2007. The Government called its first witness on July 25, 2007. During the trial, the Court entered into evidence a wide array of testimonial and documentary evidence expressly linking ISNA and NAIT to the HLF and its principals; the Islamic Association for Palestine and its principals; the Muslim Brotherhood in the United States and its Palestine Committee, headed by HAMAS official Mousa Abu Marzook; and the greater HAMAS-affiliated conspiracy described in the Government's case-in-chief. *See, e.g.*, Government Exhibits 1-16, 3-1, 3-3, 3-23, 3-49, 3-50, 3-64, 3-85, 3-89, 5-1 through 5-14, 5-23 through 5-26, 5-42, 5-78, 16-59, 16-87, 20-33.

4. On August 14, 2007, CAIR filed a motion requesting that this Court permit it to submit an *amicus curiae* brief in opposition to the "public issuance" of the Government's list of unindicted co-conspirators and/or joint venturers filed with the Trial Brief. The government responded on September 4, 2007, and CAIR replied September 13, 2007. The Court did not rule on the motion. Petitioners' current motion, which essentially repeats those arguments advanced by CAIR, was filed June 18, 2008, over a year after the Government filed the co-conspirator/joint venturer list at issue, over ten months after CAIR filed its brief, and nearly eight months after the Court declared a

mistrial.  The retrial of this matter is scheduled to begin September 8, 2008.

## ARGUMENT

I.  **THE COURT SHOULD DENY THE PETITIONERS' MOTION AS TIME-BARRED**

It is axiomatic that a district court has the inherent power "to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.,* 299 U.S. 248, 254, 57 S.Ct. 163, 81 L.Ed. 153 (1936); *Woodson v. Surgitek, Inc.,* 57 F.3d 1406, 1417 (5th Cir.1995) ("The federal courts are vested with inherent power 'to manage their own affairs so as to achieve the orderly and expeditious disposition of cases[,]' ... includ[ing] the power of the court to control its docket[.]").  Included within the court's inherent power to control its docket is the power not to entertain untimely filings, particularly from non-parties who have neither sought nor obtained the court's permission to participate in the case.  This is all the more true when the movant seeks to invoke the court's equitable powers.  It is the "long-established doctrine of courts of equity that their extraordinary relief will not be accorded to one who delays the assertion of his claim for an unreasonable length of time." *Hayes v. Port of Seattle*, 251 U.S. 233, 239 (1920).

In this case, the Petitioners have inexplicably delayed for more than a year before seeking the requested relief.  The government's Trial Brief setting forth its legal position with respect to co-conspirators and joint venturers was filed May 29, 2007.  Petitioners

failed to raise any issue at that time.  Nor did Petitioners choose to join CAIR in its

submission on August 14, 2007, even though that filing raised the identical issues

Petitioners raise now.[3]  And, even after the government immediately announced its

intention to retry the case following the court's declaration of a mistrial in October 2007,

Petitioners were silent.[4]  When the Court set the trial date for mid-August and then finally

for September 8, Petitioners did nothing.  Instead, Petitioners waited until the virtual eve

of retrial, in the midst of pretrial preparations, to file what could have been raised at

countless earlier opportunities.[5]

Petitioners offer no explanation as to why they did not seek leave to file a motion

immediately following the Government's filing of its Trial Brief,[6] or at any point

---

[3] Petitioners' motion recognizes that CAIR filed a proposed amicus brief, but spends mere paragraphs addressing it and the government's arguments in opposition.  Even those paragraphs ignore entirely the government's jurisdictional arguments in opposition to CAIR's filing.

[4] ISNA, immediately following the mistrial, did issue a press statement parroting almost verbatim its current grievance.  Yet, despite its promise to "vigorously employ all legal avenues available," it waited until the eve of retrial to interject itself into this case.  *See* "Islamic Society of North America, HLF Verdict Press Statement," www.isna.net/articles/Press-Releases (attached).

[5] The only time Petitioners raised this issue with the government was in the middle of the last trial, when the prosecution's attention was exclusively devoted to trying the case.  It is hardly surprising that, as Petitioners' counsel complains, prosecutors were unwilling to divert their attention to what was, as exhibits establishing the conspiracy/joint venture were introduced into evidence, a moot exercise of sealing the co-conspirator list.  By the time Petitioners called the government to confer with respect to this motion, the sealing of the co-conspirator list would have been pointless – the evidence had already been made public during the trial.

[6] Not only do Petitioners fail to explain their delay, but they fail to provide any explanation or support for their failure to seek the court's permission to file the instant motion.

**GOVERNMENT'S MEMORANDUM IN OPPOSITION TO PETITIONERS ISLAMIC SOCIETY OF NORTH AMERICA AND NORTH AMERICAN ISLAMIC TRUST'S MOTION FOR EQUITABLE RELIEF**                                                                                   **Page 9**

thereafter.  In particular, Petitioners provide no explanation as to why they waited until after evidence at trial had already established their ties to defendants and the conspiracy at issue, or how the relief they request can, at this late date, have any impact on evidence already in wide circulation in the public domain.  At this juncture, the Petitioners' motion only serves to divert the Court's attention from the pressing task of preparing for and completing an on-going criminal matter.  The Court should therefore exercise its discretion to reject the petitioner's untimely motion.

## II.      PETITIONERS' CLAIMS ARE MOOT

Even were the Court to consider Petitioners' motion, the Court would lack jurisdiction to act on the requested relief.  Article III of the U.S. Constitution limits the jurisdiction of federal courts to the resolution of "actual, ongoing controversies."  *Honig v. Doe*, 484 U.S. 305, 317 (1988).  The law is well-settled that federal courts have no authority "to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it."  *Church of Scientology of California v. United States*, 506 U.S. 9, 12 (1992) (*quoting Mills v. Green*, 159 U.S. 651, 653 (1895)); *see also United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 397 (1980) (Mootness is "the doctrine of standing in a time frame.  The requisite personal interest that must exist at the commencement of litigation (standing) must continue throughout its existence (mootness).").  Moreover, because mootness goes to the heart of the constitutional power of a federal court to consider the rights of the

parties and afford any relief, it is a "jurisdictional question" that "a federal court must resolve before it assumes jurisdiction." *North Carolina v. Rice*, 404 U.S. 244, 246 (1971).

Generally, any set of circumstances that eliminates an actual controversy after the commencement of a lawsuit renders that action moot. *See Arizonans for Official English v. Arizona*, 520 U.S. 43, 67 (1997). That means, "throughout the litigation, the plaintiff 'must have suffered, or be threatened with, an actual injury traceable to the defendant *and* likely to be redressed by a favorable judicial decision.'" *Spencer v. Kemna*, 523 U.S. 1, 7 (1998) (quoting *Lewis*, 494 U.S. at 477) (emphasis added). Thus, if an event occurs while a case is pending that makes it impossible for the court to grant "meaningful relief" to a prevailing party, the case must be dismissed as moot. *Church of Scientology*, 506 U.S. at 12.

Petitioners' claims against the Government are plainly moot. ISNA and NAIT have asserted no justiciable claim because no "meaningful relief" is available, in light of the fact that their participation as a joint-venturer and/or co-conspirator is a matter of public record in this case, and was a matter of public discussion even prior to the filing of the government's Trial Brief.[7]

---

[7] *See, e.g.*, "In Search of Friends Among The Foes," by John Mintz and Douglas Farah, *The Washington Post*, September 11, 2004, p. A01 ("Some of the same Brotherhood people who started MSA [Muslim Students Association] also launched the North American Islamic Trust (NAIT) in 1971. * * * In 1981, some of the same people launched the Islamic Society of North America (ISNA), which was also cited in [Yussef] Qaradawi's speech."); "Muslim Brotherly Hate," *FrontPageMagazine.com*, June 30,

The evidence introduced at trial, for example, established that ISNA and NAIT were among those organizations created by the U.S.-Muslim Brotherhood.[8] Govt. Exh. 3-64 (seized from the home of HAMAS leader Ismail Elbarasse); Govt. Exh. 3-3 (Muslim Brotherhood document noting that ISNA was founded by the US-Muslim Brotherhood) ; Govt. Exh. 3-85 (1991 memorandum authored by U.S.-Muslim Brotherhood Shura Council member Mohamed Akram Adlouni, recognizing ISNA and NAIT as Muslim Brotherhood organizations.)  Government's Exhibit 3-85, entitled *An Explanatory Memorandum on the General Strategic Goal of the Group*, described the Brotherhood's strategic goal as a kind of "grand *Jihad*":

> The *Ikhwan* must understand that their role in America is a kind of grand *Jihad* in eliminating and destroying the Western Civilization from within and sabotaging its miserable house by their hands and the hands of the believers so that it is eliminated and God's religion is made victorious....

---

2006, frontpagemag.com/Articles/ReadArticle.asp; "The Truth About The Muslim Brotherhood," *Assyrian International News Agency*, June 16, 2006, www.aina.org/news/20060616105850.htm.

[8] The Muslim Brotherhood, also known as the *Ikhwan Al Muslimin,* was founded in Egypt in 1928 by Hassan Al Banna.  Its ultimate goal is the creation of a global Islamic State governed by Sharia law.  Muslim Brotherhood members first migrated to the United States in the 1960s where they began their grassroots work on campuses, through an organization called the Muslim Students Association.  At that time, the U.S.-Muslim Brotherhood was loosely structured and in its infancy.  Govt. Exh. 3-89.  By the mid-1980s, the U.S.-Muslim Brotherhood had grown exponentially, established numerous front organizations, developed a solid hierarchical structure, and received direction from the International Muslim Brotherhood's General Guide.  *Id.*  HAMAS was established in 1987 as an outgrowth of the Muslim Brotherhood, by Muslim Brotherhood leader Sheik Ahmad Yassin.  Govt. Exh. 21-61, 3-6.  In the late-1980s and early 1990s, the U.S.-Muslim Brotherhood was controlled by Palestinian Muslim Brotherhood members, and the leader of the U.S.-Muslim Brotherhood was Mousa Abu Marzook, who in 1989 was selected to be the leader of HAMAS, a position that he held while residing in the United States and controlling the US-Muslim Brotherhood. Govt. Exh. 3-1.  Marzook was arrested in New York in 1995, deported to Jordan, and subsequently expelled to Syria, where he currently serves as the head of the HAMAS political bureau under Khalid Mishal.  *See generally* testimony of Matthew Levitt.

Govt. Exh. 3-85.  At the end of the document, the memorandum lists those Muslim

Brotherhood organizations that – if they all worked together –  could help accomplish this

grand objective.  These organizations include ISNA, NAIT, the Occupied Land Fund

(OLF )(the former name of the Holy Land Foundation), the Islamic Association for

Palestine (IAP), the United Association for Studies and Research (UASR), and others.  *Id*.

ISNA and NAIT, in fact, shared more with HLF than just a parent organization.

They were intimately connected with the HLF and its assigned task of providing financial

support to HAMAS.  Shortly after HAMAS was founded in 1987, as an outgrowth of the

Muslim Brotherhood, Govt. Exh. 21-61, the International Muslim Brotherhood ordered

the Muslim Brotherhood chapters throughout the world to create Palestine Committees,

whose job it was to support HAMAS with "media, money and men." Govt. Exh. 3-15.

The U.S.-Muslim Brotherhood created the U.S. Palestine Committee, which documents

reflect was initially comprised of three organizations:  the OLF (HLF), the IAP, and the

UASR.  CAIR was later  added to these organizations.  Govt. Exh. 3-78 (listing IAP,

HLF, UASR and CAIR as part of the Palestine Committee, and stating that there is "[n]o

doubt America is the ideal location to train the necessary resources to support the

Movement worldwide . . .").  The mandate of these organizations, per the International

Muslim Brotherhood, was to support HAMAS, and the HLF's particular role was to raise

money to support HAMAS' organizations inside the Palestinian territories.  Govt. Exh. 3-

17 (objective of the Palestine Committee is to support HAMAS).

During the early years of the HLF's operation, HLF raised money and supported HAMAS through a bank account it held with ISNA at NAIT.  Govt. Exh. 5-1 through 5-14, 5-23, 5-24, 5-25, 5-26, 5-42.  Indeed, HLF (under its former name, OLF) operated from within ISNA, in Plainfield, Indiana, where Defendant Shukri Baker was employed.  Govt. Exh. 5-6, p. 3; 1-16.  ISNA checks deposited into the ISNA/NAIT account for the HLF were often made payable to "the Palestinian Mujahadeen," Govt. Exh. 5-23, 5-24, 5-25, the original name for the HAMAS military wing. Govt. Exh. 1-174.  From that ISNA/NAIT account, the HLF sent hundreds of thousands of dollars to HAMAS leader Mousa Abu Marzook, Nadia Elashi (defendant Ghassan Elashi's cousin and Marzook's wife), Sheikh Ahmed Yassin's Islamic Center of Gaza, the Islamic University, and a number of other individuals associated with HAMAS.  Govt. Exh. 20-55, 20-56.

ISNA was also discussed during the 1993 Philadelphia conference, a meeting of the Palestine Committee convened to discuss the impact of the Oslo Accords.  Govt. Exh. 16-47.  During the conference, Palestine Committee members discussed using ISNA as official cover for their activities.  Govt. Exh. 16-0059 at 10-11; 16-60.  In short, evidence introduced during the course of a public trial demonstrates that ISNA and NAIT are indeed co-conspirators/joint venturers, and no relief that the Court can grant would alter the state of the record in that regard.[9]

---

[9] All the exhibits cited herein were admitted into evidence and posted publicly on the Court's website. Due to their volume, we have not resubmitted them here.  In the event that the Court or Petitioners do not have access to the exhibits, government counsel will provide them upon request.

Although Petitioners seek "expungement" of their names from any document reflecting their co-conspirator status, they cannot expect this Court to alter evidence properly admitted during the course of a public trial.  The law is well-settled that the public has a presumptive right of access to the records of judicial proceedings, *Press-Enterprise Co. v. Superior Court*, 464 U.S. 501, 509 (1984), and that public information regarding "[t]he source of evidence admitted at trial and the circumstances surrounding its admittance are important components of the judicial proceedings and crucial to an assessment of the fairness and the integrity of the judicial proceedings," *Napue v. Illinois*, 360 U.S. 264, 269 (1959).  *See also United States v. Briggs,* 514 F.2d 794, 805 (5th Cir. 1975) ("[I]t must be recognized in the process of balancing private injury and governmental interests that wholly different, and valid, governmental interests apply to naming the private citizen . . . in trial testimony.").

Petitioners, in fact, do not dispute that once such information is admitted into evidence at trial it is properly in the public domain.  Instead, Petitioners ignore entirely the evidence presented at trial, relying only on the government's representation that ISNA and NAIT were not subjects or targets of the criminal investigation to support their contention that they were unfairly included within the universe of co-conspirators and joint venturers.  *See* Petitioners' Mot at 14, 18-19; *see also* Press Statement (attached).[10]

---

[10] ISNA's post-trial Press Statement stated that ISNA "never was, and is not now, affiliated with or influenced by any international organizations including the Muslim Brotherhood."  It did not address any of the Muslim Brotherhood documents introduced during the trial that state the contrary.

**GOVERNMENT'S MEMORANDUM IN OPPOSITION TO PETITIONERS ISLAMIC SOCIETY OF NORTH AMERICA AND NORTH AMERICAN ISLAMIC TRUST'S MOTION FOR EQUITABLE RELIEF** **Page 15**

Petitioners' status as co-conspirators/joint venturers, however, is not inconsistent with the government's earlier representations. Even were the Court to agree to strike Petitioners' names from the attachment to the Trial Brief, or seal it, that would not prevent Petitioners' involvement with HLF, and others affiliated with HAMAS, from remaining a matter of public record. That has already occurred as a consequence of the presentation of evidence at trial.[11]

Because this Court is unable to provide Petitioners with any "meaningful relief," as contemplated by law, their motion for equitable relief must be denied.

## III.   PETITIONERS LACKS STANDING

An "essential and unchanging part"of the case-or-controversy requirement is also the doctrine of standing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). To establish standing, a plaintiff must, at an "irreducible constitutional minimum," demonstrate: (1) an injury-in-fact; (2) a causal connection between the injury and the conduct complained of; and (3) a likelihood that the injury will be redressed by a favorable decision. *Lujan*, 504 U.S. at 560-61. The party invoking federal jurisdiction bears the burden of establishing these elements and of coming forward with evidence of specific facts which prove standing. *Grant v. Gilbert*, 324 F.3d 383, 387 (5th Cir. 2003);

---

[11] To be clear, the purpose in introducing this evidence at trial had little to do with ISNA and NAIT. The documents and testimony at issue give the background and context for the conspiracy in which the defendants operated, and constituted evidence as to the defendants' participation in the charged illegal conspiracies. That ISNA and NAIT appeared in these documents and share a common history with these defendants is a reflection of the evidence, not any attempt to "disparage" or "vilify." Pet. Mot. at 12.

*Lujan*, 504 U.S. at 561.

Petitioners have no justiciable claims resulting from the Government's decision not to file the portion of its Trial Brief enumerating unindicted co-conspirators and/or joint venturers under seal.  Even assuming cognizable injury, Petitioners cannot trace its alleged injury to the Trial Brief, versus the public evidence properly admitted during trial. A simple *Google* search for "Muslim Brotherhood" and "Explanatory Memorandum," for example, reveals nearly 1000 "hits" for Government's Exhibit 3-85, with many providing a hyperlink to the document itself.  Broader searches reveal over 250,000 references.  Even articles cited by the Petitioners discuss actual evidence introduced at trial, and not merely the Government's Trial Brief.  *See, e.g.*, Petitioners' Mot., Appendix B, pp. 16-22 (Rod Dreher, *The Muslim Brotherhood is Here*, Pittsburgh Trib. Rev., Sept. 16, 2007; Rod Dreher, *A Nation Asleep*, Dallas Morning News, Oct. 28, 2007; Cal Thomas, *A New Fifth Column?*, Fort Worth-Star-Telegram, Oct. 26, 2007).

Consequently, Petitioners cannot demonstrate any "causal connection between the [alleged] injury and the conduct complained of," such that the injury is "fairly traceable to the challenged action . . . and not the result of the independent action of some third party not before the court."  *See Lujan*, 504 U.S. at 560.

Finally, as discussed in connection with the above mootness argument, and for the reasons set forth therein, there is no likelihood that the Petitioners' alleged injury could be redressed.  Even a favorable decision by this Court to strike Petitioners' names from the

Government's Trial Brief attachment would not remedy Petitioners' alleged injury, as its

involvement as a participant in the conspiracy and/or joint venture has already been

disclosed at trial.  *See, e.g., Lujan*, 504 U.S. at 560-61; *Allen v. Wright*, 468 U.S. 737, 751

(1984) ("The injury must be 'fairly' traceable to the challenged action, and relief from the

injury must be 'likely' to follow from a favorable decision.).  In the absence of

redressibility, and therefore standing, Petitioners' motion must be denied.

## <u>CONCLUSION</u>

For all the foregoing reasons, the Government respectfully requests that this Court

deny Petitioners' Motion for Equitable Relief.

July 11, 2008

Respectfully submitted,

RICHARD ROPER
United States Attorney
Northern District of Texas


By:  */s/ Elizabeth J. Shapiro*
JAMES T. JACKS
BARRY JONAS
ELIZABETH J. SHAPIRO
D.C. Bar 418925
Assistant United States Attorneys
1100 Commerce St., Third Floor
Dallas, Texas 75242
214.659.8600
214.767.2898  (facsimile)
elizabeth.shapiro@usdoj.gov

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 11, 2008, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

Linda Moreno
Law Office of Linda Moreno
P.O. Box 10985
Tampa, Fl. 33679

Joshua L Dratel
Aaron J. Mysliwiec
Law Office of Joshua L Dratel
2 Wall St, 3rd Floor
New York, NY 10005

Nancy Hollander
Theresa M. Duncan
Freedman Boyd Hollander Goldberg & Ives
20 First Plaza, Suite 700
Albuquerque, NM 87102

Marlo P Cadeddu
Law Office of Marlo P Cadeddu
3232 McKinney Ave, Suite 700
Dallas, TX 75204

John D. Cline
Jones Day
555 California St., 26th Fl.
San Francisco, CA. 94104-1500

Greg Westfall
Westfall Platt & Cutrer
Mallick Tower
One Summit Ave, Suite 910
Fort Worth, TX 76102

In addition, I have served on this same day, by electronic mail, the following counsel for third party petitioners Islamic Society of North America and North American Islamic Trust:

Lisa Graybill
Legal Director
ACLU Foundation of Texas
P.O. Box 12905
Austin, TX 78711
LGraybill@aclutx.org

Hina Shamsi
ACLU Foundation
125 Broad Street, 18th Floor
New York, NY 10004
hshamsi@aclu.org

_/s/ Elizabeth J. Shapiro_
ELIZABETH J. SHAPIRO
Attorney, U.S. Dept. Of Justice
