IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA § | |
| § | |
| v. § | |
| § | |
| HOLY LAND FOUNDATION FOR § | |
| RELIEF AND DEVELOPMENT (1) § | |
|    also known as the "HLF" § | NO. 3:04-CR-240-P |
| SHUKRI ABU BAKER (2) § | |
| MOHAMMAD EL-MEZAIN (3) § | |
| GHASSAN ELASHI (4) § | |
| MUFID ABDULQADER (7) § | |
| ABDULRAHMAN ODEH (8) § | |

**DEFENDANTS' JOINT MOTION TO EXCLUDE TESTIMONY OF GOVERNMENT EXPERTS CLAESSEN AND HOFFMAN OR FOR A *DAUBERT* HEARING**

SHUKRI ABU BAKER, MOHAMMAD EL-MEZAIN, GHASSAN ELASHI, MUFID ABDULQADER, AND ABDULRAHMAN ODEH, defendants in the above entitled and numbered cause, through their undersigned attorneys, respectfully move the Court under Fed. R. Evid. 702, 703, and 403 for an Order excluding the testimony of Major Erik A. Claessen Jr. and Dr. Bruce Hoffman or, at a minimum, setting a *Daubert* hearing.[1]

**ARGUMENT**

The government intends to present the purported expert testimony of either Major Claessen or Dr. Hoffman. According to the government's Rule 16 disclosure, the witness will

---

[1] We have previously renewed our motion (Docs. 582, 599) to exclude the government's other experts. *See* Defendants' List of Renewed Motions at 7 (Doc. 1036-2, filed May 30, 2008). Judge Fish addressed that motion, and directed that a hearing be held before the government experts' testimony would be admitted, at *United States v. Holy Land Foundation for Relief and Development*, 2007 U.S. Dist. LEXIS 51184 (N.D. Texas July 16, 2007). Following *Daubert* hearings, Judge Fish permitted government experts Levitt and "Avi" to testify. We renew all of our previous challenges to their proposed expert testimony and seek *Daubert* hearings for all government experts.

DEFENDANTS' JOINT MOTION TO EXCLUDE CLAESSEN/HOFFMAN TESTIMONY –
PAGE 1

(1) describe "the social component of terrorist organizations generally, and how they use seemingly charitable networks to win the support of the local population in order to further the objectives of the organization"; (2) discuss "the general structure of these [terrorist] organizations [including Hezbollah, Hamas, Al Qaeda, Tamil Tigers, IRA, Red Brigades, and others], how they operate social networks, and how the social networks support the overall goals and functioning of the terrorist organization"; (3) discuss "the successes these terrorist organizations have had and compare them to other terrorist organizations that do not utilize social networks"; and (4) "offer an opinion on the true nature of the charity and how, while appearing benign, the charity or social network of these organizations has an ulterior purpose."[2] According to the government, this proposed testimony "will assist the jury in understanding that the model by which terrorist organizations successfully use charity to promote their objectives mirrors the model used by Hamas and supported by defendants." G. Notice 2.

Defendants seek an Order under Fed. R. Evid. 401, 402, 403, 702, and 703, the Fifth Amendment Due Process Clause, and the Sixth Amendment Confrontation Clause either excluding this largely irrelevant and obviously inflammatory testimony or, in the alternative, setting a hearing at which to determine the admissibility of the expert's proposed testimony under the principles set forth in Rule 702, *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999).[3]

---

[2] Government's Second Supplemental Notice of Expert Witness Testimony at 2 (Doc. 1071, filed June 20, 2008) ["G. Notice"].

[3] This motion is being filed now in conformance with the Court's deadline. However, due to lack of funding, counsel has not yet had the opportunity to investigate these experts and may wish to amend this motion at a reasonable time after the Fifth Circuit has approved the budgets for the four indigent defendants.

DEFENDANTS' JOINT MOTION TO EXCLUDE CLAESSEN/HOFFMAN TESTIMONY –
PAGE 2

## ARGUMENT

I. **THE COURT SHOULD EXCLUDE PORTIONS OF THE PROPOSED TESTIMONY UNDER RULES 401, 402, AND 403.**

The Court should exclude substantial portions of the proposed Claessen/Hoffman testimony under Fed. R. Evid. 401, 402, and 403. That testimony represents the government's latest effort to import into this case Al Qaeda and other notorious terrorist groups to which defendants have absolutely no connection. The proposed testimony about terrorist groups other than Hamas has little (if any) probative value and will cause enormous unfair prejudice.

Rule 401 of the Federal Rules of Evidence defines "relevant" evidence as evidence "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. Rule 402 requires the exclusion of irrelevant evidence. And Rule 403 permits the exclusion of relevant evidence when its "probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

Rule 403 plays an especially important role with respect to expert testimony. As the Supreme Court declared in *Daubert*: "Expert evidence can be both powerful and quite misleading because of the difficulty in evaluating it. Because of this risk, the judge in weighing possible prejudice against probative force under Rule 403 . . . exercises more control over experts than over lay witnesses." 509 U.S. at 595 (quotation omitted); *see, e.g., Brock v. Caterpillar, Inc.*, 94 F.3d 220, 226 (6th Cir. 1996).

The Court should exclude most, if not all, of the proposed Claessen/Hoffman testimony under Rules 401, 402, and 403 and the Fifth Amendment Due Process Clause. To the extent the

DEFENDANTS' JOINT MOTION TO EXCLUDE CLAESSEN/HOFFMAN TESTIMONY –
PAGE 3

testimony specifically addresses Hamas' alleged use of the zakat committees in this case during the period at issue, it may be relevant. But testimony about alleged similarities between (on one hand) Hamas' purported relationship with the zakat committees in this case and (on the other hand) relationships *other* terrorist groups supposedly maintain with *other* charitable organizations is completely *irrelevant* to the issues in this case.

Not only does the proposed testimony about the other terrorist organizations lack relevance; it is enormously and unfairly prejudicial. By falsely suggesting a connection between the defendants and Al Qaeda and other notoriously brutal terrorist groups, the Claessen/Hoffman testimony will inflame and confuse the jury and thus unfairly damage the defendants. In that manner the government seeks to exploit a generalized antipathy for and fear of terrorism as a substitute for specific evidence about these defendants, and the *zakat* committees at issue in this case.

Recently, in *United States v. Amawi*, 541 F. Supp. 2d 945, 951 (N.D. Oh. 2008), the court precluded expert testimony in part because—in a case like this one, in which the government proffered expert testimony about terrorist organizations with which the defendants were not linked—"the risk of very unfair prejudice substantially outweighs any such probative value [of the expert testimony]." As the court in *Amawi* recognized, "[f]ew terms have a greater inherent risk of prejudgment than terrorism, terrorist, jihad, and Al-Quaeda." *Id.* The court also pointed out that, if exposed to such testimony, the jury "might be induced . . . to perceive a link between the group[s] producing the materials and the defendants[,]" a link "that otherwise is not found in the evidence." *Id.* Thus, the testimony was precluded because it "could manifestly color [the jury's] ability to weigh the evidence objectively." *Id.*

DEFENDANTS' JOINT MOTION TO EXCLUDE CLAESSEN/HOFFMAN TESTIMONY – PAGE 4

The same danger exists here. Accordingly, it is respectfully submitted that the Court should exclude the Claessen/Hoffman testimony about other terrorist organizations under Rules 401 through 403 and as a matter of due process.

## II. THE COURT SHOULD EXCLUDE PORTIONS OF THE PROPOSED CLAESSEN/HOFFMAN TESTIMONY UNDER RULE 703 AND *CRAWFORD*.

Rule 703 of the Federal Rules of Evidence governs the kinds of facts or data on which an expert may rely in formulating an opinion. As amended in 2000, Rule 703 requires that such underlying facts or data must be "of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject." If the underlying facts or data are otherwise inadmissible, the expert may not disclose them to the jury "unless the court determines that their probative value in assisting the jury to evaluate the expert's opinion substantially outweighs their prejudicial effect." Fed. R. Evid. 703.

This portion of Rule 703 "provides a presumption against disclosure to the jury of information used as the basis of an expert's opinion and not admissible for any substantive purpose, when that information is offered by the proponent of the expert." Fed. R. Evid. 703, advisory committee note; *see, e.g., Turner v. Burlington Northern Santa Fe Railroad Co.*, 338 F.3d 1058, 1062 (9th Cir. 2003); *see also, e.g., Plourde v. Gladstone*, 190 F. Supp. 2d 708, 720-21 (D. Vt. 2002) (expert opinion inadmissible when it "amounts to nothing more than inadmissible 'hearsay in disguise' under Rule 703"; citing cases), *aff'd on reconsideration*, 2002 U.S. Dist. LEXIS 26688 (D. Vt. 2002), *aff'd mem.*, 69 Fed. Appx. 485 (2d Cir. 2003).

The proposed Claessen/Hoffman opinions appear to rest heavily on inadmissible hearsay. Among the bases for their opinions, for example, are "interviews of individuals who are part of these organizations and/or part of the governments where these organizations are located," "review of written material by terrorist leaders and public interviews of the same," and "review

of material authored by . . . lay individuals who live in the areas where these groups operate." G. Notice at 2. All of this material---and very likely other material on which the Claessen/Hoffman opinions rest---is patently inadmissible under Fed. R. Evid. 801 and 802.

At a *Daubert* hearing, the Court should determine whether this hearsay is "of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject." Fed. R. Evid. 703; *see, e.g., Jinro America, Inc. v. Secure Investments, Inc.*, 266 F.3d 993, 1006 (9th Cir. 2001) (rejecting purported expert testimony based on newspapers and other unreliable sources). Even if the Court concludes that some or all of the hearsay on which Claessen/Hoffman rely meets this standard, it should bar them from testifying about the inadmissible hearsay on which they rely. The government has not established that the "probative value [of the interviews and other hearsay] in assisting the jury to evaluate the expert's opinion substantially outweighs their prejudicial effect." Fed. R. Evid. 703. Because the government has not overcome the Rule 703 presumption against admission of hearsay on which an expert relies, Claessen/Hoffman may not testify on direct examination about the bulk of the materials on which they rely.

Disclosure of the information on which Claessen/Hoffman rest their opinions would also violate the defendants' Sixth Amendment right to confront and cross-examine the witnesses against them, as set forth in *Crawford v. Washington*, 541 U.S. 36 (2004). As Judge Fish observed in ruling on defendants' motion to exclude expert testimony before the first trial, "[T]o allow [an expert] to transmit to the jury otherwise inadmissible testimonial hearsay under the guise of expert testimony would deprive the defendants of their right to confront and cross-examine the out-of-court speakers." *United States v. Holy Land Foundation for Relief and Development*, 2007 U.S. Dist. LEXIS 51184, at *19 (N.D. Texas July 16, 2007); *see, e.g., United*

*States v. Dukagjini*, 326 F.3d 45, 56-59 (2d Cir. 2002) (applying pre-*Crawford* Confrontation Clause analysis to expert testimony); Ross A. Oliver, *Testimonial Hearsay as the Basis for Expert Opinion: The Intersection of the Confrontation Clause and Rule 703 After Crawford v. Washington*, 55 Hastings L.J. 1539 (2004). In addition, the materials relied upon by Claessen/Hoffman, which by the government's admission include "interviews of individuals who are . . . part of the governments where these organizations are located," raise the specter of these witnesses' testimony constituting an impermissible "end run" around the strictures of Rule 803(8)(B), which prohibit in criminal cases the admission (by the government) of "matters observed by police officers and other law enforcement personnel[.]" *See also United States v. Paracha*, 2006 WL 12768, at *22 (S.D.N.Y. January 3, 2006) (unpublished) ("[w]hen an expert's conclusions are drawn largely from his knowledge of materials in the government's case file, 'rather than upon his extensive general experience' in the field, those conclusions are beyond the proper limits for expert testimony"), *quoting United States v. Dukagjini,* 326 F.3d 45, 55 (2d Cir. 2002).

Although we cannot determine without a *Daubert* hearing the extent to which Claessen/Hoffman rely on "testimonial" out-of-court statements of the kind that *Crawford* prohibits, it appears that at least some of the "interviews of individuals who are part of these [terrorist] organizations and/or part of the governments where these organizations are located" would constitute "testimonial" hearsay and thus violate the *Crawford* proscription. *See Paracha*, 2006 WL 12768, at *22. The Court should bar Claessen/Hoffman from testifying about any such out-of-court statements.

### III. THE COURT SHOULD EXCLUDE THE REMAINDER OF THE PROPOSED CLAESSEN/HOFFMAN TESTIMONY UNDER RULE 702 OR, IN THE ALTERNATIVE, CONDUCT A *DAUBERT* HEARING WITH RESPECT TO THEIR OPINIONS.

As the preceding parts demonstrate, much of the proposed Claessen/Hoffman testimony is inadmissible under Fed. R. Evid. 401, 402, 403, and 703 and under the Fifth and Sixth Amendments. The Court should either preclude their remaining opinions under Rule 702 or conduct a *Daubert* hearing with respect to those opinions.

Rule 702 of the Federal Rules of Evidence provides that "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue," then a properly qualified expert may offer an opinion, "if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." Fed. R. Evid. 702; *see, e.g., Smith v. Goodyear Tire & Rubber Co.*, 495 F.3d 224, 227 (5th Cir. 2007). In determining whether proposed expert testimony satisfies Rule 702, a court may consider a series of factors, including:

> (1)  "whether the expert's technique or theory can be or has been tested--that is, whether the expert's theory can be challenged in some objective sense, or whether it is instead simply a subjective, conclusory approach that cannot reasonably be assessed for reliability";
>
> (2)  "whether the technique or theory has been subject to peer review and publication";
>
> (3)  "the known or potential rate of error of the technique or theory when applied";
>
> (4)  "the existence and maintenance of standards and controls";
>
> (5)  "whether the technique or theory has been generally accepted in the scientific community";

(6)     whether the expert is "proposing to testify about matters growing naturally and directly out of research [he has] conducted independent of the litigation, or whether [he has] developed [his] opinion expressly for purposes of testifying";

(7)     whether the expert has "unjustifiably extrapolated from an accepted premise to an unfounded conclusion";

(8)     whether the expert "has adequately accounted for obvious alternative explanations";

(9)     whether the expert "is being as careful as he would be in his regular professional work outside his paid litigation consulting"; and

(10)    "[w]hether the field of expertise claimed by the expert is known to reach reliable results for the type of opinion the expert would give."

Fed. R. Evid. 702, advisory committee note (quotations omitted); *see, e.g., Kumho Tire*, 526 U.S. at 149-58; *Daubert*, 509 U.S. at 592-95; *Hathaway v. Bazany*, 507 F.3d 312, 317-18 (5th Cir. 2007).

Although "[t]hese factors are not mandatory or exclusive," the "existence of sufficient facts and a reliable methodology is in all instances mandatory." *Id.* at 318. Given the skeletal nature of the government's expert notice, an assessment of the proposed Claessen/Hoffman testimony must await a *Daubert* hearing. Even at this point, however, there is reason to doubt that their testimony will survive scrutiny under Rule 702. Assuming for the moment that they are properly qualified to opine on the noticed subjects and that some portion of their proposed testimony would be helpful to the trier of fact---points that can be explored at the hearing---there is no basis for concluding that the Claessen/Hoffman testimony meets the other Rule 702 requirements.

First, the proposed testimony does not appear to be "based upon sufficient facts or data." As noted above, Claessen/Hoffman appear to have rested their opinions in significant part on interviews and other forms of hearsay, including "testimonial" hearsay of the sort condemned in *Crawford*, the reliability of which must be carefully scrutinized. Second, it is doubtful that the

DEFENDANTS' JOINT MOTION TO EXCLUDE CLAESSEN/HOFFMAN TESTIMONY – PAGE 9

Claessen/Hoffman testimony "is the product of reliable principles and methods." A review of the government's Rule 16 disclosure reveals no particular "principles" or "methods" that the witnesses used to formulate their opinions concerning the matters on which they propose to testify, much less "reliable" principles or methods. Third, in the absence of any discernable "principles" or "methods," there is no reason to conclude that Claessen/Hoffman have "applied the [as yet unidentified] principles and methods reliably to the facts of the case." Fed. R. Evid. 702.[4] Finally, the concerns raised *ante* with respect to the foundation of the experts' opinions (*i.e.*, culled from the government's case file or some similar repository, *see Paracha*) and the dangers of such testimony being used to evade the restrictions set forth in Rule 803(8)(B), obtain here as well.

Nor, without a *Daubert* hearing, can the Court assess the ten factors set out in the advisory committee note to Rule 702 or determine what other factors might appropriately be considered in determining reliability.[5] Accordingly, it is respectfully submitted that, in the event the Claessen/Hoffman testimony is not excluded for the reasons set forth in parts I and II of this motion, the Court should conduct a *Daubert* hearing to determine whether such testimony is admissible.

---

[4] Any relevant portion of the witnesses' testimony may also be cumulative, since Matthew Levitt, a government expert witness at the first trial, claims to be an expert regarding Hamas and the nature and importance of its "social network."

[5] Counsel requests that no *Daubert* hearing be set until a reasonable time after the Fifth Circuit has approved the CJA budgets for the four indigent defendants that permits counsel sufficient resources to prepare for that hearing. Counsel cannot adequately represent their respective clients without fully investigating these new government experts, reviewing their writings, investigating their credentials and consulting with defendants' own experts to determine whether the defendants will need to present countervailing expert testimony or additional evidence at the hearing.

## CONCLUSION

For the foregoing reasons, the Court should exclude the proposed Claessen/Hoffman testimony or, in the alternative, conduct a *Daubert* hearing with respect to that testimony.

Respectfully submitted,

/s/ Theresa M. Duncan
NANCY HOLLANDER
New Mexico Bar Card No. 1185
Email: nh@fbdlaw.com
JOHN W. BOYD
New Mexico Bar Card No. 286
Email: jwb@fbdlaw.com
THERESA M. DUNCAN
New Mexico Bar Card No. 12444
Email: tmd@fbdlaw.com
FREEDMAN BOYD
HOLLANDER GOLDBERG & IVES P.A.
20 First Plaza, Suite 700
Albuquerque, New Mexico 87102
Office: 505.842.9960
Fax: 505.842.0697
ATTORNEYS FOR DEFENDANT
SHUKRI ABU BAKER (02)

JOSHUA L. DRATEL
New York Bar Card No. 1795954
AARON J. MYSLIWIEC
New York Bar Card No. 4168670
Law Office of Joshua L. Dratel
2 Wall St.
3rd Floor
New York, NY 10005
Office: 212.732.0707
Email: jdratel@joshuadratel.com
ATTORNEYS FOR DEFENDANT
MOHAMMAD EL-MEZAIN (03)

LINDA MORENO
Florida Bar 0112283
LINDA MORENO, P.A.
P.O. Box 10985
Tampa, Fl 33679
Office: 813.247.4500

DEFENDANTS' JOINT MOTION TO EXCLUDE CLAESSEN/HOFFMAN TESTIMONY –
PAGE 11

Email: linbianca@aol.com

JOHN D. CLINE
California Bar No. 237759
JONES DAY
555 California Street, 26th Floor
San Francisco, CA 94104-1500
(415) 626-3939 (Telephone)
(415) 875-5700 (Facsimile)
jcline@jonesday.com (Email)
ATTORNEYS FOR DEFENDANT
GHASSAN ELASHI (04)

MARLO P. CADEDDU
Texas Bar Card No. 24028839
LAW OFFICE OF MARLO P. CADEDDU, P.C.
3232 McKinney Avenue, Suite 700
Dallas, TX 75204
Office: 214.220.9000
Fax: 214.744.3015
Email: cadeddulaw@sbcglobal.net
ATTORNEY FOR DEFENDANT
MUFID ABDULQADER (07)

GREG WESTFALL
Texas Bar Card No. 00788646
WESTFALL, PLATT & CUTRER
101 Summit Avenue, #910
Fort Worth, TX 76102
Office: 817.877.1700
Fax: 817.877.1710
Email: westfall@wpcfirm.com
ATTORNEY FOR DEFENDANT
ABDULRAHMAN ODEH (08)

## CERTIFICATE OF CONFERENCE

I certify that counsel has previously discussed the relief requested in the instant motion with counsel for the government, Barry Jonas, and he is opposed to this relief.

/s/ Theresa M. Duncan
THERESA M. DUNCAN

## CERTIFICATE OF SERVICE

I hereby certify that on July 14, 2008, I caused to be electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

                          /s/ Theresa M. Duncan
                          THERESA M. DUNCAN