18:00  1              IN THE UNITED STATES DISTRICT COURT

       2              FOR THE NORTHERN DISTRICT OF TEXAS

       3                      DALLAS DIVISION

       4
          UNITED STATES OF AMERICA      (    NUMBER 3: 04-240-G
       5                                 (
                                         (
       6    VERSUS                       (
                                         (
       7    HOLY LAND FOUNDATION, ET AL. (    July 20, 2007
       8

       9    _____

18:00
       10                            VOLUME 5
                                VOIR DIRE EXAMINATION
       11             BEFORE THE HONORABLE A. JOE FISH
            _____

       12

       13   A P P E A R A N C E S:

       14
            For the Government:    MR. JIM JACKS
       15                          MR. BARRY JONAS
                                   MS. ELIZABETH SHAPIRO
       16                          MR. NATHAN GARRETT
                                   Assistant United States Attorney
       17                          UNITED STATES DEPARTMENT OF JUSTICE
                                   NORTHERN DISTRICT OF TEXAS
       18                          U.S. Courthouse
                                   1100 Commerce Street
       19                          Dallas, Texas 75242
                                        214/659-8600
       20

       21   For the Defendant Shukri Baker:

       22
                                   MS. NANCY HOLLANDER
       23                          MS. TERESA DUNCAN
                                   FREEDMAN BOYD DANIELS
       24                          HOLLANDER
                                   20 First Plaza, Suite 700
       25                          Albuquerque, NM 87102
                                        505/842-9960

```
18:00  1    For the Defendant El-Mezain:

       2
                                    MR. JOSHUA DRATEL
       3                            MR. AARON J. MYSLIWIEC
                                    LAW OFFICE OF JOSHUA L. DRATEL
       4                            14 Wall Street, 28th Floor
                                    New York, NY 10005
       5                                 212/732-0707

       6
            For the Defendant Mufid Abdulqader:
       7

       8                            MS. MARLO CADEDDU
18:00                               LAW OFFICE OF MARLO P. CADEDDU
       9                            3232 McKinney Avenue, Suite 700
                                    Dallas, Texas 75204
      10                                 214/744-3015

      11    For the Defendant Elashi:

      12
                                    MS. LINDA MORENO
      13                            LAW OFFICE OF LINDA MORENO
                                    PO BOX 10985
      14                            Tampa, Florida 33679
                                         813-247-4500
      15
                                    MR. JOHN D. CLINE
      16                            Jones Day
                                    555 California St
      17                            26th Floor
                                    San Francisco, CA 94104-1500
      18                                 415/875-5812

      19    For the Defendant Odeh:

      20                            MR. GREG WESTFALL
                                    WESTFALL PLATT CUTRER
      21                            Mallick Tower
                                    One Summit Avenue, Suite 910
      22                            Fort Worth, Texas 76102
                                         817/877-1700
      23
            Court Reporter:         Cassidi L. Casey, CSR No. 1703
      24                            1100 Commerce Street, Rm 15D6L
                                    Dallas, Texas 75242
      25                                 214-254-3139
```

18:00  1                    P R O C E E D I N G S:

2              THE COURT:  Good morning, Ladies and Gentlemen.

3    I asked you to come this morning before ten o'clock

4    because Ms. Hudson told me earlier this morning that she

5    had received a phone call from Ms. Hollander to the effect

6    that Ms. Hollander thought we needed to resolve the

7    question of attorney representation for some of the

8    defendants and their counsel before counsel were

9    introduced to the jury panel, and I agree with that.  I

10   didn't want to keep the jury panel waiting to start this

11   at ten o'clock, and that's why I asked you to be here at

12   an earlier time.

13              Ms. Hollander, do you have anything to say about

14   that issue?

18:00 15              MS. HOLLANDER:  Your Honor, all I can say is

16   that if there is no one here to represent Holy Land since

17   we don't know exactly what its status is we can't

18   represent Holy Land.

19              THE COURT:  We being you and who else?

20              MS. HOLLANDER:  We being my law firm, myself and

21   Teresa Duncan and John Boyd, who's not in the courtroom --

22   the lawyers in my office.  Since the government has raised

23   this and is concerned that we need waivers on the record

24   by your Honor asking questions, and there is no one to

25   answer those questions on behalf of Holy Land.  Since the

18:00 1    government is concerned about it we're concerned about it.

2    So we can't represent Holy Land under those circumstances.

3            THE COURT:  Mr. Jonas.

4            MS. SHAPIRO:  Honestly, I'm not sure how we

5    proceed when it comes to Holy Land, but I think we would

6    like to see because there was a joint representation up to

7    this point with the defendant Shukri Abu Baker that at

8    least he be questioned by the Court so that there is no

9    issue with regard to his counsel.  With regard to Holy

10    Land Foundation, I don't know what we do.  Maybe remain

11    unrepresented for the trial.

12            MS. HOLLANDER:  Your Honor, I think in light of

13    what the government has said, and we have no problem with

14    your Honor questioning Mr. Baker although we do believe

18:00 15    that should be ex parte in chambers if your Honor

16    questions him, but based on what the government has said,

17    we will simply withdraw from representing Holy Land and

18    represent Mr. Baker, and your Honor can question him if

19    you wish.  I remind the Court he did sign a waiver.

20            THE COURT:  A waiver of what?

21            MS. HOLLANDER:  Of conflict.

22            THE COURT:  Well, if you propose to withdraw

23    from representing the Holy Land Foundation at this point,

24    I don't know that I really need to question him.  The only

25    questioning that I felt was necessary was that which I

18:00   1   typically do as required by Rule 44 when there is joint

  2   representation to be sure that each of the defendants

  3   who's jointly represented understands the hazards of that

  4   representation. But if there is to be no joint

  5   representation at trial, I'm not sure that I see the

  6   necessity for that, and if I do engage in such

  7   questioning, I don't see the necessity to do it ex parte.

  8   I typically do it in the courtroom during arraignment when

  9   it is necessary.

  10          MS. HOLLANDER: That's fine with us, if you

  11   don't want to question him, your Honor, but we will

  12   withdraw from representing Holy Land at this time. Ms.

  13   Duncan and I will continue to represent Mr. Baker.

  14          THE COURT: Let me while we're on that subject

18:00  15   be sure that I am correct later this morning in who I

  16   introduce as representing what defendants. Because as I

  17   said at an earlier conference, I'm not sure our docket

  18   sheet is completely up to date. In fact, I checked it

  19   again this morning, and that may be the clerk's office's

  20   fault. I'm not saying that counsel bear any

  21   responsibility for that. But the docket sheet I think as

  22   of this morning reflected that Holy Land was represented

  23   by John Boyd, Nancy Hollander and Josh Dratel and Mr.

  24   Baker was represented by Nancy Hollander and John Boyd.

  25   So I guess on Holy Land, I can simply say that it is

18:00 1    unrepresented.

2              MS. HOLLANDER:  Your Honor, I believe that's an

3    error.  I don't know where the error originated.  But the

4    lawyers who represent Holy Land are the same lawyers who

5    represent Shukri Abu Baker, and it's my law firm.  So it's

6    myself, Teresa Duncan and John Boyd.  I'm not sure how

7    Joshua Dratel's name got in there.

8              THE COURT:  I don't know either.

9              MS. HOLLANDER:  So as it would stand now, my law

10   firm -- John Boyd who's not going to be in court or at

11   counsel table.  But John Boyd, Teresa Duncan and I

12   represent Shukri Abu Baker, and in terms of introductions

13   to the jury it will simply be Teresa Duncan and Nancy

14   Hollander.

18:00 15             THE COURT:  So Mr. Boyd will not be

16   participating?

17             MS. HOLLANDER:  At counsel table, that's

18   correct.

19             THE COURT:  I guess I need not include his name.

20   And then Mr. El Mezain, I have Joshua Dratel and Mr.

21   Mysliwiec.  Then I have Mr. Odeh represented by Mr.

22   Westfall and Mr. Abdulqader represented by Ms. Cadeddu.

23   And Ms. Moreno and Mr. Cline representing Mr. Elashi.

24             MR. JACKS:  Your Honor, I am going to want to

25   address some of the issues with regard to the

18:00 1     representation issue.  I can wait.

2           THE COURT:  I think I am finished.  I was told

3     you had other issues, but I wasn't told what they were.

4           MR. JACKS:  Yes, your Honor.  The reason it is

5     being brought up now is simply that it is something that

6     has only recently I guess -- the extent of this practice

7     or whatever has come to light.  I believe it was earlier

8     this week that Ms. Duncan filed an entry of appearance in

9     which she filed two forms, one indicating that she was

10    appearing as a retained attorney for the Holy Land

11    Foundation, and the second page of that indicated she was

12    appearing as appointed attorney for Shukri Abu Baker.  The

13    government has never been served or seen any notice or

14    paperwork from the Court showing that Ms. Duncan has been

18:00 15    appointed by the Court to represent Shukri Abu Baker.  Ms.

16    Hollander has at various times claimed that her firm was

17    appointed, and I don't believe that is the accurate

18    statement.  A law firm cannot be appointed.  Only an

19    attorney can be appointed.  In addition, with regard to

20    Mr. Mysliwiec -- I apologize for mispronouncing his name

21    as well.  Mr. Dratel's associate, Mr. Mysliwiec.  He also

22    entered last Thursday, and the Court raised the question

23    of how many attorneys is an indigent entitled to, and it's

24    the government's understanding only in a capital case is a

25    defendant entitled to more than one attorney.  The Court

18:00 1    asked Mr. Dratel about that, and he really didn't respond.

2            THE COURT:  Well, I have done some more research

3    on that, and so I can bring you up to date on what I know

4    about that.  After I had that colloquy with counsel in the

5    courtroom, I talked with Magistrate Judge Stickney, who as

6    you know has had a large role in handling the pretrial

7    part of this case, and Judge Stickney told me that in

8    certain circumstances a second counsel can be appointed in

9    a noncapital case, and in fact, I had signed an order

10   approving the appointment of Mr. Mysliwiec in this case

11   and that he was supposed to be -- as I understood Judge

12   Stickney's phrase, that he was supposed to be sort of a

13   swing attorney.  There was so much work that maybe he was

14   going to be assisting more than just Mr. Dratel in the

18:00 15   case.  I was afraid I had exceeded my authority or the

16   Court had in appointing more than one attorney to

17   represent Mr. El Mezain, but according to Judge Stickney,

18   that's not true.

19           MR. JACKS:  That was my impression, that a lot

20   of this was not something necessarily that your Honor had

21   been involved with which leads me to my second point.

22   Again, the government has received no indication, no

23   pleadings from the clerk's office or the magistrate's

24   office indicating that Mr. Mysliwiec had been appointed,

25   and even if it was entirely proper and within the Court's

18:00 1    rules, it's difficult to see why that type of a pleading

2    would have to be kept from the government and done through

3    an ex parte procedure, and I don't know if the Court takes

4    a step back and looks at the record -- and the government

5    has made this point for quite some time in this case --

6    you have attorneys who have entered this case as retained

7    attorneys from out of district and suddenly or quickly

8    become appointed attorneys again without any participation

9    or knowledge or notice to the government.  And I think

10    even Mr. Westfall entered the case as a retained attorney

11    and was eventually appointed, and it could certainly lead

12    one to the belief that the defendants or defense counsel

13    is choosing counsel to represent certain defendants, and I

14    don't believe other indigent defendants are afforded that

18:00 15    opportunity.  But be that as it may, I looked at the

16    docket sheet, and the docket entries are in the low seven

17    hundreds now, and probably a full one third of those

18    entries are ex parte sealed matters that have not been

19    disclosed to the government.  The government raised that

20    point more than once with the Court, and on in the case

21    the government was advised that the CJA entries were

22    merely bills that were being submitted for payment under

23    the CJA act.

24           THE COURT:  I still believe that to be the case.

25    I have not gone back and looked at those entries.

18:00 1    Everything you say is consistent with my knowledge of the
2    case, but there have been a lot of bills, I can tell you,
3    because I have to personally review them and sign off on
4    them.

5              MR. JACKS:  I understand.  Your Honor, there has
6    been other ex parte pleadings filed by the defendant, and
7    there has been some filed by the government.  The only
8    motion filed by the defense requesting permission to file
9    an ex parte motion was one filed early on in 2004.  It
10    does not show that it was served on the government.  It
11    does not show that there was a certificate of conference.
12    It does not state what the purpose of the motion is or
13    even the subject matter of the motion.  The government has
14    made at least three ex parte motions with the Court.  All
18:00 15    of them have been pursuant to the CIPA statute which it
16    was required to do.  The motions were served upon the
17    defendant.  They knew the nature of what the government
18    was asking to do, and they had an opportunity and in fact
19    did file a responsive pleading.  None of that has happened
20    with regard to the ex parte material and contacts that the
21    defense may have had with this Court or with the
22    magistrate judge.

23              About a week and a half ago, we were informed
24    that Mr. Cline was going to be entering the case and that
25    Mr. Cline had, in fact, signed a memorandum of

18:00 1    understanding some months ago, years ago in this case.

2    That memorandum of understanding was nowhere to be found

3    among the pleadings in this Court.  The government

4    obtained a copy of that memorandum of understanding

5    showing that it was filed on August 30th of 2006.  When

6    you go back and look at the docket, the only thing filed

7    on that date was something ex parte sealed, and it was

8    referred to as a CJA filing.  Well, a memorandum of

9    understanding saying you have read the protective order

10    and intend to abide by it is not a sealed filing.  The

11    government requires notification before anybody is given

12    access to classified material.  Clearly, that was not done

13    in this case, and Mr. Cline's previous involvement in this

14    case was totally unknown to the government, and we believe

18:00 15    that's a violation of the protective order.

16            Again, the government raised the issue with the

17    Court last week in the course of the hearings.  I believe

18    it was in regard to the Kastigar or attorney-client

19    situation.  According to the record now, the Holy Land

20    Foundation up until today had a retained attorney.  Mr.

21    Elashi had a retained attorney.  First Mr. Evans and then

22    Ms. Moreno, and then as recently as ten days or two weeks

23    ago, Mr. Cline enters as an additional retained attorney

24    for Mr. Elashi.  And the government has reason to believe,

25    as we stated, that Ms. Moreno and Mr. Cline are being paid

18:00  1   by this Muslim Legal Fund of America.  Even if a person --

2   Even if the money to pay a retained lawyer comes from

3   donors or friends, at some point in time the defendant

4   would have to agree to accept that money, and it becomes

5   discretionary with him.  So I don't believe that a legal

6   defense fund can determine who an attorney is going to

7   represent.  At some point in time the defendant would have

8   to agree, and essentially that money would have to have

9   been expended on behalf of the defendant.

10          It appears, your Honor, that there has been a

11   manipulation at least of the CJA system.  If this legal

12   defense fund wants to pay for a lawyer to represent some

13   of these parties but not cut into the taxpayers paying for

14   part of the attorneys, it seems like they have done a good

18:00 15   job of that in the sense that they have -- rather than

16   having Mr. Cline represent one of the appointed indigent

17   defendants, he simply comes on as an additional lawyer for

18   a client who already has a retained attorney.  There is

19   nothing the government can do about that, but I think

20   that's something the Court clearly has the authority to

21   look into and make inquiry about the circumstances

22   surrounding whether or not there was manipulations of

23   lawyers and manipulations where lawyers come into the case

24   saying we have been retained and then automatically say a

25   few weeks later, oh, my client is indigent now, will you

18:00 1    appoint me. I simply bring up all of these because I

2    think when you step back and look at the totality of the

3    circumstances, quite frankly, your Honor, the government

4    is very concerned about the degree of ex parte filings,

5    the fact that none of these filings have been pursuant to

6    a motion. I understand that the local rules allow a court

7    to seal anything that the parties request and show good

8    cause for. It may require a motion or simply saying can

9    this be filed under sealed. Sealing is one thing. Doing

10    it in an ex parte fashion is an entirely different thing.

11    I can imagine if the shoe was on the other foot and the

12    government was having constant ex parte contact with

13    either the magistrate court or this Court, the reaction of

14    the defendants and rightfully so. The courts have said

18:00 15    that ex parte contact with the Court should be something

16    that is extremely rare, and I don't think you can say that

17    in this case. I have come across an article that Mr.

18    Dratel wrote for the New York Law School Review 2003/2004,

19    entitled "Turning the Tables: Using the Government's

20    Secrecy and Security Arsenal for the Benefit of the Client

21    in Terrorism Prosecutions," and he talks about using this

22    ex parte contact with the Court as a strategic device.

23    Even to the point that if you can get the court to appoint

24    an expert, it's unlikely the court is going to exclude

25    that expert if the Court has already paid for that expert.

18:00   1    So it appears this is not some impromptu strategic

2    procedure.  It's been planned.  The government has been

3    raising this question throughout this litigation.  We have

4    made the point over and over that the defendants have

5    never filed a motion even giving the government notice

6    that we're going to have an ex parte contact with the

7    Court, we just want to let you know about it and this is

8    the subject matter.  So the government is completely in

9    the dark regarding how many ex parte pleadings there has

10    been with the Court or magistrate court or what the

11    subject matter has been, whether or not the government had

12    anything to add or contribute, and as I said, your Honor,

13    I guess one of the things that really tipped the scale in

14    this regard is finding out that Mr. Cline, even though he

18:00 15    was not an attorney of record in this case was somehow --

16    he somehow signed a memorandum of understanding to view

17    the classified material totally unknown to the government.

18    Clearly, I would submit in violation of the protective

19    order which says that anybody that is going to have access

20    to that material the government has to be notified if they

21    have to sign a memorandum of understanding.

22          In terms of -- What does the government want the

23    Court to do about it?  Well, I don't know what you can do

24    about it at this point in time.  I simply want the Court

25    to be made aware of it, and as far as a remedy, we would

18:00 1    ask the defense be required to file a motion specifying

2    each and every ex parte contact with the Court, each ex

3    parte submission, the grounds for that submission so that

4    at least at this phase the government can be aware of the

5    degree of ex parte contact between defense counsel and the

6    Court.  And we don't know if we have an objection or not.

7    But you know, you can't even respond to that if you don't

8    know what the contact was.

9         THE COURT:  Mr. Jacks, it's about four minutes

10    to ten.  I don't want to be late in starting this general

11    voir dire session.  I don't think this is something I need

12    to resolve before the jury comes up.  I don't want to cut

13    you off.  If you have more to say, I'll hear it at a later

14    time.

18:00 15        MR. JACKS:  The last thing I have to say would

16    be to -- There was a Supreme Court case that addressed

17    this topic, and essentially the Supreme Court said the

18    adversary process is not a poker game and not something

19    where one side can hide their cards and hold back their

20    strategy until they get to see what the other side is

21    going to do, that there is a right on both sides for a

22    free flow of discovery and exchange, and we believe that

23    simply has not taken place in this case.  That's all I

24    have, your Honor.

25         THE COURT:  Mr. Jacks, I have had a lot more

18:00 1   exposure to the Criminal Justice Act in this case than any

2   other case assigned to me.  Judge Stickney has had a very

3   active role in managing this case for me, including for

4   the most part the CJA matters.  So if you want to pursue

5   some relief on this, I am going to refer you to Judge

6   Stickney because he really is more knowledgeable about

7   this than I.  And as you know, he was defense counsel

8   before he came on the Bench.  So I think he's more

9   familiar with the CJA than I am.  We can do that by having

10   Ms. Casey preparing a transcript of your remarks, and I

11   can refer it to him in a formal way or you can go over and

12   tell him what you have told me, and I'm sure he would

13   listen to you.  I don't know in what respect he is aware

14   of it.  Certainly more than I because he sees the CJA's in

18:00 15   the first instance.  Like you, I was unaware that Mr.

16   Cline had signed this memorandum of understanding a year

17   ago, and I don't know anything about that.  So if you

18   think there is a violation of the protective order and you

19   want to pursue that, I would refer that to Judge Stickney

20   in the first instance for his recommendation to me.

21         MR. JACKS:  Yes, your Honor.

22         THE COURT:  Ladies and Gentlemen, let's take a

23   brief recess while the jury panel is brought to the

24   courtroom and then we will commence general voir dire.

25         (Recess)

18:00 1          THE COURT:  Good morning, Ladies and Gentlemen.

2     We have already talked to all of you individually, but as

3     a group you are now the panel from which the jury in this

4     case will be selected.  So let me first formally welcome

5     you to the United States District Court for the Northern

6     District of Texas, Dallas Division.  I don't think we took

7     the time to do that when you were up here and we talked to

8     you individually.

9          As you heard, my name is Joe Fish, and I will be

10    presiding over the trial, and in just a moment I will

11    introduce to you the other people who will be

12    participating in the trial so that I can ask you whether

13    you are acquainted with any of us.

14         Let me first outline what I hope to accomplish

18:00 15 this morning.  Now that you are all here as a group, I

16    have some additional questions to ask you, and once I have

17    asked all of my questions and you have responded to those

18    questions where you have an answer, we will take a recess

19    and the parties and counsel and I will go through the

20    process of actually selecting the jury.  So before you

21    leave the courthouse today, you will know whether you are

22    going to be on the jury that will hear this case or not.

23    I hope to complete these proceedings by approximately the

24    noon hour or shortly after noon so that everybody can have

25    lunch at near your normal lunch hour.  So please bear with

18:00 1    me if sometimes the proceedings seem to go slowly this

2    morning.

3         The concept of our jury system is that you as

4    members of the community come into court when you are

5    summoned to do so, and if you are selected as a juror, you

6    will become a judge of the facts.  That is to the extent

7    that the parties to this dispute are in disagreement about

8    what happened, it will be your responsibility as jurors to

9    determine the facts from the evidence which is presented

10   here in court.

11        By contrast, I will be the judge of the law and

12   will decide disputed questions of law, including what

13   evidence is available for the jury's consideration.  So

14   that will be the division of responsibility that you and I

18:00 15   will have during this trial.  You will be the judges of

16   the facts, and I will be the judge of the law.  Because in

17   a very real sense you will be judges in this case, I have

18   some additional questions to ask you to determine whether

19   this is a suitable case for you to sit in.  We know, of

20   course, from the previous questioning that we have done

21   and from the questionnaires that you have filled out that

22   you are qualified to sit as jurors in this court

23   generally.  But there might be something about your

24   background or experience or your knowledge of one of the

25   parties or one of the attorneys or one of the witnesses

18:00 1    that might disqualify you from serving in this particular

2    case.  So please listen closely to my questions, and if

3    you have an answer to my question, indicate by raising

4    your hand, and then when you are recognized, please stand

5    and give us your name and then your answer as completely

6    but concisely as possible.  As you previously remember or

7    remember from the previous visit to the courtroom where

8    you were questioned individually, the acoustics in this

9    room are not the best.  So please speak out so that

10    everyone involved in the trial can hear your answer.

11          As I said, I want to introduce the various

12    people participating in the trial so that I can ask

13    whether you are acquainted with us.  You met some of the

14    them earlier in the individual questioning but not all of

18:00 15    them.  So I want to be sure that we cover all of that.  In

16    addition to myself, I have some other members of the

17    Court's staff to introduce to you.  Mr. Kiblinger is our

18    court security officer who opened court a moment ago.  Mr.

19    Kiblinger will serve as the baliff of this jury once it is

20    selected.  The lady with the red hair seated immediately

21    in front of me is Ms. Cass Casey.  She's the court

22    reporter and takes down what everyone says, and that

23    becomes the official record of our proceedings.

24          To her left, is Ms. Susan Hudson, who's our

25    court coordinator and a deputy clerk of this Court.  The

18:00 1    Court's administrative assistant just came in the door

2    behind me and to my right.  She is Ms. Eleanore Piwoni.

3    She will probably not be in the courtroom throughout the

4    trial but in and out on occasion.  So I wanted you to know

5    who she is.

6         Over here, I have more members of the Court's

7    staff.  The gentlemen next to the Bench is Mr. Ben

8    Stewart.  Next to him is Mr. Kyle Miller.  And then Mr.

9    Dennis Lester, who's a law student from Loyola in New

10   Orleans who's with us for a few weeks this summer as an

11   intern.  I believe that completes the introduction of the

12   Court and its staff.  Let me pause to ask if there is

13   anyone on the panel who knows me or any other member of

14   the Court's staff just introduced.

18:00 15        Ladies and Gentlemen, as you heard earlier, this

16   is a criminal case, and I will have more to say about that

17   later.  But one significant fact about a criminal case is

18   that it is brought in the name of the United States of

19   America as the prosecuting authority, and the United

20   States is represented by several lawyers, some of whom are

21   with the Office of the United States Attorney for the

22   Northern District of Texas, specifically Mr. Jim Jacks.

23   Mr. Jacks, would you stand and I am going to ask you to

24   introduce to the Ladies and Gentlemen of the panel your

25   cocounsel and where they are from.

18:00 1          MR. JACKS:  Good morning again, Ladies and

2     Gentlemen.  As I told you before, my name is Jim Jacks.

3     I'm an Assistant United States Attorney here in Dallas for

4     the Northern District of Texas.  To my left is Elizabeth

5     Shapiro.  Ms. Shapiro is an attorney from the Department

6     of Justice, and she's also a special assistant to the

7     United States Attorney.  To my right is Nathan Garrett.

8     Mr. Garrett is also an assistant United States Attorney.

9     And to my far right is Mr. Barry Jonas.  Mr. Jonas is also

10     an attorney -- a trial attorney from the Department of

11     Justice in Washington and a Special Assistant U.S.

12     Attorney.

13          THE COURT:  Thank you, Mr. Jacks and Ladies and

14     Gentlemen.  Is there any member of the panel who knows Mr.

18:00 15     Jacks, Ms. Shapiro, Mr. Garrett or Mr. Jonas?  Is there

16     any member of the panel who has ever had any dealings with

17     the Department of Justice or the United States Attorney's

18     office for the Northern District of Texas, if those

19     dealings did not involve these particular lawyers?  Yes,

20     sir.

21          VENIRE PERSON:  Steven Saucier.  We had a girl

22     that worked for our firm.  I work for an environmental

23     consulting firm.  She went on to get her law degree and

24     worked for the Department of Justice.  So I was

25     interviewed by them for her.  I don't know if that counts.

18:00 1    But she's in Washington.

2           THE COURT:  Do you know the name of the lady you

3    are referring to?

4           VENIRE PERSON:  Elizabeth Sanders.

5           THE COURT:  How long ago was this?

6           VENIRE PERSON:  About eight years ago.

7           THE COURT:  And do you think Ms. Sanders's

8    connection with the Department of Justice would have any

9    influence on you if you were selected to serve as a member

10    of this jury?

11           VENIRE PERSON:  No.  I just wanted to be

12    forthright.

13           THE COURT:  Well, you did the right thing in

14    bringing it to our attention.  Thank you, sir.

18:00 15           Anyone else?

16           Now, let me turn to the other side of the case.

17    I think, as you heard in the individual questioning, there

18    are several defendants named in this case in addition to a

19    corporate entity.  The corporate entity is named the Holy

20    Land Foundation for Relief and Development.  However, that

21    entity is unrepresented at this trial.  And I don't think

22    during the individual questioning you were introduced to

23    all of the individual defendants.  I'm just going to go in

24    the order in which these names are mentioned in the

25    indictment.  The indictment is the document which is filed

18:00 1    with the court to commence a case like this.  It is only a

2    written accusation, nothing more, and I will have more to

3    say about that later as well.  But the first individual

4    defendant named in the indictment is a man by the name of

5    Shukri Abu Baker, and he is represented by Ms. Nancy

6    Hollander and Ms. Teresa Duncan.

7            Ms. Hollander, I'll ask you to introduce your

8    client to the Ladies and Gentlemen of the panel, and also

9    if you have anyone assisting you in the trial, introduce

10   that person or those persons as well.

11           MS. HOLLANDER:  Thank you, your Honor.  Good

12   morning, Ladies and Gentlemen.  I'm Nancy Hollander, and

13   my cocounsel is Teresa Duncan.  Our client is Mr. Shukri

14   Abu Baker.

18:00 15   THE COURT:  Thank you, Ladies and Gentlemen.

16   You may be seated.  Is there any member of the panel who

17   knows Ms. Hollander, Ms. Duncan or Mr. Baker?

18           The second individual.

19           MS. HOLLANDER:  Excuse me.  Should I introduce

20   my paralegal.

21           THE COURT:  Yes, ma'am, if that person is here.

22           MS. HOLLANDER:  I'm sorry.  I didn't see her in

23   the back.  Martha Hardiman is a paralegal who will be

24   assisting us.

25           THE COURT:  Thank you.  Anyone who knows Ms.

18:00 1   Hardiman?

2           That reminds me.  I have failed to make one

3   other introduction from the Court's staff.  He's not here

4   today, but there is a man named Andrew Newman who will

5   become a law clerk in this court in approximately mid to

6   late August, and it's anticipated this trial will still be

7   going at that point.  His name is Andrew Newman, and he

8   has just graduated from the University of Texas Law

9   School, and I think he's currently studying for the bar

10   exam.  Is there anyone who knows Mr. Newman?

11           Now let me go back to the defendants who are

12   named in the indictment.  The second individual defendant

13   named in the indictment is Mohamed El Mezain, and he is

14   represented by Mr. Joshua Dratel and Mr. Mysliwiec.  Let

18:00 15   me ask you to introduce your client as well as anyone

16   assisting you during the trial.

17           MR. DRATEL:  My client is Mohamed El Mezain, and

18   I'm Josh Dratel, and this is my associate Mr. Mysliwiec.

19           THE COURT:  Anyone recognize Mr. Dratel, Mr.

20   Mysliwiec or Mr. El Mezain?

21           I forgot to do this with Ms. Hollander so I need

22   to back up.  Mr. Dratel, are you with a law firm so that I

23   can inquire if anyone has had any dealings with your law

24   firm?

25           MR. DRATEL:  Yes, Joshua Dratel Law Offices.

18:00  1          THE COURT:  Anyone who has ever dealt with the

    2    law firm of Joshua Dratel?

    3          Ms. Hollander.

    4          MS. HOLLANDER:  My law firm is Freedman, Boyd,

    5    Daniels, Hollander.

    6          THE COURT:  That's a long list of names.  Anyone

    7    on the panel who has ever had any dealings with that law

    8    firm?

    9          The next defendant named in the defendant is

   10    named Ghassan Elashi, and Mr. Elashi is represented by Ms.

   11    Linda Moreno and Mr. John Cline.

   12          Ms. Moreno, let me ask you to introduce to the

   13    Ladies and Gentlemen of the panel your client as well as

   14    anyone assisting you during the trial.

18:00 15          MS. MORENO:  Thank you.  Good morning, Ladies

   16    and Gentlemen.  My name is Linda Moreno.  I represent Mr.

   17    Ghassan Elashi.  Cocounsel is Mr. John Cline.  My law firm

   18    is the Law Services of Linda Moreno, and Mr. Cline is with

   19    Jones Day.

   20          THE COURT:  Thank you.  Any members of the panel

   21    know Ms. Moreno, Mr. Cline, Mr. Elashi?  Yes, sir, second

   22    row.

   23          VENIRE PERSON:  Freeman Robinson.  I don't know

   24    either lawyer, but I have done some work for Jones Day

   25    before with my firm.

18:00 1          THE COURT:  Refresh my memory, if you will, what

2     kind of work you have done for that law firm.

3          VENIRE PERSON:  I work for a graphic media firm,

4     and I think we have done some stuff for a client of Jones

5     Day.

6          THE COURT:  Jones Day has several offices in

7     several cities.  Has your firm did work for the Jones Day

8     firm here?

9          VENIRE PERSON:  Yes.

10          THE COURT:  I think Mr. Cline is probably from a

11     different office of Jones day.  So as far as you know you

12     haven't had any contact with him?

13          VENIRE PERSON:  No, sir, I haven't.

14          THE COURT:  Given the fact that Mr. Cline is

18:00 15     involved in the case and with the firm of Jones Day, if

16     you are selected to serve as a judge of the facts in this

17     case, would you be inclined for or against Mr. Cline and

18     his client by virtue of your having done work for that law

19     firm?

20          VENIRE PERSON:  No, sir.

21          THE COURT:  Going down the indictment further.

22     Ms. Cadeddu, let me ask you to introduce your client as

23     well as anyone assisting you during the trial.

24          MS. CADEDDU:  My name is Marlo Cadeddu, and I'm

25     with the Law Office of Marlo Cadeddu, and I represent Mr.

18:00 1    Mufid Abdulqader.

2         THE COURT:  Anyone who recognizes either of

3    these people?

4         VENIRE PERSON:  My name is Baccus.  My wife

5    worked with one of the defendants in their home.  It's

6    called International Child Intervention.  She went out to

7    their house and worked with their son for a two or three

8    day period, and there is things that she has told me that

9    could definitely sway my judgment.

10         THE COURT:  Thank you, Mr. Baccus.  I did

11    receive information from the jury administrator about

12    that, although not in as much detail as you have given us.

13    I have related that information to counsel and the parties

14    when I received it.  I think we have determined that the

18:00 15    defendant involved in the case -- that your wife visited

16    with Mr. Elashi who was introduced not this last defendant

17    but the one before that.  And I appreciate your bringing

18    that to our attention.

19         The next defendant is Mr. Abdulrahmin Odeh.

20         MR. WESTFALL:  Thank you.  Ladies and Gentlemen,

21    I'm Greg Westfall.  My law firm is Westfall, Platt, Cutrer

22    and Foster.  This is Mr. Foster who assists me.

23         THE COURT:  Thank you, gentlemen.  Anyone who

24    knows Mr. Westfall or Mr. Odeh or the other gentlemen

25    introduced just now by Mr. Westfall as assisting him?

18:00 1          Ladies and Gentlemen, I believe that completes

2     the introduction of those of us who will be participating

3     in the trial.  However, I now need to give you the names

4     of the persons who may be testifying as witnesses in this

5     case so that I can make a similar inquiry if you know any

6     of them.  There is a long list of names here so I will

7     possibly be pausing periodically to ask you if you know

8     any of the persons that I have read the names of up to

9     that point.

10          (Witness list read)

11          VENIRE PERSON:  I don't know.  Jim Lewis is a

12     pretty generic name but --

13          THE COURT:  This Jim Lewis is a Special Agent

14     for the FBI.

18:00 15          VENIRE PERSON:  Wouldn't be that one.

16          THE COURT:  Sir, the court reporter didn't hear

17     your name, would you stand and give us your name.

18          VENIRE PERSON:  Brice O'Dell.

19          THE COURT:  Let me pause and ask if any of you

20     recognize that group of names.

21          (Witness list read)

22          THE COURT:  Let me pause and ask if anyone

23     recognizes any of those names.

24          VENIRE PERSON:  Mollie Drake.  I don't know if

25     it's the same person, but I do know a Chris Jones.

18:00 1          THE COURT:  This Chris Jones lives in Dallas,

2     Texas.  Let me inquire of counsel for the defendants if

3     anyone can give us more information about the age of Mr.

4     Jones or anything about him that would help us identify

5     whether this is the same person she knows.

6          MS. SHAPIRO:  He works for an engineering

7     consulting firm, your Honor.  He's in his late thirties or

8     early forties.

9          THE COURT:  Thank you.

10         (Witness list read)

11         THE COURT:  I think that completes the list.

12    Anyone recognize any of that group of names?

13         Now, Ladies and Gentlemen, I want to tell you a

14    little bit about what this case involves.  I think most of

18:00 15  you at least were told a little bit about this during the

16    individual questioning that went on earlier this week.

17    But there are a number of charges in this case.  Most of

18    them however are -- revolve around the allegation that the

19    Holy Land Foundation for Relief and Development, which as

20    I told you, is named as a defendant in the indictment but

21    which is not represented here at trial, was an American

22    charitable organization that raised money for certain

23    causes, and it's alleged in the indictment that the Holy

24    Land Foundation and these individual defendants who have

25    been introduced to you who worked with the Holy Land

18:00  1    Foundation in various capacities sent money either

2    directly to or affiliates of an organization named HAMAS

3    which the United States Government has designated as a

4    foreign terrorist organization.  And under United States

5    law, it is illegal for anyone to make -- to give material

6    support to a foreign terrorist organization.  So once the

7    United States Government declared that HAMAS was a foreign

8    terrorist organization, it thereafter became illegal under

9    United States law for anyone to send money or anything of

10    value to or for the benefit of HAMAS.  So that's really

11    what the case is about, although there are a number of

12    specific charges related to that central theme.  They are

13    all revolve around that central allegation.  I think you

14    have all been asked about this in the individual

18:00 15    questioning, but out of an abundance of caution, let me

16    ask you again.  Is there anyone who knows something about

17    that other than what you have already told us about.  I

18    know a number of you said you had read or heard something

19    in the news media particularly shortly before jury

20    selection began this week.  Beyond what you have told us

21    in individual questioning, is there anyone who knows

22    something about this case before coming in court today?

23            Ladies and Gentlemen, again, I think you were

24    told a little bit about the rules that relate to criminal

25    cases in the individual questioning, but I want to go over

18:00 1    the rules that apply to criminal cases with all of you to

2    be sure there is no misunderstanding here.  There are

3    fundamental rules that apply to every criminal case,

4    including this one.

5         First, a defendant is presumed innocent until

6    proven guilty.  The indictment which I have referred to

7    earlier, this is written accusation that commences the

8    case.  The indictment against the defendants brought by

9    the government is only an accusation, nothing more.  It is

10   not proof of guilt or anything else.  Each defendant in

11   this case therefore starts out with a clean slate.

12        Second, the burden of proof is on the government

13   until the very end of this case.  None of these defendants

14   has any burden to prove his innocence or to present any

18:00 15   evidence or to testify, although the defendants do have

16   the right to present evidence or testify if they choose to

17   do so.  Since each defendant has the right to remain

18   silent, if they elect to exercise that right, the law

19   prohibits you in arriving at your verdict from considering

20   that a defendant may not have testified.

21        And third, the government must prove each

22   defendant's guilt beyond a quantum of evidence, beyond a

23   reasonable doubt.  I will explain that to you later in the

24   case.  But keep in mind this is not a civil case.  I know

25   that some of you have served in civil cases, and there the

18:00  1   standard is a preponderance of the evidence; that is, one

2   thing is more likely than the other thing.  But in a

3   criminal case the standard is beyond a reasonable doubt.

4   Is there any member of the panel who has any question

5   about any of these rules that apply to a criminal case or

6   doubts your ability to follow those standards?

7   There is one other point that I wanted to cover

8   with you for those of you who have indicated that you had

9   previous service as a trial juror.  I know some of you

10  indicated that you had served as jurors in criminal cases

11  in the State of Texas or in a county court in the State of

12  Texas.  And although I have never personally had any

13  participation in the State of Texas Criminal Justice

14  System, it is my understanding that in Texas the role of

18:00 15  the juror is frequently two-fold in a criminal case.  The

16  first step is that the jury has to determine the guilt or

17  innocence of the accused, and if the jury determines that

18  the accused is guilty, they are often called upon to

19  decide the punishment or the sentence of the defendant.

20  In the federal system, it works a little bit

21  differently.  In this case, the jury will have the role

22  only of deciding the guilt or innocence, although there

23  will be multiple decisions to be made because there are a

24  number of defendants and each defendant is charged in

25  separate counts that charge a separate crime.  Some of the

18:00 1    defendants are named in all counts and some only in one.

2    But with respect to each count of the indictment, the jury

3    will have to reach a decision about the defendant named in

4    that count.  So there would be multiple determinations to

5    be made by the jury in this case.  If the defendants are

6    found guilty, it will be my job as judge to decide what

7    the punishment of defendant who's found guilty will be.

8            Is there any member of the jury panel who feels

9    that he or she cannot participate in such a system knowing

10   that if the verdict of the charge is guilty that you would

11   not have any say into what the punishment of the defendant

12   would be?

13           Ladies and Gentlemen, I think I'm almost through

14   with my questioning.  You were asked in the individual

18:00 15   sessions about any exposure to media counts that you may

16   have had before coming to that session.  Of course, I

17   think media coverage of this case is probably ongoing, and

18   there has been a lapse of time since we saw most of you.

19   So let me ask if there is anyone on the panel who has read

20   or heard anything in the media about this case that you

21   haven't already told us about in the individual sessions.

22           Let me caution you again if you are selected to

23   serve on the jury in this case that it is very important

24   to all of these parties that this case be determined on

25   the evidence that is presented here in the courtroom and

18:00 1    on nothing else.

2              That is why we have taken such care with the

3         jury selection proceedings in this case, and I will be

4         reminding you of the importance throughout the trial of

5         avoiding any contact with media coverage of this case.

6              May I see counsel at the Bench, please?

7              Ladies and Gentlemen, I think I have covered

8         what I usually cover in my voir dire, as supplemented what

9         was done in the individual sessions.  Is there anything

10        else you feel I need to cover?  I think I hit all the

11        topics that Mr. Westfall had mentioned in his letter that

12        you wanted me to cover.

13             MR. WESTFALL:  No, your Honor.

14             MS. HOLLANDER:  Nothing, your Honor.

18:00 15             MR. GARRETT:  Not for the government.

16             THE COURT:  I guess we will excuse them to go

17        back to the central jury room, and we will let the parties

18        go through the struck procedure, and we'll bring the

19        eighteen back up and give them instruction.

20             MR. WESTFALL:  Your Honor, on the issue of Mr.

21        Baccus.

22             THE COURT:  You want to have him stay behind and

23        question him further?

24             MR. WESTFALL:  Well, if anyone needs to question

25        him.  I don't know that -- I don't even know who he's bad

18:00 1     on.  But certainly the record can't be fair and impartial,

2     and we will submit him for challenge.

3            MR. JACKS:  Just question him I guess and see

4     what he says.

5            THE COURT:  Ladies and Gentlemen, it is true

6     that I have finished my questioning of the panel as a

7     whole.  Mr. Baccus, in light of the matter you brought to

8     the attention of the panel today, I do need to ask you to

9     remain behind so that I can ask you a few additional

10     questions.  Let me ask you when you leave the courtroom

11     that you go back to the jury assembly room on the first

12     floor.  We do need you to stay at the courthouse because

13     the parties and counsel and I will be working to decide

14     which of you will actually be the jury in this case, and

18:00 15     once we have made that determination which should occur

16     within the next hour, we will let you know that, and those

17     who have been selected will be brought up to the courtroom

18     for further instructions.  So it is important that you all

19     remain present here at the courthouse so that we can

20     access you quickly when a decision is made as to who's on

21     the jury.

22            Thank you for your attention, and all of you may

23     be excused from the courtroom, except Mr. Baccus.

24            VENIRE PERSON:  May I speak with you a moment?

25            THE COURT:  Yes, sir.  Just remain behind when

18:00 1    everybody else leaves.

2              (Jury out)

3              THE COURT:  Let's see, there was a few members

4    of the panel who raised their hand and asked to see me.

5    Let me be sure I know who they are.  Mr. Saucier, Mr.

6    Robinson and then Mr. O'Dell and Dr. Constantinescu.  Let

7    me ask all of you to go out in the hall until we call you

8    in.  Please remain near the double doors at the back of

9    the courtroom.

10             I think we're ready to see next Dr.

11   Constantinescu.  Did you need to see me for some reason?

12             VENIRE PERSON:  Yes.  The only reason is the

13   length of the trial, and if it is possible because I know

14   it's a little late now to be excused as I am a cancer

18:00 15   patient, and I have already cancelled some medical

16   appointments.  I would appreciate it.  If not —- because I

17   understand it would take probably three months every day.

18             THE COURT:  It's every day Monday through

19   Thursday.

20             VENIRE PERSON:  Yes.

21             THE COURT:  But you are right; it would be a

22   period of four months.

23             VENIRE PERSON:  I'm sorry.  If you could

24   consider feasible, let me appreciate it.

25             THE COURT:  Let me ask you a couple of follow-up

18:00 1    questions.  You said you had had to cancel a couple of

2    medical appointments.  I don't know how difficult they are

3    to obtain and how long you have to wait to see the

4    provider that you have to see.  Can you give me an idea of

5    that?

6              VENIRE PERSON:  Two months.  For example, last

7    week I had MRI and surgery appointment.  I had the surgery

8    last year, and now I need to go to three doctors.

9              THE COURT:  How far in advance do you generally

10    need to make these appointments?

11              VENIRE PERSON:  They can't see you on shorter

12    notice than that.  Only if I give them a day.  Most of the

13    doctors don't work on Friday.

14              THE COURT:  Counsel for the parties have any

18:00 15    further questions for Dr. Constantinescu?

16              MR. JACKS:  No, your Honor.

17              MR. WESTFALL:  No, your Honor.

18              THE COURT:  Mr. Baccus, would you come to the

19    lectern in the middle of the room and speak into the

20    microphone so that we can all hear you clearly.  You said

21    this morning in your answer to one of my questions that

22    your wife had visited in the home of one of the defendants

23    and that you felt that could definitely have an influence

24    on you if you were selected to serve in this case.  Can

25    you be more specific on what kind of influence you think

18:00 1    that might have on you?

2         VENIRE PERSON:  She had basically stated that

3    there were some problems with the defendant and the

4    family, and she really didn't elaborate.  She kind of came

5    in towards the end of helping the child and the girl that

6    was there before her or oversaw my wife said that they had

7    had some problems with the defendant and they were not

8    allowed to see the child there at the house and they had

9    to go next door to either the aunt or mother-in-law's

10    house, and it came to the point after that that the police

11    were called for some reason.  But again, that was probably

12    five years ago.

13         THE COURT:  Do you think that would influence

14    you against the defendant involved if you were selected as

18:00 15    a juror in this case?

16         VENIRE PERSON:  Yes, sir.

17         THE COURT:  Counsel for the parties have any

18    further questions for Mr. Baccus?

19         MS. CADEDDU:  Not from the defendants, your

20    Honor.

21         THE COURT:  Thank you, Mr. Baccus, you may

22    rejoin the others in the hall.

23         Ladies and Gentlemen, I'm not sure that the

24    parties would know this, but Mr. Kiblinger told me as the

25    panel was exiting the courtroom that Mr. Henson said he

18:00 1    had already cancelled two medical appointments, and he

2    wanted to see me about that.

3            He's Number 14.

4            Mr. Henson, Mr. Kiblinger told me you needed to

5    see me because of some medical appointments you have.

6            VENIRE PERSON:  I have two doctors'

7    appointments.  One is the 6th of August which is a

8    urologist.  And I have my six months appointment which I

9    wasn't aware of was this close.  It's the 23rd which is

10   next week.  I'm a borderline diabetic.  And I have to set

11   an appointment which would be next month with the VA

12   Medical Center.

13           THE COURT:  I anticipate the jury will not be in

14   session with us next Monday so that should not be a

18:00 15   problem if you were selected in this case.

16           VENIRE PERSON:  The first one is August 6th.  I

17   have to see the urologist.  I have cysts on my kidneys.

18   Every three to six months I go back to the VA.  I have a

19   letter.

20           THE COURT:  The 6th of August --

21           VENIRE PERSON:  Should be a Monday.

22           THE COURT:  Yes, it is a Monday.  Is there any

23   possibility that you could move that appointment to a

24   Friday?  I anticipate that the jury will not be in session

25   on Fridays.

18:00  1          VENIRE PERSON:  Well, dealing with the VA, your

2     Honor, you know, moving an appointment is kind of -- It's

3     tough.  I have had to move some in the past, and that

4     moves me down another six months possibly to get back in

5     for another appointment.  That's really my primary care,

6     is through the VA.

7          THE COURT:  Counsel for the parties have any

8     further questions for Mr. Henson?

9          MR. JACKS:  Your Honor, just the fact that he is

10    going to the VA and that he's seeing a urologist, as far

11    as who that doctor is.  It might be relevant in this case.

12         VENIRE PERSON:  I haven't seen the same one in

13    the last year.  I haven't seen the same one.

14         THE COURT:  So you don't know which doctor you

18:00 15    will see?

16         VENIRE PERSON:  I don't know who it's going to

17    be now.  My primary care which over sees my health

18    condition, I just received a new one which was in March

19    when I went.  I have had three changes in primary care in

20    the last two years over there.

21         THE COURT:  Anything further, Mr. Jacks?

22         MR. JACKS:  No, your Honor.

23         MR. WESTFALL:  No, your Honor.

24         THE COURT:  Thank you, Mr. Henson.  You may

25    rejoin the others in the central room downstairs.

18:00 1          Mr. Kiblinger, I think we're ready to see next

2  Mr. Saucier, Number 23.

3          VENIRE PERSON:  Just a couple of things.  One

4  was something that was asked in the questionnaire that I

5  forgot to put down, and I guess because at the time I was

6  a little nervous in here the last time.  I am part of an

7  organization that I signed up last year which is Minute

8  Men.  It's a voluntary organization that goes to the

9  border, and they watch, and if someone crosses, they call

10  the border patrol.  I contribute, but it's not in the

11  forefront of my mind.  So I wanted to be sure that

12  everyone knew I was part of that organization.  My major

13  concern -- I do have a concern about this going to a

14  sequester.

18:00 15          THE COURT:  The jury I don't anticipate will be

16  going to a sequester.

17          VENIRE PERSON:  I know you don't.  But my only

18  concern is the media attention that it may.  I'm a key man

19  in my company, and right now we're in two class action

20  lawsuits.  I'm the only one that can design, and if I'm

21  not here, they cannot do anything in that regard.  Not

22  that I'm so special I'm irreplaceable, but under the time

23  constraints where that judge requires whatever evidence,

24  we wouldn't be able to function.  If there is no

25  sequester, I can still perform my duties at night.  If

18:00  1    there is one, I don't know about my ability to do that or

2    their ability to pay me.

3              THE COURT:  Counsel for the parties have any

4    further questions for Mr. Saucier?

5              MR. WESTFALL:  Your Honor, just one.  Why did

6    you join the Minute Men?

7              VENIRE PERSON:  I have a concern about the

8    border security.

9              MR. WESTFALL:  Is that something that would

10   affect you in this case?

11             VENIRE PERSON:  No.  I just wanted to make sure

12   you knew that if that was a concern for either of the

13   government or you guys.

14             MR. WESTFALL:  Have you ever been inclined to go

18:00 15   down and stand on the border?

16             VENIRE PERSON:  Not yet.  No, I haven't done it

17   yet.  But I guess I could do that if I wanted to.

18             MR. WESTFALL:  Anything about that that would

19   affect your ability to be fair and impartial in a case

20   where we're talking about people who weren't born in the

21   United States?

22             VENIRE PERSON:  I just wanted to make sure you

23   guys knew that because it was asked and I didn't write it

24   down.

25             MR. WESTFALL:  Do you think you could be fair

18:00 1    and impartial?

2              VENIRE PERSON:  Yes.

3              THE COURT:  Thank you, Mr. Saucier.  You may go

4     back to the central jury room.

5              Mr. Kiblinger, I think we're ready to see next

6     Mr. Robinson, Number 26.

7              I believe you indicated as the panel was leaving

8     the courtroom that you needed to see me.

9              VENIRE PERSON:  Yes.  What's happening on my

10    job, we got a secretary that embezzled some money, and so

11    we're going through some changes with that, and we only

12    have like seven people that's there.  And myself and

13    another guy, we pretty much do some of the work and then

14    picking it up -- because we pick up and deliver -- because

18:00 15   it's going to be real difficult with the whole situation

16    to come here and be here that long.  Within a week or so,

17    I could probably handle that, but anything past that is

18    going to be real difficult for the company.  Like I said,

19    it's small, and we're going through some legal stuff with

20    the secretary, too.

21             THE COURT:  Counsel for the parties have further

22    questions for Mr. Robinson?  Thank you.

23             MR. WESTFALL:  Your Honor, I'm sorry.  I do.

24    You said that it's going to take about a week or so of

25    adjustment to get everything back in control?

18:00 1        VENIRE PERSON:  No, I'm saying it would be

2    difficult for me to be gone beyond that amount of time.

3    They might could probably cope of with that amount of

4    time, but two weeks or three with the small amount of

5    people we have is going to be very difficult.

6        MR. WESTFALL:  What would be the consequences of

7    you being gone four days a week?

8        VENIRE PERSON:  The consequence is they will

9    have to hire somebody else.  More than likely they will

10    have to hire somebody else.  Like I said, over that period

11    of time myself and another guy do pretty much most of the

12    work going in and out of the company.

13        MR. WESTFALL:  How long have you been with the

14    company?

18:00 15        VENIRE PERSON:  Since 1995.

16        MR. WESTFALL:  Do you think they could hire a

17    temporary person to pick up the slack while you were doing

18    it?

19        VENIRE PERSON:  Well, see, they could do the

20    delivery part but not the work part.  She wouldn't be able

21    to just come in and do the work I do also.  Like going out

22    and picking it up is fine, but as it comes back in -- I do

23    a lot of the work.  I pick up and deliver also.

24        MR. WESTFALL:  How many hours a week do you

25    think you spend doing the work?

18:00 1          VENIRE PERSON:  You mean per week?

2          MR. WESTFALL:  In a given week, how many hours

3    would you spend designing?

4          VENIRE PERSON:  Probably half of the day I'm

5    doing the work, and the other half I'm picking it up.  So

6    about -- four hours a day that I'm pretty much doing the

7    work, and the rest of it I'm picking it up and taking it

8    back.

9          MR. WESTFALL:  And there is two of you?

10          VENIRE PERSON:  The other guy, he's on the one

11    side.  He's on the litigation side, and I do the board

12    side.  He's in the same thing.  He works doing litigation

13    and picks up and delivers.

14          MR. JACKS:  Mr. Robinson, is this something

18:00 15    would you lose your job over this or is this -- it would

16    just be a hardship for your employer?

17          VENIRE PERSON:  Well, it would be a hardship for

18    the employer, you know, as being able to afford me being

19    gone for that amount of time, period.

20          MR. JACKS:  Okay.  Thank you.

21          THE COURT:  Thank you, Mr. Robinson, you may

22    rejoin the others in the central jury room.

23          VENIRE PERSON:  All right.  Thank you.

24          THE COURT:  Mr. Kiblinger, I think we're ready

25    to see next Mr. O'Dell, Number 41.

18:00  1          VENIRE PERSON:  I just had some things going on

       2    personally in my life that have come up this week since

       3    this all started I wanted the Court to be aware of.  A

       4    lady that actually my wife and I take care of, we call her

       5    our grandmother.  I have been with her since I was eight

       6    years, over thirty years, and she has broken her leg this

       7    week and is in the ICU.  She's stable and doing well right

       8    now.  They haven't been able to do any surgery on her leg

       9    yet because she is not strong enough.  They are trying to

      10    get her blood count up and she's anemic right now.  I

      11    don't know where that is going.  I wanted the Court to be

      12    aware that was going on.

      13          THE COURT:  Thank you for bringing that to my

      14    attention.  Counsel for the parties have any further

18:00 15    questions for Mr. O'Dell?

      16          MR. JACKS:  No.

      17          MR. WESTFALL:  No, your Honor.

      18          THE COURT:  Thank you, Mr. O'Dell, you may

      19    rejoin the others in the central juryroom.  Mr. Kiblinger,

      20    I think that completes the list of people who indicated

      21    they needed to see me, does it not?  We have seen now

      22    since the panel left the courtroom six members of the

      23    panel I believe.  Dr. Constantinescu, Mr. Baccus, Mr.

      24    Saucier, Mr. Robinson and Mr. O'Dell.  I'm assuming the

      25    defense probably will want to submit Mr. Baccus for cause.

18:00 1    Am I right about that?

2          MR. WESTFALL:  Yes, your Honor.

3          THE COURT:  Does the government have any

4    objection to excusing Mr. Baccus for cause?

5          MR. JACKS:  No, your Honor.

6          THE COURT:  I will excuse Mr. Baccus for cause.

7    It was reported to me this morning before we began that

8    there were two members on this panel who had not reported

9    as of about 9:30 this morning.  I don't know whether they

10   ever showed up or not.

11         One of those was Ms. Munoz, Number 39.  Ms.

12   Hudson reported to me that she was here.  The other one I

13   think was Ms. Hodge, Number 45, and I guess she never made

14   it this morning.  So we are down to forty-nine people for

18:00 15   this general voir dire session, and with the excusal of

16   Mr. Baccus, we're down to forty-eight.  These others I

17   would say are in the category of hardship excuses, and I

18   don't know if counsel have any views on how I should use

19   my discretion in exercising those excuses.

20         MR. JACKS:  I don't think Mr. Saucier was a

21   hardship.  He was making it known to us, first of all,

22   about his contribution to that organization and if the

23   jury was sequestered it would be a hardship.  But the

24   others -- I don't think Mr. O'Dell, was planning a

25   hardship again.  I think he was just making the Court

18:00 1      aware of that. But as far as the others, I guess just

2      submit that to the Court as we have done with the others

3      regarding making that decision.

4          THE COURT: Thank you.

5          MR. WESTFALL: Your Honor, Dr. Constantinescu

6      said that she's undergoing continuous cancer treatment.

7          THE COURT: That was my understanding.

8          MR. WESTFALL: And that that would be I believe

9      a hardship, not being able to do cancer treatment. Mr.

10      Henson has one doctor's appointment that he is liable to

11      myself. At this point in time, your Honor, after you have

12      had three chances to claim a hardship, one doctor's

13      appointment, I don't know that's efficient. I agree Mr.

14      Saucier didn't say anything. He just wanted us to know

18:00 15     that he was a Minute Man. As for Robinson, there wasn't

16      anything other than just kind of messing him around.

17      Missing four days a week when he works four hours a day on

18      something that somebody already does. And after three

19      chances to claim a hardship. And with Mr. O'Dell, I don't

20      think he claimed a hardship.

21          THE COURT: Let me be sure I understand what you

22      said. You think Dr. Constantinescu is a hardship, and did

23      you think Mr. Henson is or not?

24          MR. WESTFALL: I think he's not. One doctor's

25      appointment he's going to miss.

18:00 1          MR. JACKS:  Your Honor, the reason I asked if he

2     knew the doctor is because I know Mr. Cadeddu's husband

3     practices at the VA, and I know he's a urologist, and if

4     there is a possibility he's the doctor assigned to treat

5     him, that would be problematic.  He said it was a doctor

6     he hadn't seen before.  So there is that potential problem

7     there.  So there is a couple of reasons that he may be

8     problematic.

9          THE COURT:  He being Mr. Henson?

10          MS. CADEDDU:  Your Honor, may I respond?  There

11     was an operating room nurse on the list, and so I asked my

12     husband about the service he does there.  He only operates

13     if an attending needs a surgeon to be in there.  They

14     manage the patients, and he only sees in clinic.  And he

18:00 15     told me that he has not operated there in almost a year.

16     He wouldn't see Jeff because he is seeing someone -- It

17     doesn't sound to me like an operative thing.  It sounds

18     like a follow-up thing, and even if he had had surgery in

19     the last year, Jeff would have not have been the one to do

20     it.

21          MR. WESTFALL:  And he said he has seen a

22     different doctor every time he goes there which is not

23     surprising.

24          THE COURT:  I am going to excuse

25     Dr. Constantinescu in the exercise of my discretion for

18:00  1    hardship.  But as to the others that we saw

2    individually -- Mr. Henson, Mr. Robinson, Mr. O'Dell and

3    Mr. Saucier -- I'm not going to excuse them.  So I think

4    we still have this minimum of forty-five people that we

5    need to come up with a jury of twelve and six alternates.

6          I'll ask counsel to double-check me on that to

7    be sure I have counted correctly.  The way I get to that

8    number is we started off with this list of fifty.  Ms.

9    Hodge, Number 45, did not appear so we're missing her, and

10   I have excused Mr. Baccus for cause and Dr. Constantinescu

11   for hardship, and so that brings us down to 47 I guess.

12   If everyone is in agreement on those numbers, I guess I

13   now need counsel for the defense who seem to have had some

14   experience in this struck jury method refresh my memory as

18:00 15   to what we're going to do now as to the procedure for

16   exercising peremptory challenges.

17         MR. WESTFALL:  I will do that.  So I'm clear.

18   It seems to me the strike zone initially goes to Mr.

19   Boozer, Number 33.

20         MR. JACKS:  Your Honor, any possibility the

21   Court would give us some time given these last minute

22   changes to kind of re-examine our list?  We weren't

23   necessarily expecting some of these changes, and if the

24   Court would consider either re-convening at noon or

25   whenever, but just give us a little time to digest what we

1    have encountered this morning and make a little more

2    educated decision about these strikes.

3              MR. WESTFALL:  Your Honor, I could address your

4    question about what the procedure is.

5              THE COURT:  Let's do that.  I guess I'm amenable

6    to your request, Mr. Jacks, but I think we need to let the

7    potential jurors go to lunch because it's 11:30 already.

8    Otherwise, they will be thinking about their stomachs

9    instead of my instructions.

10             MR. JACKS:  They are not the only one, your

11   Honor.

12             THE COURT:  Mr. Westfall, would you outline the

13   procedures again?

14             MR. WESTFALL:  I will, your Honor.  When we have

15   our thirty-one that we know about which we do, we have

16   twelve strikes and the government seven.  So it goes

17   government one, defense two, government one defense two,

18   government one and defense two.  And we do six sets,

19   twelve sets I guess -- six sets of two, and the government

20   has the first and the very last.  So one two, one two, one

21   two, one.  Does that make sense?

22             THE COURT:  Okay.

23             MR. WESTFALL:  There is two ways to approach the

24   panel.  The easiest way to wrap your mind around it is the

25   entire thirty-one jurors are fair game for any strike.  So

18:00 1     if somebody wanted to strike Number 31 first and Number 1

2     second, then that would be fine until the strikes are used

3     up.  From just looking at it, that's the easiest way to

4     conceptualize it.  There is another way where the

5     government would strike one and we would strike two, but

6     you move in rows across, and as you move in rows -- Like

7     for instance, if the government struck 1, we struck 5 and

8     6 and then the government then struck 7.  2, 3, 4 are on

9     the jury, and they can't be messed with anymore.  You

10     can't go back behind the strikes.  That's another way.

11     We're amenable to do it either way.  I just think that all

12     of the thirty-one sitting there and striking anywhere is

13     probably conceptually the way to do it.

14           THE COURT:  I agree.  Since I haven't done this

18:00 15     before, I would like to do it the easiest way.  Let me

16     talk with Ms. Hudson about sending the panel to lunch, and

17     I would say that we ought to give them -- it's 11:35 now.

18     We probably ought to give them until 12:45 at least.  But

19     if we could I guess reconvene by -- How long do you think

20     this is going to take, Mr. Westfall?  You have been

21     through it before.

22           MR. WESTFALL:  It should take I would think less

23     than thirty minutes.

24           THE COURT:  If we could reconvene at 12:15, we

25     could have this done by the time the jury panel gets back

18:00 1    from lunch and have the people selected brought up for

2    further instruction.  Ms. Hudson has gone to call the jury

3    clerk to tell them to go to lunch, and hopefully, we will

4    have time to get lunch, too.

5           MR. CLINE:  Your Honor, may I be excused from

6    the afternoon session?  I have an urgent unshakable

7    commitment.

8           THE COURT:  If it's okay with your client.

9           MR. ELASHI:  I have no problem.

10          THE COURT:  We'll be in recess until 12:15.

11          (Recess)

12          THE COURT:  Are we ready to begin?

13          MS. CADEDDU:  Defense is ready.

14          MR. JACKS:  Ready, your Honor.

18:00 15          THE COURT:  Mr. Jacks, as I understand the

16    process, the government is supposed to exercise the first

17    peremptory challenge in this initial stage.  So who would

18    be your first challenge.

19          MR. JACKS:  Juror Number 32, Mr. Torrez.

20          THE COURT:  Mr. Westfall, who will be the first

21    two for the defense?

22          MR. WESTFALL:  Your Honor, Juror Number 8, who I

23    understand to be Bobbitt, and Number 28, Ms. Ritter.

24          THE COURT:  Mr. Jacks.

25          MR. JACKS:  Number 14, your Honor, Juror Henson.

18:00  1              THE COURT:  Mr. Westfall.

       2              MR. WESTFALL:  Your Honor, Number 27, Wolverton,

       3       and Number 19, Drake.

       4              THE COURT:  Mr. Jacks.

       5              MR. JACKS:  Number 17, your Honor, Cynthia

       6       Williams.

       7              THE COURT:  Mr. Westfall.

       8              MR. WESTFALL:  Your Honor, Number 22, Shrum, and

       9       Number 20, Hill.

      10              THE COURT:  Mr. Jacks.

      11              MR. JACKS:  Number 7, your Honor, Ms. Pena.

      12              MR. WESTFALL:  Number 2, Gartman, and Number 1,

      13       Epperson.

      14              MR. JACKS:  Number 11, Ms. Marshall.

18:00 15              THE COURT:  Mr. Westfall.

      16              MR. WESTFALL:  Your Honor, Number 33 Mr. Boozer;

      17       Number 23, Saucier.

      18              THE COURT:  Mr. Jacks.  Number 24, your Honor,

      19       Ms. Tillis.

      20              MR. WESTFALL:  Your Honor, Number 30, Young;

      21       Number 6, Maddox.

      22              THE COURT:  Mr. Jacks.

      23              MR. JACKS:  Number 29, your Honor, Ms. Moss.

      24              THE COURT:  I believe that gives us our first

      25       twelve, does it not?

18:00 1         MR. WESTFALL:  Yes, sir.

2         THE COURT:  Ms. Simental, Number 4; Shawn

3  Lopez-Rogina, Number 9; Alvin Lovely, Number 10; Carter

4  Arce; Number 12, Sylvester Holmes; Number 15, Tilmer

5  Johnson Junior; Number 15, Lisette Lopez; Number 21,

6  Leticia Morton, Number 21; Nanette Scroggins, Number 25;

7  Freeman Robinson, your Honor, Number 26; and Rosie Suarez,

8  Number 31.

9         And now for the alternates, I'm assuming --

10  although I don't remember you discussed this in detail,

11  Mr. Westfall -- that we simply alternate in this process.

12  The government first and then the defense.

13         MR. WESTFALL:  Yes, sir.  Mr. Jacks, striking

14  for the alternates beginning at Number 34, is the

18:00 15  government's first peremptory challenge.

16         MR. JACKS:  Number 40, Mr. Taylor.

17         MR. WESTFALL:  44, your Honor, Mooney.

18         THE COURT:  Mr. Jacks.

19         MR. JACKS:  34, your Honor, Ms. Jensen.

20         THE COURT:  Mr. Westfall.

21         MR. WESTFALL:  Number 42, Carrillo.

22         THE COURT:  Mr. Jacks.

23         MR. JACKS:  Number 37, your Honor, Ms. Overy.

24         MR. WESTFALL:  Your Honor, Number 36, Jones.

25         THE COURT:  Mr. Jacks.

18:00 1          MR. JACKS:  Number 39, your Honor, Ms. Munoz.

2          THE COURT:  Mr. Westfall.

3          MR. WESTFALL:  Your Honor, Number 43, Ms.

4     Buonasera.

5          THE COURT:  I believe that goes through the

6     allotted number to each side.  I show then that our

7     alternates would be Mr. William Neal, Number 35; Gail

8     Graham, 38; Brice O'Dell, Number 41; Patricia Sanders,

9     Number 46; Gerry McGahan, Number 47; and Stephanie Moreno,

10    Number 48.

11          Anything else we need to accomplish before Ms.

12    Hudson goes to the central room to bring those eighteen

13    up?

14          MS. CADEDDU:  No, your Honor.

18:00 15          THE COURT:  We'll take another brief recess.

16    While they are being brought to the courtroom.  Let me

17    just visit with you briefly about what should happen when

18    they get here.  I could go ahead and swear them in and

19    give them the normal preliminary instructions that I give

20    in a criminal case.  I usually use the Fifth Circuit

21    Pattern Instructions or we can defer those things until

22    Tuesday morning when they actually come and we begin

23    presentation of the indictment and opening statements.

24    And then in any event whether we do that this morning or

25    Tuesday morning, I need to enjoin them again about the

18:00 1   importance of avoiding contact with media accounts and

2   people who are involved in the trial.  And then I

3   anticipate turning them over to Ms. Piwoni, because we're

4   going to be providing lunch for the jury so that they will

5   not be hopefully out in the halls encountering potential

6   witnesses or parties during lunch hour.  And so she needs

7   to get their lunch order and describe the procedures we

8   will follow every day to order lunch, and then there is

9   going to be a deputy marshal I think who's going to orient

10   them about the reporting procedures to this remote

11   location before the drive to the courthouse, and he's

12   going to explain that to them, and I think we're going to

13   collect cell phone information, if we can, so that if

14   anyone doesn't show up, we will have a means of getting in

18:00 15   touch with them.  Do either side have a preference on

16   whether I go ahead and give them the oath and preliminary

17   instructions today or wait until Tuesday?

18           MR. JACKS:  Your Honor, the government would

19   prefer to wait until Tuesday.  Given the ramifications on

20   that, just withhold on Tuesday.

21           MR. WESTFALL:  I don't understand the

22   ramifications.

23           THE COURT:  Well, I think what is probably meant

24   is in the case law I have looked at that is always the

25   bright line as to when jeopardy attaches is when the jury

18:00 1  is sworn.

2          MR. WESTFALL:  I didn't realize the swearing in

3  and instructions were the same thing.  For that, whatever

4  the Court decides.  The only thing I was going to ask is

5  as to the remote location.  Can the Court give them an

6  instruction basically that we're not doing this because we

7  are scared for your safety but to help in something else

8  other than that?

9          THE COURT:  Well, yeah, I want to give it to

10  them in the context of avoiding contacts with the media.

11  I didn't want them to run the gauntlet every day to get

12  into the courthouse.

13          MR. WESTFALL:  I would like to get on the bus

14  with them.  That's very appropriate, your Honor.  I was

18:00 15  worried about them inferring there was some danger.

16          THE COURT:  Okay.

17          MR. WESTFALL:  Josh was telling me basically

18  what the Court intended to do anyway.  He's worried the

19  Court will say don't be scared because we're doing this.

20          Just because of media and leave it that I way, I

21  thought that.

22          THE COURT:  Just to be on the same page, we're

23  going to shuffle the names so that when the jury is seated

24  in the jury box it will not necessarily be in this order.

25  We don't want the last six people to immediately infer

18:00 1    that they are alternates.  In fact, I intend to tell them

2    that we have shuffled the names and that the lawyers and

3    the Court know who the alternates are and the jurors, but

4    they will not.  And that it's important for everyone to

5    pay close attention throughout the trial because they may

6    well wind up being a juror at the end of the case.

7         Very well.  We will take a recess while Ms.

8    Hudson brings those eighteen to the courtroom.

9         (Recess)

10         THE COURT:  Good afternoon, Ladies and

11    Gentlemen.  Welcome back to the courtroom.  Please make a

12    mental note of where you are seated in the jury box

13    because that's where you will sit throughout the trial,

14    and it's important that you occupy the same seat during

18:00 15    the court sessions.  All of us are going to be together

16    for quite a period of time it looks like it so it is

17    important that we all be in place at the appropriate time.

18         I have just a few remarks for you today, and I

19    will be giving you some instructions at greater length

20    when we reconvene next week.  Today I want to emphasize to

21    you, as I have already told you I think, the importance of

22    deciding this case strictly on the basis of the evidence

23    that is presented here in the courtroom.  The parties have

24    the right to expect nothing less.  One aspect of that case

25    is that you should not discuss the case with anyone or

18:00 1    allow anyone to discuss it with you, and that includes

2    discussing it among yourselves during the case before you

3    have heard the arguments of counsel and my instructions on

4    the law.  Otherwise, without realizing it, you might begin

5    forming impressions or opinions about the case which are

6    not based on what the evidence has been.

7        I know when you leave the courthouse today

8    people that you know or members of your family may

9    understand that you are on jury service and naturally are

10   curious about what you are doing and will be asking you

11   about your service, and you may not be sure how far you

12   can go in responding to any such questions.  Let me be

13   specific about that.  When you leave here when someone

14   asks you whether you are serve on a jury, you are

18:00 15  authorized to tell them, yes, you are serving on a jury,

16   and the name of the case is the Holy Land Foundation, and

17   Judge Fish is the presiding judge, and he has told you,

18   you cannot say anymore about the case until it is over.

19   That's the first rule.  Don't discuss the case or allow

20   anyone to discuss it with you.

21       Also, I have tried to introduce to you all the

22   people that I know will be involved in the trial so that

23   you would know who they are.  It's important that you

24   avoid contact with any of those people as well.  I know

25   there is a natural human tendency when you encounter

18:00 1    someone in the hall to be polite and say hello and maybe

2    even start talking about the weather, something innocuous

3    like that.  But if someone on one side of the case sees

4    you talking to the other side, they are naturally going to

5    suspect the worst, even if you are talking about something

6    entirely unrelated to the case.  Please do nothing that

7    would create the appearance of impropriety.  We're going

8    to try to make it as easy as possible for you to avoid

9    contact with anyone who has anything to do with the trial

10    or any media that are covering the trial.  As I think you

11    probably understand from the individual questioning that

12    took place earlier this week, there has been some media

13    coverage about this case to this point and all indications

14    are that we will continue to have media coverage about the

18:00 15    case throughout the trial and it may include efforts on

16    the part of reporters or others to find out who the jury

17    is and try to interview you all which is entirely

18    inappropriate.  And my guess is that probably you would

19    not like that either.  If I were in your place, I would

20    not want my face and name and identity splashed over the

21    front pages or over the television screen which is

22    probably an invitation for other people then to try to

23    contact you.  So we are going to take some steps to try to

24    avoid any of that happening.  For one thing, as you will

25    be instructed later today, we're going to have you report

18:00 1    to a remote location that's outside the courthouse every

2    morning of the trial day, and when you are all there,

3    someone from the United States Marshal's office will drive

4    you in a van to the courthouse and probably bring you up a

5    private elevator to this floor so you don't have to run

6    the gauntlet of the media if they are gathered on the

7    first floor.  And then at the end of the day, you will be

8    transported back to that remote location, and the Marshal

9    will discuss that with you later today.

10          Also to try to minimize your potential contact

11    with the media or anyone involved in the trial, we're

12    going to provide lunch for you every day here in the

13    juryroom.  So my assistant, Ms. Piwoni, will have menus to

14    distribute to you each day where you make your choices of

18:00 15    what you want and turn that in, and lunch will then be

16    provided to you that following day, and then on the

17    following day there will be a menu for the next day, and

18    we will try to rotate places that we order lunch from so

19    that you don't get burned out on what you eat every day.

20          Going back to one thing about the way you are

21    seated in the jury box.  There are eighteen people in the

22    jury.  The law requires a jury of twelve and allows us to

23    have as many as six alternates in a case.  So some of you

24    are regular jurors, and some of you are alternates, but

25    you don't know which is which.  We mixed up the order in

18:00 1    the jury box.  So the parties and I and the lawyers know

2    who the regular jurors and alternates are, but you do not,

3    and there is a reason for that, and the reason is all of

4    you need to pay strict attention to the evidence

5    throughout the trial because you will not know and cannot

6    know until the end of the case whether you will be a juror

7    who will deliberate and reach a verdict with the other

8    jurors or whether you are an alternate, and if you are not

9    needed to substitute for one of the other jurors, you will

10    be excused.  So it's important that everyone pay close

11    attention to the evidence as it comes in.

12         And along that line, because of the anticipated

13    length of the trial, I am going to allow the jury to take

14    notes, if you choose to do so.  That's an individual

18:00 15    decision for each of you.  Some of you may decide to take

16    notes; some of you may not.  We will provide writing

17    materials for you in the event that you do decide to take

18    notes.  There are sort of pros and cons on whether to take

19    notes or not.  The pro, of course, is that in a long trial

20    such as this, it can assist you in recalling what happened

21    sometime ago.  The cons are that -- and I have found this

22    myself so I can tell you this from personal experience.

23    Sometimes in cases tried without a jury where I have to

24    evaluate the evidence, as you will be doing at the end of

25    the trial, and decide which witnesses to believe and which

18:00 1    witnesses not to believe, I have found that it's hard to
2    take detailed notes and watch the demeanor of the witness
3    as the witness is testifying.  So there is sort of a trade
4    off on whether you are taking detailed notes or watching
5    the demeanor of the witness as the witness testifies.
6    Another con is that inevitably in a group the size of
7    yours there are some better note takers than others.  So
8    there is a temptation if some of you take notes and others
9    do not for those who don't take notes to rely on the notes
10    of the jurors who do.  Each of you has to reach your own
11    decision in this case, and I'll discuss that with you
12    later in more detail, but it's important you reach your
13    own decision without relying on the recollection or notes
14    of other jurors.

18:00 15           I intend that Court will be in session Monday
16    through Thursday.  I think you have been told that
17    already.  Our Court session starts at nine o'clock every
18    day unless a different start time is announced the day
19    before.  We will take an hour and a half luncheon recess
20    midday starting about 12:00 and ending at 1:30, and we
21    will have mid-morning and mid-afternoon recesses of
22    approximately fifteen or twenty minutes and we will try to
23    recess by 4:45 every day.  I don't know how far the remote
24    location is from the courthouse, but hopefully you should
25    be there to start your journey home by five o'clock.  The

18:00 1    reason I told you about the notes is you may want to be

2    thinking between now and the time you come back to the

3    courthouse, which will be next Tuesday, July 24th -- you

4    may be wanting to think about whether you want to take

5    notes in this case or not.

6              Ladies and Gentlemen, I think that's everything

7    I wanted to cover with you today.  I do want to emphasize

8    the importance of being on time.  In a jury trial like

9    this, we cannot begin until all of you are here, and you

10   can see, looking around the courtroom, how many people are

11   involved in this trial.  So if everybody but you is on

12   time, that means the rest of us has to wait on that one

13   person who's late.  I know that emergencies come up,

14   unforeseen circumstances, so probably in a trial that is

18:00 15   going to last as long as everyone predicts this one is, it

16   will happen that something will come up and you may be

17   occasionally late.  I understand that, but please don't

18   let that be a routine occurrence because it really affects

19   the way we can start the trial and ultimately will affect

20   how long we're all here.  A case that is supposed to last

21   three months could take longer than that if we habitually

22   have to start later than nine o'clock every day.

23             One of the things I want to have collected when

24   you see my assistant and the Marshal is cell phone

25   information for all of you who have cell phones so that if

18:00 1   someone is running late and we haven't heard from you, we

2   can hopefully get in touch with you and find out what the

3   situation is.

4          Ladies and Gentlemen, as I said, I think that

5   completes my remarks for you today.  Thank you for your

6   attention.  When we finish here, you will exit through

7   this door behind me and to my right which is across the

8   hall from the juryroom.  The juryroom is where you will

9   always go when we leave the courtroom and where you will

10   always resemble before coming back to the courtroom.  This

11   orientation by my assistant, Ms. Piwoni and the Deputy

12   Marshal will take place in the juryroom when we're

13   finished here in the courtroom.  It may be that Mr.

14   Kiblinger will also have some orientation for you.  So

18:00 15   please give those people the same attention that you have

16   given me.

17          Also, you might want to sort of mentally figure

18   out how you are going to come back in the courtroom when

19   we come back in the courtroom, and we may need to practice

20   a couple of times before we get it down.  But the people

21   at the far end of the jury box will be at the first of the

22   line, and the people near this end will be at the end of

23   the line.  So Mr. Kiblinger may want to instruct you

24   further.  Let me excuse you to go to the juryroom now for

25   that orientation and keep in mind whatever time the

18:00 1    Marshal tells you to be at the remote location, please be

2    there on Tuesday the 24th by that hour so that you can be

3    transported to the courthouse, and we can begin promptly

4    at nine o'clock that morning.  I hope all of you have a

5    pleasant weekend.

6          (Jury out)

7          THE COURT:  Ladies and Gentlemen, while we're

8    still all together, I wanted to call the attention of the

9    parties and counsel to something that I just did a short

10    while ago, and that is to put out an amended order

11    scheduling this Daubert hearing for Dr. Levitt on Monday.

12    An order was issued yesterday setting that at 1:30, but

13    that was due to a failure of communication between me and

14    my staff, and I actually intended to start that hearing

18:00 15    Monday morning at 9:30 because I wanted to be sure that we

16    could get it done in that one day.  So an amended order

17    was issued a short while ago that resets that hearing from

18    1:30 to 9:30 in the morning.  I wanted everyone to be

19    aware of that.

20          We will have also the CIPA Section 2 pretrial

21    conference that was requested by the government

22    immediately following the conclusion of that hearing.

23    Anything else we needed to take up?

24          MS. CADEDDU:  Your Honor, you may have said

25    this.  Did you admonish them not to research on the

18:00  1    internet?

       2           THE COURT:  No, I didn't, but if you want me to,

       3    if you want to bring them back in the courtroom, I can do

       4    that.  Certainly that's a part of my normal preliminary

       5    instructions, so I will be telling them that on Tuesday

       6    about not doing any investigation or research on their

       7    own.  I really didn't think they would be that highly

       8    motivated this weekend.  Maybe they are more excited about

       9    this than I know.

      10           MR. WESTFALL:  Since I have been on this case,

      11    my whole definition of motivation has been changed.  And

      12    the notes, are they going to be leaving them in the

      13    courthouse?

      14           THE COURT:  That would be my instruction.

18:00 15           MR. WESTFALL:  Whatever the Court wants to do.

      16           THE COURT:  We'll be in recess until 9:30 Monday

      17    morning.

      18           (Recess)

      19

      20

      21

      22

      23

      24

      25

1                   C E R T I F I C A T I O N

2

3           I, Cassidi L. Casey, certify that during the

4    proceedings of the foregoing-styled and -numbered cause, I

5    was the official reporter and took in stenotypy such

6    proceedings and have transcribed the same as shown by the

7    above and foregoing pages 1011 through 1079 and that said

8    transcript is true and correct.

9

10          I further certify that the transcript fees and format

11   comply with those prescribed by the court and the Judicial

12   Conference of the United States.

13

14

15                         s/Cassidi L. Casey
                           _____
16                         CASSIDI L. CASEY
                           UNITED STATES DISTRICT REPORTER
17                         NORTHERN DISTRICT OF TEXAS
                           DALLAS DIVISION
18

19

20

21

22

23

24

25

**< A >**

**AARON** 1012:4
**Abdulqader** 1012:11, 1016:22, 1037:1
**Abdulrahmin** 1037:19
**abide** 1021:10
**ability** 1042:6, 1052:1, 1052:2, 1052:19
**able** 1051:24, 1054:20, 1055:18, 1056:8, 1058:9
**above** 1079:7
**Abu** 1014:7, 1016:5, 1016:12, 1017:12, 1017:15, 1033:5, 1033:14
**abundance** 1040:15
**accept** 1022:4
**access** 1021:12, 1024:19, 1045:20
**accomplish** 1027:14, 1066:11
**According** 1018:17, 1021:19
**accounts** 1067:1
**accurate** 1017:17
**accusation** 1033:2, 1041:7, 1041:9
**accused** 1042:17, 1042:18
**acoustics** 1029:8
**acquainted** 1027:13, 1029:13
**across** 1023:17, 1062:6, 1076:7
**Act** 1019:23, 1026:1
**action** 1051:19
**active** 1026:3
**actually** 1027:20, 1045:14, 1056:4, 1066:22, 1077:14
**add** 1024:12
**addition** 1017:19, 1029:16, 1032:18
**additional** 1021:23, 1022:17, 1027:16, 1028:18, 1045:9
**address** 1016:25, 1061:3
**addressed** 1025:16
**adjustment** 1053:25
**administrative** 1030:1
**administrator** 1037:11
**admonish** 1077:25
**advance** 1047:9
**adversary** 1025:18
**advised** 1019:21

**affect** 1052:10, 1052:19, 1075:19
**affects** 1075:18
**affiliates** 1040:2
**afford** 1055:18
**afforded** 1019:14
**afraid** 1018:15
**After** 1018:4, 1027:24, 1048:10, 1058:11, 1058:18
**afternoon** 1063:6, 1069:10
**Again** 1015:19, 1018:22, 1019:8, 1021:16, 1031:1, 1040:16, 1040:23, 1043:22, 1048:11, 1057:25, 1061:13, 1066:25
**against** 1036:17, 1041:8, 1048:14
**age** 1039:3
**Agent** 1038:13
**ago** 1020:23, 1021:1, 1021:23, 1026:17, 1029:18, 1032:5, 1032:6, 1048:12, 1073:21, 1077:10, 1077:17
**agree** 1013:9, 1022:4, 1022:8, 1058:13, 1062:14
**agreement** 1061:5
**ahead** 1066:18, 1067:16
**AL** 1011:11
**Albuquerque** 1011:46
**All** 1013:15, 1020:14, 1023:1, 1025:23, 1027:2, 1027:15, 1027:17, 1029:14, 1029:15, 1032:23, 1040:13, 1040:14, 1041:1, 1043:1, 1043:24, 1044:10, 1045:18, 1045:22, 1046:7, 1047:20, 1055:23, 1056:3, 1057:21, 1062:11, 1069:15, 1069:17, 1070:21, 1071:13, 1071:17, 1072:2, 1073:3, 1075:9, 1075:20, 1075:25, 1077:4, 1077:8
**allegation** 1039:18, 1040:13
**alleged** 1039:23
**allotted** 1066:6
**allow** 1023:6, 1070:1, 1070:19, 1073:13
**allowed** 1048:8
**allows** 1072:22
**almost** 1043:13, 1059:15

**along** 1073:12
**already** 1022:18, 1023:25, 1027:2, 1040:17, 1043:21, 1046:15, 1049:1, 1058:18, 1061:7, 1069:21, 1074:17
**Also** 1017:21, 1031:6, 1031:8, 1031:9, 1033:8, 1054:21, 1054:23, 1070:21, 1072:10, 1076:14, 1076:17, 1077:20
**alternate** 1065:11, 1073:8
**alternates** 1060:5, 1065:9, 1065:14, 1066:7, 1069:1, 1069:3, 1072:23, 1072:24, 1073:2
**although** 1014:14, 1037:12, 1040:11, 1041:15, 1042:12, 1042:22, 1065:10
**Alvin** 1065:3
**always** 1067:24, 1076:9, 1076:10
**Am** 1015:15, 1016:24, 1017:2, 1026:5, 1026:9, 1030:23, 1046:14, 1051:6, 1057:1, 1059:24, 1073:13
**amenable** 1061:5, 1062:11
**amended** 1077:10, 1077:16
**America** 1011:5, 1022:1, 1030:19
**American** 1039:21
**among** 1021:3, 1070:2
**amount** 1054:2, 1054:3, 1054:4, 1055:19
**Andrew** 1034:4, 1034:7
**anemic** 1056:10
**announced** 1074:18
**Another** 1050:4, 1050:5, 1053:13, 1054:11, 1062:4, 1062:10, 1066:15, 1074:6
**answer** 1013:25, 1027:18, 1029:3, 1029:5, 1029:10, 1047:21
**anticipate** 1049:13, 1049:24, 1051:15, 1067:3
**anticipated** 1034:6, 1073:12
**anybody** 1021:11, 1024:19
**anymore** 1062:9, 1070:18
**Anyone** 1030:13, 1032:15, 1033:9, 1033:25, 1034:10, 1034:15, 1034:19, 1034:23,

1035:1, 1035:6, 1035:14, 1036:23, 1037:2, 1037:23, 1038:22, 1039:3, 1039:12, 1040:5, 1040:9, 1040:16, 1040:21, 1043:19, 1044:24, 1067:14, 1069:25, 1070:1, 1070:20, 1071:9, 1072:11
**Anything** 1013:13, 1023:7, 1024:12, 1026:17, 1039:4, 1040:9, 1041:10, 1043:20, 1044:9, 1050:21, 1051:21, 1052:18, 1053:17, 1058:14, 1058:16, 1066:11, 1071:9, 1077:23
**anyway** 1068:18
**anywhere** 1062:12
**apologize** 1017:20
**appear** 1060:9
**appearance** 1017:8, 1071:7
**appearing** 1017:10, 1017:12
**appears** 1022:10, 1024:1
**apply** 1041:1, 1041:3, 1042:5
**appoint** 1023:1, 1023:23
**appointed** 1017:12, 1017:15, 1017:17, 1017:18, 1017:19, 1018:8, 1018:24, 1019:8, 1019:11, 1022:16
**appointing** 1018:16
**appointment** 1018:10, 1047:7, 1049:8, 1049:11, 1049:23, 1050:2, 1050:5, 1058:10, 1058:13, 1058:25
**appointments** 1046:16, 1047:2, 1047:10, 1049:1, 1049:5, 1049:7
**appreciate** 1037:17, 1046:16, 1046:24
**approach** 1061:23
**appropriate** 1068:14, 1069:17
**approving** 1018:10
**approximately** 1027:23, 1034:5, 1074:22
**Arce** 1065:4
**arguments** 1070:3
**around** 1039:18, 1040:13, 1058:16, 1061:24, 1075:10
**arraignment** 1015:8
**arriving** 1041:19
**Arsenal** 1023:20

**article** 1023:17
**ask** 1025:1, 1027:12, 1027:16, 1028:18, 1029:12, 1030:12, 1030:23, 1033:7, 1034:15, 1035:12, 1036:22, 1038:7, 1038:19, 1038:22, 1040:16, 1043:19, 1045:8, 1045:9, 1045:10, 1046:7, 1046:25, 1060:6, 1068:4
**asked** 1013:3, 1013:11, 1018:1, 1027:17, 1040:14, 1043:14, 1046:4, 1051:4, 1052:23, 1059:1, 1059:11
**asking** 1013:24, 1020:18, 1070:10
**asks** 1070:14
**aspect** 1069:24
**assembly** 1045:11
**assigned** 1026:2, 1059:4
**assist** 1073:20
**Assistant** 1011:29, 1030:1, 1031:3, 1031:6, 1031:8, 1031:11, 1072:13, 1075:24, 1076:11
**assisting** 1018:14, 1033:9, 1033:24, 1034:16, 1035:14, 1036:23, 1037:25
**assists** 1037:22
**associate** 1017:21, 1034:18
**assuming** 1056:24, 1065:9
**attaches** 1067:25
**attending** 1059:13
**attention** 1032:14, 1037:18, 1045:8, 1045:22, 1051:18, 1056:14, 1069:5, 1073:4, 1073:11, 1076:6, 1076:15, 1077:8
**Attorney** 1011:29, 1013:7, 1017:10, 1017:12, 1017:19, 1017:25, 1018:13, 1018:16, 1019:10, 1021:20, 1021:21, 1021:23, 1022:6, 1022:18, 1024:15, 1030:21, 1031:3, 1031:5, 1031:7, 1031:8, 1031:10, 1031:12, 1031:17
**attorney-client** 1021:18
**attorneys** 1017:23, 1019:6, 1019:7, 1019:8, 1022:14, 1028:25
**August** 1021:5, 1034:6,

1049:7, 1049:20
**aunt** 1048:9
**authority** 1018:15, 1022:20, 1030:19
**authorized** 1070:15
**automatically** 1022:24
**available** 1028:13
**Avenue** 1012:16, 1012:41
**avoid** 1070:24, 1071:8, 1071:24
**avoiding** 1044:5, 1067:1, 1068:10
**aware** 1024:25, 1025:4, 1026:13, 1049:9, 1056:3, 1056:12, 1058:1, 1077:19


**< B >**
**Baccus** 1037:4, 1037:10, 1044:21, 1045:7, 1045:23, 1047:18, 1048:18, 1048:21, 1056:23, 1056:25, 1057:4, 1057:6, 1057:16, 1060:10
**back** 1019:4, 1019:25, 1021:6, 1023:2, 1025:19, 1033:23, 1034:11, 1034:22, 1044:17, 1044:19, 1045:11, 1046:8, 1049:18, 1050:4, 1053:4, 1053:25, 1054:22, 1055:8, 1062:10, 1062:25, 1069:11, 1072:8, 1072:20, 1075:2, 1076:10, 1076:18, 1076:19, 1078:3
**background** 1028:24
**bad** 1044:25
**Baker** 1011:38, 1014:7, 1014:14, 1014:18, 1015:13, 1015:24, 1016:5, 1016:12, 1017:12, 1017:15, 1033:5, 1033:14, 1033:17
**baliff** 1029:19
**bar** 1034:9
**Barry** 1011:26, 1031:9
**based** 1014:16, 1070:6
**basically** 1048:2, 1068:6, 1068:17
**basis** 1069:22
**bear** 1015:20, 1027:25
**became** 1040:8
**become** 1019:8, 1028:6,

1034:5
**becomes** 1022:4, 1029:23
**began** 1040:20, 1057:7
**begin** 1063:12, 1066:22, 1070:4, 1075:9, 1077:3
**beginning** 1065:14
**behalf** 1013:25, 1022:9
**behind** 1030:2, 1044:22, 1045:9, 1045:25, 1062:10, 1076:7
**belief** 1019:12
**believe** 1014:14, 1016:2, 1017:7, 1017:17, 1019:14, 1019:24, 1021:14, 1021:17, 1021:24, 1022:5, 1025:22, 1030:11, 1038:1, 1053:7, 1056:23, 1058:8, 1064:24, 1066:5, 1073:25, 1074:1
**Ben** 1030:7
**Bench** 1026:8, 1030:7, 1044:6
**Benefit** 1023:20, 1040:10
**best** 1029:9
**better** 1074:7
**Beyond** 1040:20, 1041:22, 1042:3, 1054:2
**bills** 1019:22, 1020:2
**bit** 1039:14, 1039:15, 1040:24, 1042:20
**blood** 1056:10
**board** 1055:11
**Bobbitt** 1063:23
**Boozer** 1060:19, 1064:16
**border** 1051:9, 1051:10, 1052:8, 1052:15
**borderline** 1049:10
**born** 1052:20
**BOX** 1012:25, 1068:24, 1069:12, 1072:21, 1073:1, 1076:21
**Boyd** 1011:43, 1013:21, 1015:23, 1015:24, 1016:6, 1016:10, 1016:11, 1016:15, 1035:4
**Brice** 1038:18, 1066:8
**brief** 1026:23, 1066:15
**briefly** 1066:17
**bright** 1067:25
**bring** 1018:3, 1023:1, 1044:18, 1066:12, 1072:4,
1078:3
**bringing** 1032:14, 1037:17, 1056:13
**brings** 1060:11, 1069:8
**broken** 1056:6
**brought** 1017:5, 1026:23, 1030:18, 1041:8, 1045:7, 1045:17, 1063:1, 1066:16
**Buonasera** 1066:4
**burden** 1041:12, 1041:14
**burned** 1072:19
**bus** 1068:13

< C >
**CA** 1012:33
**CADEDDU** 1012:14, 1012:15, 1016:22, 1036:22, 1036:24, 1036:25, 1059:2, 1059:10
**California** 1012:31
**call** 1013:5, 1046:7, 1051:9, 1056:4, 1063:2, 1077:8
**called** 1037:6, 1042:18, 1048:11
**cancel** 1047:1
**cancelled** 1046:15, 1049:1
**cancer** 1046:14, 1058:6, 1058:9
**capacities** 1040:1
**capital** 1017:24
**cards** 1025:19
**care** 1044:2, 1050:5, 1050:17, 1050:19, 1056:4
**Carrillo** 1065:21
**Carter** 1065:3
**cases** 1040:25, 1041:1, 1041:25, 1042:10, 1073:23
**CASEY** 1012:45, 1026:10, 1029:21, 1079:3, 1079:15, 1079:17
**Cass** 1029:21
**CASSIDI** 1012:45, 1079:3, 1079:17
**category** 1057:17
**cause** 1023:8, 1056:25, 1057:4, 1057:6, 1060:10, 1079:4
**causes** 1039:23
**caution** 1040:15, 1043:22
**cell** 1067:13, 1075:24, 1075:25
**Center** 1049:12
**central** 1040:12, 1040:13, 1044:17, 1050:25, 1053:4, 1055:22, 1056:19, 1066:12
**certain** 1018:8, 1019:13, 1039:22
**Certainly** 1019:11, 1026:14, 1045:1, 1078:4
**certificate** 1020:11
**certify** 1079:3, 1079:10
**challenge** 1045:2, 1063:17, 1063:18, 1065:15
**challenges** 1060:16
**chambers** 1014:15
**chances** 1058:12, 1058:19
**changed** 1078:11
**changes** 1050:19, 1053:11, 1060:22, 1060:23
**charge** 1042:25, 1043:10
**charged** 1042:24
**charges** 1039:17, 1040:12
**charitable** 1039:22
**checked** 1015:18
**Child** 1037:6, 1048:5, 1048:8
**choices** 1072:14
**choose** 1041:16, 1073:14
**choosing** 1019:13
**Chris** 1038:25, 1039:1
**CIPA** 1020:15, 1077:20
**Circuit** 1066:20
**circumstances** 1014:2, 1018:8, 1022:21, 1023:3, 1075:14
**cities** 1036:7
**civil** 1041:24, 1041:25
**CJA** 1019:21, 1019:23, 1021:8, 1022:11, 1026:4, 1026:9, 1026:14
**claim** 1058:12, 1058:19
**claimed** 1017:16, 1058:20
**class** 1051:19
**classified** 1021:12, 1024:17
**clean** 1041:11
**clear** 1060:17
**Clearly** 1021:12, 1022:20, 1024:18, 1047:20
**clerk** 1015:19, 1018:23, 1029:25, 1034:5, 1063:3

**Client** 1022:18, 1022:25, 1023:20, 1033:8, 1033:13, 1034:15, 1034:17, 1035:13, 1036:4, 1036:18, 1036:22, 1063:8
**CLINE** 1012:29, 1016:23, 1020:24, 1020:25, 1021:13, 1021:23, 1021:25, 1022:16, 1024:14, 1026:16, 1035:11, 1035:17, 1035:18, 1035:21, 1036:10, 1036:14, 1036:17, 1063:5
**clinic** 1059:14
**close** 1049:9, 1069:5, 1073:10
**closely** 1029:2
**Cocounsel** 1030:25, 1033:13, 1035:17
**collect** 1067:13
**collected** 1075:23
**colloquy** 1018:4
**comes** 1014:5, 1022:2, 1022:17, 1025:12, 1054:22, 1073:11
**coming** 1040:22, 1043:16, 1076:10
**commence** 1026:24, 1033:1
**commences** 1041:7
**Commerce** 1011:33, 1012:46
**commitment** 1063:7
**communication** 1077:13
**community** 1028:4
**company** 1051:19, 1053:18, 1054:12, 1054:14
**complete** 1027:23
**completely** 1015:18, 1024:8, 1029:5
**completes** 1030:11, 1038:1, 1039:11, 1056:20, 1076:5
**comply** 1079:11
**con** 1074:6
**concept** 1028:3
**conceptualize** 1062:4
**conceptually** 1062:13
**concern** 1051:13, 1051:18, 1052:7, 1052:12
**concerned** 1013:23, 1014:1, 1023:4
**concisely** 1029:6

**conclusion** 1077:22
**condition** 1050:18
**Conference** 1015:17, 1020:11, 1077:21, 1079:12
**conflict** 1014:21
**connection** 1032:8
**cons** 1073:18, 1073:21
**consequence** 1054:8
**consequences** 1054:6
**consider** 1046:24, 1060:24
**consideration** 1028:13
**considering** 1041:19
**consistent** 1020:1
**constant** 1023:12
**Constantinescu** 1046:6, 1046:11, 1047:15, 1056:23, 1058:5, 1058:22, 1059:25, 1060:10
**constraints** 1051:23
**consulting** 1031:23, 1039:7
**contact** 1023:12, 1023:15, 1023:22, 1024:6, 1025:2, 1025:5, 1025:8, 1036:12, 1044:5, 1067:1, 1070:24, 1071:9, 1071:23, 1072:10
**contacts** 1020:20, 1068:10
**context** 1068:10
**continue** 1015:13, 1071:14
**continuous** 1058:6
**contrast** 1028:11
**contribute** 1024:12, 1051:10
**contribution** 1057:22
**control** 1053:25
**coordinator** 1029:25
**cope** 1054:3
**copy** 1021:4
**corporate** 1032:19
**correct** 1015:15, 1016:18, 1079:8
**correctly** 1060:7
**Counsel** 1013:8, 1014:9, 1015:20, 1016:11, 1016:17, 1018:4, 1018:8, 1019:12, 1019:13, 1025:5, 1026:7, 1027:19, 1037:13, 1039:2, 1044:6, 1045:13, 1047:14, 1048:17, 1050:7, 1052:3, 1053:21, 1056:14, 1057:18, 1060:6, 1060:13, 1070:3, 1077:9

**count** 1043:2, 1043:4, 1056:10
**counted** 1060:7
**counts** 1031:25, 1042:25, 1043:1, 1043:15
**county** 1042:11
**couple** 1046:25, 1047:1, 1051:3, 1059:7, 1076:20
**course** 1021:17, 1028:20, 1043:16, 1073:19
**Courthouse** 1011:32, 1027:21, 1045:12, 1045:19, 1067:11, 1068:12, 1070:7, 1072:1, 1072:4, 1074:24, 1075:3, 1077:3, 1078:13
**courtroom** 1013:21, 1015:8, 1018:5, 1026:24, 1029:7, 1030:3, 1043:25, 1045:10, 1045:17, 1045:23, 1046:9, 1048:25, 1053:8, 1056:22, 1066:16, 1069:8, 1069:11, 1069:23, 1075:10, 1076:9, 1076:10, 1076:13, 1076:18, 1076:19, 1078:3
**courts** 1023:14
**cover** 1029:15, 1042:7, 1044:8, 1044:10, 1044:12, 1075:7
**coverage** 1043:17, 1044:5, 1071:13, 1071:14
**covered** 1044:7
**covering** 1071:10
**create** 1071:7
**crime** 1042:25
**Criminal** 1026:1, 1030:16, 1030:17, 1040:24, 1041:1, 1041:3, 1042:3, 1042:5, 1042:10, 1042:13, 1042:15, 1066:20
**crosses** 1051:9
**CSR** 1012:45
**curious** 1070:10
**currently** 1034:9
**cut** 1022:13, 1025:12
**Cutrer** 1012:39, 1037:21
**Cynthia** 1064:5
**cysts** 1049:17

< D >

**D.** 1012:29
**DALLAS** 1011:3, 1011:34, 1012:17, 1012:47, 1027:6, 1031:3, 1039:1, 1079:20
**danger** 1068:15
**Daniels** 1011:43, 1035:5
**dark** 1024:9
**date** 1015:18, 1018:3, 1021:7
**Daubert** 1077:11
**Day** 1012:30, 1035:19, 1035:24, 1036:5, 1036:6, 1036:7, 1036:11, 1036:15, 1037:8, 1046:17, 1046:18, 1047:12, 1055:4, 1055:6, 1058:17, 1067:8, 1068:11, 1072:2, 1072:7, 1072:12, 1072:14, 1072:16, 1072:17, 1072:19, 1074:18, 1074:23, 1075:22, 1077:16
**days** 1021:22, 1054:7, 1058:17
**dealing** 1050:1
**dealings** 1031:16, 1031:19, 1034:23, 1035:7
**dealt** 1035:1
**decide** 1028:12, 1042:19, 1043:6, 1045:13, 1073:15, 1073:17, 1073:25
**decides** 1068:4
**deciding** 1042:22, 1069:22
**decision** 1043:3, 1045:20, 1058:3, 1061:2, 1073:15, 1074:11, 1074:13
**decisions** 1042:23
**declared** 1040:7
**Defendant** 1011:38, 1012:1, 1012:11, 1012:20, 1012:36, 1014:7, 1017:25, 1020:6, 1020:17, 1022:3, 1022:7, 1022:9, 1033:4, 1034:12, 1035:9, 1037:15, 1037:16, 1037:19, 1039:20, 1041:5, 1041:10, 1041:17, 1041:20, 1041:22, 1042:19, 1042:24, 1043:3, 1043:7, 1043:11, 1048:3, 1048:7, 1048:14
**defendants** 1013:8, 1015:2, 1015:16, 1019:12, 1019:13, 1019:14, 1022:17, 1023:14,

1024:4, 1032:18, 1032:23, 1034:11, 1037:5, 1039:2, 1039:24, 1041:8, 1041:13, 1041:15, 1042:24, 1043:1, 1043:5, 1047:22, 1048:19
**Defense** 1019:12, 1020:8, 1020:21, 1022:6, 1022:12, 1025:1, 1025:5, 1026:7, 1056:25, 1060:13, 1061:17, 1061:18, 1063:13, 1063:21, 1065:12
**defer** 1066:21
**definitely** 1037:9, 1047:23
**definition** 1078:11
**degree** 1023:4, 1025:5, 1031:23
**deliberate** 1073:7
**deliver** 1053:14, 1054:23
**delivers** 1055:13
**delivery** 1054:20
**demeanor** 1074:2, 1074:5
**Dennis** 1030:9
**Department** 1011:30, 1031:5, 1031:10, 1031:17, 1031:24, 1032:8
**Deputy** 1029:25, 1067:9, 1076:11
**describe** 1067:7
**design** 1051:20
**designated** 1040:3
**designing** 1055:3
**detail** 1037:12, 1065:10, 1074:12
**detailed** 1074:2, 1074:4
**determination** 1045:15
**determinations** 1043:4
**determine** 1022:6, 1028:9, 1028:18, 1042:16
**determined** 1037:14, 1043:24
**determines** 1042:17
**Development** 1032:20, 1039:19
**device** 1023:22
**diabetic** 1049:10
**different** 1023:10, 1036:11, 1059:22, 1074:18
**differently** 1042:21
**difficult** 1019:1, 1047:2, 1053:15, 1053:18, 1054:2,

1054:5
**digest** 1060:25
**DIRE** 1011:17, 1025:11, 1026:24, 1044:8, 1057:15
**directly** 1040:2
**disagreement** 1028:7
**disclosed** 1019:19
**discovery** 1025:22
**discretion** 1057:19, 1059:25
**discretionary** 1022:5
**discuss** 1069:25, 1070:1, 1070:19, 1070:20, 1072:9, 1074:11
**discussed** 1065:10
**discussing** 1070:2
**dispute** 1028:7
**disputed** 1028:12
**disqualify** 1029:1
**distribute** 1072:14
**DISTRICT** 1011:1, 1011:2, 1011:31, 1019:7, 1027:5, 1027:6, 1030:22, 1031:4, 1031:18, 1079:18, 1079:19
**DIVISION** 1011:3, 1027:6, 1028:14, 1079:20
**docket** 1015:17, 1015:21, 1019:16, 1021:6
**doctor** 1050:11, 1050:14, 1058:10, 1058:12, 1058:24, 1059:2, 1059:4, 1059:5, 1059:22
**doctors** 1047:8, 1047:13, 1049:6
**document** 1032:25
**Doing** 1023:9, 1054:17, 1054:25, 1055:5, 1055:6, 1055:12, 1056:7, 1068:6, 1068:19, 1070:10, 1073:24, 1078:6
**done** 1018:2, 1019:2, 1021:12, 1022:14, 1028:20, 1035:24, 1036:2, 1036:4, 1036:18, 1044:9, 1052:16, 1058:2, 1062:14, 1062:25, 1077:16
**donors** 1022:3
**door** 1030:1, 1048:9, 1076:7
**doors** 1046:8
**double** 1046:8
**double-check** 1060:6

**doubt** 1041:23, 1042:3
**doubts** 1042:6
**down** 1029:22, 1036:21, 1050:4, 1051:5, 1052:15, 1052:24, 1057:14, 1057:16, 1060:11, 1076:20
**downstairs** 1050:25
**Drake** 1038:24, 1064:3
**Dratel** 1012:3, 1012:5, 1015:23, 1016:7, 1016:20, 1017:21, 1018:1, 1018:14, 1023:18, 1034:14, 1034:17, 1034:18, 1034:19, 1034:22, 1034:25, 1035:2
**drive** 1067:11, 1072:3
**due** 1077:13
**Duncan** 1011:42, 1013:21, 1015:13, 1016:6, 1016:11, 1016:13, 1017:8, 1017:14, 1033:6, 1033:13, 1033:17
**during** 1015:8, 1028:15, 1032:22, 1034:16, 1035:14, 1036:23, 1039:15, 1067:6, 1069:14, 1070:2, 1079:3
**duties** 1051:25

**< E >**
**earlier** 1013:4, 1013:12, 1015:17, 1017:7, 1029:14, 1030:15, 1039:16, 1041:7, 1071:12
**early** 1020:9, 1039:8
**easiest** 1061:24, 1062:3, 1062:15
**easy** 1071:8
**eat** 1072:19
**educated** 1061:2
**effect** 1013:5
**efficient** 1058:13
**efforts** 1071:15
**eight** 1032:6, 1056:5
**eighteen** 1044:19, 1066:12, 1069:8, 1072:21
**either** 1016:8, 1023:13, 1035:24, 1037:2, 1040:1, 1048:9, 1052:12, 1060:24, 1062:11, 1067:15, 1071:19
**El** 1016:20, 1018:17, 1034:13, 1034:17, 1034:20

**El-mezain** 1012:1
**elaborate** 1048:4
**ELASHI** 1012:20, 1016:23, 1021:21, 1021:24, 1035:10, 1035:17, 1035:21, 1037:16, 1063:9
**Eleanore** 1030:2
**elect** 1041:18
**elevator** 1072:5
**Elizabeth** 1011:27, 1031:4, 1032:4
**embezzled** 1053:10
**emergencies** 1075:13
**emphasize** 1069:20, 1075:7
**employer** 1055:16, 1055:18
**encounter** 1070:25
**encountered** 1061:1
**encountering** 1067:5
**end** 1041:13, 1048:5, 1069:6, 1072:7, 1073:6, 1073:24, 1076:21, 1076:22
**ending** 1074:20
**engage** 1015:6
**engineering** 1039:6
**enjoin** 1066:25
**enough** 1056:9
**entered** 1017:22, 1019:6, 1019:10
**entering** 1020:24
**enters** 1021:23
**entire** 1061:25
**entirely** 1018:25, 1023:10, 1071:6, 1071:17
**entitled** 1017:23, 1017:25, 1023:19
**entity** 1032:19, 1032:21
**entries** 1019:16, 1019:18, 1019:21, 1019:25
**entry** 1017:8
**environmental** 1031:22
**Epperson** 1064:13
**error** 1016:3
**essentially** 1022:8, 1025:17
**ET** 1011:11
**evaluate** 1073:24
**Evans** 1021:21
**event** 1066:24, 1073:17
**eventually** 1019:11
**everybody** 1027:24, 1046:1, 1075:11

**everyone** 1029:10, 1029:22, 1051:12, 1060:12, 1069:4, 1073:10, 1075:15, 1077:18
**Everything** 1020:1, 1053:25, 1075:6
**evidence** 1028:9, 1028:13, 1041:15, 1041:16, 1041:22, 1042:1, 1043:25, 1051:23, 1069:22, 1070:6, 1073:4, 1073:11, 1073:24
**ex** 1014:15, 1015:7, 1019:3, 1019:18, 1020:6, 1020:9, 1020:14, 1020:20, 1021:7, 1023:4, 1023:10, 1023:12, 1023:15, 1023:22, 1024:6, 1024:9, 1025:2, 1025:5
**exactly** 1013:17
**exam** 1034:10
**EXAMINATION** 1011:17
**example** 1047:6
**exceeded** 1018:15
**except** 1045:23
**exchange** 1025:22
**excited** 1078:8
**exclude** 1023:24
**excusal** 1057:15
**Excuse** 1033:19, 1044:16, 1057:6, 1059:24, 1060:3, 1076:24
**excused** 1045:23, 1046:14, 1060:10, 1063:5, 1073:10
**excuses** 1057:17, 1057:19
**excusing** 1057:4
**exercise** 1041:18, 1059:25, 1063:16
**exercising** 1057:19, 1060:16
**exit** 1076:6
**exiting** 1048:25
**expect** 1069:24
**expecting** 1060:23
**expended** 1022:9
**experience** 1028:24, 1060:14, 1073:22
**expert** 1023:24, 1023:25
**explain** 1041:23, 1067:12
**exposure** 1026:1, 1043:15
**extent** 1017:6, 1028:6
**extremely** 1023:16

**< F >**

**face** 1071:20
**fact** 1015:18, 1018:9,
1020:18, 1020:25, 1023:5,
1030:17, 1036:14, 1050:9,
1069:1
**facts** 1028:6, 1028:9,
1028:16, 1036:16
**failed** 1034:2
**failure** 1077:13
**fair** 1045:1, 1052:19,
1052:25, 1061:25
**familiar** 1026:9
**family** 1048:4, 1070:8
**far** 1024:25, 1031:9,
1036:11, 1047:9, 1050:10,
1058:1, 1070:11, 1074:23,
1076:21
**fashion** 1023:10
**fault** 1015:20
**FBI** 1038:14
**feasible** 1046:24
**federal** 1042:20
**feel** 1044:10
**feels** 1043:8
**fees** 1079:10
**felt** 1014:25, 1047:23
**few** 1022:25, 1030:10,
1045:9, 1046:3, 1069:18
**fifteen** 1074:22
**Fifth** 1066:20
**fifty.** 1060:8
**figure** 1076:17
**file** 1020:8, 1020:19, 1025:1
**filed** 1017:8, 1017:9, 1020:6,
1020:7, 1020:8, 1020:9,
1021:5, 1021:6, 1023:9,
1024:5, 1032:25
**filing** 1021:8, 1021:10
**filings** 1023:4, 1023:5
**filled** 1028:21
**find** 1071:16, 1076:2
**finding** 1024:14
**fine** 1015:10, 1054:22,
1062:2
**finish** 1076:6
**finished** 1017:2, 1045:6,
1076:13
**firm** 1013:20, 1016:5,
1016:10, 1017:16, 1017:18,

1031:22, 1031:23, 1034:22,
1034:24, 1035:2, 1035:4,
1035:8, 1035:17, 1035:25,
1036:2, 1036:3, 1036:7,
1036:8, 1036:15, 1036:19,
1037:21, 1039:7
**First** 1011:45, 1021:21,
1026:15, 1026:20, 1027:4,
1027:14, 1033:3, 1041:5,
1042:16, 1045:11, 1049:16,
1057:21, 1061:20, 1062:1,
1063:16, 1063:18, 1063:20,
1064:24, 1065:12, 1065:15,
1070:19, 1072:7, 1076:21
**Fish** 1011:18, 1027:9,
1070:17
**five** 1048:12, 1074:25
**Floor** 1012:6, 1012:32,
1045:12, 1072:5, 1072:7
**Florida** 1012:26
**flow** 1025:22
**follow** 1042:6, 1067:8
**follow-up** 1046:25, 1059:18
**following** 1072:16, 1072:17,
1077:22
**foot** 1023:11
**forefront** 1051:11
**foregoing** 1079:7
**foregoing-styled** 1079:4
**foreign** 1040:4, 1040:6,
1040:7
**forgot** 1034:21, 1051:5
**formal** 1026:11
**formally** 1027:4
**format** 1079:10
**forming** 1070:5
**forms** 1017:9
**Fort** 1012:42
**forthright** 1032:12
**forties** 1039:8
**forty-eight.** 1057:16
**forty-five** 1060:4
**forty-nine** 1057:14
**Foster** 1037:22
**found** 1021:2, 1043:6,
1043:7, 1073:21, 1074:1
**Foundation** 1011:11,
1014:10, 1014:23, 1017:11,
1021:20, 1032:20, 1039:19,
1039:24, 1040:1, 1070:16

**four** 1025:9, 1046:22,
1054:7, 1055:6, 1058:17
**Francisco** 1012:33
**frankly** 1023:3
**free** 1025:22
**Freedman** 1011:43, 1035:4
**Freeman** 1035:23, 1065:7
**frequently** 1042:15
**Friday** 1047:13, 1049:24
**Fridays** 1049:25
**friends** 1022:3
**front** 1029:21, 1071:21
**full** 1019:17
**function** 1051:24
**Fund** 1022:1, 1022:6,
1022:12
**fundamental** 1041:3


**< G >**

**Gail** 1066:7
**game** 1025:18, 1061:25
**Garrett** 1011:28, 1031:7,
1031:8, 1031:15
**Gartman** 1064:12
**gathered** 1072:6
**gauntlet** 1068:11, 1072:6
**general** 1025:10, 1026:24,
1057:15
**generally** 1028:23, 1047:9
**generic** 1038:12
**Gentlemen** 1013:2, 1026:22,
1027:1, 1030:7, 1030:15,
1030:24, 1031:2, 1031:14,
1033:8, 1033:12, 1033:15,
1035:13, 1035:16, 1037:20,
1037:23, 1037:24, 1038:1,
1039:13, 1040:23, 1043:13,
1044:7, 1045:5, 1048:23,
1069:11, 1075:6, 1076:4,
1077:7
**Gerry** 1066:9
**gets** 1062:25
**getting** 1067:14
**Ghassan** 1035:10, 1035:17
**girl** 1031:21, 1048:5
**give** 1029:5, 1038:3,
1038:17, 1039:3, 1040:5,
1044:19, 1047:4, 1047:12,
1060:21, 1060:25, 1062:17,

1062:18, 1066:19, 1067:16, 1068:5, 1068:9, 1076:15
**Given** 1021:11, 1036:14, 1037:12, 1055:2, 1060:21, 1067:19, 1076:16
**gives** 1064:24
**giving** 1024:5, 1069:19
**graduated** 1034:8
**Graham** 1066:8
**grandmother** 1056:5
**graphic** 1036:3
**greater** 1069:19
**Greg** 1012:38, 1037:21
**grounds** 1025:3
**group** 1027:3, 1027:15, 1038:20, 1039:12, 1074:6
**guess** 1015:25, 1016:19, 1017:6, 1024:13, 1044:16, 1045:3, 1051:5, 1052:17, 1057:13, 1058:1, 1060:11, 1060:12, 1061:5, 1061:19, 1062:19, 1071:18
**guilt** 1041:10, 1041:22, 1042:16, 1042:22
**guilty** 1041:6, 1042:18, 1043:6, 1043:7, 1043:10
**guy** 1053:13, 1054:11, 1055:10
**guys** 1052:13, 1052:23

< H >
**habitually** 1075:21
**hair** 1029:20
**half** 1020:23, 1055:4, 1055:5, 1074:19
**hall** 1046:7, 1048:22, 1071:1, 1076:8
**halls** 1067:5
**HAMAS** 1040:2, 1040:7, 1040:10
**hand** 1029:4, 1046:4
**handle** 1053:17
**handling** 1018:6
**happen** 1066:17, 1075:16
**happened** 1020:19, 1028:8, 1073:20
**happening** 1053:9, 1071:24
**hard** 1074:1
**Hardiman** 1033:23, 1034:1

**hardship** 1055:16, 1055:17, 1057:17, 1057:21, 1057:23, 1057:25, 1058:9, 1058:12, 1058:19, 1058:20, 1058:22, 1060:1, 1060:11
**hazards** 1015:3
**health** 1050:17
**hear** 1025:13, 1027:22, 1029:10, 1038:16, 1047:20
**heard** 1027:9, 1030:15, 1032:17, 1040:18, 1043:20, 1070:3, 1076:1
**hearing** 1077:11, 1077:14, 1077:17, 1077:22
**hearings** 1021:17
**hello** 1071:1
**help** 1039:4, 1068:7
**helping** 1048:5
**Henson** 1048:25, 1049:4, 1050:8, 1050:24, 1058:10, 1058:23, 1059:9, 1060:2, 1063:25
**hide** 1025:19
**highly** 1078:7
**Hill** 1064:9
**hire** 1054:9, 1054:10, 1054:16
**hit** 1044:10
**Hodge** 1057:13, 1060:9
**hold** 1025:19
**Hollander** 1011:41, 1011:44, 1013:5, 1013:6, 1013:13, 1015:23, 1015:24, 1016:14, 1017:16, 1033:6, 1033:7, 1033:12, 1033:17, 1034:21, 1035:3, 1035:5
**Holmes** 1065:4
**Holy** 1011:11, 1013:16, 1013:18, 1013:25, 1014:2, 1014:5, 1014:9, 1014:17, 1014:23, 1015:12, 1015:22, 1015:25, 1016:4, 1017:10, 1021:19, 1032:19, 1039:19, 1039:23, 1039:25, 1070:16
**home** 1037:5, 1047:22, 1074:25
**Honestly** 1014:4
**HONORABLE** 1011:18
**hope** 1027:14, 1027:23, 1077:4

**hopefully** 1063:3, 1067:5, 1074:24, 1076:2
**hour** 1027:24, 1027:25, 1045:16, 1067:6, 1074:19, 1077:2
**hours** 1054:24, 1055:2, 1055:6, 1058:17
**house** 1037:7, 1048:8, 1048:10
**Hudson** 1013:4, 1029:24, 1057:12, 1062:16, 1063:2, 1066:12, 1069:8
**human** 1070:25
**hundreds** 1019:17
**husband** 1059:2, 1059:12

< I >
**ICU** 1056:7
**idea** 1047:4
**identify** 1039:4
**identity** 1071:20
**illegal** 1040:5, 1040:8
**imagine** 1023:11
**immediately** 1029:20, 1068:25, 1077:22
**impartial** 1045:1, 1052:19, 1053:1
**importance** 1044:4, 1067:1, 1069:21, 1075:8
**important** 1043:23, 1045:18, 1069:4, 1069:14, 1069:17, 1070:23, 1073:10, 1074:12
**impression** 1018:19
**impressions** 1070:5
**impromptu** 1024:1
**impropriety** 1071:7
**in.** 1028:19, 1046:8, 1073:11
**inappropriate** 1071:18
**inclined** 1036:17, 1052:14
**include** 1016:19, 1071:15
**includes** 1070:1
**including** 1026:3, 1028:12, 1041:4
**indicate** 1029:3
**indicated** 1017:11, 1042:8, 1042:10, 1053:7, 1056:20
**indicating** 1017:9, 1018:24
**indication** 1018:22
**indications** 1071:13

**indictment** 1032:25, 1033:4, 1034:12, 1034:13, 1036:21, 1039:20, 1039:23, 1041:6, 1041:8, 1043:2, 1066:23
**indigent** 1017:23, 1019:14, 1022:16, 1022:25
**individual** 1029:14, 1032:17, 1032:22, 1032:23, 1033:3, 1033:18, 1034:12, 1039:16, 1039:24, 1040:14, 1040:21, 1040:25, 1043:14, 1043:21, 1044:9, 1071:11, 1073:14
**individually** 1027:2, 1027:8, 1029:8, 1060:2
**inevitably** 1074:6
**infer** 1068:25
**inferring** 1068:15
**influence** 1032:9, 1047:23, 1047:25, 1048:13
**information** 1037:11, 1037:13, 1039:3, 1067:13, 1075:25
**informed** 1020:23
**initial** 1063:17
**initially** 1060:18
**innocence** 1041:14, 1042:17, 1042:22
**innocent** 1041:5
**innocuous** 1071:2
**inquire** 1034:23, 1039:2
**inquiry** 1022:21, 1038:5
**instance** 1026:15, 1026:20, 1062:7
**instead** 1061:9
**instruct** 1076:23
**instructed** 1071:25
**instruction** 1044:19, 1063:2, 1068:6, 1078:14
**Instructions** 1045:18, 1061:9, 1066:19, 1066:21, 1067:17, 1068:3, 1069:19, 1070:3, 1078:5
**intend** 1021:10, 1069:1, 1074:15
**intended** 1068:18, 1077:14
**intern** 1030:11
**International** 1037:6
**internet** 1078:1
**Intervention** 1037:6
**interview** 1071:17

**interviewed** 1031:25
**introduce** 1015:16, 1027:11, 1029:11, 1029:17, 1030:24, 1033:7, 1033:9, 1033:19, 1034:15, 1035:12, 1036:22, 1070:21
**introduced** 1013:9, 1030:14, 1032:22, 1037:16, 1037:25, 1039:25
**introduction** 1030:11, 1034:3, 1038:2
**introductions** 1016:12
**investigation** 1078:6
**invitation** 1071:22
**involve** 1031:19
**involved** 1018:21, 1029:10, 1036:15, 1037:15, 1048:14, 1067:2, 1070:22, 1072:11, 1075:11
**involvement** 1021:13
**involves** 1039:14
**irreplaceable** 1051:22
**issue** 1013:14, 1014:9, 1017:1, 1021:16, 1044:20
**issued** 1077:12, 1077:17
**issues** 1016:25, 1017:3

< J >
**J.** 1012:4
**Jacks** 1011:25, 1025:9, 1025:25, 1030:22, 1030:23, 1031:2, 1031:13, 1031:15, 1050:21, 1061:6, 1063:15, 1063:24, 1064:4, 1064:10, 1064:18, 1064:22, 1065:13, 1065:18, 1065:22, 1065:25
**Jeff** 1059:16, 1059:19
**Jensen** 1065:19
**jeopardy** 1067:25
**Jim** 1011:25, 1030:22, 1031:2, 1038:11, 1038:13
**job** 1022:15, 1043:6, 1053:10, 1055:15
**Joe** 1011:18, 1027:9
**John** 1012:29, 1013:21, 1015:23, 1015:24, 1016:6, 1016:10, 1016:11, 1035:11, 1035:17
**Johnson** 1065:5

**join** 1052:6
**joint** 1014:6, 1015:1, 1015:4
**jointly** 1015:3
**Jonas** 1011:26, 1014:3, 1031:9, 1031:15
**Jones** 1012:30, 1035:19, 1035:24, 1036:4, 1036:6, 1036:7, 1036:11, 1036:15, 1038:25, 1039:1, 1039:4, 1065:24
**Josh** 1015:23, 1034:18, 1068:17
**Joshua** 1012:3, 1012:5, 1016:7, 1016:20, 1034:14, 1034:25, 1035:2
**journey** 1074:25
**Judge** 1018:5, 1018:7, 1018:11, 1018:17, 1020:22, 1026:2, 1026:5, 1026:19, 1028:6, 1028:11, 1028:16, 1036:16, 1043:6, 1051:23, 1070:17
**judges** 1028:15, 1028:17
**judgment** 1037:9
**Judicial** 1079:11
**Junior** 1065:5
**Juror** 1028:5, 1042:9, 1042:15, 1048:15, 1063:19, 1063:22, 1063:25, 1069:6, 1073:6
**jurors** 1028:8, 1028:22, 1042:10, 1061:7, 1061:25, 1069:3, 1072:24, 1073:2, 1073:8, 1073:9, 1074:10, 1074:14
**juryroom** 1056:19, 1072:13, 1076:8, 1076:12, 1076:24
**Justice** 1011:30, 1026:1, 1031:6, 1031:11, 1031:17, 1031:24, 1032:8, 1042:13

< K >
**Kastigar** 1021:18
**keep** 1013:10, 1041:24, 1076:25
**kept** 1019:2
**key** 1051:18
**Kiblinger** 1029:17, 1029:19, 1048:24, 1049:4, 1051:1,

1053:5, 1055:24, 1056:19,
1076:14, 1076:23
**kidneys** 1049:17
**kind** 1036:2, 1047:25,
1048:4, 1050:2, 1058:16,
1060:22
**knowing** 1043:9
**knowledge** 1019:9, 1020:1,
1028:24
**knowledgeable** 1026:6
**known** 1057:21
**knows** 1030:13, 1031:14,
1033:17, 1033:25, 1034:10,
1037:24, 1039:5, 1040:16,
1040:21
**Kyle** 1030:8


**< L >**
**L.** 1012:5, 1012:45, 1079:3,
1079:15, 1079:17
**Ladies** 1013:2, 1026:22,
1027:1, 1030:15, 1030:24,
1031:1, 1031:13, 1033:8,
1033:12, 1033:15, 1035:13,
1035:15, 1037:20, 1038:1,
1039:13, 1040:23, 1043:13,
1044:7, 1045:5, 1048:23,
1069:10, 1075:6, 1076:4,
1077:7
**lady** 1029:20, 1032:2, 1056:4
**Land** 1011:11, 1013:16,
1013:18, 1013:25, 1014:2,
1014:5, 1014:10, 1014:17,
1014:23, 1015:12, 1015:22,
1015:25, 1016:4, 1017:10,
1021:19, 1032:20, 1039:19,
1039:24, 1039:25, 1070:16
**lapse** 1043:18
**large** 1018:6
**last** 1017:22, 1021:17,
1025:15, 1037:16, 1047:6,
1047:8, 1050:13, 1050:20,
1051:6, 1051:7, 1059:19,
1060:21, 1061:20, 1068:25,
1075:15, 1075:20
**late** 1025:10, 1034:6, 1039:7,
1046:14, 1075:13, 1075:17,
1076:1
**later** 1015:15, 1022:25,

1025:13, 1030:17, 1033:3,
1041:23, 1071:25, 1072:9,
1074:12, 1075:22
**Law** 1012:5, 1012:15,
1012:24, 1013:20, 1016:5,
1016:9, 1017:18, 1023:18,
1028:11, 1028:12, 1028:16,
1030:9, 1031:23, 1034:5,
1034:8, 1034:22, 1034:23,
1034:25, 1035:2, 1035:4,
1035:7, 1035:17, 1035:18,
1036:2, 1036:18, 1036:25,
1037:21, 1040:5, 1040:9,
1041:18, 1067:24, 1070:4,
1072:22
**lawsuits** 1051:20
**lawyer** 1022:2, 1022:12,
1022:17, 1035:24
**lawyers** 1013:22, 1016:4,
1022:23, 1030:20, 1031:19,
1069:2, 1073:1
**lead** 1019:11
**leads** 1018:21
**least** 1014:8, 1020:14,
1022:11, 1025:4, 1039:15,
1062:18
**leave** 1027:21, 1045:10,
1068:20, 1070:7, 1070:13,
1076:9
**leaves** 1046:1
**leaving** 1053:7, 1078:12
**lectern** 1047:19
**left** 1029:24, 1031:4,
1056:22
**leg** 1056:6, 1056:8
**Legal** 1022:1, 1022:5,
1022:11, 1053:19
**length** 1046:13, 1069:19,
1073:13
**less** 1062:22, 1069:24
**Lester** 1030:9
**Leticia** 1065:6
**letter** 1044:11, 1049:19
**Levitt** 1077:11
**Lewis** 1038:11, 1038:13
**liable** 1058:10
**life** 1056:2
**light** 1014:12, 1017:7,
1045:7
**likely** 1042:2, 1054:9

**Linda** 1012:23, 1012:24,
1035:11, 1035:16, 1035:18
**line** 1067:25, 1073:12,
1076:22, 1076:23
**Lisette** 1065:5
**list** 1035:6, 1038:6, 1038:10,
1038:21, 1039:10, 1039:11,
1056:20, 1059:11, 1060:8,
1060:22
**listen** 1026:13, 1029:2
**litigation** 1024:3, 1055:11,
1055:12
**little** 1039:14, 1039:15,
1040:24, 1042:20, 1046:14,
1051:6, 1060:25, 1061:1
**lives** 1039:1
**local** 1023:6
**location** 1067:11, 1068:5,
1072:1, 1072:8, 1074:24,
1077:1
**long** 1032:5, 1035:6, 1038:6,
1047:3, 1053:16, 1054:13,
1062:19, 1073:19, 1075:15,
1075:20
**longer** 1075:21
**look** 1021:6, 1022:21,
1023:2
**looked** 1019:15, 1019:25,
1067:24
**looking** 1062:3, 1075:10
**looks** 1019:4, 1069:16
**Lopez** 1065:5
**Lopez-rogina** 1065:3
**lose** 1055:15
**lot** 1018:19, 1020:2,
1025:25, 1054:23
**Lovely** 1065:3
**low** 1019:16
**Loyola** 1030:9
**lunch** 1027:25, 1061:7,
1062:16, 1063:1, 1063:3,
1063:4, 1067:4, 1067:6,
1067:7, 1067:8, 1072:12,
1072:15, 1072:18
**luncheon** 1074:19


**< M >**
**ma'am** 1033:21
**Maddox** 1064:21

**Magistrate** 1018:5, 1018:23, 1020:22, 1023:13, 1024:10
**major** 1051:12
**Mallick** 1012:40
**Man** 1033:4, 1034:4, 1051:18, 1058:15
**manage** 1059:14
**managing** 1026:3
**manipulation** 1022:11
**manipulations** 1022:22, 1022:23
**March** 1050:18
**Marlo** 1012:14, 1012:15, 1036:24, 1036:25
**Marshal** 1067:9, 1072:3, 1072:8, 1075:24, 1076:12, 1077:1
**Marshall** 1064:14
**Martha** 1033:23
**material** 1020:20, 1021:12, 1024:17, 1024:20, 1040:5
**materials** 1073:17
**matter** 1020:13, 1024:8, 1024:11, 1045:7
**matters** 1019:18, 1026:4
**Mcgahan** 1066:9
**Mckinney** 1012:16
**mean** 1055:1
**means** 1067:14, 1075:12
**meant** 1067:23
**media** 1036:3, 1040:19, 1043:15, 1043:17, 1043:20, 1044:5, 1051:18, 1067:1, 1068:10, 1068:20, 1071:10, 1071:12, 1071:14, 1072:6, 1072:11
**Medical** 1046:15, 1047:2, 1049:1, 1049:5, 1049:12
**member** 1030:13, 1031:14, 1031:16, 1032:9, 1033:16, 1042:4, 1043:8
**members** 1028:4, 1029:16, 1030:6, 1035:20, 1046:3, 1056:22, 1057:8, 1070:8
**memorandum** 1020:25, 1021:2, 1021:4, 1021:8, 1024:16, 1024:21, 1026:16
**memory** 1036:1, 1060:14
**Men** 1051:8, 1052:6
**mental** 1069:12

**mentally** 1076:17
**mentioned** 1032:24, 1044:11
**menu** 1072:17
**menus** 1072:13
**merely** 1019:22
**messed** 1062:9
**messing** 1058:16
**met** 1029:13
**method** 1060:14
**Mezain** 1016:20, 1018:17, 1034:13, 1034:17, 1034:20
**microphone** 1047:20
**mid** 1034:5
**mid-afternoon** 1074:21
**mid-morning** 1074:21
**midday** 1074:20
**middle** 1047:19
**Miller** 1030:8
**mind** 1041:24, 1051:11, 1061:24, 1076:25
**minimize** 1072:10
**minimum** 1060:4
**Minute** 1051:7, 1052:6, 1058:15, 1060:21
**minutes** 1025:9, 1062:23, 1074:22
**mispronouncing** 1017:20
**Missing** 1058:17, 1060:9
**misunderstanding** 1041:2
**mixed** 1072:25
**Mohamed** 1034:13, 1034:17
**Mollie** 1038:24
**moment** 1027:10, 1029:18, 1045:24
**Monday** 1046:18, 1049:14, 1049:21, 1049:22, 1074:15, 1077:11, 1077:15, 1078:16
**money** 1022:2, 1022:4, 1022:8, 1039:22, 1040:1, 1040:9, 1053:10
**month** 1049:11
**months** 1021:1, 1046:17, 1046:22, 1047:6, 1049:8, 1049:18, 1050:4, 1075:21
**Mooney** 1065:17
**Moreno** 1012:23, 1012:24, 1016:23, 1021:22, 1021:25, 1035:11, 1035:12, 1035:16, 1035:18, 1035:21, 1066:9
**morning** 1013:2, 1013:3,

1013:4, 1015:15, 1015:19, 1015:22, 1027:1, 1027:15, 1028:2, 1031:1, 1033:12, 1035:15, 1047:21, 1057:7, 1057:9, 1057:14, 1061:1, 1066:22, 1066:24, 1066:25, 1072:2, 1077:4, 1077:15, 1077:18, 1078:17
**Morton** 1065:6
**Moss** 1064:23
**mother-in-law** 1048:9
**motion** 1020:8, 1020:9, 1020:12, 1020:13, 1023:6, 1023:8, 1024:5, 1025:1
**motions** 1020:14, 1020:16
**motivated** 1078:8
**motivation** 1078:11
**move** 1049:23, 1050:3, 1062:6
**moves** 1050:4
**moving** 1050:2
**MR. GARRETT** 1044:15
**MR. JACKS** 1016:24, 1017:4, 1018:19, 1020:5, 1025:15, 1026:21, 1031:1, 1045:3, 1047:16, 1050:9, 1050:22, 1055:14, 1055:20, 1056:16, 1057:5, 1057:20, 1059:1, 1060:20, 1061:10, 1063:14, 1063:19, 1063:25, 1064:5, 1064:11, 1064:14, 1064:23, 1065:16, 1065:19, 1065:23, 1066:1, 1067:18
**MRI** 1047:7
**MS. CADEDDU** 1048:19, 1063:13, 1066:14, 1077:24
**MS. HOLLANDER** 1013:15, 1013:20, 1014:12, 1014:21, 1015:10, 1016:2, 1016:9, 1016:17, 1033:11, 1033:19, 1033:22, 1035:4, 1044:14
**MS. MORENO** 1035:15
**MS. SHAPIRO** 1014:4
**Mufid** 1012:11, 1037:1
**multiple** 1042:23, 1043:4
**Munoz** 1057:11, 1066:1
**Muslim** 1022:1
**myself** 1013:20, 1016:6, 1029:16, 1053:12, 1054:11, 1058:11, 1073:22

**Mysliwiec** 1012:4, 1016:21, 1017:20, 1017:21, 1018:10, 1018:24, 1034:14, 1034:18, 1034:20

**< N >**
**name** 1016:7, 1016:19, 1017:20, 1027:9, 1029:5, 1030:18, 1031:2, 1032:2, 1033:4, 1034:7, 1035:16, 1036:24, 1037:4, 1038:12, 1038:17, 1070:16, 1071:20
**named** 1032:18, 1032:19, 1033:4, 1034:4, 1034:12, 1034:13, 1035:9, 1035:10, 1039:20, 1040:2, 1043:1, 1043:3
**names** 1032:24, 1035:6, 1038:3, 1038:6, 1038:8, 1038:20, 1038:23, 1039:12, 1068:23, 1069:2
**Nancy** 1011:41, 1015:23, 1015:24, 1016:13, 1033:5, 1033:12
**Nanette** 1065:6
**Nathan** 1011:28, 1031:7
**natural** 1070:25
**naturally** 1070:9, 1071:4
**nature** 1020:17
**Neal** 1066:7
**near** 1027:25, 1046:8, 1076:22
**necessarily** 1018:20, 1060:23, 1068:24
**necessary** 1014:25, 1015:9
**necessity** 1015:6, 1015:7
**need** 1013:23, 1014:24, 1016:19, 1025:11, 1034:21, 1038:3, 1044:10, 1045:8, 1045:12, 1046:11, 1047:8, 1047:10, 1060:5, 1060:13, 1061:6, 1066:11, 1066:25, 1073:4, 1076:19
**needed** 1013:6, 1049:4, 1053:8, 1056:21, 1073:9, 1077:23
**needs** 1044:24, 1059:13, 1067:6
**nervous** 1051:6

**New** 1012:7, 1023:18, 1030:9, 1050:18
**Newman** 1034:4, 1034:7, 1034:10
**news** 1040:19
**Next** 1030:7, 1030:8, 1035:9, 1037:19, 1045:16, 1046:10, 1048:9, 1049:10, 1049:11, 1049:14, 1051:1, 1053:5, 1055:25, 1069:20, 1072:17, 1075:3
**night** 1051:25
**nine** 1074:17, 1075:22, 1077:4
**NM** 1011:46
**noncapital** 1018:9
**None** 1020:19, 1023:5, 1041:13
**noon** 1027:24, 1060:24
**normal** 1027:25, 1066:19, 1078:4
**NORTHERN** 1011:2, 1011:31, 1027:5, 1030:22, 1031:4, 1031:18, 1079:19
**note** 1069:12, 1074:7
**notes** 1073:14, 1073:16, 1073:18, 1073:19, 1074:2, 1074:4, 1074:8, 1074:9, 1074:13, 1075:1, 1075:5, 1078:12
**Nothing** 1022:19, 1033:2, 1041:9, 1044:1, 1044:14, 1069:24, 1071:6
**notice** 1017:13, 1019:9, 1024:5, 1047:12
**notification** 1021:11
**notified** 1024:20
**nowhere** 1021:2
**numbers** 1060:12
**nurse** 1059:11
**NY** 1012:7

**< O >**
**o'clock** 1013:3, 1013:11, 1074:17, 1074:25, 1075:22, 1077:4
**O'dell** 1038:18, 1046:6, 1055:25, 1056:15, 1056:18, 1056:24, 1057:24, 1058:19,

1060:2, 1066:8
**oath** 1067:16
**objection** 1025:6, 1057:4
**obtain** 1047:3
**obtained** 1021:4
**occasion** 1030:4
**occasionally** 1075:17
**occupy** 1069:14
**occur** 1045:15
**occurrence** 1075:18
**Odeh** 1012:36, 1016:21, 1037:19, 1037:24
**Office** 1012:5, 1012:15, 1012:24, 1013:22, 1015:19, 1018:23, 1018:24, 1030:21, 1031:18, 1036:11, 1036:25, 1072:3
**officer** 1029:18
**Offices** 1034:25, 1036:6
**official** 1029:23, 1079:5
**often** 1042:18
**Okay** 1055:20, 1061:22, 1063:8, 1068:16
**once** 1019:20, 1027:16, 1029:19, 1040:6, 1045:15
**one.** 1038:15, 1041:4, 1043:1, 1050:13, 1052:5, 1061:21
**ongoing** 1043:17
**opened** 1029:18
**opening** 1066:23
**operated** 1059:15
**operates** 1059:12
**operating** 1059:11
**operative** 1059:17
**opinions** 1070:5
**opportunity** 1019:15, 1020:18
**order** 1018:9, 1021:9, 1021:15, 1024:19, 1026:18, 1032:24, 1067:7, 1067:8, 1068:24, 1072:18, 1072:25, 1077:10, 1077:12, 1077:16
**organization** 1039:22, 1040:2, 1040:4, 1040:6, 1040:8, 1051:7, 1051:8, 1051:12, 1057:22
**orient** 1067:9
**orientation** 1076:11, 1076:14, 1076:25

**originated** 1016:3
**Orleans** 1030:10
**others** 1048:22, 1050:25, 1055:22, 1056:19, 1057:16, 1057:24, 1058:1, 1058:2, 1060:1, 1071:16, 1074:7, 1074:8
**Otherwise** 1061:8, 1070:4
**ought** 1062:17, 1062:18
**outline** 1027:14, 1061:12
**outside** 1072:1
**oversaw** 1048:6
**Overy** 1065:23
**own** 1074:10, 1074:13, 1078:7

**< P >**
**P.** 1012:15
**page** 1017:11, 1068:22
**pages** 1071:21, 1079:7
**paid** 1021:25, 1023:25
**panel** 1013:9, 1013:10, 1026:23, 1027:3, 1030:13, 1030:24, 1031:14, 1031:16, 1033:8, 1033:16, 1035:7, 1035:13, 1035:20, 1042:4, 1043:8, 1043:19, 1045:6, 1045:8, 1046:4, 1048:25, 1053:7, 1056:22, 1056:23, 1057:8, 1061:24, 1062:16, 1062:25
**paperwork** 1017:14
**paralegal** 1033:20, 1033:23
**part** 1018:7, 1022:14, 1026:4, 1051:6, 1051:12, 1054:20, 1071:16, 1078:4
**parte** 1014:15, 1015:7, 1019:3, 1019:18, 1020:6, 1020:9, 1020:14, 1020:20, 1021:7, 1023:4, 1023:10, 1023:12, 1023:15, 1023:22, 1024:6, 1024:9, 1025:2, 1025:3, 1025:5
**participate** 1043:9
**participating** 1016:16, 1027:12, 1029:12, 1038:2
**participation** 1019:8, 1042:13
**particular** 1029:1, 1031:19

**particularly** 1040:19
**parties** 1022:13, 1023:7, 1027:19, 1028:7, 1028:25, 1037:13, 1043:24, 1044:17, 1045:13, 1047:14, 1048:17, 1048:24, 1050:7, 1052:3, 1053:21, 1056:14, 1067:6, 1069:23, 1073:1, 1077:9
**past** 1050:3, 1053:17
**patient** 1046:15
**patients** 1059:14
**Patricia** 1066:8
**patrol** 1051:10
**Pattern** 1066:21
**pause** 1030:12, 1038:19, 1038:22
**pausing** 1038:7
**pay** 1022:2, 1022:12, 1052:2, 1069:5, 1073:4, 1073:10
**paying** 1022:13
**payment** 1019:22
**Pena** 1064:11
**people** 1027:11, 1029:12, 1037:3, 1052:20, 1053:12, 1054:5, 1056:20, 1057:14, 1060:4, 1063:1, 1067:2, 1068:25, 1070:8, 1070:22, 1070:24, 1071:22, 1072:21, 1075:10, 1076:15, 1076:20, 1076:22
**per** 1055:1
**peremptory** 1060:16, 1063:17, 1065:15
**perform** 1051:25
**period** 1037:8, 1046:22, 1054:10, 1055:19, 1069:16
**periodically** 1038:7
**permission** 1020:8
**personal** 1073:22
**personally** 1020:3, 1042:12, 1056:2
**persons** 1033:10, 1038:4, 1038:8
**phase** 1025:4
**phone** 1013:5, 1067:13, 1075:24
**phones** 1075:25
**phrase** 1018:12
**pick** 1053:14, 1054:17, 1054:23

**picking** 1053:14, 1054:22, 1055:5, 1055:7
**picks** 1055:13
**Piwoni** 1030:2, 1067:3, 1072:13, 1076:11
**place** 1025:23, 1069:17, 1071:12, 1071:19, 1076:12
**places** 1072:18
**planned** 1024:2
**planning** 1057:24
**Platt** 1012:39, 1037:21
**Plaza** 1011:45
**pleading** 1019:1, 1020:19
**pleadings** 1018:23, 1020:6, 1021:3, 1024:9
**pleasant** 1077:5
**Please** 1027:25, 1029:2, 1029:4, 1029:9, 1044:6, 1046:8, 1069:11, 1071:6, 1075:17, 1076:15, 1077:1
**PO** 1012:25
**point** 1014:7, 1014:23, 1018:21, 1019:5, 1019:20, 1022:3, 1022:7, 1023:23, 1024:4, 1024:24, 1042:7, 1048:10, 1058:11, 1071:13
**point.** 1034:7, 1038:9
**poker** 1025:18
**police** 1048:10
**polite** 1071:1
**possibility** 1049:23, 1059:4, 1060:20
**possible** 1029:6, 1046:13, 1071:8
**possibly** 1038:7, 1050:4
**potential** 1059:6, 1061:7, 1067:5, 1072:10
**practice** 1017:6, 1076:19
**practices** 1059:3
**predicts** 1075:15
**prefer** 1067:19
**preference** 1067:15
**preliminary** 1066:19, 1067:16, 1078:4
**preparing** 1026:10
**preponderance** 1042:1
**prescribed** 1079:11
**present** 1041:14, 1041:16, 1045:19
**presentation** 1066:23

**presented** 1028:9, 1043:25, 1069:23
**presiding** 1027:10, 1070:17
**presumed** 1041:5
**pretrial** 1018:6, 1077:20
**pretty** 1038:12, 1053:13, 1054:11, 1055:6
**previous** 1021:13, 1028:20, 1029:7, 1042:9
**previously** 1029:6
**primary** 1050:5, 1050:17, 1050:19
**private** 1072:5
**pro** 1073:19
**Probably** 1019:17, 1030:3, 1036:10, 1043:17, 1046:17, 1048:11, 1053:17, 1054:3, 1055:4, 1056:25, 1062:13, 1062:18, 1067:23, 1071:11, 1071:18, 1071:22, 1072:4, 1075:14
**problem** 1014:13, 1049:15, 1059:6, 1063:9
**problematic** 1059:5, 1059:8
**problems** 1048:3, 1048:7
**procedure** 1019:3, 1024:2, 1044:18, 1060:15, 1061:4
**procedures** 1061:13, 1067:7, 1067:10
**proceed** 1014:5
**proceedings** 1027:23, 1028:1, 1029:23, 1044:3, 1079:4, 1079:6
**process** 1025:18, 1027:20, 1063:16, 1065:11
**prohibits** 1041:19
**promptly** 1077:3
**proof** 1041:10, 1041:12
**proper** 1018:25
**propose** 1014:22
**pros** 1073:18
**prosecuting** 1030:19
**Prosecutions** 1023:21
**protective** 1021:9, 1021:15, 1024:18, 1026:18
**prove** 1041:14, 1041:21
**proven** 1041:6
**provide** 1072:12, 1073:16
**provided** 1072:16
**provider** 1047:4

**providing** 1067:4
**punishment** 1042:19, 1043:7, 1043:11
**purpose** 1020:12
**pursuant** 1020:15, 1023:5
**pursue** 1026:4, 1026:19
**put** 1051:5, 1077:10


< Q >
**qualified** 1028:22
**quantum** 1041:22
**question** 1013:7, 1014:18, 1014:24, 1015:11, 1017:22, 1024:3, 1029:3, 1042:4, 1044:23, 1044:24, 1045:3, 1061:4
**questioned** 1014:8, 1029:8
**questioning** 1014:14, 1014:25, 1015:7, 1028:20, 1029:14, 1032:17, 1032:22, 1039:16, 1040:15, 1040:21, 1040:25, 1043:14, 1045:6, 1071:11
**questionnaire** 1051:4
**questionnaires** 1028:21
**questions** 1013:24, 1013:25, 1014:16, 1027:16, 1027:17, 1027:18, 1028:12, 1028:18, 1029:2, 1045:10, 1047:1, 1047:15, 1047:21, 1048:18, 1050:8, 1052:4, 1053:22, 1056:15, 1070:12
**quickly** 1019:7, 1045:20
**quite** 1019:5, 1023:3, 1069:16


< R >
**raised** 1013:22, 1017:22, 1019:19, 1021:16, 1039:22, 1046:4
**raising** 1024:3, 1029:3
**ramifications** 1067:19, 1067:22
**rare** 1023:16
**rather** 1022:15
**re-convening** 1060:24
**re-examine** 1060:22
**reach** 1043:3, 1073:7,

1074:10, 1074:12
**reaction** 1023:13
**read** 1021:9, 1038:8, 1038:10, 1038:21, 1039:10, 1040:18, 1043:19
**Ready** 1046:10, 1051:1, 1053:5, 1055:24, 1063:12, 1063:13, 1063:14
**real** 1028:17, 1053:15, 1053:18
**realize** 1068:2
**realizing** 1070:4
**really** 1014:24, 1018:1, 1024:13, 1026:6, 1040:10, 1048:4, 1050:5, 1075:18, 1078:7
**reason** 1017:4, 1021:24, 1046:11, 1046:12, 1048:11, 1059:1, 1073:3, 1075:1
**reasonable** 1041:23, 1042:3
**reasons** 1059:7
**recalling** 1073:20
**receive** 1037:11
**received** 1013:5, 1018:22, 1037:14, 1050:18
**recently** 1017:6, 1021:22
**Recess** 1026:23, 1026:25, 1027:18, 1063:10, 1063:11, 1066:15, 1069:7, 1069:9, 1074:19, 1074:23, 1078:16, 1078:18
**recesses** 1074:21
**recognize** 1034:19, 1038:20, 1039:12
**recognized** 1029:4
**recognizes** 1037:2, 1038:23
**recollection** 1074:13
**recommendation** 1026:20
**reconvene** 1062:19, 1062:24, 1069:20
**record** 1013:23, 1019:4, 1021:19, 1024:15, 1029:23, 1045:1
**red** 1029:20
**refer** 1026:5, 1026:11, 1026:19
**referred** 1021:8, 1041:6
**referring** 1032:3
**reflected** 1015:22
**Refresh** 1036:1, 1060:14

**regard** 1014:9, 1016:25, 1017:19, 1020:20, 1021:18, 1024:14, 1051:21
**regarding** 1024:9, 1058:3
**regular** 1072:24, 1073:2
**rejoin** 1048:22, 1050:25, 1055:22, 1056:19
**relate** 1040:24
**related** 1037:13, 1040:12
**relevant** 1050:11
**Relief** 1026:5, 1032:20, 1039:19
**rely** 1074:9
**relying** 1074:13
**remain** 1014:10, 1041:17, 1045:9, 1045:19, 1045:25, 1046:8
**remarks** 1026:10, 1069:18, 1076:5
**remedy** 1024:25
**remember** 1029:6, 1029:7, 1065:10
**remind** 1014:19
**reminding** 1044:4
**reminds** 1034:2
**remote** 1067:10, 1068:5, 1072:1, 1072:8, 1074:23, 1077:1
**report** 1071:25
**reported** 1057:7, 1057:8, 1057:12
**REPORTER** 1012:45, 1029:22, 1038:16, 1079:5, 1079:18
**reporters** 1071:16
**reporting** 1067:10
**represent** 1013:16, 1013:18, 1014:2, 1014:18, 1015:13, 1016:4, 1016:5, 1016:12, 1017:15, 1018:17, 1019:13, 1022:7, 1022:12, 1022:16, 1035:16, 1036:25
**representation** 1013:7, 1014:6, 1015:2, 1015:4, 1015:5, 1017:1
**represented** 1015:3, 1015:22, 1015:24, 1016:21, 1016:22, 1030:20, 1033:5, 1034:14, 1035:10, 1039:21
**representing** 1014:17,

1014:23, 1015:12, 1015:16, 1016:23
**request** 1023:7, 1061:6
**requested** 1077:21
**requesting** 1020:8
**require** 1023:8
**required** 1015:1, 1020:16, 1025:1
**requires** 1021:11, 1051:23, 1072:22
**research** 1018:2, 1077:25, 1078:6
**resemble** 1076:10
**resets** 1077:17
**resolve** 1013:6, 1025:12
**respect** 1026:13, 1043:2
**respond** 1018:1, 1025:7, 1059:10
**responded** 1027:17
**responding** 1070:12
**responsibility** 1015:21, 1028:8, 1028:14
**responsive** 1020:19
**rest** 1055:7, 1075:12
**retained** 1017:10, 1019:6, 1019:10, 1021:20, 1021:21, 1021:23, 1022:2, 1022:18, 1022:24
**Review** 1020:3, 1023:18
**revolve** 1039:18, 1040:13
**rightfully** 1023:14
**Ritter** 1063:23
**Rm** 1012:46
**Robinson** 1035:23, 1046:6, 1053:6, 1053:22, 1055:14, 1055:21, 1056:24, 1058:15, 1060:2, 1065:7
**role** 1018:6, 1026:3, 1042:14, 1042:21
**room** 1029:9, 1044:17, 1045:11, 1047:19, 1050:25, 1053:4, 1055:22, 1059:11, 1066:12
**Rosie** 1065:7
**rotate** 1072:18
**routine** 1075:18
**row** 1035:22
**rows** 1062:6
**Rule** 1015:1, 1070:19
**rules** 1019:1, 1023:6,

1040:24, 1041:1, 1041:3, 1042:5
**run** 1068:11, 1072:5
**running** 1076:1


**< S >**
**s/cassidi** 1079:15
**safety** 1068:7
**San** 1012:33
**Sanders** 1032:4, 1032:7, 1066:8
**Saucier** 1031:21, 1046:5, 1051:2, 1052:4, 1053:3, 1056:24, 1057:20, 1058:14, 1060:3, 1064:17
**saw** 1043:18, 1060:1
**saying** 1015:20, 1021:9, 1022:24, 1023:8, 1054:1
**says** 1024:19, 1029:22, 1045:4
**scale** 1024:13
**scared** 1068:7, 1068:19
**scheduling** 1077:11
**School** 1023:18, 1034:9
**screen** 1071:21
**Scroggins** 1065:6
**seal** 1023:7
**sealed** 1019:18, 1021:7, 1021:10, 1023:9
**Sealing** 1023:9
**seat** 1069:14
**seated** 1029:20, 1033:16, 1068:23, 1069:12, 1072:21
**Second** 1017:11, 1018:8, 1018:21, 1033:18, 1034:12, 1035:21, 1041:12, 1062:2
**Secrecy** 1023:20
**secretary** 1053:10, 1053:20
**Section** 1077:20
**Security** 1023:20, 1029:18, 1052:8
**seeing** 1050:10, 1059:16
**seem** 1028:1, 1060:13
**seems** 1022:14, 1060:18
**seen** 1017:13, 1050:12, 1050:13, 1056:21, 1059:6, 1059:21
**sees** 1026:14, 1050:17, 1059:14, 1071:3

**selected** 1027:4, 1028:5, 1029:20, 1032:9, 1036:16, 1043:22, 1045:17, 1047:24, 1048:14, 1049:15, 1063:1
**selecting** 1027:20
**selection** 1040:20, 1044:3
**send** 1040:9
**sending** 1062:16
**sense** 1022:15, 1028:17, 1061:21
**sent** 1040:1
**sentence** 1042:19
**separate** 1042:25
**sequester** 1051:14, 1051:16, 1051:25
**sequestered** 1057:23
**serve** 1029:19, 1032:9, 1036:16, 1043:23, 1047:24, 1070:14
**served** 1017:13, 1020:10, 1020:16, 1041:25, 1042:10
**service** 1042:9, 1059:12, 1070:9, 1070:11
**Services** 1035:18
**serving** 1029:1, 1070:15
**session** 1025:11, 1043:16, 1049:14, 1049:24, 1057:15, 1063:6, 1074:15, 1074:17
**sessions** 1043:15, 1043:21, 1044:9, 1069:15
**set** 1049:10
**sets** 1061:18, 1061:19
**setting** 1077:12
**seven** 1019:16, 1053:12
**seven.** 1061:16
**several** 1030:20, 1032:18, 1036:6, 1036:7
**SHAPIRO** 1011:27, 1031:5, 1031:15, 1039:6
**Shawn** 1065:2
**sheet** 1015:18, 1015:21, 1019:16
**shoe** 1023:11
**short** 1077:9, 1077:17
**shorter** 1047:11
**shortly** 1027:24, 1040:19
**show** 1020:10, 1020:11, 1023:7, 1066:6, 1067:14
**showed** 1057:10
**showing** 1017:14, 1021:5

**shown** 1079:6
**Shrum** 1064:8
**shuffle** 1068:23
**shuffled** 1069:2
**Shukri** 1011:38, 1014:7, 1016:5, 1016:12, 1017:12, 1017:15, 1033:5, 1033:13
**side** 1025:19, 1025:20, 1032:16, 1055:11, 1055:12, 1066:6, 1067:15, 1071:3, 1071:4
**sides** 1025:21
**sign** 1014:19, 1020:3, 1024:21
**signed** 1018:9, 1020:25, 1024:16, 1026:16, 1051:7
**significant** 1030:17
**silent** 1041:18
**Simental** 1065:2
**similar** 1038:5
**simply** 1014:17, 1015:25, 1016:13, 1017:5, 1022:17, 1023:1, 1023:8, 1024:24, 1025:23, 1065:11
**Sir** 1031:20, 1032:14, 1035:21, 1036:13, 1036:20, 1038:16, 1045:25, 1048:16, 1065:1, 1065:13
**sit** 1028:19, 1028:22, 1069:13
**sitting** 1062:12
**situation** 1021:19, 1053:15, 1076:3
**six** 1049:8, 1049:18, 1050:4, 1056:22, 1060:5, 1061:18, 1061:19, 1068:25, 1072:23
**size** 1074:6
**slack** 1054:17
**slate** 1041:11
**slowly** 1028:1
**small** 1053:19, 1054:4
**somebody** 1054:9, 1054:10, 1058:18, 1062:1
**somehow** 1024:15, 1024:16
**someone** 1051:9, 1059:16, 1070:13, 1071:1, 1071:3, 1072:3, 1076:1
**sometime** 1073:21
**Sometimes** 1028:1, 1073:23
**son** 1037:7

**sorry** 1033:22, 1046:23, 1053:23
**sort** 1018:12, 1073:18, 1074:3, 1076:17
**sound** 1059:17
**sounds** 1059:17
**Special** 1031:6, 1031:11, 1038:13, 1051:22
**specific** 1040:12, 1047:25, 1070:13
**specifically** 1030:22
**specifying** 1025:1
**spend** 1054:25, 1055:3
**splashed** 1071:20
**St** 1012:31
**stable** 1056:7
**staff** 1029:17, 1030:7, 1030:12, 1030:14, 1034:3, 1077:14
**stage** 1063:17
**stand** 1016:9, 1029:4, 1030:23, 1038:17, 1052:15
**standard** 1042:1, 1042:3
**standards** 1042:6
**start** 1013:10, 1071:2, 1074:18, 1074:25, 1075:19, 1075:22, 1077:14
**started** 1056:3, 1060:8
**starting** 1025:10, 1074:20
**starts** 1041:11, 1074:17
**State** 1020:12, 1042:11, 1042:13
**stated** 1021:25, 1048:2
**statement** 1017:18
**statements** 1066:23
**STATES** 1011:1, 1011:5, 1011:29, 1011:30, 1027:5, 1030:18, 1030:20, 1030:21, 1031:3, 1031:7, 1031:8, 1031:17, 1040:3, 1040:4, 1040:7, 1040:9, 1052:21, 1072:3, 1079:12, 1079:18
**status** 1013:17
**statute** 1020:15
**stay** 1044:22, 1045:12
**stenotypy** 1079:5
**step** 1019:4, 1023:2, 1042:16
**Stephanie** 1066:9
**steps** 1071:23

**Steven** 1031:21
**Stewart** 1030:8
**Stickney** 1018:5, 1018:7, 1018:12, 1018:17, 1026:2, 1026:6, 1026:19
**stomachs** 1061:8
**strategic** 1023:22, 1024:1
**strategy** 1025:20
**Street** 1011:33, 1012:6, 1012:46
**strict** 1073:4
**strictly** 1069:22
**strike** 1060:18, 1061:25, 1062:1, 1062:5
**strikes** 1061:2, 1061:16, 1062:2, 1062:10
**striking** 1062:12, 1065:13
**strong** 1056:9
**struck** 1044:18, 1060:14, 1062:7, 1062:8
**student** 1030:9
**studying** 1034:9
**stuff** 1036:4, 1053:19
**Suarez** 1065:7
**subject** 1015:14, 1020:13, 1024:8, 1024:11
**submission** 1025:3
**submit** 1024:18, 1045:2, 1056:25, 1058:2
**submitted** 1019:22
**substitute** 1073:9
**suddenly** 1019:7
**suitable** 1028:19
**Suite** 1011:45, 1012:16, 1012:41
**summer** 1030:10
**Summit** 1012:41
**summoned** 1028:5
**supplemented** 1044:8
**support** 1040:6
**supposed** 1018:11, 1018:12, 1063:16, 1075:20
**Supreme** 1025:16, 1025:17
**surgeon** 1059:13
**surgery** 1047:7, 1056:8, 1059:18
**surprising** 1059:23
**surrounding** 1022:22
**Susan** 1029:24
**suspect** 1071:5

**sway** 1037:9
**swear** 1066:18
**swearing** 1068:2
**swing** 1018:13
**sworn** 1068:1
**Sylvester** 1065:4
**System** 1022:11, 1028:3, 1042:14, 1042:20, 1043:9

**< T >**
**table** 1016:11, 1016:17
**Tables** 1023:19
**takers** 1074:7
**talked** 1018:5, 1027:2, 1027:7
**talks** 1023:21
**Tampa** 1012:26
**taxpayers** 1022:13
**Taylor** 1065:16
**television** 1071:21
**tells** 1077:1
**temporary** 1054:17
**temptation** 1074:8
**ten** 1013:3, 1013:11, 1021:22
**ten.** 1025:10
**tendency** 1070:25
**Teresa** 1011:42, 1013:21, 1016:6, 1016:11, 1016:13, 1033:6, 1033:13
**terms** 1016:12, 1024:22
**Terrorism** 1023:21
**terrorist** 1040:4, 1040:6, 1040:8
**testified** 1041:20
**testifies** 1074:5
**testify** 1041:15, 1041:16
**testifying** 1038:4, 1074:3
**TEXAS** 1011:2, 1011:31, 1011:34, 1012:17, 1012:42, 1012:47, 1027:6, 1030:22, 1031:4, 1031:18, 1034:8, 1039:2, 1042:11, 1042:12, 1042:13, 1042:14, 1079:19
**theme** 1040:12
**thereafter** 1040:8
**thinking** 1061:8, 1075:2
**third** 1019:17, 1041:21
**thirties** 1039:7

**thirty** 1056:6, 1062:23
**thirty-one** 1061:15, 1061:25, 1062:12
**though** 1024:14
**three** 1020:14, 1037:7, 1046:17, 1047:8, 1049:18, 1050:19, 1054:4, 1058:12, 1058:18, 1075:21
**throughout** 1024:3, 1030:3, 1044:4, 1069:5, 1069:13, 1071:15, 1073:5
**Thursday** 1017:22, 1046:19, 1074:16
**Tillis** 1064:19
**Tilmer** 1065:4
**tipped** 1024:13
**Today** 1021:20, 1027:21, 1034:4, 1040:22, 1045:8, 1067:17, 1069:18, 1069:20, 1070:7, 1071:25, 1072:9, 1075:7, 1076:5
**together** 1069:15, 1077:8
**took** 1027:6, 1071:12, 1079:5
**topic** 1025:17
**topics** 1044:11
**Torrez** 1063:19
**totality** 1023:2
**totally** 1021:14, 1024:17
**touch** 1067:15, 1076:2
**tough** 1050:3
**towards** 1048:5
**Tower** 1012:40
**trade** 1074:3
**transcribed** 1079:6
**transcript** 1026:10, 1079:8, 1079:10
**transported** 1072:8, 1077:3
**treat** 1059:4
**treatment** 1058:6, 1058:9
**trial** 1014:11, 1015:5, 1027:10, 1027:12, 1028:15, 1029:10, 1029:12, 1030:4, 1031:10, 1032:21, 1033:9, 1034:6, 1034:16, 1035:14, 1036:23, 1038:3, 1039:21, 1042:9, 1044:4, 1046:13, 1067:2, 1069:5, 1069:13, 1070:22, 1071:9, 1071:10, 1071:15, 1072:2, 1072:11,

1073:5, 1073:13, 1073:19,
1073:25, 1075:8, 1075:11,
1075:14, 1075:19
**tried** 1070:21, 1073:23
**true** 1018:18, 1045:5, 1079:8
**try** 1071:8, 1071:17,
1071:22, 1071:23, 1072:10,
1072:18, 1074:22
**trying** 1056:9
**Tuesday** 1066:22, 1066:25,
1067:17, 1067:19, 1067:20,
1075:3, 1077:2, 1078:5
**turn** 1032:16, 1072:15
**Turning** 1023:19, 1067:3
**twelve** 1060:5, 1061:16,
1061:19, 1064:25, 1072:22
**twenty** 1074:22
**Two** 1017:9, 1021:22,
1037:7, 1047:6, 1049:1,
1049:6, 1050:20, 1051:19,
1054:4, 1055:9, 1057:8,
1061:17, 1061:19, 1061:20,
1061:21, 1061:23, 1062:5,
1063:21
**two-fold** 1042:15
**two.** 1061:18
**type** 1019:1
**typically** 1015:1, 1015:8

< U >
**ultimately** 1075:19
**unaware** 1026:15
**undergoing** 1058:6
**understand** 1020:5, 1023:6,
1046:17, 1058:21, 1063:15,
1063:23, 1067:21, 1070:9,
1071:11, 1075:17
**understanding** 1017:24,
1021:1, 1021:2, 1021:4,
1021:9, 1024:16, 1024:21,
1026:16, 1042:14, 1058:7
**understands** 1015:3
**understood** 1018:11
**unforeseen** 1075:14
**UNITED** 1011:1, 1011:5,
1011:29, 1011:30, 1027:5,
1030:18, 1030:19, 1030:21,
1031:3, 1031:7, 1031:8,
1031:17, 1040:3, 1040:4,

1040:7, 1040:9, 1052:21,
1072:3, 1079:12, 1079:18
**University** 1034:8
**unknown** 1021:14, 1024:17
**unless** 1074:18
**unlikely** 1023:24
**unrelated** 1071:6
**unrepresented** 1014:11,
1016:1, 1032:21
**unshakable** 1063:6
**until** 1021:20, 1025:20,
1041:5, 1041:13, 1046:7,
1062:2, 1062:18, 1063:10,
1066:21, 1067:17, 1067:19,
1070:18, 1073:6, 1075:9,
1078:16
**urgent** 1063:6
**urologist** 1049:8, 1049:17,
1050:10, 1059:3
**Using** 1023:19, 1023:21

< V >
**VA** 1049:11, 1049:18,
1050:1, 1050:6, 1050:10,
1059:3
**value** 1040:10
**van** 1072:4
**various** 1017:16, 1029:11,
1040:1
**verdict** 1041:19, 1043:10,
1073:7
**VERSUS** 1011:8
**view** 1024:16
**views** 1057:18
**violation** 1021:15, 1024:18,
1026:18
**virtue** 1036:18
**visit** 1029:7, 1066:17
**visited** 1037:15, 1047:22
**VOIR** 1011:17, 1025:11,
1026:24, 1044:8, 1057:15
**VOLUME** 1011:16
**voluntary** 1051:8

< W >
**wait** 1017:1, 1047:3,
1067:17, 1067:19, 1075:12
**waiting** 1013:10

**waiver** 1014:19, 1014:20
**waivers** 1013:23
**Wall** 1012:6
**wanted** 1030:4, 1032:11,
1042:7, 1044:12, 1049:2,
1051:11, 1052:11, 1052:17,
1052:22, 1056:3, 1056:11,
1058:14, 1062:1, 1075:7,
1077:8, 1077:15, 1077:18
**wanting** 1075:4
**wants** 1022:12, 1078:15
**Washington** 1031:11,
1032:1
**watch** 1051:9, 1074:2
**watching** 1074:4
**ways** 1061:23
**weather** 1071:2
**week** 1017:8, 1020:23,
1021:17, 1039:16, 1040:20,
1047:7, 1049:10, 1053:16,
1053:24, 1054:7, 1054:24,
1055:1, 1055:2, 1056:2,
1056:7, 1058:17, 1069:20,
1071:12
**weekend** 1077:5, 1078:8
**weeks** 1021:22, 1022:25,
1030:10, 1054:4
**Welcome** 1027:4, 1069:11
**Westfall** 1012:38, 1012:39,
1016:22, 1019:10, 1037:21,
1037:24, 1037:25, 1044:11,
1061:12, 1062:20, 1063:20,
1064:1, 1064:7, 1064:15,
1065:11, 1065:20, 1066:2
**Whatever** 1017:7, 1051:23,
1068:3, 1076:25, 1078:15
**whenever** 1060:25
**whether** 1022:22, 1024:11,
1027:12, 1027:21, 1028:18,
1029:13, 1039:5, 1057:9,
1066:24, 1067:16, 1070:14,
1073:6, 1073:8, 1073:18,
1074:4, 1075:4
**whole** 1045:7, 1053:15,
1078:11
**whom** 1030:20
**wife** 1037:4, 1037:15,
1047:22, 1048:6, 1056:4
**William** 1066:7
**Williams** 1064:6

**wind** 1069:6
**wish** 1014:19
**withdraw** 1014:17, 1014:22, 1015:12
**withhold** 1067:20
**Within** 1018:25, 1045:16, 1053:16
**without** 1019:8, 1070:4, 1073:23, 1074:13
**Witness** 1038:10, 1038:21, 1039:10, 1074:2, 1074:3, 1074:5
**witnesses** 1028:25, 1038:4, 1067:6, 1073:25, 1074:1
**Wolverton** 1064:2
**work** 1018:13, 1031:22, 1035:24, 1036:2, 1036:3, 1036:7, 1036:18, 1047:13, 1053:13, 1054:12, 1054:20, 1054:21, 1054:23, 1054:25, 1055:5, 1055:7
**worked** 1031:22, 1031:24, 1037:5, 1037:7, 1039:25
**working** 1045:13
**works** 1039:6, 1042:20, 1055:12, 1058:17
**worried** 1068:15, 1068:18
**worst** 1071:5
**Worth** 1012:42
**wrap** 1061:24
**write** 1052:23
**writing** 1073:16
**written** 1033:2, 1041:7
**wrote** 1023:18


**< Y >**
**year** 1026:16, 1047:8, 1050:13, 1051:7, 1059:15, 1059:19
**years** 1021:1, 1032:6, 1048:12, 1050:20, 1056:6
**yesterday** 1077:12
**York** 1012:7, 1023:18
**Young** 1064:20
**yourselves** 1070:2


**< Z >**
**zone** 1060:18