18:00 1        IN THE UNITED STATES DISTRICT COURT

2       FOR THE NORTHERN DISTRICT OF TEXAS

3             DALLAS DIVISION

4

UNITED STATES OF AMERICA     (   NUMBER 3: 04-240-G

5                        (

                        (

6  VERSUS                 (

                        (

7                        (

HOLY LAND FOUNDATION, ET AL.   (  October 9, 2007

8

9 _____

18:00 10        CHAMBERS CONFERENCE RE JURY NOTE
           BEFORE THE HONORABLE A. JOE FISH

11 _____

12

A P P E A R A N C E S:

13

14 For the Government:   MR. JIM JACKS
                     MR. BARRY JONAS

15                 MS. ELIZABETH SHAPIRO
                     MR. NATHAN GARRETT

16                 Assistant United States Attorney
                     UNITED STATES DEPARTMENT OF JUSTICE

17                 NORTHERN DISTRICT OF TEXAS
                     U.S. Courthouse

18                 1100 Commerce Street
                     Dallas, Texas 75242

19                        214/659-8600

20

For the Defendant Shukri Baker:

21

22                 MS. NANCY HOLLANDER
                 MS. TERESA DUNCAN

23                 FREEDMAN BOYD DANIELS
                 HOLLANDER

24                 20 First Plaza, Suite 700
                 Albuquerque, NM 87102

25                   505/842-9960

```
18:00   1    For the Defendant El-Mezain:

        2
                                    MR. JOSHUA DRATEL
        3                           MR. AARON J. MYSLIWIEC
                                    LAW OFFICE OF JOSHUA L. DRATEL
        4                           14 Wall Street, 28th Floor
                                    New York, NY 10005
        5                               212/732-0707

        6
             For the Defendant Mufid Abdulqader:
        7

        8                           MS. MARLO CADEDDU
18:00                               LAW OFFICE OF MARLO P. CADEDDU
        9                           3232 McKinney Avenue, Suite 700
                                    Dallas, Texas 75204
       10                               214/744-3015

       11    For the Defendant Elashi:

       12                           MS. LINDA MORENO
                                    LAW OFFICE OF LINDA MORENO
       13                           PO BOX 10985
                                    Tampa, Florida 33679
       14                               813-247-4500

       15                           MR. JOHN D. CLINE
                                    Jones Day
       16                           555 California St
                                    26th Floor
       17                           San Francisco, CA 94104-1500
                                        415/875-5812

       18
             For the Defendant Odeh:
       19

       20                           MR. GREG WESTFALL
                                    WESTFALL PLATT CUTRER
       21                           Mallick Tower
                                    One Summit Avenue, Suite 910
       22                           Fort Worth, Texas 76102
                                        817/877-1700

       23

       24    Court Reporter:        Cassidi L. Casey, CSR No. 1703
                                    1100 Commerce Street, Rm 15D6L
       25                           Dallas, Texas 75242
                                        214-254-3139
```

P R O C E E D I N G S:

18:00    THE COURT:  As you have been informed, we received a note from the foreperson of jury a short while ago which I don't have in front of me, but it asked in essence, what do we do when a juror refuses to vote.  And so I asked that note to be distributed to counsel, and I seek your advice as to what we should do next.

MR. WESTFALL:  Your Honor, it may be time to issue the Allen charge that's in the Pattern Fifth Circuit Instructions.  I think we have at this -- This is our ninth day, and I think the language in that Allen charge is very helpful at redirecting what they should do.  This is a little bit different than the last note.  It's totally unspecific.  And we think that's probably the logical next step.

MR. JACKS:  Judge, I don't think we're at that stage yet.  I think this sounds like it fits the definition of not deliberating, but I'm not sure what the law is, to be honest with you.  I'm not up to speed on it in terms of what kind of a record the Court has to have --

MS. HOLLANDER:  I'm so sorry to interrupt.  I'm questioning why Agent Burns is here.  This is just attorneys.

THE COURT:  I don't know.  Would you excuse us, Agent Burns?

18:00 1          MS. BURNS:  Absolutely.

2              THE COURT:  Go ahead, Mr. Jacks.

3              MR. JACKS:  As I said, I'm not up to speed on

4     what the law requires in terms of what the record shows

5     when a jury refuses to deliberate and whether -- I know

6     there has been some discussion about going forward with

7     eleven or bringing in an alternate.  But I just think it's

8     a little bit unclear right now about what this -- This

9     note is pretty terse.  So we don't know exactly what the

10    situation is.

11             MR. JONAS:  Mr. Westfall said we're in the ninth

12    day; we're in the fifth day.

13             THE COURT:  I was going to say we had to start

14    over.  So that's probably overcounting.

18:00 15         MR. WESTFALL:  My body tells me it's nine.

16             MS. MORENO:  For eleven of the jurors, we're in

17    the ninth day.

18             MR. JONAS:  Well, it's important for the Allen

19    charge.  That's why I raised it.

20             THE COURT:  Well, we're near the noon recess.  I

21    don't think I want to do anything precipitously.  Now that

22    I have your views, I think I want to think about it and do

23    some research over the noon hour, and if you think of any

24    information or research I should consider, please give it

25    to me by one o'clock which is when with they go back to

18:00 1    their deliberations.

2              MS. MORENO:  Your Honor, I'm not sure what

3    relief the government is requesting.

4              MR. JACKS:  Time to look at the law.

5              MS. HOLLANDER:  So you don't want to do anything

6    at this point?

7              MR. JACKS:  And then when we find out what the

8    law is, probably have the Court either question this juror

9    and see what the problem is or that's, right now, all I

10   can think of.

11             MR. WESTFALL:  We'll both do research.

12             MS. HOLLANDER:  Your Honor, would it be possible

13   for us to all research and come back together?

14             THE COURT:  Sure.  We may all have different

18:00 15   ideas.

16             THE COURT:  What time do you think we should aim

17   to reconvene?

18             MS. HOLLANDER:  12:45.

19             THE COURT:  12:45 would be ideal in my mind

20   because that would give us time to talk about it and reach

21   a decision by one o'clock, but I recognize that's not too

22   far from now.  So there is not a lot of time to research

23   or reflect on it in the meantime.

24             MR. WESTFALL:  We'll see what we can do.

25             (Recess)

18:00 1           THE COURT: Is everybody here who's going to be

2 here?

3           MR. WESTFALL: I think we are.

4           MS. HOLLANDER: I think we do.

5           THE COURT: Since we were last together, Ms.

6 Piwoni gave me an e-mail that she received from Mr. Jacks

7 enclosing some cases that the government had found on the

8 issue of releasing a juror and/or going forward with

9 eleven jurors, and she just handed me one from Ms. Cadeddu

10 that also has cases. I have seen these just a few minutes

11 ago, and so I have not had a chance to review the cases

12 themselves. In Mr. Jacks's letter, he says he believes

13 the appropriate course of action is for the Court to

14 interview the foreperson and the juror in question

18:00 15 separately to determine more about the nature of the

16 problem.

17           Anyone else have any thoughts about that?

18           MR. WESTFALL: Your Honor, I don't think that

19 we're at that point. The Edwards case -- which is one

20 that we cited -- out of the Fifth Circuit, it speaks to

21 that issue and incorporates some other cases from outside

22 the circuit but definitely approves their language, and

23 the mine field that we start to get into is intrusion into

24 the deliberative process, and I think this note leaves the

25 doorway open for that. It's completely different than the

18:00 1    Sylvester Holmes note.  Can I read you just a little bit

2    of language?

3            THE COURT:  Yes.

4            MR. WESTFALL:  We're on 733 of the case.  In

5    Edwards, we had a juror who did quite a bit of juror

6    misconduct and ultimately was removed for those reasons,

7    and the judge made a particular finding and investigation

8    as to the fact that this person, Juror Number 68, was not

9    being released because of his or her views of evidence but

10    because of the misconduct, including lying to the Court.

11    And what the Fifth Circuit did there was to distinguish

12    that set of facts from the set of facts which I think we

13    have which is a juror -- this vague note about the juror

14    refusing to vote.  And I don't know why the juror is

18:00 15    refusing to vote.  And what the case says is the case is

16    subject to the reasonable probability rule.  "In general,

17    questions of juror bias or competence focus on some event

18    that's both easily identifiable and subject to

19    investigation and findings without intrusion into the

20    deliberative process."  I think that is exactly the

21    situation we have with Sylvester Holmes.  I think we have

22    the opposite situation here where we are subject to the

23    reasonable probability rule.  And what that says is if

24    there is any reasonable probability that this juror's

25    attitude is based upon the sufficiency of evidence, one

18:00 1    way or the other, then that juror cannot be dismissed or

2    released. And quite frankly, getting into that is a mine

3    field that should be approached with a tremendous amount

4    of trepidation. I think that's kind of the situation that

5    we're in right now, that we're poised to get into that

6    deliberative process and that the government's cases don't

7    really address that. A couple of them are cases where the

8    juror became impaired because of mental illness or some

9    sort of a handicap during deliberations. But we have a

10    situation here where we are poised to truly enter into the

11    deliberative process. I think the safe route would be to

12    go ahead and issue an Allen charge and tell them to

13    continue their deliberations, give them some guidance on

14    how to look at the evidence, and if we get some specific

18:00 15    note thereafter that says juror so and so is just not

16    going to decide this case or something more specific than

17    what happens if a juror refuses to vote, there is only one

18    way that that could be a reason to remove, and there is

19    almost innumerable that that could not be a reason to

20    remove -- not ready to vote because they haven't discussed

21    it enough, not ready to vote because they don't like the

22    way the other jurors are treating them. All of those

23    reasons would have to do with the sufficiency of the

24    evidence and not some improper reason that amounts to

25    refusing to follow the Court's instructions. You know, it

18:00  1   has been five days, but you know for eleven of those

2   people it's been nine days, and I just think that an Allen

3   charge from the Court would be the safest and probably the

4   most expeditious route.

5           MR. JACKS: Judge, I don't think an Allen charge

6   is appropriate at this time because in my experience an

7   Allen charge is given when the jury has said we're

8   deadlocked and we can't break that log jam, and then an

9   Allen charge is given. They are not saying that, and they

10   haven't, much to the frustration of a lot of people. They

11   have been back there quietly deliberating for several

12   days. This is the first peep we have heard out of them

13   for five days. I don't know. I understand what Mr.

14   Westfall is talking about in terms of the Court having to

18:00 15   be cautious about asking a question that gets over into

16   the deliberative process, but we also I think have an

17   obligation to try to answer their question if we can, and

18   I think an Allen charge is not the answer. It's not --

19   They are not coming back and saying we are deadlocked and

20   we cannot go any further.

21           So that being said, we've got this question

22   that's been posed to us, and we don't know enough -- The

23   Court doesn't know enough to really answer the question,

24   and I think it's appropriate to make some kind of limited

25   inquiry to find out what is the situation that is meant to

18:00 1    be reflected in this note.  And you know, I agree that the

2    Court should probably -- when they talk to either the

3    foreperson -- And our suggestion is to talk to the

4    foreperson since she's the one that wrote this note.

5    Caution her.  Look, I don't want to talk about where you

6    are or anything like that.  I'm trying just to answer your

7    question.  And perhaps just have some prepared questions

8    to ask her and then go from there.  I was sitting here a

9    few minutes ago thinking about what kind of questions

10   could you ask that would not be intruding into the

11   deliberative process, and just you know, has this person

12   voted in the past or I think there are questions the Court

13   can ask which will shed some light on this situation, and

14   as I said, I don't think an Allen charge is called for,

18:00 15   but I don't think to ignore this and tell them to keep

16   going is serving any purpose either.

17        MR. WESTFALL:  Your Honor, on that last thing

18   Mr. Jacks said, that probably is an option to submit an

19   instruction to the jury saying continue your deliberations

20   and refer them to the last part of the charge that refers

21   to listening to each other and deliberating.

22        THE COURT:  I don't have the note in front of

23   me.  Again, could I borrow your copy to refresh my

24   recollection of what it said?

25        MS. SHAPIRO:  Your Honor, the Fifth Circuit

18:00 1  cites a case called United States versus Baker which is a

2  Second Circuit, but it's cited by the Fifth Circuit in

3  United States versus Naji, and the Baker cite is 262 F 3rd

4  124, Second Circuit 2000, and in this case they talk about

5  the issue of the line that the Court needs to be aware of

6  in terms of probing the jury, but it concludes that it's

7  appropriate to make the inquiry when there is a juror who

8  may be refusing to deliberate, and it talks about that

9  circumstance. So I think the cases in the Fifth Circuit

10  certainly seem to say it's important to have a record to

11  make the determination of whether it's truly a refusal to

12  deliberate or participate in the process versus something

13  that's connected to the evidence.

14          MR. WESTFALL: Out of curiosity, is that a

18:00 15  published case?

16          MS. SHAPIRO: The Baker case is published. Naji

17  is not.

18          MR. WESTFALL: The Fifth Circuit case is not.

19          MS. HOLLANDER: I'm not sure that I disagree

20  with Ms. Shapiro if we get to that point. In one of these

21  cases -- and I read them pretty fast. And I think it was

22  the Thomas case where it went through the litany the judge

23  had asked. I could be wrong because I read this fast, but

24  I think it was reversed because the judge got into the

25  discussion, and the juror said, Well, I don't like that

18:00 1    law, and if I'd known that was what it was, I would never

2    have agreed to serve. That clearly got into the jury

3    process and the sufficiency of evidence. And it's the one

4    thing, as Mr. Westfall said, to avoid at all costs.

5           MS. SHAPIRO: And Baker discusses that case as

6    falling on the other side of the line.

7           MS. HOLLANDER: That's where we don't want to

8    be. You would be asking the question, so where you don't

9    want to be. And it's very hard to ask the questions and

10    have absolutely no doubt, and I believe Edwards said there

11    can be no doubt that the issue -- before the Court removes

12    a juror that the issue doesn't have to do with that

13    juror's weighing of the evidence. But it seems to me --

14    And I agree with Mr. Westfall, there is no -- nothing to

18:00 15    be lost by telling them what the modified Allen charge --

16    1.45 which is the Fifth Circuit's pattern Allen

17    charge says, which tells them you have to try to reach a

18    verdict, and if you give them that Allen charge and they

19    come back, you know, and say we still got a juror who

20    refuses to vote, then I think it's time to go to the next

21    step.

22           MR. GARRETT: As Mr. Jacks says, I do think that

23    accepts that votes are being cast. Here someone is saying

24    I'm not going to participate in the process. The question

25    becomes whether that juror is incapacitated -- physically

18:00 1  mentally, emotionally -- or saying I'm not going to vote,

2  which is all the same result.  If the Court would in its

3  remarks to the juror in the beginning preface it by saying

4  these are things I do not want to discuss or want you to

5  remark on, but going back to can you consider the

6  evidence, cast a vote and render a decision in this case,

7  can you serve the fundamental requirements of a juror.

8  And yes or no.  And if the answer is, no, I can't, then I

9  think we're at the point we can reach a decision on the

10  incapacitation.

11          MS. HOLLANDER:  It's not necessarily

12  incapacitation, though.

13          MR. WESTFALL:  We're all sitting around the

14  table speculating about what the juror means by this note

18:00 15  and what can we do.  And Edwards says a trial judge may

16  not be able to assess the competence without exposing the

17  juror's views.  So it's the penetration into the secrecy

18  of the deliberations that is going to suffer by us

19  satisfying our curiosity.

20          THE COURT:  What if the note means what it says,

21  that this person is sitting in the corner and refusing to

22  participate?

23          MR. DRATEL:  We don't know why.

24          MS. MORENO:  And he may want more deliberation.

25          This is the school teacher.  I'm sure she is

18:00 1    choosing her words carefully.  Perhaps he or she wants

2    more deliberation, and if you Allen charge them, that

3    would remedy that issue and concern and would avoid the

4    pitfalls the court is facing if you go into any --

5          MR. GARRETT:  Are you suggesting it's a pitfall

6    if the juror says I want more time to deliberate?

7          MR. DRATEL:  We don't know that's the answer.  I

8    would articulate it this way.  All the cases, the cases

9    cited by the government -- Regardless of which side of the

10    line they fall on, all of the cases stand for the

11    proposition that an inquiry into the deliberative process

12    is a last resort.  We haven't gotten to the first resort.

13    It would be turning the whole legal framework as presented

14    in these cases upside down to use the last resort first.

18:00 15          THE COURT:  I have never heard the Allen charge

16    referred to as a first resort.

17          MR. DRATEL:  If you are trying to avoid the

18    deliberative process and intruding on it, it is certainly

19    a prior resort to bringing in a juror and getting into

20    those questions.  You know, I don't see how you fashion a

21    set of questions that doesn't get into it.

22          MS. SHAPIRO:  What all the cases agree on is

23    there needs to be a factual record.  In each case the

24    judge went back --

25          MR. DRATEL:  Not necessarily.  Some of the cases

18:00 1    the judge did other things first.  The judge re-instructed

2    the juror.  The judge did other things in some of the

3    cases.

4           THE COURT:  I wanted to refresh my memory what

5    the modified Allen charge says because it's been a while

6    since I have given it.

7           I'll have to say this issue is really

8    unprecedented in my experience, and I have not really

9    found clear guidance in the case law which I did look at

10    some myself before I received your e-mails, and I have not

11    had a chance, as I said earlier, to go through the cases

12    that the parties have cited.  But it does seem to me it's

13    going to be difficult if I interview the foreperson and/or

14    the juror who's the subject of this note to fashion

18:00 15    questions that do not even inadvertently intrude into the

16    deliberative process of the jury.  So it does seem to me

17    that probably the conservative thing to do is to give this

18    modified Allen charge.  So I think that's what I will do

19    as soon as we can bring the jury back into the courtroom.

20    This is probably something that I think the defendants

21    themselves would need to be present for.  So we need to

22    assemble them, if they are not there.

23           I also needed to let counsel know -- I was

24    thinking of getting you all together even before the note

25    came today.  Since we don't know how long the jury will be

18:00 1    deliberating, I need to tell you something about my

2    schedule because I am going to be out of pocket myself

3    some in the near future, and this week it's fairly

4    minimal.  Tomorrow afternoon at three I have a meeting

5    that will probably last an hour or two.  So if we get a

6    note there may be some delay in my responding to it.

7    Friday I'm supposed to preside over an annual award

8    ceremony for our court employees in Dallas.  I'll probably

9    be out of pocket thirty minutes to an hour for that.  If

10    the jury is still going on Friday of next week, there is a

11    similar award ceremony in Fort Worth.  So I will probably

12    be gone all afternoon for that, and then the following

13    week I'm out of town every day but Friday.  So if the jury

14    is still going by then, I need you to be thinking about

18:00 15    whether we recess the jury, whether I try to handle the

16    questions by telephone or bring in a magistrate judge or

17    one of the other district judges or what you would like me

18    to do.

19          MS. HOLLANDER:  And my understanding Monday is a

20    holiday.

21          THE COURT:  Yes.

22          MR. WESTFALL:  That would be opposed to thinking

23    about flinging myself off a bridge.

24

25

1                    C E R T I F I C A T I O N

2

3        I, Cassidi L. Casey, certify that during the

4    proceedings of the foregoing-styled and -numbered cause, I

5    was the official reporter and took in stenotypy such

6    proceedings and have transcribed the same as shown by the

7    above and foregoing Pages 1 through 17 and that said

8    transcript is true and correct.

9

10       I further certify that the transcript fees and format

11   comply with those prescribed by the court and the Judicial

12   Conference of the United States.

13

14

15                        s/Cassidi L. Casey
                       _____
16                     CASSIDI L. CASEY
                       UNITED STATES DISTRICT REPORTER
17                     NORTHERN DISTRICT OF TEXAS
                       DALLAS DIVISION
18                     CSR NUMBER 1703

19

20

21

22

23

24

25

< Dates >
**October 9, 2007** 1:11
**-numbered** 17:4

< 0 >
**04-240-G** 1:5
**05/842-9960505/842-9960**
1:46

< 1 >
**1** 17:7
**1.45** 12:16
**10005** 2:7
**10985** 2:24
**1100** 1:32, 2:47
**12/732-0707212/732-0707**
2:8
**124** 11:4
**12:45** 5:19
**12:45.** 5:18
**13-247-4500813-247-4500**
2:26
**14** 2:6
**14-254-3139214-254-3139**
2:49
**14/659-8600214/659-8600**
1:34
**14/744-3015214/744-3015**
2:18
**15/875-5812415/875-5812**
2:33
**15D6L** 2:47
**17** 17:7
**17/877-1700817/877-1700**
2:43
**1703** 2:46, 17:21

< 2 >
**20** 1:44
**2000** 11:4
**262** 11:3
**26th** 2:31
**28th** 2:6

< 3 >
**3** 1:5

**3232** 2:16
**33679** 2:25
**3rd** 11:3

< 5 >
**555** 2:30

< 6 >
**68** 7:8

< 7 >
**700** 1:44, 2:16
**733** 7:4
**75204** 2:17
**75242** 1:33, 2:48
**76102** 2:42

< 8 >
**87102** 1:45

< 9 >
**910** 2:41
**94104-1500** 2:32

< A >
**AARON** 2:4
**Abdulqader** 2:11
**able** 13:16
**about** 4:6, 4:8, 4:22, 5:20,
6:15, 6:17, 7:13, 9:14, 9:15,
10:5, 10:9, 11:4, 11:8, 13:14,
16:1, 16:14, 16:23
**above** 17:7
**Absolutely** 4:1, 12:10
**accepts** 12:23
**action** 6:13
**address** 8:7
**advice** 3:7
**afternoon** 16:4, 16:12
**Again** 10:23
**Agent** 3:22, 3:25
**ago** 3:4, 6:11, 10:9
**agree** 10:1, 12:14, 14:22
**agreed** 12:2

**ahead** 4:2, 8:12
**aim** 5:16
**AL** 1:11
**Albuquerque** 1:45
**All** 5:9, 5:13, 5:14, 8:22,
12:4, 13:2, 13:13, 14:8,
14:10, 14:22, 15:24, 16:12
**Allen** 3:9, 3:11, 4:18, 8:12,
9:2, 9:5, 9:7, 9:9, 9:18, 10:14,
12:15, 12:16, 12:18, 14:2,
14:15, 15:5, 15:18
**almost** 8:19
**also** 6:10, 9:16, 15:23
**alternate** 4:7
**am** 16:2
**AMERICA** 1:5
**amount** 8:3
**amounts** 8:24
**an** 4:7, 6:6, 8:12, 9:2, 9:5,
9:6, 9:8, 9:16, 9:18, 10:14,
10:18, 14:11, 16:5, 16:7, 16:9
**and/or** 6:8, 15:13
**annual** 16:7
**answer** 9:17, 9:18, 9:23,
10:6, 13:8, 14:7
**any** 4:23, 6:17, 7:24, 9:20,
10:16, 14:4
**Anyone** 6:17
**anything** 4:21, 5:5, 10:6
**approached** 8:3
**appropriate** 6:13, 9:6, 9:24,
11:7
**approves** 6:22
**Are** 6:3, 7:22, 8:7, 8:10, 8:22,
9:9, 9:19, 10:6, 10:12, 12:23,
13:4, 14:5, 14:17, 15:22
**around** 13:13
**articulate** 14:8
**As** 3:2, 3:7, 4:3, 7:8, 10:14,
12:4, 12:5, 12:22, 14:13,
14:16, 15:11, 15:19, 17:6
**ask** 10:8, 10:10, 10:13, 12:9
**asked** 3:4, 3:6, 11:23
**asking** 9:15, 12:8
**assemble** 15:22
**assess** 13:16
**Assistant** 1:28
**attitude** 7:25
**Attorney** 1:28
**attorneys** 3:23

**Avenue** 2:16, 2:41
**avoid** 12:4, 14:3, 14:17
**award** 16:7, 16:11
**aware** 11:5

< B >
**back** 4:25, 5:13, 9:11, 9:19, 12:19, 13:5, 14:24, 15:19
**Baker** 1:37, 11:1, 11:3, 11:16, 12:5
**BARRY** 1:25
**based** 7:25
**became** 8:8
**becomes** 12:25
**beginning** 13:3
**believe** 12:10
**believes** 6:12
**bias** 7:17
**bit** 3:13, 4:8, 7:1, 7:5
**body** 4:15
**borrow** 10:23
**BOX** 2:24
**BOYD** 1:42
**break** 9:8
**bridge** 16:23
**bring** 15:19, 16:16
**bringing** 4:7, 14:19
**BURNS** 3:22, 3:25, 4:1

< C >
**CA** 2:32
**Cadeddu** 2:14, 2:15, 6:9
**California** 2:30
**called** 10:14, 11:1
**carefully** 14:1
**case** 6:19, 7:4, 7:15, 8:16, 11:1, 11:4, 11:15, 11:16, 11:18, 11:22, 12:5, 13:6, 14:23, 15:9
**cases** 6:7, 6:10, 6:11, 6:21, 8:6, 8:7, 11:9, 11:21, 14:8, 14:10, 14:14, 14:22, 14:25, 15:3, 15:11
**CASEY** 2:46, 17:3, 17:15, 17:17
**CASSIDI** 2:46, 17:3, 17:17
**cast** 12:23, 13:6
**cause** 17:4

**Caution** 10:5
**cautious** 9:15
**ceremony** 16:8, 16:11
**certainly** 11:10, 14:18
**certify** 17:3, 17:10
**CHAMBERS** 1:16
**chance** 6:11, 15:11
**charge** 3:9, 3:11, 4:19, 8:12, 9:3, 9:5, 9:7, 9:9, 9:18, 10:14, 10:20, 12:15, 12:17, 12:18, 14:2, 14:15, 15:5, 15:18
**choosing** 14:1
**Circuit** 3:9, 6:20, 6:22, 7:11, 10:25, 11:2, 11:4, 11:9, 11:18, 12:16
**circumstance** 11:9
**cite** 11:3
**cited** 6:20, 11:2, 14:9, 15:12
**cites** 11:1
**clear** 15:9
**clearly** 12:2
**CLINE** 2:28
**coming** 9:19
**Commerce** 1:32, 2:47
**competence** 7:17, 13:16
**completely** 6:25
**comply** 17:11
**concern** 14:3
**concludes** 11:6
**Conference** 1:16, 17:12
**connected** 11:13
**conservative** 15:17
**consider** 4:24, 13:5
**continue** 8:13, 10:19
**copy** 10:23
**corner** 13:21
**correct** 17:8
**costs** 12:4
**counsel** 3:6, 15:23
**couple** 8:7
**course** 6:13
**COURT** 1:1, 2:46, 3:2, 3:20, 3:24, 4:2, 4:13, 4:20, 5:8, 5:14, 5:16, 5:19, 6:1, 6:5, 6:13, 7:3, 7:10, 8:25, 9:3, 9:14, 9:23, 10:2, 10:12, 10:22, 11:5, 12:11, 13:2, 13:20, 14:4, 14:15, 15:4, 16:8, 16:21, 17:11
**Courthouse** 1:31

**courtroom** 15:19
**CSR** 2:46, 17:21
**curiosity** 11:14, 13:19
**CUTRER** 2:39

< D >
**D.** 2:28
**DALLAS** 1:3, 1:33, 2:17, 2:48, 16:8, 17:20
**DANIELS** 1:42
**Day** 2:29, 3:11, 4:12, 4:17, 16:13
**days** 9:1, 9:2, 9:12, 9:13
**deadlocked** 9:8, 9:19
**decide** 8:16
**decision** 5:21, 13:6, 13:9
**Defendant** 1:37, 2:1, 2:11, 2:20, 2:35
**defendants** 15:20
**definitely** 6:22
**definition** 3:18
**delay** 16:6
**deliberate** 4:5, 11:8, 11:12, 14:6
**deliberating** 3:18, 9:11, 10:21, 16:1
**deliberation** 13:24, 14:2
**deliberations** 5:1, 8:9, 8:13, 10:19, 13:18
**deliberative** 6:24, 7:20, 8:6, 8:11, 9:16, 10:11, 14:11, 14:18, 15:16
**DEPARTMENT** 1:29
**determination** 11:11
**determine** 6:15
**different** 3:13, 5:14, 6:25
**difficult** 15:13
**disagree** 11:19
**discuss** 13:4
**discussed** 8:20
**discusses** 12:5
**discussion** 4:6, 11:25
**dismissed** 8:1
**distinguish** 7:11
**distributed** 3:6
**DISTRICT** 1:1, 1:2, 1:30, 16:17, 17:18, 17:19
**DIVISION** 1:3, 17:20
**doorway** 6:25

**doubt** 12:10, 12:11
**down** 14:14
**DRATEL** 2:3, 2:5, 13:23, 14:7, 14:17, 14:25
**DUNCAN** 1:41
**during** 8:9, 17:3

**< E >**
**e-mail** 6:6
**e-mails** 15:10
**earlier** 15:11
**easily** 7:18
**Edwards** 6:19, 7:5, 12:10, 13:15
**either** 5:8, 10:2, 10:16
**El-mezain** 2:1
**Elashi** 2:20
**eleven** 4:7, 4:16, 6:9, 9:1
**ELIZABETH** 1:26
**emotionally** 13:1
**employees** 16:8
**enclosing** 6:7
**enough** 8:21, 9:22, 9:23
**enter** 8:10
**essence** 3:5
**ET** 1:11
**event** 7:17
**everybody** 6:1
**evidence** 7:9, 7:25, 8:14, 8:24, 11:13, 12:3, 12:13, 13:6
**exactly** 4:9, 7:20
**excuse** 3:24
**expeditious** 9:4
**experience** 9:6, 15:8
**exposing** 13:16

**< F >**
**facing** 14:4
**fact** 7:8
**facts** 7:12
**factual** 14:23
**fairly** 16:3
**fall** 14:10
**falling** 12:6
**far** 5:22
**fashion** 14:20, 15:14
**fast** 11:21, 11:23
**fees** 17:10

**few** 6:10, 10:9
**field** 6:23, 8:3
**Fifth** 3:9, 4:12, 6:20, 7:11, 10:25, 11:2, 11:9, 11:18, 12:16
**find** 5:7, 9:25
**finding** 7:7
**findings** 7:19
**First** 1:44, 9:12, 14:12, 14:14, 14:16, 15:1
**FISH** 1:17
**fits** 3:17
**five** 9:1, 9:13
**flinging** 16:23
**Floor** 2:6, 2:31
**Florida** 2:25
**focus** 7:17
**follow** 8:25
**following** 16:12
**foregoing** 17:7
**foregoing-styled** 17:4
**foreperson** 3:3, 6:14, 10:3, 10:4, 15:13
**format** 17:10
**Fort** 2:42, 16:11
**forward** 4:6, 6:8
**found** 6:7, 15:9
**FOUNDATION** 1:11
**framework** 14:13
**Francisco** 2:32
**frankly** 8:2
**FREEDMAN** 1:42
**Friday** 16:7, 16:10, 16:13
**front** 3:4, 10:22
**frustration** 9:10
**fundamental** 13:7
**future** 16:3

**< G >**
**GARRETT** 1:27
**gave** 6:6
**general** 7:16
**gets** 9:15
**getting** 8:2, 14:19, 15:24
**give** 4:24, 5:20, 8:13, 12:18, 15:17
**given** 9:7, 9:9, 15:6
**gotten** 14:12
**Government** 1:24, 5:3, 6:7,

8:6, 14:9
**GREG** 2:38
**guidance** 8:13, 15:9

**< H >**
**handed** 6:9
**handicap** 8:9
**handle** 16:15
**happens** 8:17
**hard** 12:9
**heard** 9:12, 14:15
**helpful** 3:12
**holiday** 16:20
**HOLLANDER** 1:40, 1:43, 3:21
**Holmes** 7:1, 7:21
**HOLY** 1:11
**honest** 3:19
**Honor** 3:8, 5:2, 5:12, 6:18, 10:17, 10:25
**HONORABLE** 1:17
**hour** 4:23, 16:5, 16:9

**< I >**
**ideal** 5:19
**ideas** 5:15
**identifiable** 7:18
**ignore** 10:15
**illness** 8:8
**impaired** 8:8
**important** 4:18, 11:10
**improper** 8:24
**inadvertently** 15:15
**incapacitated** 12:25
**incapacitation** 13:10, 13:12
**including** 7:10
**incorporates** 6:21
**information** 4:24
**informed** 3:2
**innumerable** 8:19
**inquiry** 9:25, 11:7, 14:11
**instruction** 10:19
**Instructions** 3:10, 8:25
**interrupt** 3:21
**interview** 6:14, 15:13
**intrude** 15:15
**intruding** 10:10, 14:18
**intrusion** 6:23, 7:19

**investigation** 7:7, 7:19
**issue** 3:9, 6:8, 6:21, 8:12, 11:5, 12:11, 12:12, 14:3, 15:7

< J >
**J.** 2:4
**Jacks** 1:24, 4:2, 6:6, 6:12, 10:18, 12:22
**jam** 9:8
**JIM** 1:24
**JOE** 1:17
**JOHN** 2:28
**JONAS** 1:25
**Jones** 2:29
**JOSHUA** 2:3, 2:5
**Judge** 3:16, 7:7, 9:5, 11:22, 11:24, 13:15, 14:24, 15:1, 15:2, 16:16
**judges** 16:17
**Judicial** 17:11
**Juror** 3:5, 5:8, 6:8, 6:14, 7:5, 7:8, 7:13, 7:14, 7:17, 7:24, 8:1, 8:8, 8:15, 8:17, 11:7, 11:25, 12:12, 12:13, 12:19, 12:25, 13:3, 13:7, 13:14, 13:17, 14:6, 14:19, 15:2, 15:14
**jurors** 4:16, 6:9, 8:22
**JURY** 1:16, 3:3, 4:5, 9:7, 10:19, 11:6, 12:2, 15:16, 15:19, 15:25, 16:10, 16:13, 16:15
**JUSTICE** 1:29

< K >
**keep** 10:15
**kind** 3:20, 8:4, 9:24, 10:9
**known** 12:1

< L >
**L.** 2:5, 2:46, 17:3, 17:15, 17:17
**LAND** 1:11
**language** 3:11, 6:22, 7:2
**last** 3:13, 6:5, 10:17, 10:20, 14:12, 14:14, 16:5
**LAW** 2:5, 2:15, 2:23, 3:19,

4:4, 5:4, 5:8, 12:1, 15:9
**leaves** 6:24
**legal** 14:13
**letter** 6:12
**light** 10:13
**limited** 9:24
**LINDA** 2:22, 2:23
**line** 11:5, 12:6, 14:10
**listening** 10:21
**litany** 11:22
**little** 3:13, 4:8, 7:1
**log** 9:8
**logical** 3:15
**long** 15:25
**Look** 5:4, 8:14, 10:5, 15:9
**lost** 12:15
**lot** 5:22, 9:10
**lying** 7:10

< M >
**magistrate** 16:16
**Mallick** 2:40
**MARLO** 2:14, 2:15
**Mckinney** 2:16
**means** 13:14, 13:20
**meant** 9:25
**meantime** 5:23
**meeting** 16:4
**memory** 15:4
**mental** 8:8
**mentally** 13:1
**mind** 5:19
**mine** 6:23, 8:2
**minimal** 16:4
**minutes** 6:10, 10:9, 16:9
**misconduct** 7:6, 7:10
**modified** 12:15, 15:5, 15:18
**Monday** 16:19
**MORENO** 2:22, 2:23, 5:2
**MR. GARRETT** 12:22, 14:5
**MR. JACKS** 3:16, 4:3, 5:4, 5:7, 9:5
**MR. JONAS** 4:11, 4:18
**MR. WESTFALL** 3:8, 4:15, 5:11, 5:24, 6:18, 7:4, 10:17, 11:14, 11:18, 13:13, 16:22
**Ms.** 1:26, 1:40, 1:41, 2:14, 2:22, 3:21, 4:1, 5:2, 6:5, 6:9, 11:20

**MS. HOLLANDER** 5:5, 5:12, 5:18, 6:4, 11:19, 12:7, 13:11, 16:19
**MS. MORENO** 4:16, 13:24
**MS. SHAPIRO** 10:25, 11:16, 12:5, 14:22
**Mufid** 2:11
**myself** 15:10, 16:2, 16:23
**MYSLIWIEC** 2:4

< N >
**Naji** 11:3, 11:16
**NANCY** 1:40
**NATHAN** 1:27
**nature** 6:15
**near** 4:20, 16:3
**necessarily** 13:11, 14:25
**need** 15:21, 16:1, 16:14
**needed** 15:23
**needs** 11:5, 14:23
**New** 2:7
**next** 3:7, 3:15, 12:20, 16:10
**nine** 9:2
**nine.** 4:15
**ninth** 3:11, 4:11, 4:17
**NM** 1:45
**noon** 4:20, 4:23
**NORTHERN** 1:2, 1:30, 17:19
**NOTE** 1:16, 3:3, 3:6, 3:13, 4:9, 6:24, 7:1, 7:13, 8:15, 10:1, 10:4, 10:22, 13:14, 13:20, 15:14, 15:24, 16:6
**nothing** 12:14
**NUMBER** 1:5, 7:8, 17:21
**NY** 2:7

< O >
**o'clock** 4:25, 5:21
**obligation** 9:17
**Odeh** 2:35
**OFFICE** 2:5, 2:15, 2:23
**official** 17:5
**One** 2:41, 4:25, 5:21, 6:9, 6:19, 7:25, 8:17, 10:4, 11:20, 12:3, 16:17
**open** 6:25
**opposed** 16:22
**opposite** 7:22

**option** 10:18
**outside** 6:21
**overcounting** 4:14

**< P >**
**P.** 2:15
**Pages** 17:7
**part** 10:20
**participate** 11:12, 12:24, 13:22
**particular** 7:7
**parties** 15:12
**past** 10:12
**Pattern** 3:9, 12:16
**peep** 9:12
**penetration** 13:17
**people** 9:2, 9:10
**Perhaps** 10:7, 14:1
**person** 7:8, 10:11, 13:21
**physically** 12:25
**pitfall** 14:5
**pitfalls** 14:4
**Piwoni** 6:6
**PLATT** 2:39
**Plaza** 1:44
**please** 4:24
**PO** 2:24
**pocket** 16:2, 16:9
**point** 5:6, 13:9
**point.** 6:19, 11:20
**poised** 8:5, 8:10
**posed** 9:22
**possible** 5:12
**precipitously** 4:21
**preface** 13:3
**prepared** 10:7
**prescribed** 17:11
**present** 15:21
**presented** 14:13
**preside** 16:7
**pretty** 4:9, 11:21
**prior** 14:19
**probability** 7:16, 7:23, 7:24
**probably** 3:14, 4:14, 5:8, 9:3, 10:2, 10:18, 15:17, 15:20, 16:5, 16:8, 16:11
**probing** 11:6
**problem** 5:9, 6:16
**proceedings** 17:4, 17:6

**process** 6:24, 8:6, 8:11, 9:16, 10:11, 11:12, 12:3, 12:24, 14:11, 14:18, 15:16
**process.** 7:20
**proposition** 14:11
**published** 11:15, 11:16
**purpose** 10:16

**< Q >**
**question** 5:8, 6:14, 9:15, 9:17, 9:21, 9:23, 10:7, 12:8, 12:24
**questioning** 3:22
**questions** 7:17, 10:7, 10:9, 10:12, 12:9, 14:20, 14:21, 15:15, 16:16
**quietly** 9:11
**quite** 7:5, 8:2

**< R >**
**raised** 4:19
**RE** 1:16
**re-instructed** 15:1
**reach** 5:20, 12:17, 13:9
**read** 7:1, 11:21, 11:23
**ready** 8:20, 8:21
**really** 8:7, 9:23, 15:7, 15:8
**reason** 8:18, 8:19, 8:24
**reasonable** 7:16, 7:23, 7:24
**reasons** 7:6, 8:23
**received** 3:3, 6:6, 15:10
**Recess** 4:20, 5:25, 16:15
**recognize** 5:21
**recollection** 10:24
**reconvene** 5:17
**record** 3:20, 4:4, 11:10, 14:23
**redirecting** 3:12
**refer** 10:20
**referred** 14:16
**refers** 10:20
**reflect** 5:23
**reflected** 10:1
**refresh** 10:23, 15:4
**refusal** 11:11
**refuses** 3:5, 4:5, 8:17, 12:20
**refusing** 7:14, 7:15, 8:25, 11:8, 13:21

**Regardless** 14:9
**released** 7:9, 8:2
**releasing** 6:8
**relief** 5:3
**remark** 13:5
**remarks** 13:3
**remedy** 14:3
**remove** 8:18, 8:20
**removed** 7:6
**removes** 12:11
**render** 13:6
**REPORTER** 2:46, 17:5, 17:18
**requesting** 5:3
**requirements** 13:7
**requires** 4:4
**research** 4:23, 4:24, 5:11, 5:13, 5:22
**resort** 14:12, 14:14, 14:16, 14:19
**responding** 16:6
**result** 13:2
**reversed** 11:24
**review** 6:11
**Rm** 2:47
**route** 8:11, 9:4
**rule** 7:16, 7:23

**< S >**
**s/cassidi** 17:15
**safe** 8:11
**safest** 9:3
**San** 2:32
**satisfying** 13:19
**saying** 9:9, 9:19, 10:19, 12:23, 13:1, 13:3
**says** 6:12, 7:15, 7:23, 8:15, 12:17, 12:22, 13:15, 13:20, 14:6, 15:5
**schedule** 16:2
**school** 13:25
**Second** 11:2, 11:4
**secrecy** 13:17
**seek** 3:7
**seem** 11:10, 15:12, 15:16
**seems** 12:13
**seen** 6:10
**separately** 6:15
**serve** 12:2, 13:7

**serving** 10:16
**set** 7:12, 14:21
**several** 9:11
**Shapiro** 1:26, 11:20
**shed** 10:13
**short** 3:3
**shown** 17:6
**shows** 4:4
**Shukri** 1:37
**side** 12:6, 14:9
**similar** 16:11
**sitting** 10:8, 13:13, 13:21
**situation** 4:10, 7:21, 7:22, 8:4, 8:10, 9:25, 10:13
**someone** 12:23
**soon** 15:19
**sorry** 3:21
**sort** 8:9
**sounds** 3:17
**speaks** 6:20
**specific** 8:14, 8:16
**speculating** 13:14
**speed** 3:19, 4:3
**St** 2:30
**stage** 3:17
**stand** 14:10
**start** 4:13, 6:23
**STATES** 1:1, 1:5, 1:28, 1:29, 11:1, 11:3, 17:12, 17:18
**stenotypy** 17:5
**step** 3:15, 12:21
**Street** 1:32, 2:6, 2:47
**subject** 7:16, 7:18, 7:22, 15:14
**submit** 10:18
**suffer** 13:18
**sufficiency** 7:25, 8:23, 12:3
**suggesting** 14:5
**suggestion** 10:3
**Suite** 1:44, 2:16, 2:41
**Summit** 2:41
**supposed** 16:7
**Sylvester** 7:1, 7:21

< T >
**table** 13:14
**talks** 11:8
**Tampa** 2:25
**teacher** 13:25

**telephone** 16:16
**tells** 4:15, 12:17
**TERESA** 1:41
**terms** 3:20, 4:4, 9:14, 11:6
**terse** 4:9
**TEXAS** 1:2, 1:30, 1:33, 2:17, 2:42, 2:48, 17:19
**themselves** 6:12, 15:21
**thereafter** 8:15
**thinking** 10:9, 15:24, 16:14, 16:22
**thirty** 16:9
**Thomas** 11:22
**though** 13:12
**thoughts** 6:17
**three** 16:4
**today** 15:25
**together** 5:13, 6:5, 15:24
**Tomorrow** 16:4
**took** 17:5
**totally** 3:14
**Tower** 2:40
**town** 16:13
**transcribed** 17:6
**transcript** 17:8, 17:10
**treating** 8:22
**tremendous** 8:3
**trepidation** 8:4
**trial** 13:15
**true** 17:8
**truly** 8:10, 11:11
**try** 9:17, 12:17, 16:15
**trying** 10:6, 14:17
**turning** 14:13
**two.** 16:5

< U >
**ultimately** 7:6
**unclear** 4:8
**understand** 9:13
**understanding** 16:19
**UNITED** 1:1, 1:5, 1:28, 1:29, 11:1, 11:3, 17:12, 17:18
**unprecedented** 15:8
**unspecific** 3:14
**upside** 14:14


< V >

**vague** 7:13
**verdict** 12:18
**VERSUS** 1:8, 11:1, 11:3, 11:12
**views** 4:22, 7:9, 13:17
**vote** 3:5, 7:14, 7:15, 8:17, 8:20, 8:21, 12:20, 13:1, 13:6
**voted** 10:12
**votes** 12:23


< W >
**Wall** 2:6
**wanted** 15:4
**wants** 14:1
**week** 16:3, 16:10, 16:13
**weighing** 12:13
**Westfall** 2:38, 2:39, 4:11, 6:3, 9:14, 12:4, 12:14
**whether** 4:5, 11:11, 12:25, 16:15
**whole** 14:13
**will** 10:13, 15:18, 15:25, 16:5, 16:11
**without** 7:19, 13:16
**words** 14:1
**Worth** 2:42, 16:11
**wrote** 10:4


< Y >
**York** 2:7