1               IN THE UNITED STATES DISTRICT COURT
             FOR THE NORTHERN DISTRICT OF TEXAS
2                    DALLAS DIVISION

3  UNITED STATES OF AMERICA     ) CAUSE NO. 3:04-CR-240-P
                           (
4  vs.                     )
                           ( MAY 27, 2009
5                      ) DALLAS, TEXAS
6  ABDULRAHAM ODEH            ( 2:00 P.M.

7  _____

8

9  _____

10                      SENTENCING

11

12         BEFORE THE HONORABLE JORGE A. SOLIS
            UNITED STATES DISTRICT JUDGE

13  _____

14

15             A P P E A R A N C E S

16

17

18         FOR THE GOVERNMENT:  UNITED STATES ATTORNEY'S OFFICE
                       1100 COMMERCE, 3RD FLOOR
19                       DALLAS, TEXAS  75242
                       BY:  MR. JIM JACKS
20                          MR. BARRY JONAS
                          MS. ELIZABETH SHAPIRO
21                          MR. WALT JUNKER

22         FOR THE DEFENDANT:   MR. GREG WESTFALL
        (ODEH)              WESTFALL, PLATT & CUTRER
23                       ONE SUMMIT AVENUE, SUITE 910
                       FORT WORTH, TEXAS  76102
24                       BY:  MR. GREG WESTFALL

25

1          THE COURT:  Mr. Westfall, are you ready to proceed?

2          MR. WESTFALL:  Yes, Your Honor.

3          THE COURT:  And Mr. Jonas, you are ready to proceed

4    on this case?

5          MR. JONAS:  Yes, sir.

6          THE COURT:  And you are Abdulrahman Odeh?

7          THE DEFENDANT:  Yes, sir.

8          THE COURT:  Come on up to the podium with

9    Mr. Westfall.

10       And Mr. Odeh, you were convicted by a jury back on

11   November 24th, 2008 on three separate counts--conspiracy to

12   provide material support to a foreign terrorist organization,

13   one count of conspiring to provide funds, goods, and services

14   to a specially designated terrorist, and then one count of

15   conspiracy to commit money laundering.

16       We are now here on a sentencing hearing.  The Probation

17   Office has prepared a presentence report, an addendum to the

18   presentence report, and then a second addendum to the

19   presentence report that I believe Mr. Westfall just went over

20   with you.

21       And have you had the opportunity to review these

22   presentence reported with Mr. Westfall your attorney?

23          THE DEFENDANT:  Yes, Your Honor.

24          THE COURT:  And do you understand all of the

25   information that is contained in these reports?

1          THE DEFENDANT:  Yes, Your Honor.

2          THE COURT:  And Mr. Westfall, you have explained

3     these reports to your client?

4          MR. WESTFALL:  Yes, Your Honor.

5          THE COURT:  And you are satisfied that he

6     understands the information in these reports?

7          MR. WESTFALL:  I am.

8          THE COURT:  You filed some objections, and we will

9     get to those momentarily.

10        Mr. Jonas, I believe the Government filed no objections.

11     Is that still your position?

12          MR. JONAS:  Yes, sir.

13          THE COURT:  And Mr. Westfall, I will hear from you

14     on your objections.

15          MR. WESTFALL:  Well, Your Honor, like everyone else,

16     I would like to incorporate all the arguments made by counsel

17     and all the objections, both written and oral, that they made,

18     and have the Court rule on those as though we had made them as

19     well.

20          THE COURT:  And you may have those arguments, yes,

21     sir.

22          MR. WESTFALL:  Thank you, Your Honor.

23        Of course we have our written objections that the Court

24     can rule on based upon the arguments.

25        I did have two things I wanted to address on the

 1    Sentencing Guidelines.  Would you like me to do that now?

 2              THE COURT:  Yes.

 3              MR. WESTFALL:  Otherwise if I am not mentioning it

 4    now, it is just the written objections, and the Court --

 5              THE COURT:  And the previous arguments that were

 6    made?

 7              MR. WESTFALL:  Right.  And the Court can rule on

 8    those.

 9         And this is going to bleed-over a little bit into the

10    3553 factors, which I filed a motion/memorandum briefing the

11    Court on that.  But I would like to speak a little bit about

12    the role -- the mitigating role enhancement or the mitigating

13    role provision.

14         And there is also overlap there with 2M5.3(b), which is a

15    two level enhancement, Your Honor, that we object to that

16    comes in the terrorism Guideline.  And the words in there, "It

17    was reasonably foreseeable to each Defendant that any funds

18    sent to Hamas would be used to further their violent agenda of

19    jihad against the Jewish community," and, you know, based upon

20    the wiretaps and the bank records, and in particular this one

21    transaction with Marzook.

22         The thing about that and what sets Abdulrahman Odeh apart

23    is that he never knew Marzook.  He wasn't at the Philadelphia

24    conference.  There is -- You know, I don't want to be not

25    putting things into context, so I can name the evidence.

1    The phone call January 22nd where he was happy about this

2    operation.  He had a book on how Hamas is treated in the

3    Jewish press.  He had this picture of Sheikh Yassin that was

4    on a poster, a cut-out picture of Khalid Mishal and Nasrallah,

5    and Qaradawi, the newspaper picture.  And these were the

6    things that Odeh had.

7        The things he didn't have was membership in the Muslim

8    Brotherhood, membership in the Palestine Committee, any

9    evidence that he had ever seen any of these documents and knew

10   like what -- It might have been Mr. Jonas earlier talking

11   about the UASR and the HLF and all that were kind of

12   interlocking -- he didn't know any of that.  He is not privy

13   to any of that, Your Honor.

14       So is it reasonably foreseeable to him when this money

15   gets sent to zakat committees that he didn't even know about,

16   that it was going to be used for violent purposes?  And I

17   think not.  And that right there is the reason why we are

18   arguing for the role reduction, in addition to the two-point

19   thing.

20       If we say worst case scenario, worst case scenario, that

21   Abdul Odeh, it is just hard to imagine the evidence other than

22   being around.  He is in a videotape, one of these videotapes

23   that we saw -- I don't know if we saw it in the second trial.

24   We saw it in the first trial where he is in the audience

25   before he is ever an employee of the Holy Land Foundation.  He

is the guy that hands out the little envelopes.  And, you

know, he is convicted of conspiracy, but that is the whole

reason for the role differentiation is so that everyone that

gets convicted of a conspiracy, their role in the conspiracy

can be sorted out.

And at first, of course, he was given a manager

enhancement, which everyone agreed that didn't apply.  But I

believe that a reduction below zero applies, because when we

compare him to certainly everyone else in this case, I mean,

Mr. Shorbagi didn't recognize him, the only one here that

Mr. Shorbagi didn't even recognize.

We would go for a week without hearing Abdulrahman Odeh's

name in this trial, and he is a footnote in this story, and

that is the reason why I wanted to elaborate a little bit

further, not only on the two-level 2M5.3(b) enhancement, but

lack of reduction for role.

THE COURT:  Okay.  Are there any other objections

affecting the calculation of the Guidelines that you wish to

address, Mr. Westfall, besides what you have in writing?

MR. WESTFALL:  No, Your Honor, other than just to

point out that in the Government's memorandum they actually

don't even put that two-level enhancement for 2M5.3 in theirs.

I mean, they come up with a level 38, so that is all.

THE COURT:  Mr. Jacks?

MR. JACKS:  Your Honor, I believe the Court this

1  morning, and if I am following the discussion, the Court

2  sustained the objection to that objection regarding the pieces

3  of steel and that transaction.

4         THE COURT:  Correct.  Yes.  I am not considering

5  that.  That is pre-designation conduct, so I don't think that

6  is properly considered.

7         MR. JACKS:  And then with regard to the role in the

8  offense, the Government has acknowledged that he is not

9  entitled to an upward adjustment, but certainly there is more

10  to his involvement than just comparing him to his

11  co-Defendants.  There is also a comparison to other persons

12  and conspirators involved, and we stand by our position that

13  he is not entitled likewise to a downward adjustment as a

14  minimal participant.

15      He was the manager of an office, one of only a few

16  offices that this organization operated outside of Richardson,

17  and so he certainly is not something -- his role certainly

18  would not be minimal when compared to that of all the persons

19  involved in this organization and in this conspiracy.

20         THE COURT:  He is also arguing on that two-level

21  enhancement for the purchasing of the weapons, that his role

22  in the offense was such that he would not have had reason to

23  believe that that money would be used to purchase weapons

24  under 2M5.3(b).  To you want to address that?

25         MR. JACKS:  Well, Your Honor, the laws of conspiracy

1    certainly state that if you join a conspiracy, you adopt

2    whatever actions and overt acts were committed prior to your

3    joining the conspiracy, and I would submit that his knowledge,

4    as has been found by the jury of what this organization was

5    about, what it was created for, who they were supporting, and

6    what that organization was engaged in is the same as all other

7    Defendants, and that for that reason the enhancement or the

8    adjustment should likewise apply to him.

9              THE COURT:  Mr. Westfall, anything else on that?

10             MR. WESTFALL:  Yes, Your Honor.

11        When we are looking at a jury issue on conspiracy that is

12   true.  But once we get to sentencing, there is several places

13   in the Guidelines where we start making distinctions between

14   the conspirators.  And that is the whole nature of the role

15   adjustment, as well as all of the 2B1.1, I believe, the

16   hypotheticals there as to what can even be relevant conduct

17   and what can't.  And I think that the 2M5.3(b) is another one

18   of those where, you know, distinctions should be made between

19   conspirators once we get to this stage.

20             THE COURT:  All right.  And I agree that we have to

21   look at the evidence individually, but I also agree with

22   Probation that the enhancements were properly applied in this

23   case based on the evidence.

24        You pointed out correctly most of the evidence that was

25   here that related directly to Mr. Odeh.  He was in that video

prior to the time he was hired, and that was prior to the

designation because I believe he was hired in 1994, so prior

to the designation. And at this particular conference, of

course, they are raising money for Hamas, there are speakers

praising Hamas, and he is clearly aware of Hamas.

And then the items that were found in his office, he is

clearly aware of Hamas, he is aware of what they do. The

phone conversation where they are praising the suicide bombing

attack. So clearly he is aware of Hamas, and I think based on

the evidence that is there he was aware of what HLF was doing

and what its purpose was. And then after that he gets hired.

And then after they get designated, which is more notice

that Hamas now is a problem organization that you are not

supposed to be supporting, of course he continues to work for

the HLF, and I think at that point the evidence is clear that

he has to be aware of the connection between HLF and Hamas.

So I believe there was reason to believe, which I believe

is the language of the enhancement, reason to believe that

money could go to purchase that. No question he may not have

known where all the money was going or what it was doing, but

I believe there is ample evidence to sustain a finding that

there was reason to believe that some of that money could have

been used by Hamas for doing things that they do, the illegal

things.

And then because he was a manager and because of those

facts that I have just stated, I don't think an adjustment for

mitigating role in the offense is appropriate in this case.

He was a manager, even though there wasn't a lot of authority

with that, but he was heading up one of the few offices that

HLF had.  He did that for a number of years, including after

the designations were made.  So I think Probation correctly

calculated the Guidelines with respect to those issues.

And with respect to other objections that you had that

had been previously made, the Court's ruling will be the same

for the reasons that I stated.  I think the Probation Office

correctly calculated the Guidelines in this case.  So the

Court's rulings will be the same.

On that basis we have an offense level of 40 and a

Criminal History Category of VI, and then the Guideline range

of 360 months to life.

And I will hear from you, Mr. Westfall.

MR. WESTFALL:  Thank you, Your Honor.

I have filed a motion for downward departure on two

grounds, one of which Ms. Cadeddu argued very eloquently and,

I mean, that is the Category VI, overstating criminal history,

because Abdul Odeh is in the same boat.  He has never been

arrested in his life until now.  So I would incorporate her

arguments, not to take up anymore of the Court's time on that.

As to the factors, the 3553 factors, Your Honor, yes, he

was a manager, Odeh was one of I guess--I have them listed in

1    my memo to you--maybe seven or eight managers that worked at

2    Holy Land during different periods of time.  And one thing of

3    course -- well, two things set him apart.  Number one, he is

4    here and they are not.  But number two, Odeh was personally

5    and deeply involved in relief missions.  And I sent the Court

6    the video of that again, and everyone else, as well as

7    descriptions, you know, just to refresh the Court's memory of

8    some of which we saw at trial, some of which we didn't.

9         But these missions didn't just go to -- In fact they

10   didn't go to Palestine at all.  Odeh has never been in

11   Palestine since he left when he was a child.  They went to

12   Kosovo, they went to Egypt where they did help Palestinians in

13   a refugee camp, Jordan where he helped Palestinians in a

14   refugee camp.  But Kosovo, those were Albanians.  They weren't

15   even Palestinians.  There is no Hamas in Kosovo.  And

16   certainly, you know, New Jersey helping the people there from

17   the community.

18        When you look at those videotapes, you don't get this is

19   done under the banner of Hamas.  So there is something else

20   going there, something else going on besides Odeh taking part

21   of this elaborate charade to keep the Holy Land Foundation,

22   you know, going so that it is secret.  And what you see in

23   those pictures is that Odeh genuinely cares about helping

24   these people.  He genuinely, genuinely does.  And it doesn't

25   matter if they live in New Jersey or Kosovo or Palestine.

1    He is Palestinian.  And that is the kind of context,  you

2    know, when we listen to that phone call from -- which, by the

3    way, that was before designation, too; not long before, but it

4    was before.  In fact, that particular attack probably is the

5    final straw to get them designated.  But, you know, the

6    context is that he is Palestinian, and his father did lose his

7    hand in the '48 war fighting against the Israelis.  And, I

8    mean, there is context on both sides.

9    But when you look at the photographs and you look at

10   those videotapes, what you see is a person, a human being that

11   wants to help other human beings.  And that is the person that

12   I have gotten to know.

13   And I think, you know, from the standpoint of 3553

14   factors, Odeh, he doesn't have awards.  What he did, he drove

15   a limousine before he started working with the Holy Land

16   Foundation, and then when the Holy Land Foundation was shut

17   down he started working in a convenience store.  He is a

18   humble man.  He has got a college education, and he has got

19   two parents that are alive, and he has got a daughter and two

20   sons.  But he is and always has been a humble man who -- you

21   know, he is with the Holy Land Foundation to help people, and

22   he did a lot of helping people.  He is the only one, you know,

23   here that actually went away on these relief missions.  And

24   you know, in addition to everything else, Your Honor, we just

25   ask that you take that into consideration.

1    And like I said earlier, they may argue he is an

2    important player, but in the grand scheme of things he is a

3    small player in this, I mean, truly.  And we just would ask

4    for a sentence that would reflect that and reflect the good

5    things that he did.

6         THE COURT:  Thank you.

7    Mr. Odeh, you are entitled to speak in your behalf.

8         THE DEFENDANT:  (Blessing in Arabic) In the name of

9    Allah, the merciful benefactor, the merciful redeemer.  Praise

10   be to Allah, Lord of the universe, and peace and prayers be

11   upon his final prophet and messenger Muhammad.

12        My Lord, grant me knowledge and wisdom.  Make my task

13   easy for me.  Lose and remove the impediment of my speech so

14   that they may understand what I say.

15        Before I start I want to express my deepest gratitude and

16   appreciation to my mother Lutifeyah and to my father

17   Abdulkarim, which is not here, and my daughter Leena and my

18   son Mohamad and my son Abdelkareem.  He is not here.  Thank

19   all of you for your unconditional love and unwavering support.

20        At the very outset I, Abdulrahman Odeh, would like to

21   declare my innocence today in open court before the Judicial

22   Branch of government, the Executive Branch of government, the

23   Legislative Branch of government, and to all witnesses who are

24   present today.  It was never proven at trial that I had

25   anything to do with Israel or any financial connections

1    supporting terrorist acts toward Israel or any other country.

2    I was only expressing my belief under the First Amendment of

3    the U.S. Constitution, the right to free speech.

4         Never did I have any mens rea or act in aiding terrorist

5    groups, nor did I help aid any terrorist organization.  I

6    stand before you today, Your Honor, on the scale of balance,

7    which has been tilted, asking to be weighed with equilibrium

8    based upon the facts of this case, and not the conjecture of

9    theories of the Executive Branch of government.

10        I ask that this Court remove the veil of justice and

11   allow truth to enter in.  The facts of my position in this

12   case are simple.

13        In the earlier stage of my life at the age of 13 I was

14   placed with enormous responsibility of extending a helping

15   hand to my family and other people.  For you see, my father

16   had his arm amputated.  This led to my father having

17   difficulty finding work and maintaining consistent income.  I

18   truly believe from this experience, and oftentimes destitute

19   environment, grew a young man who felt compelled as well as a

20   sense of responsibility to ensure that people who were less

21   fortunate in life could have an opportunity to pursuit of

22   happiness.

23        So I impart upon this lifelong journey of giving and

24   extending a helping hand to my family and all mankind by

25   joining and working for the Holy Land Foundation for Relief

and Development.

My relationship with the Holy Land Foundation was an expression of my belief and faith in God as a Muslim. Afforded to me under the United States Constitution and the First Amendment I am reminded of scripture of the holy Quran, Surah Al-Insan, which is in human being, verses 8 and 9, which says, "And they feed for the love of Allah the indigent, the orphan, the captive, saying, 'We feed you for the sake of Allah alone, nor a word do we desire from you, nor thanks.' And the Prophet Muhammad, peace be upon him, said, 'All my can spread peace, feed others, and keep relationship with relatives.'"

My efforts with the Holy Land Foundation allowed me to provide assistance to thousands of needy Palestinians in the field of education, health, social, and emergency relief, and to give services to others through charitable organization such as the Red Cross of Relief Missions, the World Food Program, the Salvation Army, the Food Coalition of Passaic County in New Jersey which was formed -- churches, synagogues, mosques, and other religions and communities.

I was also responsible for helping to feed 250 American families by establishing a food pantry in New Jersey on a monthly basis while working with the New Jersey Food Bank and FEMA, and dealing with a orphanage shelter in Wayne, New Jersey.

1    My involvement of charitable work here in the United

2    States gave me an opportunity to extend my philanthropy

3    globally.  God allowed me to join the international family of

4    giving and impressing other charitable causes such as the

5    international cooperation with the World Food Program of the

6    United Nations, relief missions in Egypt, Albania, and Jordan

7    where we feed the underprivileged adults and children.

8    I have not experienced an aberration of behavior and

9    still strongly believe in my intent and innocence.

10   One day, Your Honor, we all shall be judged by a much

11   higher court.  One day we all shall be judged by a much higher

12   court, which shall be the universal court of God.  And on that

13   day we will all ask to be judged by God with the rule of

14   mercy.  You, Your Honor, have the opportunity in this life to

15   rule with that mercy which has been bestowed by God.

16   We are five innocent men.  We were internally touched by

17   their five senses to extend the helping hand to give charity

18   to all mankind.

19   In closing, I would like to thank God and my family,

20   especially my beloved father.  I want to thank you for raising

21   me as a young man with high moral values and for sacrificing

22   so much of yourself to raise me and all of my brothers and

23   sisters.  Even though your hand was amputated as a result of

24   the occupation, you still never gave up, and worked so hard

25   throughout your life to make sure that your family was taken

1    care of.

2        To my beloved mother, I love you.  Thank you for bringing

3    me to life and giving me your tender love.  Thank you for

4    instilling in me the love of my birthplace Palestine.  Thank

5    you for teaching me how to love and give.

6        To my lovely daughter a Leena, I am so proud of you.

7    Your unconditional love and support for me, and your brothers,

8    too, through this difficult time has been branchless just like

9    you.  It was my dream to see you successful in life and to

10   attend your wedding.  I am sorry that I could not be there

11   because this case prevented me from sharing this joyful and

12   happy occasion.  I promise you I will make it up for you,

13   sweetheart.

14       To my son Abdulkareem, I am so proud of you.  I am so

15   proud of your early maturity.  I know you will follow my

16   footsteps in making or taking care of yourself and your

17   younger brother Mohamad.  I am sorry I couldn't attend your

18   high school graduation because of this case.

19       To my beloved son Mohamad, even though you are only 16,

20   even though you are only 16 years old, I believe that I have

21   taught you how to take care of yourself, and I know you will

22   have a bright future and be successful in your life.

23       And I want to thank my counsel Mr. Greg Westfall and his

24   family for his hard work and dedication, and I would like to

25   pay my respects to all the Defendants' team.  I don't have to

1    name you.

2         And I would like to thank all my friends for their

3    continuous support through this trial, especially Diana Wood,

4    I don't know if she is here, and all the others, I couldn't

5    mention all of them by name because of the time of court.  And

6    most of all, I would like to thank who believes in the gift of

7    giving.  May Allah forgive us, have mercy on us, be pleased

8    with us, accept from us and set right all our affairs amen.

9              THE COURT:  Thank you.

10        Mr. Jonas or Mr. Jacks?

11             MR. JACKS:  Your Honor, the Court has heard the

12   evidence and the responses of the Government, and I will not

13   repeat them at this time.

14        There is no question that this Defendant was the least

15   culpable of the other five individual Defendants, and the

16   Government just asks the Court to sentence him accordingly.

17             THE COURT:  Thank you.

18        Mr. Westfall, anything else?

19             MR. WESTFALL:  I would join in that, Your Honor.

20             THE COURT:  And I agree.  I agree that Mr. Odeh was

21   the least culpable of the five individuals, the least

22   evidence.

23        No question, though, Mr. Odeh -- I don't agree with you

24   that we have had five innocent men here.  The jury didn't

25   agree with that.  And there was plenty of evidence to show

1    that you were in fact involved with Holy Land Foundation,

2    which was shown by a lot of evidence, to be closely connected

3    with Hamas.  And from the evidence that was presented, it

4    appears you knew that and were aware of that.  And of course

5    it was designated and you continued your employment with them

6    after it was designated.

7        But you were involved -- There was the least money that

8    you were involved in.  You were in the organization the least

9    amount of time as compared to the other Defendants, you

10   weren't at those skits performing, skits about killing Jews

11   and killing Israelis.

12       And also I think it is worth noting here, and Mr.

13   Westfall, you pointed this out from the beginning, all of the

14   information, the evidence that was presented during the trial

15   and here as far as the legitimate charity that it looks like

16   HLF was doing appeared to be done by Mr. Odeh; that none of

17   the other Defendants appeared to be involved in any of that,

18   and I think that is another plus as far as weighing the

19   comparative responsibility and culpability of the Defendants.

20       So considering the factors of 3553(e), the nature of the

21   offense that you were involved in, the terrorist enhancements

22   that are properly applicable here, Mr. Odeh, and your role,

23   which is less than the other Defendants, I think a sentence

24   that will be sufficient to carry out the purposes of 3553(e)

25   but not greater than necessary, it will be the judgment of the

1    Court that you be sentenced to 15 years in the custody of the

2    U.S. Bureau of Prisons.

3         That will be followed by a three-year term of supervised

4    release.

5         I will not order a fine.

6         Restitution doesn't apply.

7         There is a $100 per count mandatory special assessment

8    that has to be imposed in each case.  That will be imposed in

9    your case.

10        Following your release from custody you will be on this

11   supervised release for three years.  You have certain

12   conditions that you have to follow while you are on this

13   supervised release.  The Probation officer will explain these

14   to you.

15   Among the conditions are that you not commit any other

16   violations of law, whether it be federal, state, or local law;

17   that you not illegally possess or use any type of a controlled

18   substance; that you cooperate in the collection of DNA as

19   directed by your Probation Officer; that you not possess a

20   firearm, ammunition, destructive device, or any other

21   dangerous weapon.

22        Provide to your Probation officer any requested financial

23   information.  Do not enter into any self-employment while

24   under this supervised release.

25        And then lastly, following your release from custody

1  report in person to the Probation Office in the district where

2  you are released.  Report within 72 hours of your release.

3  They will get you started on this supervised release, go over

4  these conditions of supervised release with you.

5      I need to advise you that you have the right to appeal

6  the jury verdict that was rendered against you as well as the

7  decisions that I have made here today, the sentence that I

8  have imposed.

9      If you don't have the means to hire an attorney to

10  represent you on appeal, we will appoint an attorney to

11  represent you at no cost to you.

12      You will be entitled to a copy of the transcript of the

13  trial as well as today's hearing, and all of the hearings that

14  we have held, for your use in the appeal.  They will be

15  provided at no cost to you as well.

16      If you wish to exercise your right of appeal, you can

17  speak with Mr. Westfall your attorney about doing that.

18      Mr. Westfall, anything else that we need to address at

19  this time?

20          MR. WESTFALL:  Your Honor, would you please enter

21  the same order keeping him here as well during the pendency of

22  the appeal?

23          THE COURT:  We will make that order pursuant to Rule

24  38.

25          And we have the forfeiture language, Mr. Odeh, that you

1     were convicted of the money laundering count, and so there

2     will be a money judgment entered against you in the amount of

3     $12,400,000, as the jury found.  You will be ordered to be

4     liable for that jointly and severally along with the other

5     three other co-Defendants that were convicted of the money

6     laundering; three others, total of four.  So you will be

7     jointly and severally liable with them, and that will be part

8     of the judgment, and a money judgment will be entered against

9     you to that amount.

10          MR. JONAS:  Your Honor, it is four because of the

11    corporation is also.

12          THE COURT:  The corporation.  That is right.  HLF,

13    which is defunct, but you are correct.

14       Mr. Westfall, anything else?

15          MR. WESTFALL:  No, Your Honor.

16          THE COURT:  Mr. Jonas or Mr. Jacks, anything from

17    the Government on this one?

18          MR. JACKS:  Your Honor, I know you said you

19    pronounced the sentence of 15 years, but how each count is --

20          THE COURT:  You are correct.  And I said 20 years.

21    I didn't break it down by counts.  Fifteen years on Count 1,

22    10 years on Count 2, 15 years on Count 11.  I got those wrong.

23    Fifteen years on Count 1, 10 years on Count 11, and then 20

24    years -- is that Count 22, the money laundering conspiracy?

25          MR. JONAS:  Yes, sir.

1          THE COURT:  That will be 15 years on that.  They

2   will all run concurrently with each other for a total of a

3   15-year sentence.

4        Anything else?

5          MR. JACKS:  No, Your Honor.

6          THE COURT:  Mr. Westfall?

7          MR. WESTFALL:  No, Your Honor.

8          THE COURT:  Mr. Odeh, you are remanded to the

9   custody of the Marshal, then, to serve your sentence.

10       Let me see counsel.  And Ms. Hollander, is she in here?

11         MS. MORENO:  She had to catch a plane, Your Honor.

12         THE COURT:  Okay.  Ms. Duncan went with her?

13         MS. MORENO:  Yes.  Did you want to see us?

14         THE COURT:  Yes, let me see counsel up here.

15                    (End of hearing.)

16

17

18

19

20

21

22

23

24

25

1     I HEREBY CERTIFY THAT THE FOREGOING IS A

2    CORRECT TRANSCRIPT FROM THE RECORD OF

3    PROCEEDINGS IN THE ABOVE-ENTITLED MATTER.

4    I FURTHER CERTIFY THAT THE TRANSCRIPT FEES

5    FORMAT COMPLY WITH THOSE PRESCRIBED BY THE

6    COURT AND THE JUDICIAL CONFERENCE OF THE

7    UNITED STATES.

8

9    S/Shawn McRoberts    06/22/2009

10   _____DATE_____
    SHAWN McROBERTS, RMR, CRR
11   FEDERAL OFFICIAL COURT REPORTER

12

13

14

15

16

17

18

19

20

21

22

23

24

25