1          IN THE UNITED STATES DISTRICT COURT
         FOR THE NORTHERN DISTRICT OF TEXAS
2                  DALLAS DIVISION

3   UNITED STATES OF AMERICA    )  CAUSE NO. 3:04-CR-240-P
                                (
4   vs.                         )
                                (  AUGUST 20, 2008
5                               )  DALLAS, TEXAS
   HOLY LAND FOUNDATION, ET AL  (  10:00 A.M.
6
   _____
7


8


9   _____

10                  PRETRIAL CONFERENCE

11
              BEFORE THE HONORABLE JORGE A. SOLIS
12                UNITED STATES DISTRICT JUDGE

13  _____

14


15              A P P E A R A N C E S

16


17


18      FOR THE GOVERNMENT:   UNITED STATES ATTORNEY'S OFFICE
                            1100 COMMERCE, 3RD FLOOR
19                          DALLAS, TEXAS  75242
                            BY:  MR. JIM JACKS
20                               MR. BARRY JONAS

21      FOR THE DEFENDANT:    FREEDMAN, BOYD, HOLLANDER,
       (SHUKRI ABU BAKER)    GOLDBERG & IVES, P.A.
22                          20 FIRST PLAZA, SUITE 700
                            ALBUQUERQUE, NEW MEXICO 87102
23                          BY:  MS. NANCY HOLLANDER
                                 MS. TERESA DUNCAN
24


25

```
 1        FOR THE DEFENDANT:   LAW OFFICE OF JOSHUA L. DRATEL
          (MOHAMMAD EL-MEZAIN) 14 WALL STREET, 28TH FLOOR
 2                             NEW YORK, NEW YORK  10005
                               BY:  MR. JOSHUA DRATEL
 3
          FOR THE DEFENDANT:   LAW OFFICE OF MARLO P. CADEDDU
 4        (MUFID ABDULQADER)   3232 McKINNEY AVENUE, SUITE 700
                               DALLAS, TEXAS  75204
 5                             BY:  MS. MARLO P. CADEDDU

 6        FOR THE DEFENDANT:   LAW OFFICE OF LINDA MORENO
          (GHASSAN ELASHI)     P.O. BOX 10985
 7                             TAMPA, FLORIDA  33679
                               BY:  MS. LINDA MORENO
 8
                               JONES DAY
 9                             555 CALIFORNIA ST., 26TH FLOOR
                               SAN FRANCISCO, CA  94104
10                             BY:  MR. JOHN D. CLINE

11        COURT'S LAW CLERK:   MS. JENNIFER HELMS
                               1100 COMMERCE, RM. 1654
12                             DALLAS, TEXAS  75242.

13        COURT COORDINATOR:   MS. BRENDA WEBB
                               1100 COMMERCE, RM. 1654
14                             DALLAS, TEXAS  75242

15   OFFICIAL COURT REPORTER:  SHAWN M. McROBERTS, RMR, CRR
                               1100 COMMERCE STREET, RM. 1654
16                             DALLAS, TEXAS  75242
                               (214) 753-2349
17

18

19

20

21

22

23

24

25
```

1           THE COURT:  All right.  We are here on a pretrial

2    conference on this case.

3        And I didn't want to spend a lot of time -- we won't get

4    into anything on the merits, but I just wanted to talk over

5    some of the scheduling.

6        The case is still set for trial on September 15th as far

7    as jury selection.  And we will bring the panel in, 150 panel

8    members, on September the 4th, Thursday September the 4th at

9    9:00.

10       I don't know whether you have had a chance to talk to

11   Greg or Marlo, but we have pretty much decided Judge

12   Fitzwater's current courtroom, he is in the process of moving

13   and it is the biggest one we have.  I think that we can fit

14   150 panel members in there pretty comfortably.  We may have to

15   use the jury box, as we discussed that day, but we can get 150

16   panel members that morning and hopefully get the process

17   going.  And then we will start on the 15th, and hopefully on

18   the 22nd we will start the evidence and get it going.

19       We have been going through -- Jennifer and I are still

20   working our way through the motions.  We have draft orders on

21   several of the remaining motions.  We should get those out in

22   the next few days.  But we are trying to figure out exactly

23   what it is we need to rule on, and one of the issues was the

24   *Daubert* motions.  And I think Jennifer sent you an email.

25       My preference and my practice generally is to rule on

1    *Daubert* motions from the briefing.  I have had maybe one or

2    two *Daubert* hearings the entire time I have been on the bench,

3    maybe three.  I just don't have very many.  And most of the

4    time I find I can rule on them from the briefing.

5         Of course, if we need to have a hearing we will do it

6    during the trial, since so many are out of state, so we can do

7    it when we get there.

8         But file your briefs and responses, and if you need a

9    reply, then I can take a look at it and we will try to rule on

10   these motions from the briefing.

11        And what are the *Daubert* motions that are outstanding

12   that we need to rule on?  I know we have one from you on   Mr.

13   Mackintosh.

14            MR. JACKS:  Mackintosh, Judge, and then there is --

15   We just got word Doctor What's-His-Name is back in play.

16   McDonald?

17            MS. CADEDDU:  McDonald.

18            MR. JACKS:  The music guy.

19            MS. CADEDDU:  He was listed on our witness list.

20            MR. JACKS:  I know, but in one of your pleadings you

21   attached a letter saying he couldn't do it.

22            MS. CADEDDU:  He can't be completely ready.  He is

23   going to do what he can.

24            THE COURT:  But you are planning on him testifying.

25            MS. CADEDDU:  Yes.

1          MR. JACKS:  So we will supplement.

2          MR. CLINE:  One other *Daubert* thing.  The Government

3  has given notice either Major Classen or Doctor Hoffman.  Now,

4  we got an email from Jennifer I think indicating that the

5  Government is not going to call Classen.  They are going to

6  call Hoffman.

7          MR. JONAS:  Correct.

8          MR. CLINE:  So Classen is out of play.

9      We had asked for a *Daubert* hearing on whichever of those

10  that were going to testify, and not just on qualifications but

11  on the underlying reliability of their proposed testimony.

12  Doing that right in advance of the testimony is fine, but we

13  would --

14          THE COURT:  Still want a hearing on him?

15          MR. CLINE:  Yes.

16          MR. DRATEL:  Which is actually how we did it in the

17  first trial also.  We had at least one of them right before

18  the testimony.

19          THE COURT:  Right before the witness testified?

20  Okay.  All right.  We will take a look at that.  So are the

21  motions filed and ripe?

22          MR. CLINE:  The motions are filed and ripe.  I don't

23  know that Your Honor -- By the way, we haven't challenged

24  Doctor Hoffman's qualifications, so that is not the issue.  It

25  is more of the reliability of the methods.

1          THE COURT:  Okay.

2          MR. CLINE:  And I don't know just because in the

3    nature of things in a criminal case, you don't have the kind

4    of elaborate depositions and so on that you would in a civil

5    case.  I don't know that you are going to be able to rule on

6    that on the papers.

7          THE COURT:  And he didn't testify the first time?

8          MR. JONAS:  No, he did not.

9          THE COURT:  We may need to have a hearing.  If we

10   do, I will let you know, and we will set it up.  And then just

11   give them some notice, and me, as to when you plan on having

12   him so we can make some plans -- How long would you expect a

13   hearing to take from your side?

14         MR. CLINE:  Not long.  I would guess maybe a couple

15   of hours for both sides to test him.

16         THE COURT:  All right.

17         MR. DRATEL:  I think we did the other two in a half

18   day each, less than half a day each.

19         MR. JONAS:  Right.  Doctor Levitt was about 40

20   minutes on direct, and I believe well over an hour on cross.

21         MR. DRATEL:  And Avi was a half a day maybe.

22         MS. HOLLANDER:  Not more than an hour or two on each

23   side.

24         MR. JONAS:  I don't think the Government will need

25   that much.

1          THE COURT:  Are you expecting any others, then,

2     coming from the Defense?  We have two from the Government

3     side, and you identified Mr. Hoffman.

4          MR. CLINE:  There is -- You mean any other *Daubert*

5     motions or any other experts?

6          THE COURT:  *Daubert* motions, yes.

7          MR. CLINE:  We have, Your Honor, renewed all of our

8     motions from the prior trial.

9          THE COURT:  I am not going to give you a hearing

10    obviously on anything that has already been -- I am looking

11    for new ones.

12         MS. HOLLANDER:  There has never been a hearing on

13    Olson.  There has never been a hearing on Fighel, because they

14    didn't testify.  They were on the Government's list the first

15    time but didn't testify, but they are on the Government's list

16    again.  We never had a *Daubert* hearing on either one.

17         MR. JONAS:  Olson I think is likely to testify and

18    Fighel is likely not to testify.  So I --

19         THE COURT:  What is Olson testifying to?

20         MR. JACKS:  He is in the -- What do they call it?

21    At the FBI laboratory that deals with encryption and that kind

22    of thing.  It is regarding one of the documents that was

23    seized.  He compared it to other terrorist documents and the

24    consistency between the two.

25         THE COURT:  Okay.  And --

1      MR. JACKS:  He is not a questioned documents

2  examiner, but the section is Racketeering and Records.  They

3  do code breaking, they do, you know, ciphers and that kind of

4  thing.

5      THE COURT:  Okay.  And you are planning on calling

6  him this time?

7      MR. JACKS:  He is a probable.

8      THE COURT:  That is the one that we gave you some

9  time to file -- an extension to file your motion to exclude.

10  Have you filed that yet?  Has that been filed?

11      MS. HOLLANDER:  I don't believe it has.

12      MR. CLINE:  We filed one, if I recall correctly,

13  before the last trial, and I don't remember what happened.  In

14  fact, I wasn't around then.  But in any event, there was never

15  a hearing held on Olson.

16      THE COURT:  Are you intending on filing -- Somebody

17  asked for an extension.

18      MS. DUNCAN:  We did, Your Honor.  And I think what

19  we are thinking now is we will file a motion in limine as to

20  the documents that he intends to compare, so it is not -- I

21  think it is not really a *Daubert* issue so much as it is a

22  limine issue.

23      MS. HOLLANDER:  About the documents.

24      MR. JONAS:  Your Honor, following that we also

25  anticipate filing a limine motion on some of their experts,

1    not so much challenging qualifications that require a *Daubert*

2    hearing, but more relevance.  We filed a similar motion last

3    trial.  We would just be refreshing that motion because they

4    have identified additional experts.

5             THE COURT:  Okay.  And when do you intend on filing

6    that?

7             MR. JONAS:  By the motion deadline.

8             MS. HOLLANDER:  It is the 29th.  And you are

9    planning to have Levitt testify again?

10            MR. JONAS:  Yes.

11            MR. WESTFALL:  On Olson, are we going to file a

12   *Daubert* motion on him about the testimony about the -- I guess

13   it is the security document is what he is going to testify to?

14            MS. MORENO:  I think the discussion is that it would

15   be a limine motion with respect to the document that he would

16   be comparing.

17            MR. DRATEL:  We will discuss that among ourselves as

18   to how it will be styled.

19            THE COURT:  Okay.  By the deadline.  Okay.  And our

20   concern was we had given an extension, specific extension for

21   the *Daubert* deadline.  We are a little more concerned on those

22   obviously than on the motions in limine in terms of getting a

23   response and reply so we can look at them.

24            MS. HOLLANDER:  We will decide today.

25            THE COURT:  Whenever that deadline was, or if you

1　need some days, but the 29th is a week from this Friday.

2　　　　　　MS. HOLLANDER:  The deadline on Olson was different.

3　　　　　　THE COURT:  It was different.  It was a 15th, which

4　was last Friday.  We extended it about two weeks.  But the

5　29th is a week from this Friday, and we may want it a little

6　sooner than that.  If you are going to file a *Daubert* motion,

7　and then we need to get a response in, so we can't take the

8　normal ten days now.

9　　　　　　MR. WESTFALL:  We will discuss it and we will get

10　back with you, Your Honor, on what you do.

11　　　　　　THE COURT:  Get with Jennifer, then.  Whatever time

12　you need, let her know and we will work with that.

13　　　　　　MS. DUNCAN:  Mr. Jacks, are we correct that that is

14　the limits of his testimony?  He is just going to be comparing

15　these two --

16　　　　　　MR. JACKS:  Yes.

17　　　　　　MR. WESTFALL:  Are we talking about that security

18　document from InfoCom?

19　　　　　　MR. JACKS:  Right.

20　　　　　　THE COURT:  Okay.  All right.

21　　　Yes?

22　　　　　　MR. CLINE:  Your Honor, an issue that I wanted to

23　flag for the Court because I don't want it to easily get lost

24　in the shuffle here, Your Honor has ruled on the discovery

25　motion that the Defense filed, and among other things denied

our request for discovery of the name of the witnesses.

I wanted to make sure the Court is aware that separately we have submitted a CIPA notice that goes to that issue and certain other issues.  And the reason I wanted to flag that is the standard for admissibility at trial is slightly different than the standard for discovery, and we haven't really fleshed that out in the papers, and so I wanted to just mention it here.

The standard for discovery in most courts, and as Your Honor has ruled, is the *Roviaro* standard when we are talking about classified information.  Your Honor has applied that standard.  We respectfully disagree with the ruling, but you have applied the standard.

THE COURT:  I understand.

MR. CLINE:  In the admissibility context at trial, most courts do not apply a heightened standard but just apply the rules of evidence, normal relevance 403 type analysis. And so Your Honor may end up ruling the same way, but we would ask that Your Honor make that separate admissibility analysis for purposes of the trial.

THE COURT:  Admissibility as to?

MR. CLINE:  We filed it is our fourth CIPA notice, as to the name of both witnesses.

THE COURT:  So you want a ruling of that as to whether it is admissible for you to go into it?

1          MR. CLINE:  Yes, on cross.  And there are certain

2   other matters as well that we have listed in the notice all

3   relating to these anonymous witnesses.  I just wanted to fly

4   that issue --

5          MR. JONAS:  Your Honor, we would just ask that that

6   be done outside the presence of the jury, if you are going to

7   make a ruling from the bench that the jury doesn't have to

8   hear any discussion about their names not coming out.  It will

9   come out in -- The first questions will be, "Are you

10  testifying under your true name?"  And the answer is going to

11  be no.  And I think it can be anticipated that direct

12  testimony won't go beyond that.

13         MS. HOLLANDER:  But cross may go beyond that.

14         MR. CLINE:  We agree, Your Honor, with Mr. Jonas

15  that the ruling on our CIPA notice is properly outside the

16  presence of the jury.  Now, it may well be that issues will

17  come up in the course of the cross, because we don't know

18  exactly the parameters on what is classified and what is not,

19  and they may object, and it may be that you have a little mini

20  CIPA hearing at the bench on some issues.  But as far as what

21  we have been able to specify in our fourth CIPA notice, that

22  should certainly be ruled on outside the presence of the jury

23  and preferably before trial.

24         THE COURT:  We will get an order on that one before

25  trial, and then any other issues on that that comes up,

1    approach the bench and we will deal with it like that.

2              MR. DRATEL:  Your Honor, I am Mr. Dratel.  This is

3    the first time I am appearing before Your Honor.

4         Just a couple of scheduling matters.  There are two

5    Jewish holidays coming up the end of September, beginning of

6    October.  Rosh Hashanah is September 30th and October 1st.

7    That is a Tuesday and a Wednesday.  And then Yom Kippur is the

8    9th, which is a Thursday, I believe.  It starts Wednesday

9    night.

10             MS. HOLLANDER:  October 9th.

11             MR. DRATEL:  October 9th.

12        And I was also just curious, because my client Mr.

13   El-Mezain has some arthritis issues and a knee replacement,

14   and so I was just curious about the Court's practice with

15   respect to breaks and in terms of -- He had sort of a second

16   chair that he could put his foot up on at periods of time, so

17   if that would be permissible as well.

18             THE COURT:  I don't have any problems with that.  We

19   can work that out once we get down there and take a look at

20   the courtroom and see what we have available.

21        What are you requesting as far as the Jewish holidays?

22             MR. DRATEL:  Just that we not sit those three days

23   because I don't work on those three days.

24             THE COURT:  The days without be which ones?

25             MR. DRATEL:  It would be the 30th of September, the

1   1st October, and the 9th of October.

2          THE COURT:  So you are wanting to be out of the

3   courtroom all complete days there?

4          MR. DRATEL:  Yes.

5          MR. JONAS:  Your Honor, if we can a just address

6   that.  The Government has two suggestions with that.  The

7   first is that Mr. Dratel has co-counsel, CJA appointed

8   co-counsel.  He can certainly cover for Mr. Dratel.  He was

9   there during the first trial.  He is a very competent

10  attorney, experienced attorney.  There is no reason why the

11  trial can't proceed on those days with a co-counsel.

12      Second, in the alternative, we had collectively requested

13  the Court not have trial on Fridays during the course of the

14  trial.  If those particular weeks we have trial so that we

15  don't lose too much ground, as well as right after -- the

16  following week after Yom Kippur there is Columbus Day, so we

17  aren't going to have trial on that day.  So if we could have

18  trial on Friday, if we are going to lose these days to the

19  Jewish holidays.

20          MR. DRATEL:  I certainly would object to not being

21  here during any part of the trial.  I want to know precisely

22  what is happening.  Mr. Mysliwiec obviously is appointed, but

23  I am the lawyer for Mr. El-Mezain.

24      And about just the breaks would be sort of a

25  mid-afternoon break and a mid-morning break, the Court takes

1    those?

2         THE COURT:  I generally take a mid-morning and

3    mid-afternoon, I generally take an hour and 15 minutes for

4    lunch when we have a jury.  And I generally break a little

5    late.  We will probably break 12:15 to 12:30.  And we will

6    start at 9:00 in the morning.  Plan on starting at 9:00 in the

7    morning, take a break about 10:30, and then go until about

8    12:15 to 12:30, take an hour and 15 minutes, and then come

9    back and take a mid-afternoon break.

10     Generally we will break between 5:00 to 5:30.

11   Occasionally, if we have a witness that you anticipate, either

12   side, if they are from out of state and you want to try to

13   finish up on the day, we can work late to try to finish up a

14   witness.  But generally plan on breaking between 5:00 and

15   5:30.

16         MR. DRATEL:  I just want to alert the Court that

17   today we will be filing a motion for stay with the Circuit on

18   the collateral estoppel.

19         THE COURT:  Sure.

20         MR. DRATEL:  That has to be filed by mail, so we are

21   creating copies.  We will be doing that today.  We would have

22   got that done yesterday, but because of the need to create a

23   hard copy.

24     And I guess that is it as far as I have.  Thank you, Your

25   Honor.

1          MS. CADEDDU:  Judge, I would ask -- I told you this

2     I think before about my children, that I have notice in

3     advance if we are going to go beyond 5:30 because my

4     children's school closes at 6:00.  I doubt that they put them

5     on the sidewalk, but --

6          THE COURT:  I understand.  We will certainly give

7     you some notice.  We will plan on breaking at 5:30, because

8     you mentioned that before.  So if we need to stay late, let us

9     know in advance so we can let Marlo go.

10        And the other problem we run into is the jurors.  Once we

11    get the panel in, sometimes they need to leave early, so we

12    will deal with all that --

13         MR. DRATEL:  I have actually one other question,

14    Your Honor, just directed at the Government, which is whether

15    the Government is going to use the same exhibit sequence in

16    terms of series as they did the first time.

17         MR. JONAS:  No.  We are renumbering and

18    reidentifying our exhibits to make them easier to follow.  The

19    exhibit list, which we will try to get to you in advance of

20    the due date, will have the new numbering system and the old

21    numbering system right next to it.

22         MR. DRATEL:  That would be helpful.

23         MR. JONAS:  And Mr. Cline and I had email discussion

24    on this.  The stipulations, are we still on for the

25    stipulations that we signed for the last trial?

1          MR. CLINE:  The ones that I recall we talked about

2     had to do with the foreign records.

3          MR. JONAS:  The ones that we signed before trial

4     covered domestic and foreign banks and a whole slew of other

5     exhibits.

6          MS. HOLLANDER:  I think so, but we should probably

7     just look at them.

8          MR. CLINE:  I don't think we will have a problem

9     with that, but we need to --

10          MS. HOLLANDER:  The ones involving the banks and --

11          MR. JONAS:  There is banks, search warrant material,

12     there was FISA material, American Express records.  You also

13     had something in there regarding the Jamil Hamami records,

14     travel records.  There is a slew of evidence; basically the

15     authenticity and hearsay issues.  It certainly saved a large

16     number of witnesses.  And if you will not agree to the

17     stipulations, we need to know because that will probably

18     double our witness list.

19          MS. HOLLANDER:  Do you readily have that

20     stipulation?

21          MR. JONAS:  Not with me sitting here today.  I know

22     I had emailed it to you, and I can email it again when I am

23     back in Washington on Friday.

24          MR. CLINE:  That would be good.  Sorry to involve

25     you in this, Your Honor, but we ought to come up with a list

of those stipulations on both sides that we are going to agree

to.  I don't think there is going to be a problem, but we

ought to come up with a list so we all know what they are, and

then we can just get them out of the way.

MR. JACKS:  Are you talking about the one from the

last trial?

MS. HOLLANDER:  Yes.  If you could email it to all

of us, it would just make it easier if you would email them

again and we can get back to you right away.

MR. JONAS:  I am just thinking of the primary one

that we did on the evidence.  I know there was some other ones

that we did during the course of the trial that were very

short, and I am not even concerned about those.  I think most

of those came from you.

MS. HOLLANDER:  Most of those are probably not going

to come up again.

MR. JONAS:  Probably not.  But right now the primary

concern is do we need to start lining up custodian witnesses.

MR. CLINE:  You don't.

MR. JACKS:  The big one, was it marked and admitted?

I mean, I am assuming it was admitted for record purposes.  I

just don't know if it was on the website for the Court's

exhibits.

MS. HOLLANDER:  The big stipulation?

MR. JACKS:  Yeah.

1          MS. HOLLANDER:  It is a court exhibit.  It was

2     listed -- They were listed as court exhibits, and I think

3     there were ten of them altogether.

4          MR. JACKS:  I don't remember if they were on there

5     or not.

6          MS. HOLLANDER:  I have them all.

7          MR. JACKS:  I can look in my office when we get back

8     upstairs.

9          MR. CLINE:  But in terms of lining up custodial

10    witnesses, you don't have to worry about it.

11         MR. JONAS:  Your Honor, if I can raise one question

12    on scheduling.  You mentioned that evidence will start on the

13    22nd.  Will opening start that day as well, or will openings

14    be the prior week?

15         THE COURT:  It may depend on how quickly the jury

16    selection goes.  I would like to start the evidence on the

17    22nd, but we will see.

18       That week of the 15th when we are doing the jury

19    selection, I am not committed to being off that Friday.  I

20    would like to finish the jury selection, maybe read the

21    indictment, have the opening statements made, and be ready to

22    start the evidence on the 22nd.  That is the game plan.  But

23    it depends on how jury selection goes.

24         MR. WESTFALL:  Do you expect, Your Honor, to do jury

25    selection the way Judge Fish did.

1          THE COURT:  I have talked to him about it.  I am not

2    sure what all you mean by that.  Is there something in

3    particular --

4          MR. WESTFALL:  Just the seven and a half minutes a

5    side?

6          THE COURT:  Yes.  I may limit the scope.  And that

7    is a good question, and we can talk about this on the 4th, but

8    what I am thinking of is limit the scope to publicity,

9    terrorism, and then anything that is in those forms, the

10   questionnaires that they fill out that you think needs to be

11   gone into.

12         MR. WESTFALL:  And then you will do -- Once we have

13   picked them all, you will do a panel voir dire.

14         THE COURT:  I am going to do a panel voir dire

15   actually at the very beginning on the 4th.  Remember when we

16   were down in the jury room?  It is a while back.  But my plan

17   is to go ahead and have a general voir dire on that date.

18         MR. WESTFALL:  So on burden of proof and that stuff,

19   that will be on that date?

20         THE COURT:  Yes.

21         MR. WESTFALL:  And you are open to us submitting

22   questions and issues?

23         THE COURT:  Yes.  In fact, I think I had asked.  I

24   don't know whether I asked in front of the group or whether

25   you were here with Jim.  I want to acquaint the jury with the

1  type of case it is, so submit something that you want me, in

2  terms of explanations --

3          MR. WESTFALL:  We did.  I filed that.

4          MR. JACKS:  I have got mine ready.

5          THE COURT:  And I don't need it, obviously, until

6  somewhere before the 4th.

7          MR. WESTFALL:  Ours was filed.

8          THE COURT:  So I will acquaint the jury with the

9  Government's position and with your position, and then getting

10  into the general criminal issues that apply, and then get into

11  the hardship.

12          MR. WESTFALL:  And the press?  Were you going to

13  handle the press?

14          THE COURT:  Go ahead and handle some of the

15  publicity, yes.

16          MR. WESTFALL:  We did a long series on press issues

17  as well.

18          MS. HOLLANDER:  This is just a question, but they

19  are going to come in and fill out their questionnaires first?

20          THE COURT:  No, after.

21          MS. HOLLANDER:  First you are going to do this.

22          THE COURT:  Acquaint them with the case before they

23  fill out the questionnaires.

24          MS. MORENO:  Because some of them may have not to

25  fill out questionnaires if they heard about the case.

1          THE COURT:  Right.  What I was thinking is once we

2     finish that process, I will ask for hardships, take the

3     hardships there.  And however many raise their hands with a

4     hardship, we will keep those in the courtroom and send the

5     others down to the first floor and let them start filling out

6     the questionnaire.

7          As we deal with hardship on an individual basis, if they

8     are excused, they are excused; if they are not, we will send

9     them on down to fill out their questionnaire.

10          MR. JACKS:  Judge, you made up your mind about

11     individual voir dire, that you are going to permit that.

12          THE COURT:  I think that is the plan.  Yeah, I think

13     so.  I think we can do that.  I think initially last time we

14     gathered back in March, I was still wanting to -- thinking

15     about waiting until after we heard from the panel as a whole.

16     But I think I need to decide before then just so you all will

17     know where we are going.  So we will go ahead and commit to

18     that.

19          MR. WESTFALL:  We will be ready for it.

20          THE COURT:  I know you will.

21          MR. CLINE:  Your Honor, one last thing, and I am

22     sorry to keep harping on this CIPA issue but we haven't

23     briefed it just because of the way it came up, and so I want

24     to make sure I get one thing --

25          THE COURT:  Did you want supplement briefing on

1    that?

2            MR. CLINE:  I don't think it is really necessary,

3    but I want to give you one cite that explains this difference

4    before the discovery standard and the admissibility standard.

5    It is in footnote 4 of our motion for discovery.  It is *U.S.*

6    *versus Libby*, and the cite is 453 F.Supp.2d 455.  It is a

7    District of Columbia case.

8            THE COURT:  I have read the case, in fact in

9    connection with your motion.

10           MR. CLINE:  I just wanted to --

11           THE COURT:  It is a long one.

12           MR. CLINE:  It is very long.  In any case, I just

13   wanted to make sure you were aware of that case.

14           MR. WESTFALL:  Your Honor, there was one other thing

15   about the jury.  We had submitted a questionnaire that

16   included some changes, some suggested changes that we were

17   asking for leave of the Court to consider.

18           THE COURT:  Okay.  And you have already filed that?

19           MR. WESTFALL:  Yes, sometime ago.  And most of the

20   changes are cosmetic.  There is a couple, like getting rid of

21   Nathan Garrett's name.  There is a few changes on there that

22   are substantive, and we just wanted to direct your attention

23   to that.  I know -- We don't consider it a wholesale change,

24   but there are some changes and we wanted you to consider --

25           MS. MORENO:  And we actually introduced, Your Honor,

1    in the beginning paragraphs to those changes so they are

2    pointed out.  And there is probably just four or five

3    questions.

4                THE COURT:  And you are going to object?

5                MR. JACKS:  Yes, sir.

6                THE COURT:  Have you filed a response?

7                MR. JACKS:  No, but I will do that before Friday.

8                THE COURT:  We will need to resolve that before the

9    4th, obviously.  Thanks for pointing that out.  I don't know

10   that I was aware of that.  We will take a look at it.

11       Any other issues we need to address?

12               MR. JONAS:  Just, Your Honor, with regard to Mr.

13   Dratel's issue with the Jewish holidays, and with now the

14   suggestion of sitting out on Fridays.  We have a lot of

15   witnesses coming in from out of the state and out of the

16   country.  If you can let us know soon, because we need to make

17   travel arrangements for them.  If we sit out on Fridays, that

18   will affect when they testify.

19               THE COURT:  We were aware of those holidays.  I

20   think it had been raised, and we were aware that we would have

21   to deal with that, and then the Columbus Day, and so we have

22   been talking about whether we need to work on Fridays those

23   weeks, and so we will make a decision and then --

24               MR. JONAS:  If I could ask Mr. Dratel, assuming we

25   don't sit on the Jewish holidays, would you plan on that

Monday before Rosh Hashanah breaking early, the same goes for

the day before Yom Kippur, or would --

THE COURT:  He is asking for two days for Rosh

Hashanah.

MR. JONAS:  Right.  The Jewish holidays start

sundown the day before, and I know Mr. Dratel lives in New

York.

MR. DRATEL:  I can get back to the Court.  I haven't

checked things like plane schedules and things like that, and

also just in terms of just family, you know, for some of --

THE COURT:  Is Rosh Hashanah two full days?

MR. DRATEL:  Yes.  So one of them.  But for the one

day, Yom Kippur, it may not be worth going back for.  It will

be too hard to turn around and get the whole holiday in.  So I

will make that -- I will find out this week and get back to

the Court on that.

MS. HOLLANDER:  And then you will give us kind of a

calendar of which days, because we have to make travel plans.

THE COURT:  We will do that.

MR. JONAS:  Your Honor, just to give the Court a

heads up and Defense attorneys a heads up, Mr. Cline raised

the discovery motion.  In your order you granted their motion

to the extent with regard to CIA cables, anything that was

responsive.  We will be filing I think a letter real soon,

probably a classified letter under CIPA, which we will to cc

1    Defense counsel on.  It will be a very short letter stating

2    basically there is nothing responsive.

3        In their motion the Defense attorneys assumed that

4    certain material existed within the possession of the CIA.

5    Mr. Jacks, Ms. Shapiro, and I went to the CIA and reviewed

6    over a thousand documents, and there is nothing there that

7    addresses exculpatory or that is in their favor at all.  In

8    fact, the information is completely inculpatory that they

9    want.  And we will be sending you a letter just on that.

10            THE COURT:  Okay.  All right.

11            MR. JONAS:  I am a little vague, but we are not in a

12    classified setting here so I can't be more specific right now.

13            THE COURT:  Right.

14            MS. DUNCAN:  And Your Honor, this won't affect the

15    proceedings at all, but I have a trial the first week in

16    September, so I likely will not be here on the 4th.  Ms.

17    Hollander will be representing Mr. Baker.

18            THE COURT:  Does he go by Baker.

19            MS. HOLLANDER:  He goes by Abu Baker.  Abu Baker is

20    the last name.

21            THE COURT:  I will let you introduce your clients to

22    the jury.

23        All right.  Anything else, then, from the Defense that we

24    need to address?

25            MR. WESTFALL:  No, Your Honor.

1          THE COURT:  Mr. Jacks, Mr. Jonas, anything else from

2    the Government?

3          MR. JACKS:  No, sir.

4          THE COURT:  Brenda, can you think of anything we

5    needed to touch on?

6       Okay.  All right.  Thank you for being here.  If you want

7    to -- probably they will break about 10:30 if you want to go

8    into Judge Fitzwater's courtroom.  And we will see you back on

9    the 4th.

10                     (End of Hearing.)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1     I HEREBY CERTIFY THAT THE FOREGOING IS A

2   CORRECT TRANSCRIPT FROM THE RECORD OF

3   PROCEEDINGS IN THE ABOVE-ENTITLED MATTER.

4   I FURTHER CERTIFY THAT THE TRANSCRIPT FEES

5   FORMAT COMPLY WITH THOSE PRESCRIBED BY THE

6   COURT AND THE JUDICIAL CONFERENCE OF THE

7   UNITED STATES.

8

9   S/Shawn McRoberts   06/17/2009

10  _____DATE_____
     SHAWN McROBERTS, RMR, CRR
11  FEDERAL OFFICIAL COURT REPORTER

12

13

14

15

16

17

18

19

20

21

22

23

24

25