IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) CAUSE 3:04-CR-240-P |
| | ) |
| v. | ) |
| | ) NOVEMBER 24, 2008 |
| HOLY LAND FOUNDATION, ET AL. | ) DALLAS, TEXAS |
| | ) 2:55 P.M. |

_____

VOLUME 37 OF 37

_____

VERDICT

BEFORE THE HONORABLE JORGE A. SOLIS
UNITED STATES DISTRICT JUDGE
and a jury

_____

A P P E A R A N C E S

FOR THE GOVERNMENT:    UNITED STATES ATTORNEY'S OFFICE
                       1100 COMMERCE, 3RD FLOOR
                       DALLAS, TX  75242
                       BY:  MR. JIM JACKS
                            MR. BARRY JONAS
                            MS. ELIZABETH SHAPIRO

FOR THE DEFENDANT:     FREEDMAN, BOYD, HOLLANDER,
(SHUKRI ABU BAKER)     GOLDBERG & IVES, P.A.
                       20 FIRST PLAZA, SUITE 700
                       ALBUQUERQUE, NM  87102
                       BY:  MS. NANCY HOLLANDER
                            MS. TERESA DUNCAN

```
FOR THE DEFENDANT:      LAW OFFICE OF JOSHUA L. DRATEL
(MOHAMMAD EL-MEZAIN)    14 WALL STREET, 28TH FLOOR
                        NEW YORK, NY  10005
                        BY:  MR. JOSHUA DRATEL
                             MR. AARON J. MYSLIWIEC

FOR THE DEFENDANT:      LAW OFFICE OF MARLO P. CADEDDU
(MUFID ABDULQADER)      3232 McKINNEY AVENUE, SUITE 700
                        DALLAS, TX  75204
                        BY:  MS. MARLO P. CADEDDU

FOR THE DEFENDANT:      LAW OFFICE OF LINDA MORENO
(GHASSAN ELASHI)        P.O. BOX 10985
                        TAMPA, FL  33679
                        BY:  MS. LINDA MORENO

                        JONES DAY
                        555 CALIFORNIA ST., 26TH FLOOR
                        SAN FRANCISCO, CA  94104
                        BY:  MR. JOHN D. CLINE

FOR THE DEFENDANT:      WESTFALL, PLATT & CUTRER
(ABDULRAHMAN ODEH)      ONE SUMMIT AVENUE, SUITE 910
                        FORT WORTH, TX  76102
                        BY:  MR. GREG WESTFALL

COURT'S LAW CLERK:      MS. JENNIFER HELMS
                        1100 COMMERCE, ROOM 1654
                        DALLAS, TX  75242

COURT COORDINATOR:      MS. BRENDA WEBB
                        1100 COMMERCE, ROOM 1654
                        DALLAS, TX  75242

COURT REPORTER:         SHAWNIE ARCHULETA, RPR, CRR
                        1100 COMMERCE STREET, ROOM 1376
                        DALLAS, TX  75242
                        (214)753-2747
```

TRANSCRIPT OF PROCEEDINGS

PAGE

Verdict                                                    5

Objections to Supplemental Jury Instructions    10

Indictment Read (Forfeiture Allegation)         24

Court's Supplemental Instructions Read          28

Closing Arguments:

    By Mr. Jonas                                   32
    By Ms. Hollander                               35
    By Ms. Moreno                                  36
    By Mr. Westfall                                36
    By Ms. Cadeddu                                 37

Rebuttal Argument:

    By Mr. Jonas                                   37

Verdict as to Forfeiture Allegation             38

REPORTER'S CERTIFICATE                          53

1        **(IN OPEN COURT AT 2:55 P.M.)**

2        **(JURY NOT PRESENT.)**

3        THE COURT:  I understand that the jury has

4    a verdict.

5        Let me ask counsel.  Mr. Jacks, are you

6    ready for the jury?

7        MR. JACKS:  Yes, Your Honor.

8        THE COURT:  And counsel over here, ready

9    for the jury?

10        MS. HOLLANDER:  Yes, Your Honor.

11        MR. WESTFALL:  Yes, Your Honor.

12        MR. DRATEL:  Yes, Your Honor.

13        MS. MORENO:  Yes, Your Honor.

14        MS. CADEDDU:  Yes, Your Honor.

15        THE COURT:  We have a full courtroom.  And

16    let me just remind the members of the public that

17    are here, we have a verdict and we are getting ready

18    to read those verdicts.  We understand these are

19    difficult issues, they can be emotional issues, but

20    let's remember where we are.

21        We don't want any reaction to the jury's

22    verdict.  The foreman of the jury has a difficult

23    job.  They have done their job.  We don't know what

24    the verdict is.  But once we read it, I ask that you

25    respect the proceedings here and remember that we

are in a courtroom and that you maintain -- do not

have any outbursts, and just remember that we are in

a courtroom until after the jury is excused.

Bring the jury in.

(Jury enters courtroom.)

THE COURT:  Ms. Schukar and members of the

jury, good afternoon.  I know you have been working

hard, but we understand you have reached a verdict.

Is that correct, Ms. Schukar?

JURY FOREMAN:  Yes, Your Honor.

THE COURT:  If you will hand the verdict

to the bailiff, please, ma'am.

The verdict of the jury with respect to

Count 1:  The verdict as to each of the defendants

is guilty.

With respect to Count 2:  The verdict as

to each of the three defendants named in there is

guilty.

Count 3:  The verdict as to each of those

three defendants is guilty.

Count 4:  The verdict as to each of the

defendants is guilty.

Count 5:  The verdict as to each of those

three defendants is guilty.

Count 6:  The verdict as to each of those

1    three defendants is guilty.

2           Count 7:  The verdict is guilty as to each

3    of the three defendants.

4           Count 8:  Guilty as to each of the three

5    defendants.

6           Count 9:  Guilty as to each of the three

7    defendants.

8           Count 10:  Guilty as to each of the three

9    defendants.

10          Count 11:  Guilty as to each of the five

11   defendants named in that count.

12          Count 12:  Guilty as to each of the three

13   defendants named in that count.

14          Counts 13, 14, 15, 16, 17, 18, 19, 20 and

15   21:  The verdict is guilty as to each of the three

16   defendants named in each one of those counts.

17          Count 22:  The verdict is guilty as to

18   each of the five defendants named in that count.

19          Counts 23, 24, 25, 26, 27, 28, 29, 30, 31

20   and 32:  The verdict is guilty as to each of the

21   three defendants named in those counts.

22          Count 33:  The verdict is guilty as to the

23   two defendants named in that count.

24          And then Counts 34, 35, and 36:  The

25   verdict is guilty as to each defendant named in

1   those particular counts.

2           And Ms. Schukar, you have signed the

3   verdict form and you have dated it today's date?

4           JURY FOREMAN:  Yes, we have.

5           THE COURT:  Let me ask you, ma'am:  Is

6   this the verdict of each member of the jury?  That

7   is, is this a unanimous verdict?

8           JURY FOREMAN:  Yes, sir.

9           THE COURT:  All members of the jury have

10  agreed to this; is that correct?

11          JURY FOREMAN:  Yes.

12          THE COURT:  And I propose to accept the

13  verdict of the jury.  Any legal reason not to at

14  this time, Mr. Jacks?

15          MR. JACKS:  No, Your Honor.

16          THE COURT:  From the defense?

17          MS. CADEDDU:  Yes.  We would ask that the

18  members of the jury be polled individually.

19          THE COURT:  Members of the jury, counsel

20  has asked that the jury be polled, which they are

21  entitled to do by law.  So I will call out each of

22  your names and then ask if this is your verdict as

23  to each one of these verdicts as to each of these

24  counts that have been returned.

25          And Ms. Schukar, we will begin with you,

1  as our presiding juror.  Is this your verdict as to

2  each of these verdicts that you have indicated on

3  this form?

4           JURY FOREMAN:  Yes, sir, it is.

5           THE COURT:  And Juror Number 3, is this

6  your verdict?

7           THE JUROR:  Yes.

8           THE COURT:  Juror Number 4?

9           THE JUROR:  Yes.

10          THE COURT:  Juror Number 5?

11          THE JUROR:  Yes.

12          THE COURT:  Juror Number 6?

13          THE JUROR:  Yes.

14          THE COURT:  Juror Number 7?

15          THE JUROR:  Yes, Your Honor.

16          THE COURT:  Juror Number 8, is this your

17  verdict?

18          THE JUROR:  Yes.

19          THE COURT:  Juror Number 9?

20          THE JUROR:  Yes, Your Honor.

21          THE COURT:  Juror Number 10?

22          THE JUROR:  Yes.

23          THE COURT:  Juror Number 11?

24          THE JUROR:  Yes.

25          THE COURT:  Juror Number 12?

1                THE JUROR:  Yes.

2                THE COURT:  With that, members of the

3      jury, we will accept your verdict.  And there are

4      other proceedings that we have to go to in this

5      particular case.

6                As part of the indictment, the government

7      had made a forfeiture allegation where they are

8      seeking to recover some of this money by virtue of

9      your return of the guilty verdicts on the money

10     laundering counts.  So we ask that you be in recess.

11     This will probably take some 15 to 20 minutes,

12     another little charge.

13               This won't be as lengthy of a proceeding

14     as what you have been through, but we should get it

15     to you sometime this afternoon.  I will read you

16     some instructions that go with that particular

17     forfeiture allegation, and then we will give you a

18     verdict form that has two questions that we need to

19     ask that you retire to deliberate and answer those

20     two questions.

21               So we wish we could let you go, but we

22     have a little bit longer to go.  So if you will step

23     back into the jury room for 15 or 20 minutes, we

24     will resume then.

25               (Jury leaves courtroom.)

1          THE COURT:  Mr. Jacks, are you ready to

2    proceed with the forfeiture allegations?

3          MR. JACKS:  Yes, Your Honor.

4          THE COURT:  Do you need some time?

5          MR. JACKS:  Just a few minutes to

6    formulate the steps we want to take, Your Honor.

7          THE COURT:  And then counsel for the

8    defense -- and I will go ahead and state on the

9    record, and we will give you a chance to get it on

10   the record.

11         We had a discussion with counsel off the

12   record, not knowing what the verdict was going to

13   be, but in anticipation that if it was a guilty

14   verdict on the money laundering, that we would need

15   to address the forfeiture counts.  We had the

16   opportunity to do that, but we weren't on the

17   record.

18         So do you want to take a break first, and

19   then we will come back and get your statements on

20   the record?  Let's take about a 20-minute recess and

21   come back and let you get on the record your plan on

22   proceeding.

23         Anything else we need to address before we

24   recess for now?

25         We will be in recess for 20 minutes.

1              (Recess taken from 3:01 to 3:28.)

2              THE COURT:  Counsel, have you had enough

3     time to review the charge?  Ms. Hollander,

4     Mr. Westfall, Ms. Moreno, Ms. Cadeddu?

5              MS. CADEDDU:  I just got it, Your Honor.

6              THE COURT:  Just take a few minutes.

7              MS. CADEDDU:  Your Honor?

8              THE COURT:  Yes.

9              MS. CADEDDU:  Before I forget, on behalf

10    of Mr. Abdulqader, I need to renew the Rule 29

11    motions for Judgment of Acquittal on all counts as

12    to all elements.

13             MS. MORENO:  Join on behalf of Mr. Elashi,

14    Your Honor.

15             MR. DRATEL:  Join on behalf of

16    Mr. El-Mezain, Your Honor.

17             MR. WESTFALL:  Mr. Odeh, as well.

18             MS. HOLLANDER:  Mr. Abu Baker, as well.

19             MS. CADEDDU:  And double jeopardy on

20    behalf of all.

21             MR. DRATEL:  On behalf of all.

22             MS. MORENO:  Double jeopardy on behalf of

23    Mr. Elashi.

24             MR. DRATEL:  And collateral estoppel for

25    Mr. El-Mezain.

1    MR. WESTFALL:  We incorporate, Your Honor,
2  the same thing, double jeopardy.
3    MS. HOLLANDER:  We incorporate on behalf
4  of Mr. Abu Baker.
5    THE COURT:  The Court's rulings will be
6  the same.  The motions are denied.
7    Mr. Jacks, you've got a proposal?
8    MR. JACKS:  Sir?  Excuse me, Your Honor?
9    THE COURT:  You have a proposal, I see.
10    MR. JACKS:  Yes, Your Honor.  That was
11  prepared by our forfeiture section.  And it is from,
12  I believe, an earlier case as well as it was
13  prepared prior to the -- or during the first trial
14  of this case.  And I didn't have this version that
15  the Court just handed out so that I can put them
16  side by side.
17    THE COURT:  Okay.  Go ahead, take a look.
18    Counsel for the defense, are you ready to
19  get on the record and state some of the objections
20  we were discussing off the record earlier?
21    MS. MORENO:  I am, Your Honor.
22    THE COURT:  Go ahead.
23    MS. MORENO:  With respect to the special
24  verdict form, Your Honor, in all areas of that
25  special verdict form 1 and 2, where it indicates

1    preponderance of the evidence, it would be our

2    position that the standard -- the appropriate

3    standard should be beyond a reasonable doubt.

4            Especially in number 2, if I may read it

5    to the Court.

6            THE COURT:  Yes.

7            MS. MORENO:  It says:  "If you answered

8    yes to Question Number 1, what portion, if any, of

9    the $12,400,000 of the United States currency

10   alleged in the indictment," and we would insert

11   there, "'beyond a reasonable,' doubt constitutes

12   property involved in the commission of the offense

13   alleged in Count 22 or property traceable to such

14   property?"

15           So we believe that beyond a reasonable

16   doubt is the appropriate burden, pursuant to Booker,

17   and it should be both in Number 1 and Number 2 on

18   the special verdict form.

19           With respect to -- I'm speaking on behalf

20   of Mr. Elashi.  And Ms. Hollander may have other --

21           THE COURT:  Well, each counsel may have

22   each of the objections, so you don't have to repeat

23   them.  Each defendant can have each objection that

24   each counsel is making.

25           MS. MORENO:  I'm saying if she has

1    something in addition.

2              THE COURT:  I understand, yes.  I'm just

3    saying, so we don't have to repeat the objection.

4              MS. MORENO:  I understand, Your Honor.

5              THE COURT:  Go ahead.

6              MS. MORENO:  With respect to the

7    forfeiture, we believe that this should be as to

8    each defendant.  The way it is fashioned now, it

9    treats the defendants as a whole.  And I believe

10   that's improper and that it should be as to each

11   defendant.

12             On page 2 again, and throughout this

13   forfeiture, it has as the burden of preponderance of

14   the evidence.  We believe everywhere preponderance

15   of the evidence is cited, it should be beyond a

16   reasonable doubt and by each defendant.

17             What is missing from the forfeiture on

18   behalf of the defense is those two essential

19   ingredients, that the burden of proof is incorrect

20   and that each defendant needs to be found

21   individually because it is an in personam

22   forfeiture.  And that would be my comments thus far.

23             THE COURT:  Ms. Hollander?

24             MS. HOLLANDER:  Your Honor, I will

25   incorporate Ms. Moreno's arguments.  I would just

1   like to add, as to the issue of beyond a reasonable

2   doubt, forfeiture is a penalty.  And therefore,

3   under the case law, Booker primarily and Supreme

4   Court, we believe that the -- I just wanted to add

5   the authority that this should be proof beyond a

6   reasonable doubt throughout and that there should be

7   individual liability, since this is an in personam

8   procedure.

9           We also on the record ask the government

10  to stipulate that the government has Holy Land --

11  has approximately -- we're not sure of the exact

12  amount.  But according to the government, they

13  believe it's approximately $5 million from the Holy

14  Land Foundation.  We believe the jury is entitled to

15  know that the government has that money and ask the

16  government to stipulate to that.

17          And finally, we would also ask that the

18  government stipulate that Shukri Abu Baker is

19  indigent and that counsel is appointed.  And absent

20  that stipulation, that the Court take judicial

21  notice of that, primarily because this is an in

22  personam proceeding.

23          And it is relevant because unlike a drug

24  case or a gambling case, this was a nonprofit

25  organization, and any money he made was his salary.

1    There is no evidence of anything else.  And that he

2    is indigent, and we believe we are entitled to argue

3    that to the jury.

4              THE COURT:  Thank you.  Mr. Westfall?

5              MR. WESTFALL:  Your Honor, of course I

6    will adopt everyone's arguments.

7              But I am going to ask the Court to take

8    judicial notice of the Court's file, the clerk's

9    file, which contains an affidavit of indigency on

10   behalf of Abdul Odeh.  And I do want the jury to

11   know the fact that Abdul Odeh is indigent.

12             Now, do you want me to attempt to take --

13   to ask you to take judicial notice in front of the

14   jury, or how would you like to proceed with that,

15   Your Honor?

16             THE COURT:  Let me get back to you on

17   that.  I will just hear objections.  And then I will

18   hear a response from the government, and then we

19   will resolve that.  Any other objections?

20             MR. WESTFALL:  Not from me.

21             THE COURT:  Ms. Cadeddu?

22             MS. CADEDDU:  Yes.  I would just adopt the

23   arguments of other counsel and also ask for the same

24   stipulations and that the same judicial notice be

25   taken on behalf of Mr. Abdulqader.

1          THE COURT:  Any response, then?

2          MR. JACKS:  Yes, Your Honor.  In regards

3    to the burden of proof, the Court has properly

4    described it as preponderance of the evidence with

5    just the burden of proof in these forfeiture

6    proceedings.

7          With regard to the request that there be a

8    separate verdict form as to each defendant, we don't

9    believe that that is proper because the focus of the

10   issue in the forfeiture proceeding is the money and

11   what amount of money is forfeitable as a result of

12   the defendants' convictions.  And so it is not

13   necessary that each defendant have a separate

14   verdict form, since the focus of the jury's inquiry

15   is what amount of money is forfeitable, not how it

16   should be divided among the defendants, if at all.

17         And then as far as the stipulations are

18   concerned, those items -- those facts are not issues

19   that are relevant before the jury in the sense that

20   what amount of money there may be frozen in an

21   account somewhere is not determinative of how much

22   money should be forfeited as a result of the

23   evidence in this case.  And likewise, the fact that

24   one or more of the defendants may be indigent is not

25   a relevant issue.

1        If a defendant chose to put on evidence

2   that they did not receive any fees or commissions or

3   something such as that, that may be a different

4   issue.  But just to ask the Court to take judicial

5   notice that they are indigent is not proper.

6        And likewise, the issue of the Court

7   taking judicial notice of the fact that there is an

8   affidavit of indigency on file for any particular

9   defendant is likewise not a determinative factor.

10        First of all, the issue of indigency is

11   not determinative of whether or not any money should

12   be forfeited as a result of these convictions.

13        And then secondly, the fact that there is

14   an affidavit in the Court's file would be hearsay,

15   and we would submit that the Court should not take

16   judicial notice of those particular affidavits.

17        Just -- Your Honor, just for the record,

18   there is a 5th Circuit case, U.S. v. Gasanova, with

19   a G, 332 F.3d 297, that reaffirms that the burden of

20   proof in a criminal forfeiture proceeding is by a

21   preponderance of the evidence.

22        THE COURT:  Okay.

23        MR. WESTFALL:  Your Honor, may I respond

24   to one thing?

25        THE COURT:  Yes.

1       MR. WESTFALL:  During the trial, Mr. Jacks

2  made the allegation to a witness that the MLFA was

3  paying all these attorneys' fees, all these

4  defendants' fees.  And he knew it was untrue at the

5  time, and of course it is untrue.

6       I would say that by proving up that

7  statement that he proved up, he not only made

8  individual determination of the forfeiture relevant

9  and the, you know, presumption or the preponderance

10 of the evidence standard, whatever, but I think

11 indigency and individual determination, he has made

12 those relevant and also increased the harm, if

13 indeed they are denied and that's error.  We would

14 ask the Court to consider that.

15      THE COURT:  Mr. Dratel?

16      MR. DRATEL:  I just want to make sure,

17 because the previous version of the indictment that

18 had mentioned Mr. El-Mezain in the forfeiture, I

19 just wanted to make sure that that has been

20 corrected so it is no longer in it.  I would also

21 ask for an individual jury verdict form for that

22 purpose, as well, so there is no confusion

23 whatsoever that he's not in the forfeiture.

24      THE COURT:  Well, we have stated who the

25 defendants are that have been found guilty, which

are the five defendants that went to the jury in the
jury charge.  I don't think that's an issue.

I think the government is correct that the
burden of proof is by a preponderance of the
evidence.

And the issue in the forfeiture allegation
is whether the property that the government alleges,
that that's subject to forfeiture because it
constitutes property involved in the commission of
the offense or was traceable to such property, as
the jury has asked, and then they are asked to
determine what amount.  Those are the issues.

So I don't think indigency is an issue for
the jury.  It's not a basis for the jury to make a
determination as to whether this $12.4 million is
forfeitable.  So I'm not going to let you go into
that issue before the jury.

As far as taking judicial notice of the
affidavit, I can do that.  I don't need to do that
for this particular proceeding because I don't think
it's relevant before the jury.  At some point, if it
becomes an issue in some of the ancillary
proceedings, I'll be glad to do that if it's
appropriate.  But I don't think that that's an issue
for the jury in answering the questions that we are

1    submitting to them.

2          I think the individual liability is

3    determined by the guilty verdicts.  Each of the

4    defendants that was found guilty of that particular

5    count, then that's the individualized liability, in

6    personam liability.

7          And then the only issue that is left

8    before the jury is whether this money that the

9    government has alleged is subject to forfeiture or

10   how much of it.

11          I am proposing to submit the instructions

12   to the jury that I have handed out to counsel.  I

13   have read yours, Mr. Jacks.  They do amplify a

14   little bit.  But I think everything that we have in

15   ours is included in yours.  And I think I am

16   prepared to submit this to the jury just in the

17   interest of not delaying this any further and in

18   hearing further objections.  All counsel has had the

19   opportunity to review these, and I think they

20   correctly state the law.

21          So my proposal -- my intent at this point

22   is to bring the jury in and have the forfeiture

23   allegation read and then pleas of not true from the

24   defense, and then I will ask each side about any

25   evidence that you wish to present.  And then once

1　　that's done, I will read the charge, the

2　　supplemental instructions, and then closing

3　　arguments.  So that's it.

4　　　　　　　MR. JACKS:  Yes, sir.  Your Honor, the

5　　only issue that the government has is the Court's

6　　intention to ask the defendants to respond to the

7　　charge.  I don't believe that it's in any way like

8　　an arraignment or anything.  I think the only

9　　purpose of reading that part of the indictment is

10　　for the benefit of the jury and that there is no

11　　response required on the part of the defendants.

12　　　　　　　THE COURT:  Let me just ask:  Does anybody

13　　disagree with that, Ms. Hollander, Mr. Westfall?  Do

14　　you want to enter a response, or do you just want it

15　　to go to the jury as is?

16　　　　　　　MS. HOLLANDER:  We would prefer to stand

17　　up and make just a statement that it's not correct,

18　　that it's not true.  I don't see how that prejudices

19　　the government in any way.

20　　　　　　　THE COURT:  Okay.  We'll permit you to do

21　　that, then.

22　　　　　　　MS. HOLLANDER:  Thank you, Your Honor.

23　　　　　　　THE COURT:  Any other matters?

24　　　　　　　MR. WESTFALL:  Yes.  How do you want me to

25　　handle the judicial notice issue?

1          THE COURT:  Not in front of jury.

2          MR. WESTFALL:  For the record, it's

3     considered as though I requested it in front of the

4     jury?

5          THE COURT:  Well, for the record, I am

6     denying your request to take judicial notice of that

7     and present it to the jury because I don't believe

8     that's a relevant issue for the jury.

9          MR. WESTFALL:  Okay.  I don't want the

10    Court of Appeals to be able to say that I didn't

11    try.

12         THE COURT:  I think the record reflects

13    you have tried.

14         MR. WESTFALL:  Very well.  Thank you, Your

15    Honor.

16         MR. DRATEL:  Your Honor, just while we're

17    all here, on Rule 33 motions, the statutes -- the

18    rule says seven days.  However, the Court can give

19    additional time.  Given the nature of the case and

20    the complexity of the case, I would ask for 60 days

21    to make those motions.

22         THE COURT:  Why don't we address that once

23    the jury goes out?  I will get with counsel, and we

24    can address some of these other issues.  I

25    understand you will want more time, and we will

1    certainly work with you on that.  I haven't thought

2    about how much time exactly.

3              Anything else before we bring the jury in?

4              MR. JACKS:  Your Honor, do you want me to

5    read this forfeiture provision by the government?

6              THE COURT:  Yes.  Someone from the

7    government, if you will read that.  All right.

8    Bring the jury in.

9              (Jury enters courtroom.)

10             THE COURT:  Mr. Jacks, if you will read

11   the forfeiture allegation in the indictment.

12             MR. JACKS:  Thank you, Your Honor.

13             May it please the Court?  Members of the

14   jury.  The final two pages -- excuse me, three pages

15   of the indictment contain a forfeiture allegation,

16   and I will read that to you at this time:

17             "As a result of committing one or more of

18   the money laundering or monetary transaction

19   offenses in violation of Title 18 United States

20   Code, Section 1956, alleged in Counts 22 through 32

21   of this indictment, the defendants as listed below

22   shall forfeit to the United States of America all

23   property, real and personal, involved in the money

24   laundering or monetary transaction offenses and all

25   property traceable to such property, including but

1    not limited to the following:  Defendants Holy Land

2    Foundation, Shukri Abu Baker, Ghassan Elashi,

3    Haitham Maghawri, Akram Mishal, Mufid Abdulqader and

4    Abdulrahman Odeh shall forfeit at least $12,400,000

5    in United States currency.

6            That sum represents a portion of the sum

7    of moneys sent from a place within the United

8    States, namely the Northern District of Texas, to

9    places outside the United States, including the West

10   Bank and Gaza and other places, as well as moneys

11   that were destined for places outside the United

12   States, with the intent to promote the carrying on

13   of a specified unlawful activity, to wit, willfully

14   contributing funds, goods and services to, or for

15   the benefit of, a Specially Designated Terrorist,

16   namely HAMAS, as set forth in Counts 11 through 21

17   for which the defendants are jointly and severally

18   liable.

19           By virtue of the commission of one or more

20   of the felony offenses alleged -- excuse me, charged

21   in Counts 22 through 32 of this indictment by the

22   defendants Holy Land Foundation, Shukri Abu Baker,

23   Ghassan Elashi, Haitham Maghawri, Akram Mishal,

24   Mufid Abdulqader and Abdulrahman Odeh, any and all

25   interests which the defendants have in the

1    above-described sums are vested in the United States

2    and are hereby forfeited to the United States

3    pursuant to Title 18 United States Code,

4    Section 982(a)(1).

5               In the event any property, real or

6    personal, involved in the offenses and described in

7    Counts 26 through 38 of this indictment or any

8    property traceable to such property, as a result of

9    any act or omission of the defendants:

10              One:  Cannot be located upon exercise of

11   due diligence;

12              Two:  Has been transferred or sold to, or

13   deposited with a third party;

14              Three:  Has been placed beyond the

15   jurisdiction of the Court;

16              Four:  Has been substantially diminished

17   in value; or

18              Five:  Has been commingled with other

19   property which cannot be divided without difficulty;

20   it is the intent of the United States, pursuant to

21   Title 18 United States Code, Section 982(b)(1), to

22   seek forfeiture of any other profit of said

23   defendants up to the value of the above property.

24              And again, the indictment has been signed

25   by the foreperson of the Grand Jury and by the

1  United States Attorney, by his designated
2  assistants.
3           THE COURT:  Thank you.  And to each
4  forfeiture allegation, how do the defendants --
5           MS. HOLLANDER:  As to Mr. Abu Baker, we
6  state that it is not true.
7           THE COURT:  Mr. Westfall?
8           MR. WESTFALL:  Not true, Your Honor.
9           THE COURT:  Ms. Moreno?
10          MS. MORENO:  Not true, Your Honor.
11          THE COURT:  Ms. Cadeddu?
12          MS. CADEDDU:  Not true, Your Honor.
13          THE COURT:  All right.  And Mr. Jacks,
14  does the government wish to offer any additional
15  evidence?
16          MR. JONAS:  The government is going to
17  rest upon all the evidence presented during the
18  course of the trial.  We would like just a few
19  minutes to make argument to the jury.
20          THE COURT:  All right.  Ms. Hollander, any
21  additional evidence beyond what's been presented?
22          MS. HOLLANDER:  No, sir, just what's been
23  presented.  We also would like to make argument to
24  the jury.
25          THE COURT:  Mr. Westfall?

 1          MR. WESTFALL:  Your Honor, subject to the

 2    rulings that have been made by the Court, no

 3    additional evidence.

 4          THE COURT:  And Ms. Moreno?

 5          MS. MORENO:  No additional evidence on

 6    behalf of Mr. Elashi; the opportunity to make

 7    argument.

 8          THE COURT:  Ms. Cadeddu?

 9          MS. CADEDDU:  The same, as well.

10          THE COURT:  Ladies and gentlemen, you will

11    not hear any additional evidence.  You can consider

12    the evidence that you heard presented in the trial

13    in answering these questions that I'm going to give

14    to you in just a few minutes.

15          Let me give you some supplemental

16    instructions that I will read to you.  And then you

17    can take these back there with you, and then we will

18    ask you to answer two questions once you retire.  We

19    will let the lawyers make brief arguments to you on

20    this particular issue of the forfeiture.

21     Court's supplemental instructions to the jury:

22          Members of the jury, now that you have

23    decided that defendants Holy Land Foundation, Shukri

24    Abu Baker, Ghassan Elashi, Mufid Abdulqader and

25    Abdulrahman Odeh are guilty of the offenses alleged

1    in Count 22 of the indictment, you must now decide

2    whether these defendants should forfeit the property

3    as described in the forfeiture allegations of the

4    indictment that were just read to you.

5              "Forfeiture" means to be divested or

6    deprived of the ownership of something as a penalty

7    for the commission of a crime.

8              Title 18 United States Code,

9    Section 982(a)(1), provides that any person

10   convicted of a conspiracy to launder monetary

11   instruments shall be ordered to forfeit to the

12   United States any real or personal property involved

13   in the offense or any property traceable to such

14   property.

15             In the forfeiture count of the indictment,

16   the government contends that at least $12,400,000 in

17   United States currency represents the property

18   involved in the offense alleged in Count 22,

19   conspiracy to launder monetary instruments or

20   property traceable to such property.

21             You are instructed that the phrase

22   "property involved" in the offense includes:  One,

23   the amount of monetary or financial transaction

24   alleged; two, any fees or commissions paid to

25   persons involved in the offense; three, any property

1    used to facilitate the commission of the offense;

2    and four, any property traceable to such property.

3            To facilitate the commission of an offense

4    means to aid, promote, advance or make easier the

5    commission of the act or acts constituting the

6    offense.  Property used to facilitate an offense can

7    be in any form.

8            You must decide by a preponderance of the

9    evidence what property, if any, set forth in the

10   forfeiture count of the indictment should be

11   forfeited.

12           A preponderance of the evidence means the

13   matter in question is more likely true than not

14   true.  If in your minds the evidence is equally

15   balanced on a matter to be proved, it has not been

16   established by a preponderance of the evidence.

17           In determining whether any fact in issue

18   has been proven by a preponderance of the evidence,

19   you may consider the testimony of all of the

20   witnesses, regardless of who may have called them,

21   and all the exhibits received in evidence,

22   regardless of who may have produced them.

23           In order to be entitled to forfeiture

24   based on a defendant's conviction on Count 22, the

25   government must prove by a preponderance of the

1    evidence that the property to be forfeited was

2    property involved in that offense or property

3    traceable to such property.

4            While deliberating, you may consider any

5    evidence offered in this trial before or after your

6    previous deliberations.

7            In reaching a verdict on the forfeiture

8    allegation regarding Count 22, you may not consider

9    the degree to which a particular defendant was

10   involved in the offense.  By law, each defendant is

11   individually liable for the entire amount of the

12   money judgment.

13           A special verdict has been prepared for

14   your use.  You are instructed to indicate on the

15   form your determination whether any property is

16   subject to forfeiture to the United States.

17           You will take the verdict form to the jury

18   room.  When you have reached a unanimous agreement

19   on the forfeiture verdict, the presiding juror must

20   fill in the date and sign the verdict form.

21           Once you have done this, the presiding

22   juror is to notify the court security officer that

23   you have reached a unanimous verdict so you can

24   return to the courtroom.

25           The special verdict form is two questions.

1  Question Number 1:  Do you find from a preponderance

2  of the evidence that any of the $12,400,000 in

3  United States currency alleged in the forfeiture

4  count of the indictment constitutes property

5  involved in the commission of the offenses alleged

6  in Count 22 or property traceable to such property?

7          Answer either Yes or No by checking the

8  appropriate blank below.  There is a Yes or a No for

9  the foreperson to sign the verdict after you have

10  reached a unanimous decision.

11          Question Number 2:  If you answered Yes to

12  Question Number 1, what portion, if any, of the

13  $12,400,000 in United States currency alleged in the

14  indictment constitutes property involved in the

15  commission of the offense alleged in Count 22 or

16  property traceable to such property?  If you

17  answered no to Question Number 1, do not answer this

18  question.

19          Instruction:  You are to answer in dollars

20  and cents, if any, or none, in the space provided

21  below.  And then there is a blank for you to fill in

22  your amount and for the foreperson to date and sign.

23          At this time, the lawyers are permitted to

24  address you in closing argument for a few minutes.

25          Mr. Jonas?

1          MR. JONAS:  Thank you, sir.

2          Good afternoon.  You all probably thought

3   you were done when Judge Solis read the verdict.

4          You have one more task to take care of,

5   and this one shouldn't take nearly as long as your

6   deliberations, and that is to determine whether or

7   not approximately $12.4 million in HLF property

8   should be forfeited to the United States.  That's

9   based upon Count 22, the money laundering

10  conspiracy.

11         And we're not -- we are relying upon the

12  evidence you heard for six-plus weeks.  We are not

13  going to present any more evidence to you.  I just

14  want to point out a couple of things as to where we

15  came up with that approximately $12.4 million

16  figure.

17         You have heard testimony, of course, that

18  the HLF was created for and by HAMAS to raise funds

19  for HAMAS in the United States and then send it to

20  Zakat committees and other institutions in the West

21  Bank and Gaza to support HAMAS's foundation, their

22  social wing.

23         And if you look at the HLF tax returns

24  from 1995 forward -- and I say 1995 because that's

25  when the money laundering first became a crime in

this case -- and you look at the program services line, line 13, which you heard testimony from Mohammed Wafa Yaish, their accountant, that's where they reported the payments to the Zakat committees, it includes payments to other organizations, as well, but that's where the Zakat committee payments and all the payments on behalf of HAMAS is reported.

If you total up those numbers from 1995 forward, you will come up with about $32 million, way more than the $12.4 million alleged in the forfeiture count.

If you also look at the bank accounts of the HLF, both the domestic accounts here and the foreign accounts in Gaza and West Bank, you will see millions of dollars being moved from the U.S. overseas to the West Bank and Gaza.

Some of that money you will end up seeing on those Zakat committee schedules. Some of that money you won't see traced anywhere. But even though it's not traced anywhere further than to the Zakat committees, we submit to you that it's still being used and distributed on behalf of HAMAS to support their social wing. After all, that's what HLF was created for.

And if you look at that money, you will

1    come up with at least $12.4 million, again the money

2    from Dallas to West Bank and Gaza.

3              And finally, if you just total up the

4    Zakat schedules, that's not going to be

5    $12.4 million, but that's an indication of where

6    some of this money went, as you heard for many, many

7    weeks.

8              So I'm not going to take up any more of

9    your time.  I just want to make two quick points.

10   It's not about the defendants' guilt anymore.  It's

11   about the property, the money, and whether it should

12   be forfeited to the United States because of the

13   money laundering conspiracy that you found them

14   guilty of.

15             And two, the burden of proof is no longer

16   beyond a reasonable doubt.  It's a preponderance of

17   the evidence, which is a much lower standard.  And I

18   ask that you find that that $12.4 million be

19   forfeited to the United States Government.

20             Thank you.

21             THE COURT:  Thank you.

22             Ms. Hollander?

23             MS. HOLLANDER:  Thank you, Your Honor.

24             Ladies and gentlemen, I only ask you to

25   look at the instructions that the judge gave you.

1    The instructions describe the property involved.  I

2    ask you to find no forfeiture in this case.

3            When you consider that the amount of

4    monetary or financial transactions alleged, that's

5    only one item.

6            Number two is any fees or commissions paid

7    to persons involved in this offense.  The government

8    has introduced no evidence throughout the course of

9    this trial that Shukri Abu Baker received anything

10   other than a salary, and at that, a low salary, for

11   his time working at the Holy Land Foundation.  I ask

12   you to consider that and to make your verdict no

13   forfeiture.

14           Thank you.

15           THE COURT:  Thank you.

16           Ms. Moreno?

17           MS. MORENO:  Ladies and gentlemen, I want

18   to echo Ms. Hollander's remarks.  It's important

19   again that you look at the instructions on the

20   forfeiture.

21           Mr. Elashi, there was no evidence

22   presented throughout this trial that Ghassan

23   received a nickel in salary.  He was a volunteer for

24   12 years for the charity.  There's no evidence that

25   my client used any property to facilitate the

1    commission of the offense.  So on behalf of Ghassan

2    Elashi, I would ask you to find no forfeiture as

3    well.

4              Thank you.

5              THE COURT:  Thank you.

6              Mr. Westfall?

7              MR. WESTFALL:  Even if we go, you know,

8    with the idea that all of the charity was sent to

9    HAMAS for HAMAS's purposes, it was still charity.

10   We know the money was spent on that.

11             The issue, like it says in the forfeiture,

12   is:  Should the defendants forfeit the property

13   described in the forfeiture allegations?  Should,

14   meaning it's not automatic, it's not guaranteed.

15   You know, no one, particularly Abdul Odeh, enriched

16   themselves or made a big fat bank account on all

17   this stuff.  It was all spent over there.

18             So I think the answer is no to the

19   question of should there be a forfeiture.

20             THE COURT:  Thank you.

21             Ms. Cadeddu?

22             MS. CADEDDU:  Thank you, Your Honor.

23             Ladies and gentlemen, the instructions

24   tell you that you have to decide by a preponderance

25   of the evidence what property, if any, set forth in

1    the forfeiture count should be forfeited.

2         You have already apparently found beyond a

3    reasonable doubt that Mr. Abdulqader is guilty of

4    the three charges against him.  I would ask that you

5    check No on the box of whether, by a preponderance

6    of the evidence, the property alleged constitutes

7    property involved in the commission of the offense.

8         Thank you.

9         THE COURT:  Thank you.

10        Mr. Jonas, any closing?

11        MR. JONAS:  Thirty seconds, Your Honor.

12        THE COURT:  Okay.

13        MR. JONAS:  The issue is not whether they

14   made money in this conspiracy, whether they made

15   salary or profited.  The issue is whether the money

16   went to HAMAS.  And it should be forfeited on the

17   money laundering count that you found them guilty

18   of.

19        Thank you.

20        THE COURT:  Thank you.

21        Members of the jury -- Ms. Schukar,

22   members of the jury, if you will step back into the

23   jury room, we will have the instructions, along with

24   the special verdict form, for you when you have

25   reached your decision.

1          (Jury leaves courtroom.)

2          THE COURT:  Court will be in recess.

3          (Recess taken from 4:03 to 5:04.)

4          (Jury present.)

5          THE COURT:  Members of the jury, I

6     understand you have reached a verdict with respect

7     to this forfeiture issue.

8          JURY FOREMAN:  Yes, Your Honor.

9          THE COURT:  If you will hand the verdict

10     to the bailiff.

11          The jury's verdict with respect to

12     Question Number 1, the answer is yes.

13          With respect to Question Number 2, the

14     answer is $12,400,000.

15          It is dated and signed today's date.

16          And I will again ask you, presiding juror:

17     Is this the verdict of each member of the jury, the

18     verdict that you have returned here?

19          JURY FOREMAN:  Yes.

20          THE COURT:  Any other issues that we need

21     to address before we discharge the jury?

22          MR. JACKS:  No, Your Honor.

23          THE COURT:  Members of the jury, we will

24     be able to discharge you with this:  You have been

25     under some instructions about not discussing the

1    case.  And of course the lawyers thank you, and I

2    want to say thank you.  I know this has been a

3    difficult case, a long case, longer than what we

4    told you it would take.  We do appreciate your

5    attentiveness, and we know you certainly took this

6    seriously, and all the parties, everybody,

7    appreciates that.

8            We will let you go.  You will be free from

9    those instructions that you have been under about

10   discussing the case.  You don't have to discuss the

11   case with anyone if you don't want to.  That's

12   entirely up to you.

13           If you will step back into the jury room,

14   we will visit with you a little bit.  I need to take

15   care of some matters here in court, and then I will

16   go back there and try to answer any questions that

17   you may have that came up during the course of the

18   trial.  You are excused, and I will visit with you

19   in just a few minutes.

20           (Jury leaves courtroom.)

21           THE COURT:  Mr. Jacks or Mr. Jonas?

22           MR. JONAS:  Yes, sir.  The government

23   requests that the defendants be immediately remanded

24   to the custody of the U.S. Marshal.

25           THE COURT:  I will hear from counsel.

1          Mr. Westfall?

2          MR. WESTFALL:  Yes, Your Honor.  You know,

3    obviously Mr. Odeh has appeared at every single

4    appearance.  Every time he's had to be somewhere,

5    he's been somewhere, whether it was up in New Jersey

6    or down here.  He has never bailed over the course

7    of several years now.  He is not going to bail now.

8          There is -- there are issues -- I think

9    the Court has to agree that there are several novel

10   appellate issues that reasonable minds could

11   disagree about that are going to go to the

12   5th Circuit on this case.

13         And given those issues, we believe that

14   certainly the Court can find that a good-faith

15   appeal, possibly a meritorious appeal, could be

16   taken, and I think that can figure into the Court's

17   analysis.

18         And we would just ask that Abdul Odeh be

19   allowed to remain free on conditions pending

20   sentencing.  He is not a flight risk.  He's not a

21   risk to the community.  And we do have, I think,

22   some solid, arguable appellate issues that the Court

23   can consider.

24         THE COURT:  Thank you.

25         Ms. Duncan?

1    MS. DUNCAN:  Your Honor, I would adopt all

2 of Mr. Westfall's arguments.  And I would just add

3 to those that in addition to having a number of

4 meritorious issues to raise on appeal, there are

5 also a number of novel ones, including in this case

6 the testimony of an anonymous expert, which we are

7 all aware is unprecedented in the history of this

8 country.  And also the issue of the co-conspirators'

9 statements and the breadth in which that exception

10 was applied in this case.

11    So under 18 U.S.C. 3145, we would argue

12 that those are exceptional circumstances that would

13 warrant Mr. Abu Baker being on bail pending

14 sentencing in this case, in addition to all the

15 reasons that Mr. Westfall mentioned, appearing at

16 all hearings and not being a flight risk.

17    THE COURT:  Thank you.

18    Mr. Dratel.

19    MR. DRATEL:  Thank you, Your Honor.  I

20 adopt all of counsels' arguments and the following

21 with respect to Mr. El-Mezain.  Obviously, four

22 years of appearing, of complete compliance with

23 pretrial supervision, does not constitute a flight

24 risk.

25    In addition, he has a wife and eight

1    children here in the United States.  One of them

2    lives in Dallas.  So if there was an issue with

3    respect to that, he could possibly be here if the

4    Court thought that was necessary, by electronic

5    monitoring.  Any kind of supervision that the Court

6    thinks is appropriate would, I think, resolve those

7    issues in his favor in terms of continuing liberty.

8           In addition, there are significant health

9    issues for Mr. El-Mezain.  He had a knee replacement

10   operation last year that still requires attention.

11   He has diabetes, high blood pressure.  He takes

12   about six different types of medication for that and

13   other conditions, including cholesterol issues, and

14   he suffers from arthritis.

15          As the Court has seen, he has a cane and

16   has been sitting on a cushion the whole time.  He

17   has all those issues which still need attention as

18   we go forward.

19          He's in a little different situation.

20   There's only one count in which obviously there is

21   exposure, but it's a limited amount of exposure in

22   that context in terms of the sentence.  But he has

23   been here the entire time and will continue to be

24   so.

25          I also note with respect to the appeal, in

1   addition to the other arguments that other counsel

2   have set forth, the collateral estoppel issue for

3   Mr. El-Mezain, the particular one.  And I would note

4   that since we started this case -- I think it was

5   last week, actually it was Friday -- the Supreme

6   Court granted cert on the Yager case out of the

7   5th Circuit.

8           That was, I think, integral in the Court's

9   decision before, and so now we have the Supreme

10  Court that is going to weigh in on that.  And I

11  think that makes it clearly a colorable issue

12  because that may change the whole context of how

13  that issue is determined, and it's one that I think

14  has merit.

15          And I think in the context of the trial,

16  we would look at the trial evidence.  There is more

17  merit in that additional context.  It's far more

18  targeted in terms of the types of evidence, in terms

19  of where they were when it even was pretrial.

20          THE COURT:  Thank you.

21          MR. WESTFALL:  Your Honor, I can't believe

22  I forgot to mention this.  Odeh has primary custody

23  of his 16-year-old son, Kareem -- Mohamad Kareem

24  Odeh.  I call him Kahrim.  But he has primary

25  custody of his 16-year-old son.

1          And so in addition to having ties to the

2     community, that also, along the same lines, I mean

3     that's what he has to do to get -- kind of get that

4     situation ready before what's going to happen after

5     sentencing.

6               THE COURT:  All right.  Thank you.

7               MS. MORENO:  Your Honor, Mr. Elashi is in

8     a different position than all the rest of the

9     gentlemen.  But for purposes of the record, I would

10    adopt all arguments of my co-counsel with respect to

11    all the issues on appeal.

12              THE COURT:  Thank you.

13              Ms. Cadeddu.

14              MS. CADEDDU:  Yes, Your Honor.  I would

15    adopt all the arguments made by my co-counsel, legal

16    arguments.

17              And I would say, on behalf of

18    Mr. Abdulqader, Mr. Abdulqader is an American

19    citizen and has been for quite some time.  His wife

20    is American, a native American citizen who has, to

21    my knowledge, not ever lived anywhere else.  He has

22    three children, the youngest of whom is 10; 10, 16

23    and 21.  His wife, Diane, is not employed.

24              So I would ask, on behalf of

25    Mr. Abdulqader, I believe that exceptional

1  circumstances exist in light of the very unusual

2  issues of first impression that will be taken up in

3  this case.  I don't believe that there's any

4  evidence at all that Mr. Abdulqader is a flight

5  risk, and conditions could be set that would ensure

6  his appearance.

7          THE COURT:  Thank you.

8          MS. HOLLANDER:  Your Honor, could I just

9  add, Mr. Abu Baker also has young children here, and

10  his family is all here, his mother and father and

11  wife and his daughters.  He would also --

12  originally, in the very beginning of this case, he

13  was on a bracelet.  The probation officer decided to

14  take that off after some period of time.

15          But as an alternative to remanding, he

16  would accept any other conditions, including a

17  bracelet or even home confinement, so that he can

18  prepare his family also.

19          Thank you.

20          THE COURT:  Thank you.

21          Mr. Jonas, any final thoughts?

22          MR. JONAS:  I will try to be brief, Your

23  Honor.  The situation has certainly changed.  The

24  defendants are now facing very, very lengthy jail

25  sentences.  We understand it's Your Honor's

1  decision.  But under the guidelines themselves,

2  which of course are advisory, they are facing a

3  minimum of 30 years.

4        I understand the defendant Mohammad

5  El-Mezain is only convicted of one count.  That

6  still has a cap, a statutory maximum of 15 years.

7  So they are facing very long jail sentences, as

8  opposed to this morning they were not.

9        The presumption at this point under

10  18 U.S.C. Section 3143(a) is that they be retained,

11  unless they can show they are not a flight risk or a

12  danger to the community.

13        The government has established that they

14  have access to an inroads with a major terrorist

15  organization that operates in a part of the world

16  that the United States does not reach.  And although

17  four of them are U.S. citizens -- although three, we

18  shouldn't count Mr. Elashi, they weren't born here.

19  And that allows them to go to the Jordanian Embassy

20  and get a new passport, and we can't stop that.

21  Once they are out of the United States and into the

22  reaches of the Middle East, we can't get them back.

23        For example, two defendants in this case,

24  Haitham Maghawri and Akram Mishal, are in Lebanon

25  and Syria.  We've had an Interpol Red Notice out for

1    years to get them back, and we haven't been able to.

2    So if they flee the United States, we are stuck.

3    They are gone.

4           And they have the ability to do so because

5    of their contacts with a high level of HAMAS, as

6    well as the foreign bank accounts that give them the

7    monetary ability to flee.  Like I said, while they

8    may have met the conditions of pretrial release

9    before, it's a different circumstance now.

10           As far as a danger to the community, they

11   are still fundraising.  And that, in and of itself,

12   is a danger, a danger to the community.  It doesn't

13   necessarily mean a violent danger.  It can be other

14   type of dangers, monetary danger.

15           In this case, their fundraising that they

16   continue to do up until today is what got them into

17   this Court to begin with.  And that is a danger to

18   the community, the worldwide community.  Fundraising

19   for HAMAS, well, you know that's a problem.

20           Just a couple of quick points:  Defendant

21   Mohammad El-Mezain is not a U.S. citizen.  His

22   health issues can be taken care of by the Bureau of

23   Prisons.  They do have facilities to deal with it.

24           And I believe that -- I just want to

25   emphasize that the burden is on them, and the

1   presumption is they should be detained at this
2   point.
3           THE COURT:  Well, I've looked at the
4   sentencing guidelines, and I understand that the
5   potential sentences could be fairly lengthy.
6           And while I understand and agree with what
7   counsel has stated as far as the novel legal issues,
8   I think, in light of the potential lengths of the
9   sentences, the crimes that are involved, the
10  connections with out-of-the-country entities and
11  individuals, I think detainment is appropriate in
12  this case.
13          So it will be the judgment of the Court --
14  the order of the Court that the defendants be
15  remanded into the custody of the U.S. Marshal
16  pending their sentencing hearings.
17          Any other matters we need to address,
18  Mr. Jonas?
19          MR. JONAS:  No.  Just that issue about the
20  gag order that we raised earlier.
21          THE COURT:  Yes.
22          MS. HOLLANDER:  May we approach?
23          THE COURT:  Sure.
24     (The following discussion held at the bench:)
25          MR. DRATEL:  The time for the motions, for

1  the posttrial motions, if we can set that on the

2  record, we're asking for 60 days.

3         THE COURT:  And we discussed that off the

4  record.  Any objection to 60 days?

5         MR. JONAS:  We don't have any objections.

6         THE COURT:  We will give you 60 days,

7  January 24th, roughly.  And once the motions are

8  filed, then why don't you let us know some idea of

9  how much time you want to respond?  And we will set

10 response and reply dates, and you can let us know

11 reply times.

12        MR. DRATEL:  Thank you.

13        THE COURT:  We will do a separate order as

14 far as the sentencing hearing.  As far as the

15 report, we will do that by separate order next week.

16        Anything else?

17        MS. HOLLANDER:  Yes, Your Honor.  I wonder

18 if it would be possible if my client -- and perhaps

19 the others wish to join -- could spend a few minutes

20 with their family before being remanded.

21        THE COURT:  I will leave that up to the

22 Marshals, frankly.

23        MS. HOLLANDER:  I would like for you --

24        THE COURT:  They are the ones that may

25 have some security issues.  And if they don't mind,

1    I certainly don't mind.  You can tell them that.

2              MS. HOLLANDER:  I think you will have to

3    tell them.

4              THE COURT:  They will not take your word

5    for it?

6              MS. HOLLANDER:  At least with their

7    immediate family for a few minutes would be very

8    much appreciated.

9              THE COURT:  Would the Marshal come up here

10   a minute?

11             Of course I've remanded them to custody,

12   but they want their clients to spend some time with

13   their families.  What's your thought on that?

14             THE MARSHAL:  Personal contact?

15             MS. HOLLANDER:  Just in the courtroom.

16             THE COURT:  Are you talking about personal

17   contact?

18             MS. HOLLANDER:  Just in the courtroom.

19             THE COURT:  What's your general policy on

20   that?  How would you prefer to do it?

21             THE MARSHAL:  Our normal policy is we

22   don't do that.  We will do whatever the Court says.

23             THE COURT:  I understand that, but I don't

24   want to create a security problem for you.  That's

25   why I want your input on this.  But if you don't

1  think it's a good thing to do, it's too much of a

2  security issue, then that's the way it is.  If you

3  think there's something that can be worked out --

4        MR. WESTFALL:  How about defendants on

5  this side of the bar and families on the other so

6  there is no contact?

7        THE COURT:  And clear the courtroom.

8        MS. HOLLANDER:  We could do it defendant

9  by defendant just for a few minutes.

10        THE COURT:  Can you handle that, clear the

11  courtroom and keep the immediate family?

12        THE MARSHAL:  The immediate family, and

13  maybe just one at a time.  If it gets out of hand,

14  then it stops.

15        THE COURT:  That's a good idea.

16        MS. HOLLANDER:  Thank you.  Appreciate it.

17        THE COURT:  We will go ahead and recess,

18  and I think everybody will clear out.

19        MR. WESTFALL:  Your Honor, on behalf of

20  Abdulrahman Odeh, I have no objection to the gag

21  order being lifted.

22        THE COURT:  And I will order that the gag

23  order be lifted.

24        MR. JONAS:  Thank you, sir.

25        (Court in recess at 11:15 A.M.)

```
 1              C E R T I F I C A T E

 2          I, Shawnie Archuleta, CCR/CRR, certify

 3   that the foregoing is a transcript from the record

 4   of the proceedings in the foregoing entitled matter.

 5          I further certify that the transcript fees

 6   format comply with those prescribed by the Court and

 7   the Judicial Conference of the United States.

 8          This 30th day of June 2009.

 9

10

11                        s/Shawnie Archuleta
                          Shawnie Archuleta CCR No. 7533
12                        Official Court Reporter
                          The Northern District of Texas
13                        Dallas Division

14

15

16   My CSR license expires:  December 31, 2009

17   Business address:  1100 Commerce Street
                        Dallas, TX  75242
18   Telephone Number:  214.753.2747

19

20

21

22

23

24

25
```